James David Jacobs
Frank M. Gasparo
Marcella Ballard
BAKER & McKENZIE LLP
1114 Avenue of the Americas
New York, NY 10036-7703
Tel: 212-626-4100
Fax: 212-310-1600

Attorneys for Software AG, Inc.
and Software AG

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SOFTWARE AG, INC. and SOFTWARE AG,<br><br>                    Plaintiffs,<br><br>-against-<br><br>CONSIST SOFTWARE SOLUTIONS, INC. f/k/a CONSIST INTERNATIONAL, INC. and NATALIO FRIDMAN,<br>                    Defendants. | Case No.  08 CV 0389<br><br>**COMPLAINT** |

Plaintiffs Software AG, Inc. ("SAGA") and Software AG ("SAG") (collectively "Software AG" or "Plaintiffs"), by their attorneys Baker & McKenzie LLP, for their complaint against Consist Software Solutions, Inc. ("Consist") and Natalio Fridman ("Fridman") (collectively "Defendants"), allege as follows:

## NATURE OF THE ACTION

This is an action for a declaratory judgment, temporary, preliminary and permanent injunctive relief and compensatory damages by reason of Defendants' intentional misrepresentations and other actions taken between the December 17, 2007 verdict in an earlier case between the parties and the December 31, 2007 expiration of the

Distributorship Agreement between SAGA and Consist effective January 1, 1998 (the "Agreement"), as well as Defendants' unlawful activities after the expiration of the Agreement.

## JURISDICTION AND VENUE

1.    The court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) as this action involves a federal question pursuant to the Lanham Act, 15 U.S.C. 1051 *et seq.*  This court also has jurisdiction over the claims pursuant to 28 U.S.C. § 1332, diversity of citizenship, and 28 U.S.C. § 1367, the amount in controversy exceeding $75,000 and defendants and plaintiffs being citizens of different states.

2.    Consist and Fridman reside in this district.  Venue is proper under 28 U.S.C. § 1391, Fed. R. Civ. P. 13 and the parties' Agreement, which was negotiated in New York and expressly provides that it shall be subject to and interpreted in accordance with New York law.

## THE PARTIES

3.    SAGA is a corporation organized and existing under the laws of Virginia with its principal place of business in Virginia at 11700 Plaza America Drive, Suite 700, Reston, Virginia 20190.

4.    SAG is SAGA's parent and is a corporation organized and existing under the laws of Germany with its principal place of business at Uhlandstrasse 12, 64297 Darmstadt, Germany.

5.    Upon information and belief Consist is a corporation organized and existing under the laws of Delaware and has its principal place of business at 10 E. 53rd Street, New

York, NY 10022.

6.    Natalio Fridman is the president of Consist, directs and controls Consist and upon information and belief resides in New York.

## FACTUAL ALLEGATIONS

### The Agreement Has Expired

7.    In the Agreement, which was effective January 1, 1998, SAGA granted exclusive distribution rights for SAG computer software products to Consist within a 7-country territory in South America (the "Territory") for a 10-year term ("Term"), renewable only if either party did not give a notice of non-renewal 18 months prior to the end of the Term.  The Agreement is attached as Exhibit 1.

8.    As early as May 20, 2005, more than 2 ½ years before the end of the Term of the Agreement, Karl-Heinz Streibich, CEO of Software AG told Fridman in a meeting in New York, New York, that Software AG would not renew Consist's exclusive distributorship.

9.    Software AG reminded Consist in email to Fridman, dated December 16, 2005 and in a letter to Fridman, dated March 30, 2006, that Software AG would not renew Consist's exclusive distributorship.

10.  In a letter, dated April 6, 2006, almost 21 months prior to the end of the Term, SAGA formally timely gave notice to Consist that it would not renew Consist's exclusive distributorship.

11.  Consist disagreed with Software AG's right to not renew the Agreement.

12.  On August 3, 2007, just 4 months before the expiration of the Term, but over 2 years after it learned that its distributorship would not be renewed and almost 1 ½ years

after receiving formal notice that its distributorship would not be renewed, Consist brought suit seeking a declaratory judgment that SAGA did not properly terminate the Agreement; requesting a declaratory judgment that Consist had not breached the Agreement and that the Agreement had been automatically renewed for another five-year term commencing January 1, 2008; compelling specific performance of the Agreement after December 31, 2007; and enjoining SAGA from breaching its obligations under the Agreement during the pendency of that action. *Consist Software Solutions, Inc. v. Software AG, Inc. and Software AG,* Case No. 07-7047 (CM) ("The First Litigation").

13.   By stipulated order on October 31, 2007, the court, inter alia, dismissed with prejudice Consist's claims for an injunction, specific performance and damages in Counts I, III, IV, VI, VIII, IX, X, XI and XII of Consist's complaint in The First Litigation, reserving only Counts II and VII of Consist's complaint seeking a declaratory judgment.

14.   The parties waived their rights to trial by jury agreeing that all issues remaining would be tried by the court.  The October 31, 2007 Stipulated Order is attached as Exhibit 2.

15.   The Honorable Colleen McMahon tried The First Litigation in December 2007 and in a decision dictated from the bench on December 17, 2007 issued a verdict ("December 17, 2007 Verdict") in Software AG's favor and made Findings of Fact and Conclusions of Law, inter alia, that the Agreement expired in accordance with Paragraph 1 as of December 31, 2007.  The transcript of the Findings of Fact and Conclusions of Law is attached as Exhibit 3.

16.   On December 21, 2007, the parties stipulated and agreed that the December 17 Ruling, Findings of Fact and Conclusions of Law, Verdict and December 21 Stipulation

constituted a "Final Judgment" from which an appeal may lie. The December 21, 2007 Stipulation and Final Judgment is attached as Exhibit 4.

17.  In the Agreement, Paragraph 1, SAGA appointed Consist during the term of the Agreement to be its exclusive distributor of the "Systems" which included products manufactured by SAG and by third parties in the Territory.  "SAG Software Products" means software products manufactured in whole or in part by Software AG, including but not limited to ADABAS, the database technology and NATURAL, the proprietary programming language.

18.  In the Agreement, Paragraph 2, SAGA authorized Consist during the term of the Agreement to enter into customer agreements in the Territory for licensing, installing, technical assistance, training and maintenance of the software packages for which SAGA granted it exclusive distribution rights.

19.  In the Agreement, Paragraph 3, SAGA granted Consist during the Term of the Agreement the right to grant both perpetual or time-limited licenses and/or maintenance agreements, in exchange for quarterly payments to SAGA.

20.  In the Agreement, Paragraph 4, SAGA agreed to provide Consist during the Term of the Agreement: (i) training; (ii) 10 copies of the latest version of the SAG Software Products; (iii) 10 copies of SAG Software Products documentation; and (iv) prompt error correction for the SAG Software Products on any queries forwarded to SAGA.

21.  The Agreement did not convey any license, either during the Term of the Agreement or thereafter, to Consist to copy or use SAG's Software Products for its own business.

22.   Upon the expiration of the Agreement on December 31, 2007, Consist no longer has the right under Paragraph 2 of the Agreement to enter into customer agreements in the Territory for licensing, installing, technical assistance, training and maintenance of the SAG Software Products.

23.   Upon the expiration of the Agreement on December 31, 2007, Consist no longer has the right under Paragraph 3 of the Agreement to grant perpetual or time-limited licenses or maintenance agreements related to SAG Software Products.

24.   Upon the expiration of the Agreement on December 31, 2007, Consist no longer has the right to receive and SAGA is no longer obligated to provide: (i) training; (ii) 10 copies of the latest version of the SAG Software Products; (iii) 10 copies of SAG Software Products' documentation; and (iv) prompt error correction for the SAG Software Products on any queries forwarded to SAGA.

25.   Upon the expiration of the Agreement on December 31, 2007, Consist no longer has the right to use, in any manner whatsoever, the SAG Software Products.

26.   Moreover, because Consist stipulated to a dismissal with prejudice of its claims (i) for a preliminary injunction enjoining the termination of its distributorship under the Agreement, and (ii) for specific performance to compel Software AG to continue performing under the Agreement after January 1, 2008, Consist cannot ever recapture or reinstate the distributorship in the Territory for SAG Software Products.

27.   Notwithstanding the Final Judgment adjudicating that the Agreement expired, Defendants have been disrupting and spoiling the market in Consist's former Territory by incorrectly representing, as more fully stated in the following paragraphs, that Consist continues to have rights that it had under the Agreement.

28.  Since the Final Judgment entered December 21, 2007, Defendants have made several representations through the Consist website and to customers concerning the status of the Agreement, the Court case, the position of Consist now that the Agreement has expired and Consist's supposed continuing rights under the Agreement to provide "Software Maintenance Agreements" to end-users of SAG Software Products.

29.  Contrary to Defendants' statements published on the Consist web site, and those set forth in January 10, 2008 email and a January 14, 2008 letter from Fridman to Karl-Heinz Streibich the CEO of SAG, as well as those made directly to its customers, Consist no longer has the ability, rights nor the authorization from Software AG to offer "Software Maintenance Agreements" to end-users of SAG Systems i.e., agreements including Level 1 Support, Level 2 Support, Level 3 Support, or New Software Releases.

30.  Software AG's software maintenance agreements provide to customers one or more of the following:  (1) Level 1 Support; (2) Level 2 Support; (3) Level 3 Support; (4) System Maintenance Releases; (5) New Software Releases; and (6) New Software Versions.

31.  Level 1 Support includes responding to basic telephone and on-line customer questions pertaining to the use of the current version of the respective software or responding to customer questions pertaining to documentation issues on the use of the software by logging those documentation issues and referring the customer to Level 2 Support as appropriate.  Both Software AG and its distributors can offer this support.

32.  Level 2 Support includes telephone and on-line support provided by a "Software Specialist", a person who has more expertise in the *use* of the software than does the person who provides the Level 1 Support.  The Software Specialist analyzes the

problem and, if he identifies a "bug" in the software, the Software Specialist can access a secure, on-line support database that Software AG maintains to determine whether the "bug" is already known and, if it is, whether SAG has already solved that problem. Only authorized parties, including SAG's partners and customers, have access to SAG's on-line support database. If the Software Specialist cannot locate the "bug" or "patch" (a software solution) in SAG's on-line support database, the customer is then elevated to Level 3 Support.

33. Prior to January 1, 2008 Consist had access to SAG's on-line support database and employed Software Specialists who, with the aid of the on-line support database could provide Level 2 Support to Consist's customers.

34. However, since January 1, 2008, as a former distributor, Consist no longer has access to our on-line database and therefore cannot legitimately offer Level 2 Support.

35. Level 3 Support is the most technical and sophisticated software support that SAG offers. It requires access to the source code for SAG Software Products. A software developer studies the source code to determine the cause of the customer's problem and then codes a "patch" to fix that problem . Assuming that the "patch" solves the customer's problem, the "patch" may be released to all parties entitled to the patch in accordance with the party's maintenance agreement. It may also be uploaded into SAG's on-line support database.

36. Since Consist does not have, and indeed never had, access to the source code for SAG Software Products, Consist cannot and never could provide Level 3 Support without seeking Software AG's assistance.

37. System Maintenance Releases include periodic consolidation of "patches", *i.e.*,

batches of "patches", distributed to our partners and customers and subsequent modifications of the software.   New Software Releases include "dot releases" that either provide a consolidation of System Maintenance Releases, enhancements to the functionality of the current version of the software or a combination of both, *e.g.*, version 7.1 replacing version 7.0.  New Software Versions include major version releases that provide new substantial functionality and extended capabilities to the current version of the software, *e.g.*, Windows Vista replacing Windows XP.

38.   Here again, as a former distributor, Consist does not have any access to SAG System Maintenance Releases, New Software Releases or New Software Versions and thus is totally unable to deliver these maintenance products to end-users of SAG Software Products.

39.   Thus, contrary to Defendants' statements published on the Consist web site, and those set forth in correspondence from Fridman to Software AG, as well as those made directly to its customers, at least since January 1, 2008 Consist does not have the ability, rights, or Software AG's authorization to offer "Software Maintenance Agreements" to end-users of SAG Software Products that include Level 2 Support, Level 3 Support, System Maintenance Releases, New Software Releases, or New Software Versions.

40.   And of course at least since January 1, 2008 Consist does not have the right to claim or imply that it has Software AG's authorization to offer "Software Maintenance Agreements" to end-users of SAG Software Products that provide Level 2 and Level 3 Support.

## Defendants' Wrongful Post-Expiration Conduct

### *Notice #1*

41.  Defendants published a letter to their customers, signed by Fridman, on Consist's Brazilian web site entitled "Clarification Notice From Consist" ("Notice #1").  A duly certified translation of Notice #1 is attached as Exhibit 5.

42.  In Notice #1 Fridman states, inter alia, that Consist will seek an appeal of the Final Judgment "with retroactive validity to January of 2008, thus giving uninterrupted continuity to that successful relationship of more than 33 years". See id.

43.  Fridman's statement to the effect that Consist will obtain through an appeal "retroactive" to January 2008 "continuity" with regard to the Agreement is demonstrably false based on Consist's stipulation to abandon with prejudice its claim to enjoin termination of its distributorship in The First Litigation.

44.  Notice #1 also contains a representation that "such licenses and services" granted by Consist to its clients on a perpetual basis "are to continue unaffected" and "will not be interrupted" and "will be maintained". *See id.*

45.  Since Consist no longer has the right to grant updates, it is not true that "updates granted by Consist...shall remain unaffected" after The First Litigation.

46.  Finally, in Notice #1 Fridman asserts that Consist will be able to "maintain the continuity of the current contract for exclusive distribution of Software AG's software starting from January 1, 2008." *See id.*

47.  Since Consist stipulated to abandon with prejudice its claim to enjoin termination of its distributorship in The First Litigation, and its claim for specific performance to compel Software AG to perform under the Agreement after December 31,

2007, there is no set of circumstances after The First Litigation in which the foregoing statement could be true.

*Notice #2*

48.   Fridman posted a second notice on the Consist website ("Notice #2").  In Notice #2 Fridman promises that the continuity of "Technical Updates" of Software AG products will be "fully accomplished" *i.e.*, provided by Consist.  A duly certified translation of Notice #2 is attached as Exhibit 6.

*49.*   Fridman further states in Notice #2 that Paragraph 3 of the Agreement authorized Consist to grant use licenses and technical updates in perpetuity.  *See id.*

**Unauthorized Maintenance Contracts**

50.   Since the December 17, 2007 Verdict upon information and belief Consist has also executed an unknown number of agreements with end-users of SAG Software Products that post-date the expiration of the Agreement and promise those end-users that Consist will provide various maintenance services for a hefty monthly fee.

51.   Consist entered into two such maintenance service agreements on December 28, 2007, just days before its exclusive distributorship expired, with Companhia De Processamento De Dados Do Estado De Sao Paulo ("PRODESP") .  Certified translation of those agreements are attached as Exhibit 7.

52.   In the PRODESP agreement, Section 5, Warranty of Technical Updating, and in particular Sections 5.1.2.1 and 10.1, in return for a monthly maintenance payment of 140,076 Reals (US $ 80,853) Consist agrees to provide PRODESP new versions of 8 of Software AG's computer programs, ADABAS and NATURAL for the next two years..

53.   In the PRODESP agreements, Section 7.1.5, Consist misrepresents that Consist

has all right, title and interest in those 8 Software AG computer programs.

54.  Software AG is informed that Defendants are directly making to customers in addition to PRODESP the same or similar misrepresentations regarding their ability to furnish maintenance services for SAG Software Products that they published on the Consist website and entering into contracts with customers to provide maintenance services for SAG Software Products similar to those that it entered into with PRODESP.

55.  A SAG sales representative, who visited PRODESP after January 1, 2008, informed SAG that PRODESP is confused by Consist's representations to it regarding the alleged ongoing rights Consist supposedly has.  Furthermore, PRODESP informed SAG that it will not pay Consist if it becomes convinced that Consist does not have the ability to provide full maintenance.  Thus PRODESP will likely have to enter into a maintenance agreement with Software AG.

***Consist's Demands Software AG Provide New Product Versions, etc.***

56.  Contrary to the representations in Notice #1 and #2 and the PRODESP agreements Consist does not possess or have any longer access to the necessary information and products, including source code, product versions, updates, upgrades and fixes, updated associated materials and training, and revisions to provide maintenance, updates, and licenses to its customers.

57.  Accordingly, on January 10, 2008 Fridman sent an email to Software AG demanding that Software AG provide Consist all new products:

> I refer to the Distribution Agreement between SAGA and Consist
> International, Inc. effective as of January 1, 1998. Paragraph 2 of that
> Agreement authorized Consist to enter into customer agreements in its
> Territory for  licensing, installing, technical assistance, training and
> maintenance of Software AG Systems. Paragraph 3 of the Agreement
> states that, for the right to grant "perpetual or time-limited licenses, and/or

maintenance agreements" Consist was required to make specified payments. All of those payments have been made.

In order for Consist to fulfill agreements it has with customers for perpetual maintenance, as was expressly permitted by Paragraph 3, Consist requires confirmation from Software AG that Software AG will continue to provide Consist with all new product versions, updates, upgrades and fixes to products, together with all associated materials and training, promptly upon release.

I would appreciate receiving confirmation of Software AG's intention to honor its commitment to Consist as soon as possible, as enormous harm could be caused to Consist's customers and Consist itself should Software AG fail to perform.

A copy of the Jan. 10, 2008 email is attached as Exhibit 8.

58.  Upon information and belief Defendants are directly making to customers in addition to PRODESP the same or similar misrepresentations regarding its ability to furnish maintenance service for SAG Software Products that they published on the Consist web site and entering into contracts with customers to provide maintenance services for SAG Software Products similar to those that it entered into with PRODESP.

### The January 14, 2008 Letter from Fridman to Streibich

59.  In letter attached to an email dated January 14, 2008 and sent to Karl-Heinz Streibich the CEO of SAG, Fridman once again repeats that "Paragraph 2 of the agreement authorized Consist to enter into customer agreements in its territory for licensing, installing, technical assistance and maintenance of Software AG Systems.  Paragraph 3 of the agreement states that for the right to grant 'perpetual or time-limited licenses, and/or maintenance agreements' Consist was required to make specified payments.  All of those payments have been made."  A copy of the January 14 Letter is attached as Exhibit 9.

60.  In the January 14 letter Fridman further asserts that "As permitted pursuant to the Distribution Agreement, Consist entered into agreements with customers that obligate

Consist to provide maintenance of Software AG products beyond December 31, 2007."

61.   However, the Agreement nowhere grants Consist the right to grant perpetual maintenance agreements or maintenance agreements that bind Software AG to perform after the Term ends.

62.   The misrepresentations and actions taken by Defendants are causing confusion among customers of SAG Software Products in the Territory.

**Software AG Intellectual Property**

63.   During the course of The First Litigation Plaintiffs learned for the first time that Consist had registered in Brazil the trademarks for ADABAS and NATURAL (the "SAG Trademarks"), which are, respectively, SAG's trademarks for its database and proprietary programming language.

64.   The SAG Trademarks are owned by SAG and at no time did SAG transfer or assign the rights to those marks to Consist.

65.   Paragraph 5 of the Agreement sets forth Consist's obligations when the Agreement was in force.  Paragraph 5(1) provides:

> CONSIST agrees to take all necessary and reasonable measures to ensure that the proprietary nature and integrity of the SYSTEMS are safeguarded against unauthorized use, duplication or modification.

66.   As noted above the "SYSTEMS" include SAG software packages and Special Products in Annexes A and B to the Agreement.

67.   Consist did not obtain the source code to the SYSTEMS in the Agreement. Consist was only allowed to reproduce the SYSTEMS documentation and Manuals for use in the Territory during the Term.

68.   Consist did not obtain the ownership or rights in the copyrights or trademarks in SAG's software products under the Agreement.

14

69. To the contrary Consist agreed to protect SAG's intellectual property.

Paragraph 5(1) further provides:

> CONSIST has the right to reproduce and as necessary, translate SYSTEMS documentation, Manuals, etc. for use in the TERRITORY. Written material used by CONSIST for marketing or support to users of the SYSTEMS *will refer to authorship of SAGA and will show copyright and trademark of SAGA.*
>
> CONSIST acknowledges the SYSTEMS and all documentation or information as trade secrets of SAGA and undertakes to oblige its personnel to protect the SYSTEMS as well as their copyrights and trademarks and to prevent them from unauthorized use.
>
> CONSIST agrees to refrain from implementing, or permitting the implementation of any modification to the SYSTEMS without written notice to SAGA.

(Emphasis Added)

70. Based on the above-cited provisions of the Agreement Consist did not take ownership of the Software AG intellectual property during the Term.

71. Software AG asked that Consist assign back to them the trademarks for ADABAS and NATURAL and Consist has refused to effectuate such an assignment.

## IRREPARABLE HARM

72. The harm that Software AG is suffering and will continue to suffer as a result of Defendants' false misrepresentations cannot fully be quantified by money damages.

73. Defendants' actions are jeopardizing and will jeopardize Software AG's relationships with customers and prospective customers of SAG Software Products. As a result, Software AG stands to lose a significant portion of their potential customer base and future business from the customers that SAG does obtain.

74. Also as a result of Defendants' misconduct Software AG is faced with the potential for massive confusion in the marketplace. Customers are being misled regarding the nature of Consist's and Software AG's respective business in the Territory.

75.   Software AG's business is likely to be materially and adversely altered in this crucial time period as Software AG is just entering the Territory, all as a result of Defendants' conduct.

76.   As a result of Defendants' misrepresentations Software AG stands to lose its business reputation, along with the goodwill associated with its software products.

77.   For all of the reasons set forth above the irreparable injury faced by Software AG is a direct result of Defendants' misconduct.

## The Balance of Equities Tips in Software AG's Favor

78.   The harm Software AG faces is immediate, ongoing and likely to be felt for years to come, both financially and to its reputation in the marketplace, and its reliability with customers.

79.   By contrast, Defendants will suffer no harm whatsoever in being forced to abide by the Final Judgment and to refrain from making further representations to customers that are demonstrably false.

80.   Indeed, Defendants have no basis to complain.  They had over two and one-years to prepare for the expiration of their exclusive distributorship.  Rather than preparing to end the distribution of SAG Software Products and maintenance therefore, Defendants have wrongfully represented that they have rights that this court adjudicated that they did not have and entered into contracts to render services and updates to which they do not have access.

## COUNT I—DECLARATORY JUDGMENT

81.   Software AG alleges each of the foregoing paragraphs as though fully set forth herein.

82.   By reason of the foregoing a real and actual controversy exists between Software AG and Defendants and Software AG is entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201, that after the expiration of the Agreement, and as of January 1, 2008:

> (i) Consist is no longer authorized under Paragraph 2 of the Agreement to continue offering licenses, installations, technical assistance, training or maintenance to end-users of SAG Software Products, including but not limited to, offering software updates on those licenses granted by Consist during the Term;

> (ii) Consist is no longer authorized under Paragraph 3 of the Agreement to continue offering services under maintenance agreements with end-users of SAG Software Products, including but not limited to, offering end-users further updates to SAG Software Products for licenses granted by Consist during the Term;

> (iii) Consist is no longer authorized under Paragraph 4 of the Agreement to receive from SAGA (a) training; (b) copies of the latest versions of the SAG Software Products; (c) copies of SAG Software Products documentation; and (d) error correction for the SAG Software Products forwarded to SAGA by Consist;

> (iv) Consist may not use in any manner whatsoever the SAG Software Products; and

> (v) Software AG is not required to provide to Consist updates, upgrades and fixes to products, together with all associated materials and training, of the SAG Software Products for licenses or maintenance agreements granted by Consist during the Term.

## COUNT II: FALSE ADVERTISING
## 15 U.S.C. § 1125 (a), Lanham Act §43(a)

83.   Software AG alleges each of the foregoing paragraphs as though fully set forth herein.

84.   Defendants' have issued statements in violation of Section 43(a) of the

Lanham Act, 15 U.S.C. § 1125(a)(1), that are literally and demonstrably false, including Defendants' misrepresentations that they are able to reinstate the Agreement, can continue to provide maintenance in perpetuity for SAG Software Products, and can provide technical updates to the SAG Software Products uninterrupted by the expiration of the Agreement.

85.   In addition, Defendants have made false and misleading descriptions and representations of fact in commerce which are likely to cause confusion or mistake, or to deceive the relevant purchasing public.

86.   Defendants false and misleading representations were made in commerce, have a substantial effect on U.S. commerce and were made relating to an Agreement negotiated in New York, between two U.S. companies that is expressly governed by New York law.

87.   Plaintiffs have been, and will continue to be, irreparably harmed as a result of the Defendants' unlawful actions unless the Defendants are temporarily, preliminarily and permanently enjoined from their unlawful conduct.  Plaintiffs have no adequate remedy at law.

88.   As a direct and proximate cause of Defendants' misrepresentations Software AG has been damaged in an amount not yet known, but believed to be in excess of $75,000, and at Software AG's option, statutory damages pursuant to 15 U.S.C. § 1117.

89.   As this is an exceptional case given the Defendants' willful acts, pursuant to 15 U.S.C. § 1117(a), Plaintiffs are further entitled to three times the amount of the above profits or damages, whichever is greater, and attorneys' fees, or, at Plaintiffs' election, they may seek to recover enhanced statutory damages pursuant to 15 U.S.C. § 1117(c).

## COUNT III:

## TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

90.   Software AG alleges each of the foregoing paragraphs as though fully set forth herein.

91.   Defendants have interfered with prospective business relations between Plaintiffs and PRODESP and other unknown parties by dishonest, unfair or improper means.

92.   On or about December 28, 2007, Defendants entered into a contract with PRODESP (Exhibit 7) in which Defendants agree to provide ongoing maintenance services on SAG Software Products that post-date the expiration of the Agreement and relate to SAG Software Products for a monthly fee paid to Consist by PRODESP.

93.   Defendants represented to PRODESP that they had the rights, authority and ability to honor the maintenance agreement with PRODESP, when in fact they had no such rights, authority or ability.

94.   Defendants intended to interfere with Plaintiffs' relations to advance their own competing interests by fraudulent means.

95.   Defendants' means were wrongful and included misrepresentations made for the purpose of interfering with Plaintiffs' lawful rights.

96.   Plaintiffs have been, and will continue to be damaged by Defendants' wrongful conduct.  Moreover, Plaintiffs are also being irreparably harmed by Defendants' conduct and they have no adequate remedy at law.

97.   By reason of the foregoing, Plaintiffs are entitled to an injunction enjoining Defendants' and all those acting in concert with them, from continuing to make these or

any further misrepresentations.

98.   Plaintiffs are also entitled to damages in an amount not yet determined, but believed to be in excess of $75,000.

## COUNT IV: UNFAIR COMPETITION

99.     Software AG alleges each of the foregoing paragraphs as though fully set forth herein.

100.    Defendants have made bad faith representations in public, to customers and on their website.

101.    Defendants' representations are likely to cause confusion or deceive the public as to the origin or sponsorship of goods or services.

102.    Plaintiffs have no adequate remedy at law and have been irreparably harmed by Defendants' actions.

103.    By reason of the foregoing, Plaintiffs are entitled to an injunction enjoining Defendants' and all those acting in concert with them, from continuing to make these or any further misrepresentations.

104.    Plaintiffs are also entitled to damages in an amount not yet determined, but believed to be in excess of $75,000.

## COUNT V: False Advertising Under NY Gen. Bus. Law § 349

105.    Software AG alleges each of the foregoing paragraphs as though fully set forth herein.

106.    Defendants have made false and deceptive statements to customers and on their internet web site.

107.    Defendants made those statements in the conduct of their business and in

the furnishing of services that they had no rights, authority or ability to furnish.

108.     Defendants intentionally made the statements knowing they were false and deceptive and the false statements harm the consuming public.

109.     The public interest in New York is affected by Defendants' false and deceptive statements because they were made pursuant to an Agreement governed by New York law, with a New York-based company and directed by a New York resident.

110.     By reason of the foregoing, Plaintiffs are entitled to an injunction enjoining Defendants' and all those acting in concert with them, from continuing to make these or any further false and deceptive statements.

111. Plaintiffs are also entitled to damages in an amount not yet determined, but believed to be in excess of $75,000.

## COUNT VI: RETURN OF SOFTWARE AG'S INTELLECTUAL PROPERTY

112.     Software AG alleges each of the foregoing paragraphs as though fully set forth herein.

113.     Software AG is, and always has been the owner of all intellectual property rights in the SAG Software Products, including both trademarks and copyrights related to those products.

114.     Software AG did not assign the marks, grant a license to copy the software, or transfer any of the goodwill in the trademarks to Consist in the Agreement.

115.     Pursuant to the Agreement Consist only had the right to use the trademarks during the Term while the marks and reversionary interest in the marks remained at all times with Software AG.

116.     As a result of the foregoing whatever rights Consist had in Software AG's

intellectual property ceased when the Agreement expired, *i.e.*, on December 31, 2007.

117.    Consist has refused to assign the trademarks ADABAS and NATURAL back to Software AG now that the Agreement has expired.

118.    The foregoing acts have caused and, unless the court orders Defendants to return the trademarks ADABAS and NATURAL to Software AG, Defendants will continue to cause irreparable damage loss and injury to Software AG for which Software AG has no adequate remedy at law.

119.    By reason of the foregoing, Plaintiffs are entitled to an injunction enjoining Defendants' and all those acting in concert with them, from continuing to hold onto the ADABAS and NATURAL trademarks, or any other intellectual property owned by Software AG.

120.    Plaintiffs are also entitled to damages in an amount not yet determined, but believed to be in excess of $75,000.

## COUNT VII: BREACH OF COVENANT
## OF GOOD FAITH AND FAIR DEALING

121.    Software AG alleges each of the foregoing paragraphs as though fully set forth herein.

122.    Defendants owe Software AG duties under an implied covenant of good faith and fair dealing in connection with the Agreement.

123.    The court, in The First Litigation, issued a Verdict in Software AG's favor on December 17, 2007 deciding, inter alia, that the parties rights and obligations under the Agreement expired as of December 31, 2007.

124.    Defendants after December 17, 2007 communicated with customers and entered into agreements with end-users of SAG Software Products for maintenance of the

SAG Software Products after the expiration of the Agreement.

125.    When Defendants entered into these Software Maintenance Agreements with customers promising to provide services and maintenance of the SAG Software Products after the expiration of the Term, Defendants knew that their rights and obligations expired as of December 31, 2007 based on the December 17 Verdict.

126.    Nonetheless Defendants entered into numerous customer maintenance agreements for SAG Software Products for services that long post-date the expiration of the Agreement.

127.    Defendants' actions in representing to customers that they had ongoing rights under the Agreement and in entering into long-term post-expiration of the Agreement Software Maintenance Agreements with end-users of SAG Software Products violated their duties of good faith and fair dealing in connection with the Agreement.

128.    Defendants' conduct has caused and will cause substantial and irreparable harm to Software AG which cannot be quantified by money damages alone.

129.    By reason of the foregoing, Plaintiffs are entitled to an injunction enjoining Defendants' and all those acting in concert with them, from continuing to make these or any further misrepresentations.

130.    Plaintiffs are also entitled to damages in an amount not yet determined, but believed to be in excess of $75,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek relief and demand judgment against Defendants:

1. Enjoining Defendants, their employees, their agents, their attorneys and all others acting in concert with them from:

(i) Representing or implying that Consist has continuing rights pursuant to the Agreement or that Defendants' rights under the Agreement may be or will be reinstated;

(ii) Offering or representing that Defendants can provide Level 2 Support, Level 3 Support, System Maintenance Releases; New Software Releases; or New Software Versions;

(iii) Representing, promoting, advertising, or implying that Plaintiffs have authorized or otherwise falsely designating that Plaintiffs have authorized Consist to provide maintenance services for SAG Software Products, including Level 2 Support, Level 3 Support, System Maintenance Releases; New Software Releases; or New Software Versions;

(iv) Asserting any rights in Software AG's intellectual property, including the trademarks ADABAS and NATURAL and SAG Software Products;

2. Ordering Defendants to:

(i) Assign over to Software AG the Brazilian trademark registrations for the marks NATURAL and ADABAS; and

(ii) Include in any offers, advertisements, promotions or agreements to render to customers or potential customers maintenance services for SAG Software Products in type no less prominent in face and in size than the type in which offers or statements of service are made the disclaimer that "Software AG Does Not Authorize Consist's Maintenance Services And In No Event Can Consist Provide Level 2 Support, Level 3 Support, System Maintenance Releases; New Software Releases; or New Software Versions";

3. Declaring that as of January 1, 2008:

(i) Consist is no longer authorized under Paragraph 2 of the Agreement to continue offering licenses, installations, technical assistance, training and maintenance to end-users of SAG Software Products, including but not limited to, offering software updates on those license granted by Consist during the Term;

(ii) Consist is no longer authorized under Paragraph 3 of the Agreement to continue offering services under maintenance agreements with end-users of SAG Software Products, including but not limited to, offering end-users further updates to SAG Software Products for licenses granted by Consist during the Term;

(iv) Consist is no longer authorized under Paragraph 4 of the Agreement to receive from SAGA (a) training; (b) copies of the latest versions of the SAG Software Products; (c) copies of SAG Software Products documentation; and (d) error correction for the SAG Software Products forwarded to SAGA by Consist;

(v) Consist may no longer use, in any manner whatsoever, the SAG Software Products; and

(vi) Software AG is not required to provide to Consist updates, upgrades and fixes to products, together with all associated materials and training, of the SAG Software Products for licenses or maintenance agreements granted by Consist during the Term.

4. Awarding Software AG compensatory damages against Defendants in an amount to be proven at trial;

5. Awarding Software AG enhanced damages under the Lanham Act, and attorneys' fees and costs; and

6. Awarding Plaintiffs their costs, interest, attorneys' fees and such other and further relief as the Court shall deem just and proper.

Dated: New York, New York
January 15, 2008

Respectfully submitted,

By:_____
James David Jacobs
Frank M. Gasparo
Marcella Ballard
BAKER & McKENZIE LLP
1114 Avenue of the Americas
New York, NY 10036
Attorneys for Plaintiffs
Software AG, Inc. and
Software AG

Exhibit 1

## DISTRIBUTORSHIP AGREEMENT

THIS AGREEMENT with the effective date of 1st day of January 1998.

between      SOFTWARE AG AMERICAS, INC.
11190 Sunrise Valley Drive
Reston, VA  22091 USA

             (hereinafter called "SAGA")

and         CONSIST INTERNATIONAL, INC.
10 East 53rd Street
27th Floor
New York, NY  10022

             (hereinafter called "CONSIST," which term shall include all CONSIST
subsidiaries and affiliates)

             WITNESSETH,

WHEREAS, SAGA is the exclusive distributor of certain software packages in the Territory, as set forth in Annex A herein "SAGA Products," being updated from time to time, and offers certain products, as set forth in Annex B, for which SAGA pays royalties herein "SPECIAL PRODUCTS," being updated from time to time both of which are collectively referred to herein as "SYSTEMS".

and

WHEREAS, CONSIST wants to market the SYSTEMS and to provide assistance to users of the SYSTEMS in Argentina, Brazil, Chile, Bolivia, Paraguay, Uruguay, and Peru, hereinafter called the "TERRITORY."

Now therefore, the parties hereto agree as follows:

Paragraph 1

SAGA appoints CONSIST the exclusive distributor of the SYSTEMS in the TERRITORY for the period of January 1, 1998 through December 31, 2007.  The parties understand and agree that at the end of the first ten (10) year period of this Agreement, this Agreement shall automatically renew for successive five (5) year periods, unless either party shall decide to terminate this Agreement upon the giving of eighteen (18) months prior written notice to the other party.

9/9/97 4:10 PM

**Paragraph 2**

SAGA hereby authorizes CONSIST to enter into customer agreements in the TERRITORY for licensing, installing, technical assistance, training and maintenance of the SYSTEMS.

However, CONSIST is only authorized to give non-transferable use-licenses for SYSTEMS to customers. Giving any form of sublicense or distribution rights, such as a direct or indirect OEM arrangements, to any third party will require the prior written consent of SAGA.

Contracts for installations of the SYSTEMS outside the TERRITORY shall require the prior written consent of SAGA.

**Paragraph 3**

For the right to grant perpetual or time-limited licenses, and/or maintenance agreements, CONSIST agrees to make payments to SAGA as provided in Exhibit A hereto.

Payments will be made within ten (10) days of the end of each quarter.

Any quarterly payment not received within the due date period above mentioned, shall bear interest at a rate of 3% p.a. above the prime commercial rate of Citibank in effect at that time.

SAGA will provide invoices to CONSIST for all payments made by CONSIST.

**Paragraph 4**

SAGA agrees at no additional costs to provide the following services to CONSIST:

1. Training in public classes held by SAGA for CONSIST staff (up to 5 persons) per class;

2. Ten (10) copies of the latest version of the SYSTEMS stored on magnetic tape;

3. Ten (10) copies of complete sets of SYSTEMS documentation in English, including Reference Manuals and Utilities Manuals.

4. Prompt correction or any errors in the SYSTEMS detected at the user's site and forwarded to SAGA.

9/9/97 4:10 PM
2

**Paragraph 5**

(1)     CONSIST agrees to take all necessary and reasonable measures to ensure that the proprietary nature and integrity of the SYSTEMS are safeguarded against unauthorized use, duplication or modification.

CONSIST has the right to reproduce and, as necessary, translate SYSTEMS, documentation, Manuals, etc. for use in the TERRITORY. Written material used by CONSIST for marketing or support to users of the SYSTEMS will refer to authorship of SAGA and will show copyright and trademark of SAGA.

CONSIST acknowledges the SYSTEMS and all documentation or information as trade secrets of SAGA and undertakes to oblige its personnel to protect the SYSTEMS as well as their copyrights and trademarks and to prevent them from unauthorized use.

CONSIST agrees to refrain from implementing, or permitting the implementation of any modification to the SYSTEMS without the written notice to SAGA.

(2)     CONSIST agrees to refrain from installing the SYSTEMS at a user's site without having obtained a written agreement from the user calling for safeguarding of the proprietary nature of the SYSTEMS. Such written agreement must be either a right of use license agreement, or a non-disclosure agreement for demonstration.

(3)     CONSIST agrees to make all reasonable efforts to successfully market the SYSTEMS in the TERRITORY.

CONSIST shall, at its expense, provide SAGA with a written quarterly report of all installations and de-installations of the Special Products contained on Annex B in the TERRITORY, made in the quarter, including product name, operating system, hardware class or machine type, customer name, customer address, and installation/de-installation date. All installations will be considered perpetual licenses unless later reported as de-installed.

Within sixty (60) days of the execution of the Amendment, the parties will meet and specify the format of the required quarterly reports. Both parties understand and agree that the meeting and the specification of the format of the required quarterly reports are a material condition of this Agreement.

Both parties understand and agree that the required quarterly royalty reports are a material requirement of this Agreement, and that the failure of CONSIST to provide quarterly reports may be deemed by SAGA to be a material breach condition of this Agreement.

9/9/97 4:10 PM                                                              3

(4)   CONSIST agrees to be responsible for all technical assistance and support activities in the TERRITORY including maintenance services for both present and future users.  This obligation of CONSIST will continue until termination of the agreement including any extension thereof.

(5)   CONSIST shall be responsible for supplying SAGA with all pertinent information concerning any software errors and will forward promptly all documentation to SAGA with an explanation of the circumstances causing the problem and SAGA will correct any errors in the SYSTEMS.

(6)   In no case shall SAGA be held liable by CONSIST or any of CONSIST customers in the TERRITORY for any damages, indirect or consequential, derived from the use of the SYSTEMS.

(7)   SAGA shall not be held liable for any taxes arising out of the activities of CONSIST, such as sales tax, income tax, import tax, value added tax or alike.

(8)   CONSIST shall abide by all U.S. Export Administration Regulations which may apply to the SYSTEMS and their exportation and/or re-exportation.

(9)   CONSIST agrees that SAGA has the right to make multinational agreements with end-user customers which may result in installations in the TERRITORY at discounts negotiated by SAGA.  CONSIST will accept all such agreements and discounts as valid in the TERRITORY with compensation to CONSIST according to SAGA's published worldwide multinational policy.

(10)   CONSIST agrees to cooperate with SAGA in establishing international Value Added Remarketers (VARs).  The terms of specific VAR agreements will be agreed to between CONSIST and SAGA on a case-by-case basis.

(11)   CONSIST (including CONSIST and Natalio Fridman or any subsidiary or affiliated business entity) agrees not to act as agent, partner, distributor, reseller or marketing representative for any systems software products which compete with the SAGA SYSTEMS without an approval of SAGA unless the competing product is already being sold by CONSIST.  The approval of specific competitive products will be agreed to between CONSIST and SAGA on a case-by-case basis.

(12)   When requested by CONSIST, SAGA will execute the documents required by government authorities in the TERRITORY for remittance of royalties for SAGA products by the CONSIST affiliates.  All payment by CONSIST affiliates will be credited as payment under this Agreement.

Total CONSIST obligations to SAGA are solely those specified in the Agreement.

9/9/97  4:10 PM                                          4

In the case of any conflict between this Agreement and any document executed by SAGA with any CONSIST affiliate, this Agreement shall prevail.

**Paragraph 6**

None of the parties hereto shall be entitled to assign this contract without prior written consent of the other party.

**Paragraph 7**

Before any termination of this Agreement shall become effective, the terminating party shall give written notice to the other party describing in detail what material conditions the other party has failed to perform, and the other party shall have sixty (60) days in which to perform such conditions.

**Paragraph 8**

All legal notices hereunder shall be in writing and shall be deemed properly delivered and effective when duly sent by Certified Mail, Postage Prepaid, telex or cable, or delivered by hand:

    to CONSIST at:      CONSIST INTERNATIONAL, INC.
                        10 East 53rd Street
                        27th Floor
                        New York, NY  10022
                        Attn:  Mr. Natalio S. Fridman

    and to SAGA at:      SOFTWARE AG AMERICAS, INC.
                        11190 Sunrise Valley Drive
                        Reston, Virginia 20191
                        Attn:  International Operations

or to such other address as the receiving party may by written notice designate to the other.  All operational correspondence and quarterly reports (technical assistance, sales and marketing support) will be directed to the SAGA address shown above.

**Paragraph 9**

This Agreement, including Annexes and Exhibits, constitutes the entire Agreement between the parties; and supersedes and merges all previous communications, representations or agreements, either written or orally, with respect to the subject matter hereof, so that this Agreement may only be changed or modified by another Agreement signed by the parties hereto.

9/9/97  4:10 PM                          5

Paragraph 10

This contract shall be subject to, and interpreted in accordance with, the laws of the State of New York, USA without regard to the New York provisions governing conflict of laws. SAGA agrees to defend or at its option settle any claim, suit or proceeding brought against CONSIST from the third parties for patent or copyright infringement and indemnify CONSIST against any claims for infringement of any patent or copyright by the SYSTEMS. CONSIST will promptly notify SAGA in writing of any such claims, suits or proceedings and give SAGA full information and assistance to settle and/or exclusive of any judicial and administrative awards, incurred without SAGA's written authorization.

Paragraph 11

CONSIST agrees to indemnify SAGA from any liability that may be incurred by SAGA because CONSIST either overstated the performance of any SYSTEMS or part thereof, or failed to exercise the due care to resolve any problems of which CONSIST was notified by SAGA and/or any end-user.

Agreement Accepted:
SOFTWARE AG AMERICAS, INC.

By: _____

Name: _JAMES A. DALY_

Title: _V.P. - International Ops._

Date: _9/9/97_

Agreement Accepted:
CONSIST INTERNATIONAL, INC.

By: _____

Name: _Natalio Fridman_

Title: _President_

Date: _____

9/9/97  4:10 PM                                        6

ANNEX A

1.    All the system software packages offered for distribution by Software AG of Darmstadt, Germany and SAGA, including their subsidiaries and affiliates now and in the future including, but not limited to, those shown on the attached list, and to include BOLERO and ODYSSEY.  SAGA is the perpetual, exclusive distributor in the TERRITORY for all the products of Software AG of Darmstadt, Germany.

2.    All application packages, except for PRODIS, are excluded from this agreement.

3.    The SAGA Year2000 Toolkit is not included in this Agreement.   The parties understand and agree that it is the subject of a separate Agreement.

9/17/97                                                    7

ANNEX B

Special Products are those products listed below, and any additions to this list, as made by SAGA, from time to time. Additions may include new products or new versions or releases of existing Special Products. For new Special Products which require that royalties be paid to third-parties, CONSIST will reimburse SAGA for all costs associated payable to the thirds party with respect to all such Special Products.

1.   ESPERANT

2.   PASSPORT

## EXHIBIT A

1.     CONSIST agrees to pay SAGA a fixed cash lump sum payment quarterly according to the following table using the annual increase/decrease in the Audited SAGA Product/License Revenue as the basis for the adjustment to the quarterly fixed cash lump sum payment made by CONSIST to SAGA. In any year the maximum increase or decrease will be no greater than twenty percent (20%); however, in any year in which one or more products have been specifically declined by CONSIST (as per paragraph 2) then the maximum decrease will be ten percent (10%).

### ANNUAL ADJUSTMENT TABLE BASED ON INCREASE/DECREASE IN SAGA PRODUCT/LICENSE REVENUE

| Change       to CONSIST Annual Royalty | Annual   %   Change   in SAGA Product/License Revenue |
|---|---|
| Not to go below 10% or 20% Annually (See Paragraph 1) | |
| Decrease to -10% | Actual % Decrease |
| 0 | 0 |
| Up to 20% Increase | Actual % Increase |
| Not to exceed 20% Annually | |

2.     The baseline SAGA Product List will be the SAGA Product List in effect as of December 31, 1997. Any new SAGA Products developed or acquired over the term of this Agreement shall be added to the SAGA Product List unless specifically declined in writing by CONSIST, and the quarterly fixed cash lump sum payments will be adjusted as appropriate. Appropriate adjustments will be made for acquisition of entities by SAGA which effect this calculation and such adjustments will be mutually agreed upon by both parties.

3.     The Baseline Year is established at an annual royalty of $7,500,000. (US DOLLARS), cash only, with no credit for tax receipts. All transfers of cash payments to take place within the United States of America. When a separate agreement is entered into between CONSIST and SAGA for the Year 2000 Toolkit, CONSIST will receive a one-time credit of $500,000 towards any amounts due from CONSIST to SAGA under such Year 2000 Toolkit agreement.

4.     Payments must be made quarterly, by the 10th day at the end of each quarter. The payments shall commence on January 1, 1998.

5.     The new royalty calculation for each year of the Agreement will be presented to CONSIST at the completion of the SAGA Annual Audit, which is scheduled for completion in April of each year (unless otherwise amended by SAGA). Until the calculation is completed, CONSIST will make the first quarterly payment using the prior year's quarterly payment schedule. The parties agree to reconcile the payments, by adjusting the amounts proportionally over the remaining three quarters of that year.

9/9/97 4:10 PM                                    9

Exhibit 2

Case 1:08-cv-00389-CM   Document 1   Filed 01/15/08   Page 37 of 38
10/31/2007 11:58 FAX  1212 626 4120     BAKER & McKENZIE                              ☑003/004
Case 1:07-cv-07047-CM     Document 34    Filed 10/31/2007    Page 1 of 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CONSIST SOFTWARE SOLUTIONS,
INC. f/k/a CONSIST INTERNATIONAL,
INC.,

                          Plaintiff,

          -against-

SOFTWARE AG, INC. and SOFTWARE
AG,

                          Defendants;

AND RELATED COUNTERCLAIMS

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __1: |31|07__

Case No. 07-7047 (CM)(FM)

**STIPULATION REGARDING CONDUCT OF
DECEMBER 12, 2007 BENCH TRIAL**

Plaintiff Consist Software Solutions, Inc. formerly known as Consist International, Inc.

("Consist") and defendants Software AG, Inc., formerly known as Software AG Americas, Inc.

("SAGA") and Software AG ("Software AG")(defendants are collectively "SAG") stipulate as

follows:

1.    Consist and SAG each waives its right to a trial by jury of any claims triable by

jury in this action, and each agrees that all issues shall be tried by the Court without a jury.

2.    Consist dismisses with prejudice Counts I, III, IV, V, VI, VIII, IX, X, XI and XII

of its Complaint in the matter captioned above (originally filed in the Supreme Court of the State

of New York, County of New York as Index No. 602644/2007), reserving only Counts II and

VII seeking a declaratory judgment.  This Stipulation does not operate to dismiss Consist's

claims should any arise or be alleged for any breach by SAG occurring after December 31, 2007.

3.    Consist and SAG stipulate that during the time previously scheduled by the Court

for a hearing beginning December 12, 2007, they will try to the Court for binding determination

the declaratory judgment claims set forth in Consist's Complaint as Counts  II and VII, and the

declaratory judgment claims set forth in SAG's Counterclaims as Counts II and III, expressly

including SAG's claims that: a) Consist has materially breached the Agreement, and b) SAG is entitled to terminate the Agreement as a result of Consist's material breach. Notwithstanding the foregoing, Consist reserves the right to object to the October 9 and 10, 2007 letters based on timing, validity, and merits.

4.    The deadlines set forth in the Court's September 26, 2007 Scheduling Order shall apply, except that the date for designation of any experts and provision of reports is extended to November 9, 2007. The time within which to notice expert depositions is extended to November 16, 2007 and the time to conduct expert depositions is extended to November 23, 2007.

Dated: New York, NY
        October 31, 2007

DUANE MORRIS LLP

By: _____ /by permission
    Hyman L. Schaffer
    Fran M. Jacobs
    Brian Damiano
    1540 Broadway
    New York, New York 10036
    (212) 692-1000

Attorneys for Plaintiff Consist Software Solutions, Inc. f/k/a Consist International, Inc.


BAKER & McKENZIE LLP

By: _____ /by permission
    James David Jacobs
    Frank M. Gasparo
    Marcella Ballard
    John A. Basinger*
    1114 Avenue of the Americas
    New York, New York 10036
    (212) 626-4100

Attorneys for Defendant/Counter-Plaintiff Software AG, Inc. and Defendant Software AG

*admitted pro hac vice

SO ORDERED:

_____

10 - 31 - 07