DUANE MORRIS LLP
Hyman L. Schaffer
Fran M. Jacobs
Gregory P. Gulia
Brian Damiano
1540 Broadway
New York, New York 10036
(212) 692-1000
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x

SOFTWARE AG, INC. and SOFTWARE AG,

                  Plaintiffs,

      -against-

CONSIST SOFTWARE SOLUTIONS, INC.,
f/k/a CONSIST INTERNATIONAL, INC.
and NATALIO FRIDMAN,

                Defendants.

--------------------------------------------------------------------x

      08 CV 00389 (CM) (FM)


DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

SUMMARY OF ARGUMENT ....................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 1

      A.    Licenses and Maintenance Agreements ................................................ 2

      B.    Construction of Paragraph 3 .................................................................. 3

      C.    The Notices ........................................................................................... 4

      D.    Brazilian Trademarks ........................................................................... 5

ARGUMENT ............................................................................................................... 7

THIS COURT SHOULD DENY PLAINTIFFS' MOTION FOR A PRELIMINARY
      INJUNCTION........................................................................................................ 7

I.      The Legal Standard ....................................................................................... 7

II.     Software AG is Not Likely to Succeed on the Merits ................................... 8

      A.    There Is No Basis To Apply the Lanham Act Extraterritorially............. 8

      B.    The ADABAS and NATURAL Brazilian Trademarks Owned by Consist
           Brazil Must Not be Transferred .......................................................... 12

      C.    Software AG's False Advertising Claim Under Lanham Act § 43(a)
           Must Fail .............................................................................................. 16

      D.    Plaintiffs' NY Gen. Bus. Law § 349 Claim Fails Because NY Consumers
           are Not Affected.................................................................................... 18

      E.    Plaintiffs' New York Unfair Competition Law Claim Fails Because the
           Activity at Issue Occurred in Brazil..................................................... 20

      F.    Plaintiffs' Tortious Interference with Prospective Business Relations
           Claim Must Fail ................................................................................... 21

      G.    There is no Breach of the Implied Covenant of Good Faith and
           Fair Dealing ......................................................................................... 22

III.    Consist's Conduct has Not Caused Software AG Irreparable Harm ................. 24

IV.   The Balance of Hardships Favors Consist ...................................................... 24

CONCLUSION............................................................................................................ 25

# TABLE OF AUTHORITIES

## CASES

A.V. by Versace, Inc. v. Gianni Versace, S.p.A,
126 F. Supp.2d 328 (S.D.N.Y. 2001)................................................................11

Aerogroup Int'l. v. Marlboro Footworks,
955 F. Supp. 220 (S.D.N.Y. 1997) ................................................................13

Aerogroup Int'l. v. Marlboro Footworks,
956 F. Supp. 427 (S.D.N.Y. 1996) ........................................................... 20-21

Atl. Richfield Co. v. ARCO Globus Int'l. Co.,
150 F.3d 189 (2d Cir. 1998)...........................................................10, 11, 20

Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Commerce,
697 N.Y.S.2d 128 (NY App. Div. 2d Dep't 1999).......................................23

Blue Planet Software, Inc. v. Games Int'l, LLC,
331 F. Supp. 2d 273 (S.D.N.Y. 2004)................................................................16

Boule v. Hutton,
320 F. Supp. 2d 132 (S.D.N.Y. 2004)................................................................19

Brewer v. West Irondequoit Cent. Sch. Dist.,
212 F.3d 738 (2d Cir. 2000), citing Jolly, 76 F.3d at 473.............................7

C.A. Westel de Venez. v. American Tel. & Tel. Co.,
1992 U.S. Dist. LEXIS 12301 (S.D.N.Y. Aug. 17, 1992)............................20

Circle Line Sightseeing Yachts, Inc. v. Circle Line - Statue of Liberty Ferry, Inc.,
195 F. Supp. 2d 547 (S.D.N.Y. 2002).................................................................8

Citibank, N.A. v. Citytrust,
756 F.2d 273 (2d Cir. 1985)...........................................................................25

Dial A Car v. Transportation, Inc.,
884 F. Supp. 584 (D.D.C. 1995)......................................................................18

Digigan, Inc. v. Ivalidate, Inc.,
2004 U.S. Dist. LEXIS 1324 (S.D.N.Y. Feb. 3, 2004)..................................19

E. Remy Martin & Co., S.A. v. Shaw-Ross International Imports, Inc.,
756 F.2d 1525 (11th Cir. 1985) ......................................................................13

Empressa Cubana del Tabaco v. Culbro Corp.,
399 F.3d 462 (2d Cir. 2005)....................................................................................15

Ferguson v. Lion Holding, Inc.,
478 F. Supp. 2d 455 (S.D.N.Y., 2007)....................................................................23

Freedom Calls Found. v. Bukstel,
2006 U.S. Dist. LEXIS 19685 (E.D.N.Y. Mar. 3, 2006).........................................22

Global Maschinen GmbH v. Global Banking Systems, Inc.,
227 U.S.P.Q. (BNA) 862 (T.T.A.B. 1985) ..............................................................16

Goldblatt v. Englander Communs., L.L.C.,
431 F. Supp. 2d 420 (S.D.N.Y. 2006)......................................................................23

Groden v. Random House,
61 F.3d 1045 (2d Cir. 1995).....................................................................................17

Gucci Am., Inc. v. Duty Free Apparel, Ltd.,
277 F. Supp. 2d 269 (S.D.N.Y. 2003)......................................................................19

IMAF, S.P.A. v. J.C. Penney Co.,
806 F. Supp. 449 (S.D.N.Y. 1992) ..........................................................................15

ITC Ltd. v. Punchgini, Inc.,
482 F.3d 135 (2d Cir. 2007).....................................................................................13

Licata & Co. v. Goldberg,
812 F. Supp. 403 (S.D.N.Y. 1993) ..........................................................................18

M/A-Com Sec. Corp. v. Galesi,
904 F.2d 134 (2d Cir. 1990).....................................................................................23

Macphee,
2008 U.S. Dist. LEXIS 3230 (S.D.N.Y. Jan. 14, 2008)...........................................23

Major-Prodotti Dentari-Societa v. Shimer,
161 U.S.P.Q. 437 (T.T.A.B. 1968) ..........................................................................16

Medical Soc. of New York v. Toia,
560 F.2d 535 (2d Cir. 1977)......................................................................................7

Omag Optik Und Mechanik A.G. v. Weinstein
85 F. Supp. 631 (S.D.N.Y. 1949) ............................................................................16

Osawa & Co. v. B & H Photo
589 F. Supp. 1163 (S.D.N.Y. 1984).........................................................................13

Piccoli A/S v. Calvin Klein Jeanswear Co.,
19 F. Supp. 2d 157 (S.D.N.Y. 1998)................................................................10

Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc.,
511 F. Supp. 486 (S.D.N.Y. 1981) ..................................................................9

Randa Corp. v. Mulberry Thai Silk, Inc.,
2000 U.S. Dist. LEXIS 17014 (S.D.N.Y. Nov. 27, 2000)............................18

Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC,
2007 U.S. Dist. LEXIS 504 (S.D.N.Y. Jan. 8, 2007)...................................21

Securitron Magnalock Corp. v. Schnabolk,
65 F.3d 256 (2d Cir. 1995)............................................................................18

Shared Communications Services of ESR, Inc. v. Goldman Sachs & Co.,
23 A.D.3d 162, 803 N.Y.S.2d 512 (NY App. Div. 1st Dep't 2005) ...............21

Something Old, Something New, Inc. v. QVC, Inc.,
1999 U.S. Dist. LEXIS 18878 (S.D.N.Y. Dec. 7, 1999) ..............................19

Space Imaging Eur., Ltd. v. Space Imaging L.P.,
1999 U.S. Dist. LEXIS 10898 (S.D.N.Y. July 15, 1999) .............................12

Star-Kist Foods, Inc. v. P.J. Rhodes & Co.,
769 F.2d 1393 (9th Cir. 1985) .........................................................................9

Steele v. Bulova Watch Co.,
344 U.S. 280 (1952).......................................................................................11

Sybron Corp. v. Wetzel,
413 N.Y.S.2d 127 (1978)................................................................................21

TMT N. Am., Inc. v. Magic Touch GmbH,
124 F.3d 876 (7th Cir. 1997) .........................................................................16

Tactica Int'l v. Atl. Horizon Int'l,
154 F. Supp. 2d 586 (S.D.N.Y. 2001).............................................................15

Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.,
60 F.3d 27 (2d Cir. 1995).................................................................................7

Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC,
221 F. Supp. 2d 410 (S.D.N.Y. 2002)............................................................19

Totalplan Corp. of America v. Colborne,
14 F.3d 824 (2d Cir. 1994)...............................................................................9

Vanity Fair Mills v. T. Eaton Co.,
234 F.2d 633 (2d Cir. 1956)..................................................................................9

World of Residensea II, Ltd. v. Villasenor,
2007 AMC 1049 (S.D.N.Y. Mar. 21, 2007) ..........................................................7

## STATUTES

Fed. R. Civ. P. 65..................................................................................................1

Lanham Act § 43(a) ...........................................................4, 8, 9, 10, 11, 16, 17, 18, 20

New York General Business Law....................................................................4, 18, 19

## OTHER AUTHORITIES

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 29:58 (4th
Ed. 2007)..........................................................................................................10, 19

## PRELIMINARY STATEMENT

Defendants Consist Software Solutions, Inc. f/k/a Consist International, Inc. ("Consist") and Natalio Fridman ("Fridman") submit this memorandum of law in opposition to the motion of plaintiffs Software AG, Inc. and Software AG (together referred to as "Plaintiffs" or "Software AG") for a preliminary injunction pursuant to Fed. R. Civ. P. 65.

## SUMMARY OF ARGUMENT

Plaintiffs' motion is to enjoin supposedly "literally false advertising" premised upon statements made in Brazil to Brazilian customers about agreements entered into in that country and subject to Brazilian law. It also seeks a mandatory preliminary injunction claiming that Consist should transfer to Software AG certain trademarks properly registered in Brazil under the laws of Brazil some 20 years ago by a Brazilian company – which is not a party to this lawsuit or domiciled in this state. Since none of the acts Plaintiffs seek to compel or enjoin either have or would occur in New York, or would have a substantial effect here, Plaintiffs would not be entitled to the relief they seek under any circumstances. Yet, even if Plaintiffs could somehow overcome this threshold jurisdictional obstacle, they would not be entitled to preliminary injunctive relief because they have not made the requisite showing of likelihood of success on a claim to transfer Brazilian trademarks properly. Nor is there even a colorable claim of false advertising that can or should be enjoined.

## STATEMENT OF FACTS

Consist and Software AG entered into a series of agreements dating back to 1975 under which Consist was the exclusive distributor of Software AG's technology products in South America. The most recent distributorship agreement became effective on January 1, 1998 (the

1

"Agreement") and its initial term ran through December 31, 2007.[1] The prior agreement between PACS, a Consist predecessor, and Software AG that was in effect from January 1, 1984 through December 31, 1986 when the two trademarks at issue were first registered in Brazil (the "1986 Agreement") was governed by German law. (Schaffer Decl. Ex. I at ¶ 12). After the parties were unable to resolve a dispute about whether the Agreement had been renewed, Consist filed suit against Software AG (the "First Litigation"). This Court entered a judgment on December 26, 2007 based on its finding that the Agreement expired on December 31, 2007. That decision has been appealed.

A.    Licenses and Maintenance Agreements

Paragraph 2 of the Agreement set forth the scope of Consist's authority under the Agreement. It states in relevant part:

> SAGA hereby authorizes CONSIST to enter into customer agreements in the TERRITORY for licensing, installing, technical assistance, training and maintenance of the SYSTEMS.

Paragraph 3 of the Agreement gave Consist the right to grant licenses and maintenance agreements that extended beyond the term of the Agreement. It provides in relevant part:

> For the right to grant perpetual or time-limited licenses, and/or maintenance agreements, CONSIST agrees to make payments to SAGA as provided in Exhibit A hereto.

> (Emphasis added.)

Pursuant to Paragraph 3, Consist entered into both licenses and maintenance agreements with terms that extended past December 31, 2007. But, since December 31, 2007, Consist and its Brazilian affiliates, Consist Consultoria Sistemas e Representacoes Ltda. and Consist

---

[1]    A copy of the Agreement is annexed as Exhibit A to the accompanying declaration of Hyman Schaffer (the "Schaffer Decl."). References to the exhibits to the Schaffer Decl. are noted parenthetically in the text.

Software Ltda. (together referred to as "Consist Brazil") have not attempted to enter into any new licenses involving Software AG products in Brazil (or anywhere else in the Territory), nor have they attempted to offer any new maintenance agreements for Software AG products, and they acknowledge that they cannot now do so. Thus, to the extent that Consist or Consist Brazil entered into any agreements relating to Software AG products or maintenance, the agreements were made prior to December 31, 2007.

Moreover, the licensing and maintenance agreements were entered into between Consist Brazil and various customers in that nation. Software AG is <u>not</u> a party to any of those agreements. Accordingly, should Consist Brazil be rendered unable to perform those agreements, it will be Consist Brazil – and not Software AG – that will be held accountable for any breaches and suffer the consequences thereof. Software AG acknowledges this fact in its Complaint, noting that "PRODESP informed SAG that it will not pay Consist if it becomes convinced that Consist does not have the ability to provide full maintenance. Thus PRODESP will likely have to enter into a maintenance agreement with Software AG." <u>See</u> Complaint at ¶ 55.

B.    <u>Construction of Paragraph 3</u>

Plaintiffs contend that Paragraph 3 must be read, unambiguously, so that the adjectives "perpetual" and "time-limited" unambiguously modify only "licenses," but not "maintenance agreements" – an interpretation that Plaintiffs claim is somehow supported, and made even <u>more</u> unambiguous, by the grammatically irrelevant insertion of a comma before the words "and/or." (Plaintiffs' Memorandum at 6.) If that is what the parties intended, it could have been accomplished simply by changing Paragraph 3 to read: "For the right to grant maintenance agreements and/or perpetual or time-limited licenses" or, "For the right to grant (i) perpetual or time-limited licenses; and (ii) maintenance agreements." Defendants believe that the only

3

possible reading of the provision makes the adjectives modify both "licenses" and "maintenance agreements." Whatever the case, the issue on this application for a preliminary injunction is <u>not</u> what Paragraph 3 actually means; it is, rather, whether Consist has made literally false advertising statements that are actionable in New York because they had a substantial effect here. Since Consist has made absolutely clear in its corrected disclosure that Plaintiffs disagree with its view about whether it had a right to enter into maintenance agreements prior to December 31, 2007 which provide for maintenance after December 31, 2007, its statements are not literally (or otherwise) false – regardless of which party's interpretation of Paragraph 3 is correct.

C.    <u>The Notices</u>

Based on the Court's determination in the First Litigation, Consist Brazil posted notices on its website in Brazil which set forth its understanding of the effect of the ruling. The notices were written in Portuguese and appeared on a website in Brazil that is also in Portuguese. The notices first appeared on January 8, 2008. Rather than responding to Consist's request for clarification of their position as to continuing obligations of support past December 31, 2007 (Schaffer Decl. Ex. J), Software AG instead filed this lawsuit in the afternoon on January 15, 2008 alleging that the notices somehow constituted false advertising under the Lanham Act and New York General Business Law. On the TRO hearing before this Court the next morning, in response to Consist's jurisdictional and other arguments, Plaintiffs asserted that the notices were "literally false advertising" which should be enjoined by this Court because Consist Brazil's website was accessible by New York residents.

Once Consist became aware of Plaintiffs' objections to the notices, it voluntarily removed them and replaced them with new notices. (Schaffer Decl. Ex. G and Ex. B.)

Moreover, to remove any doubt that Consist Brazil's views about its ability to provide maintenance to existing customers simply reflected its belief and to make clear that Software AG disagreed, the revised notice added:

> It is our strong understanding that all our contractual obligations with our clients, including the Technical Updates and the performance of support services for Software AG products, will still be performed regardless of our expectations with the appeal. Such obligations are guaranteed by the agreement between CONSIST and Software AG, which authorizes CONSIST to give both software licenses and technical support for a limited period of time or perpetually (clause 3 of the agreement: . . . to grant perpetual or time-limited licenses; and/or maintenance agreements. . . ).
>
> As such, all software updates released internationally by Software AG, must be available to CONSIST in order for CONSIST to able to help our technical update clients, in the same manner as we have done for the past 33 years of exclusive distributorship of the software of Software AG. . . .
>
> We further clarify that Software AG disagrees with CONSIST's interpretation of paragraph 3 of the agreement, which has been subject of their judicial dispute before the New York court. Software AG's position is available at its website.

(Schaffer Decl. Ex. B; see also Id. at Ex. G.)

While Software AG did not agree that Consist Brazil's revised notices rendered their false advertising claim completely moot, they acknowledged that it addressed an important part of their application for emergency relief.  (See Letter from Plaintiffs' counsel at Schaffer Decl. Ex. C.)

D.    Brazilian Trademarks

Consist Brazil registered the trademarks ADABAS and NATURAL in Brazil in 1986. (See Schaffer Decl. Ex. D.)[2]  The trademark registrations have thus been a matter of public

---

[2]    ADABAS was first registered in Brazil on May 11, 1986.  NATURAL was first registered in Brazil on March 25, 1986.

5

record for more than two decades.[3]  Indeed, in deposition testimony given in the First Litigation, Natalio Fridman explained that Software AG has not only known about these registrations since they were made, but its then-Chairman, Peter Schnell, told him that, if Consist was concerned about protecting the marks against piracy, it should register the marks itself.  (See Schaffer Decl. Ex. E at pp. 69:19-25; 70:13-75:7.)  Fridman's testimony on this issue was, and remains, unrebutted.

Plaintiffs did not police or monitor the use of the marks in Brazil or exercise quality control – clear indications that they were not and are not the owners of the marks in Brazil.  On the contrary, in response to Consist's request in connection with this motion for a preliminary injunction for the production of "[a]ll documents, regardless of when generated and created, concerning SOFTWARE AG's enforcement of its alleged rights to use the trademarks ADABAS and NATURAL in the Territory, including but not limited to any cease and desist letters sent, lawsuits filed, opposition proceedings, and cancellation actions," Plaintiffs refused to produce anything.  Instead, they objected to Consist's request "on the grounds of overbreadth, vagueness, undue burden and relevance."  (Schaffer Decl. Ex. F at ¶ 24.)  The exact same response was given to Consist's request for "trademark searches, clearances or other inquiries" in the Territory.  (Id. at ¶ 21.)  And, in response to an equally appropriate request for the production of "[a]ll documents, regardless of when generated or created, concerning SOFTWARE AG's knowledge of CONSIST's use of any intellectual property in the Territory," Software AG agreed to produce only those documents that "it intends to rely on at the preliminary injunction hearing."  (Id. at ¶ 20.)  (emphasis added).

---

[3]       In addition to failing to take any action against Consist Brazil's trademark registrations for the past 20 years, even when plaintiffs admit learning about Consist's registration of the marks in the First Litigation, which was commenced in August.  They ultimately sent default notices to Consist in very late October of 2007.  Yet, notwithstanding this knowledge, they still did absolutely nothing until January 15, 2008.

Plaintiffs have thus unilaterally refused – without any justification – to produce documents that are most likely harmful to their position. Plaintiffs' failure to produce these obviously relevant documents prejudices Consist's ability to defend against Plaintiffs' preliminary injunction application.

## ARGUMENT

## THIS COURT SHOULD DENY PLAINTIFFS'
## MOTION FOR A PRELIMINARY INJUNCTION

I.    The Legal Standard

A preliminary injunction is, of course, an "extraordinary and drastic remedy which should not be routinely granted." Medical Soc. of New York v. Toia, 560 F.2d 535, 538 (2d Cir. 1977) (citations omitted). Where, as here, the moving party seeks, in part, a mandatory preliminary injunction that would alter the status quo by commanding a positive act, it "must meet a higher standard than that for a prohibitory preliminary injunction; that is, in addition to demonstrating irreparable harm, '[t]he moving party must make a clear or substantial showing of a likelihood of success on the merits.'" World of Residensea II, Ltd. v. Villasenor, 2007 AMC 1049, at **10-11 (S.D.N.Y. Mar. 21, 2007) ("Here, the defendant must meet this higher standard because the injunction sought by defendant would alter the status quo...") (emphasis added), citing Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc., 60 F.3d 27, 33-34 (2d Cir. 1995). In addition, where the injunction sought "will provide the movant with substantially all the relief sought, and that relief cannot be undone even if the defendant prevails at a trial on the merits," "the moving party must make a clear or substantial showing of a likelihood of success." Brewer v. West Irondequoit Cent. Sch. Dist., 212 F.3d 738, 744 (2d Cir. 2000), citing Jolly, 76 F.3d at 473.

Here, since plaintiffs cannot make a "sufficiently persuasive showing on the merits to

7

warrant the relief sought," let alone a substantial showing of a likelihood of success, the Court should deny the request for preliminary injunctive relief outright without even reaching any other issue. Circle Line Sightseeing Yachts, Inc. v. Circle Line – Statue of Liberty Ferry, Inc., 195 F. Supp. 2d 547, 549 (S.D.N.Y. 2002).

II.    Software AG is Not Likely to Succeed on the Merits

    A.    There is No Basis to Apply the Lanham Act Extraterritorially

As articulated at the TRO hearing, Plaintiffs' false advertising claim rests on the assertion that Consist Brazil's website statements were literally false. Software AG's response to Consist's voluntary corrections to its website revealed that Software AG also seeks to enjoin supposed statements by Consist Brazil salespeople regarding Consist Brazil's understanding of contractual rights it still has against Software AG pursuant to contracts permissibly entered into prior to the expiration date found by this Court – December 31, 2007. Indeed, the contracts at issue are not between customers and Software AG, but between Consist Brazil and its customers. Software AG is not even a party to those contracts.

Software AG's necessary argument – that extraterritorial application of the Lanham Act is appropriate in this instance – is utterly baseless. In support of its claims, Software AG offers nothing more than conclusory statements and unsubstantiated assertions regarding Brazilian law in support of its argument that the Lanham Act should be applied to Consist's activities in Brazil. The law in this district is clear that such an application would be utterly inappropriate in this case.

In the Second Circuit, the exercise of extraterritorial jurisdiction over Lanham Act violations occurring abroad is determined by an examination of three factors that were set forth in Vanity Fair Mills v. T. Eaton Co., 234 F.2d 633, 642 (2d Cir. 1956): 1) whether the defendant is a United States citizen; 2) whether there exists a conflict between the defendant's trademark

8

rights under foreign law and the plaintiff's trademark rights under domestic law; and 3) whether the defendant's conduct had a substantial effect on United States commerce. Id., 234 F.2d at 642 (2d Cir. 1956) (emphasis added). While the court in Vanity Fair wrote that "the absence of one of the [first two] factors might well be determinative and that the absence of both is certainly fatal" id. at 643, the Second Circuit subsequently made clear in Totalplan Corp. of America v. Colborne that the absence of any two of the Vanity Fair factors is fatal. 14 F.3d 824, 831 (2d Cir. 1994). In this instance, two of the factors – a conflict of law and substantial effect on commerce in the United States – are inarguably absent.[4] Accordingly, the Lanham Act cannot be applied to Defendants' conduct.

Since Consist's valid Brazilian trademark registrations are governed by Brazilian law and were issued pursuant to Brazil's trademark statutes, any type of mandatory injunctive relief compelling an assignment of the two marks at issue conflicts with Brazilian law. ( See the accompanying declaration of Ricardo Do Nascimento (the "Do Nascimento Decl.") at ¶¶ 4, 11); see also Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc., 511 F. Supp. 486 (S.D.N.Y. 1981) (court declined to issue out-of-U.S. injunction where it would be difficult to secure compliance with the court's injunction in the foreign country); Star-Kist Foods, Inc. v. P.J. Rhodes & Co., 769 F.2d 1393, 1396 (9th Cir. 1985) (court denies request for injunction where considerations of "international comity and fairness" support denial of injunction). Accordingly,

---

[4]     The remaining factor is here only tenuously – although the trademarks are registered by a Brazilian company, Software AG points to Consist Software Solutions, of which Consist Brazil is an affiliate. The supposedly false advertising is being made on Consist Brazil's website by its salesmen there – not in the United States.

this factor in the <u>Vanity Fair</u> analysis falls decidedly in Consist's favor.[5]

Regarding the lack of the a <u>substantial effect</u> from defendant's on United States

commerce, the Second Circuit has made clear that the Lanham Act may only reach conduct that

occurs outside of the United States when necessary to prevent harm to commerce in the United

States. See <u>Atl. Richfield Co. v. ARCO Globus Int'l. Co.</u>, 150 F.3d 189, 192 n.4 (2d Cir. 1998)

("[W]e have never applied the Lanham Act to extraterritorial conduct absent a *substantial* effect

on United States commerce.") (emphasis added); <u>Total Plan</u>, 14 F.3d at 830-31 (stating that lack

of evidence that infringing goods re-entered United States commerce supported finding that

plaintiff failed to demonstrate that defendant's conduct had substantial effect on United States

commerce); <u>see also</u> J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, §

29:58 (4th Ed. 2007) ("[U]nless the U.S. federal courts are willing to take on the task of being the

global court of commerce, local impact alone [i.e., in Brazil] cannot be sufficient for jurisdiction

in a U.S. court.").

In this case, Software AG has failed to establish that Consist Brazil's ownership of two

valid Brazilian trademark registrations or certain expressions of good faith opinion in Portuguese

on the Brazilian website concerning its ability to perform Brazilian agreements would have any

effect, let alone a substantial one, on United States commerce. See <u>Piccoli A/S v. Calvin Klein</u>

<u>Jeanswear Co.</u>, 19 F. Supp. 2d 157, 170 (S.D.N.Y. 1998) (stating that "the absence of a

substantial effect on domestic commerce [is] fatal to a plaintiff's attempt to apply the Lanham

Act to extraterritorial conduct.").

---

[5]      At the TRO hearing, Plaintiffs claimed that they were not seeking a mandatory preliminary
injunction for conveyance of the trademarks under the Lanham Act, but rather under the 1998 Exclusive
Distributorship Agreement. <u>There is nothing in that Agreement that would support such relief</u>. As noted, the marks
were registered over 20 years ago by Consist Brazil, when the parties' relationship apparently was governed by
German law. Under Brazilian law, which governs where the marks have been registered, they were registered
rightfully by Consist Brazil and are now uncontestibly its to use. Do Nascimento Decl. ¶ 12.

To begin with, Consist has not used either of the two registered marks in connection with any products or services or advertising and promotional materials that have entered or will enter the United States market. Indeed, under the Agreement, Consist never had any rights to distribute, maintain or license Software AG products outside of South America. Further, Software AG has failed to offer any evidence that United States consumers have been misled or have come to view Software AG's NATURAL and ADABAS marks less favorably as a result of Consist Brazil's ownership of the two valid Brazilian trademark registrations. See Atlantic Richfield Co., 150 F.3d at 193-94 (denying extraterritorial application of the Lanham Act where plaintiff did not present any evidence that U.S. consumers were misled or came to view plaintiff's U.S. trademarks less favorably as a result on defendants' infringing foreign conduct). In addition, it is telling that Software AG has failed to offer any evidence regarding how American consumers would even understand the statements written in Portuguese on the website of Consist Brazil, let alone be substantially affected by such statements in the United States.

Plaintiffs' position is not supported by the holding of the court in A.V. by Versace, Inc. v. Gianni Versace, S.p.A, 126 F. Supp.2d 328 (S.D.N.Y. 2001), where the court found a substantial effect on U.S. commerce based upon undisputed evidence that defendant sold infringing products in the United States, thereby confusing U.S. customers (stating that "alleged importation, as well as sales [of infringing products] within the U.S. and likely consumer confusion" contributed to finding of substantial effect on U.S. commerce); see also Steele v. Bulova Watch Co., 344 U.S. 280, 286-87 (1952) (holding that substantial effect on U.S. commerce stemmed from the fact that fake watches with BULOVA trademark filtered back into the U.S. and caused numerous customer complaints). Here, Software AG has not and cannot provide any evidence establishing that Consist has any products bearing the ADABAS or NATURAL marks which entered the U.S. market, let alone caused confusion among U.S. consumers.

11

At least in part, Software AG based its motion for injunctive relief upon unsupported allegations of reputational harm and consumer confusion stemming from Consist Brazil's registration of the marks at issue and the alleged misrepresentations on the website operated in Brazil. (Plaintiffs' Memorandum at 11). There is, however, no evidence in the record to show that Software AG's reputation has been harmed <u>in the United States</u> as a result of Consist Brazil's registration of the ADABAS and NATURAL trademarks, its expressions of opinion in Portuguese on the Consist Brazil website or its good faith statements concerning its ability to perform certain service contracts with Brazilian customers. While Software AG relies on cases involving reputational harm to major world-wide, and world famous, companies such as Calvin Klein and Philip Morris, the evidence of reputation harm in those cases was overwhelming. There is simply no such comparable evidence in this case. Similarly, based on Software AG's failure to offer any evidence, including survey evidence, in support of its allegation of consumer confusion, no evidentiary basis exists for its claim.

The third <u>Vanity Fair</u> factor thus clearly favors Consist's position. Since both the second and third factors are absent there is no Lanham Act jurisdiction over Consist's actions in Brazil. <u>See Space Imaging Eur., Ltd. v. Space Imaging L.P.</u>, 1999 U.S. Dist. LEXIS 10898, *8-9 (S.D.N.Y. July 15, 1999) ("The absence of one of the [<u>Vanity Fair</u>] factors might well be determinative, and the absence of two factors is certainly fatal."). Moreover, since the trademarks belong to a Brazilian entity which is not a United States citizen and not subject to personal jurisdiction here, Software AG cannot even satisfy the first <u>Vanity Fair</u> factor.

B.   <u>The ADABAS and NATURAL Brazilian Trademarks</u>
       <u>Owned by Consist Brazil Must Not be Transferred</u>

It is clear that Consist Brazil – which neither is nor could be a defendant in this action – owns valid Brazilian trademark registrations for its ADABAS and NATURAL marks. <u>See</u> Do

Nascimento Decl. at ¶ 4; see also Aerogroup Int'l. v. Marlboro Footworks, 955 F. Supp. 220, 229 (S.D.N.Y. 1997) ("One method by which a conflict with foreign trademark law may be found . . . is where the defendant is operating under a presumptively valid trademark in its home country."). Since trademark rights are undeniably territorial in nature, Consist Brazil's valid Brazilian trademark registrations for its ADABAS and NATURAL marks are subject to Brazilian trademark laws.

As Judge Leval explained in Osawa & Co. v. B & H Photo, "a trademark has a separate legal existence under each country's laws." 589 F. Supp. 1163, 1171-72 (S.D.N.Y. 1984). "Precisely because a trademark has a separate legal existence under each country's laws, ownership of a mark in one country does not automatically confer upon the owner the exclusive right to use that mark in another country." ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 155 (2d Cir. 2007). Instead, the owner of a mark in the United States must take all appropriate steps to ensure that its rights to that mark are protected in any country in which it seeks to assert them. See Id. at 155-56; E. Remy Martin & Co., S.A. v. Shaw-Ross International Imports, Inc., 756 F.2d 1525, 1531 (11th Cir. 1985) ("Our concern must be the business and goodwill attached to United States trademarks, not French trademark rights under French law.") (internal quotation marks omitted).

In this instance, Consist Brazil owns two valid trademark registrations that were registered in Brazil under Brazilian law more than two decades ago. (Do Nascimento Decl. ¶ 4) Despite Software AG's conclusory assertions to the contrary, there is evidence that Plaintiffs were aware of Consist's application to register these two marks at that time. (Schaffer Decl. Ex. E at 70:13-75:7.) In addition, Software AG did not oppose any of Consist Brazil's applications to register the ADABAS and NATURAL marks during the sixty (60) day opposition period provided under Brazilian law, nor did they seek to cancel the registrations during the 5 year

13

period mandated by Brazilian law. See Lei 9.279/96, Article 158. (Do Nascimento Decl. ¶¶ 5,6).
And, of course, Software AG did nothing until 2008 even though it claims to have learned about
Consist Brazil's actions "for the first time" months ago (that is, its current claim for a mandatory
injunction is barred by laches as well).

Moreover, at the time that Consist Brazil filed the applications to register the marks and
the Brazilian Trademark Office issued the registrations, the relationship between the parties was
not governed by New York law, but apparently by German law. (Schaffer Decl. Ex. I at ¶ 12.)
Accordingly, Software AG's assertion that "Consist's rights . . . stemmed only from the
Agreement -- which is governed by New York law", Plaintiffs' Memorandum at 12, is
demonstrably wrong. Consist Brazil had and continues to have valid trademark rights in its
ADABAS and NATURAL marks pursuant to its Brazilian trademark registrations governed by
Brazilian law. (Do Nascimento Decl. ¶ 4). Since the relationship between Consist and Software
AG was likely governed by German law at the time Consist secured registration of its ADABAS
and NATURAL marks, there is no legal or factual basis for Software AG's reliance on U.S. law
whatsoever for the proposition that "trademark rights licensed to an exclusive distributor revert
back to the trademark owner at the end of the contractual relationship and any registration by the
distributor is valid." (Plaintiffs' Memorandum at 12).[6]

The apparently governing 1986 Agreement did not provide that Software AG owns the
marks. It did not provide that use of the marks inured to the benefit of Software AG. It was not

entitled "License Agreement" and contained no quality control provisions. The lack of these standard provisions used by trademark owners in distribution and license agreements defeats SAG's ownership claim.

In this case the Agreement provides that the ADABAS and NATURAL marks were to be protected in the Brazilian market by Consist. The 1986 Agreement does not specify the protective measures that Consist would take to police the marks. By registering the marks, Consist Brazil pursued the only course of action that could be taken in Brazil in order to safeguard the marks against piracy and unauthorized use. (Do Nascimento Decl. ¶ 3). Indeed, because Brazil follows a registration rather than use based trademark system, Consist Brazil could only safeguard the marks by registering them with the Brazilian trademark office. Id.[7] In the United States, by contrast, the trademark system is use-based. Empressa Cubana del Tabaco v. Culbro Corp., 399 F.3d 462, 468 (2d Cir. 2005) ("[T]he standard test for ownership of a mark is priority of use").

While Consist was Software AG's exclusive distributor in Brazil, the goodwill associated with the ADABAS and NATURAL marks and the products and services sold in connection with those marks resided solely with Consist. Indeed, Software AG's expert witness in the First

_____

(Continued...)

[6]    Even under U.S. law a distributor may own the trademark in goods it does not manufacture where, as here, the reputational goodwill in the mark rests with the distributor. See, e.g., Tactica Int'l v. Atl. Horizon Int'l., 154 F. Supp. 2d 586, 600 (S.D.N.Y. 2001) (stating that distributor, rather than manufacturer, owned trademark where "goods pass[ed] through [the distributor's] hands in the course of trade and [the distributor] gives them the benefit of [its] reputation or of [its] name and business style") (internal quotations and citations omitted)); IMAF, S.P.A. v. J.C. Penney Co., 806 F. Supp. 449 (S.D.N.Y. 1992) (stating that distributor, rather than manufacturer, of clothing owns trademark rights where distributor sold products bearing the mark at its stores and backed the products with its reputation). Accordingly, contrary to Software AG's contention, the law makes clear that an exclusive distributor can acquire trademark ownership rights in a trademark initially used by a manufacturer.

[7]    During the time that the marks were registered Brazilian law explicitly required license agreements to contain a quality control provision. (Do Nascimento Decl. ¶ 9).

Litigation, David MacSwain, acknowledged this fact, stating that in the Territory the ADABAS and NATURAL brands "are solely associated with Consist" and that there is "no indication that these brands are owned by Software AG." (Schaffer Decl. Ex. H at p. 8.) Consist built up the equity in the marks in the Brazilian market and safeguarded the reputation and goodwill connected with the marks. Brazilian consumers associated and continue to associate Consist's name with the ADABAS and NATURAL software packages and Consist Brazil's business reputation was and is at risk if any problems arose with the products and services offered in connection with the marks. Accordingly, it was entirely appropriate for Consist Brazil to attempt to protect the marks and safeguard its business reputation in Brazil by applying to register the marks in Brazil, and Software AG cannot now claim – more than 21 years after the marks were registered – that ownership rights in the marks should be conveyed to it upon the end of the distributorship relationship between the parties.[8]

C.    Software AG's False Advertising Claim Under Lanham Act § 43(a) Must Fail

Because extraterritorial application of the Lanham Act is not appropriate here, Software AG's false advertising claims would have to fail. Brazil has its own unique set of laws regarding

---

[8]    Moreover, this case is distinguishable from all of the cases Software AG cites in support of its argument that all rights in the ADABAS and NATURAL marks should be transferred to Software AG at the end of its contractual relationship with Consist. For example, in Blue Planet Software, Inc. v. Games Int'l, LLC, 331 F. Supp. 2d 273 (S.D.N.Y. 2004), the court ultimately denied the parties' requests for injunctive relief as on the issue of trademark ownership because of the ambiguity in the agreements between the parties regarding trademark ownership. Another of Software AG's cases – Omag Optik Und Mechanik A.G. v. Weinstein, 85 F. Supp. 631(S.D.N.Y. 1949) – is distinguishable because the defendant distributor's use of the mark was not legitimate and defendant's advertising expenditures to promote the mark took place when defendant was in violation of his agreement with the plaintiff manufacturer. A third case – Major-Prodotti Dentari-Societa v. Shimer, 161 U.S.P.Q. (TTAB 1968)– is distinguishable because, unlike here, the agreement between the parties in that case contained express provisions explicitly providing that any rights in the mark at issue reverted back to the petitioner manufacturer upon expiration of the agreement. See also Global Maschinen GmbH v. Global Banking Systems, Inc., 227 U.S.P.Q. (BNA) 862, *18 (T.T.A.B. 1985) (stating that petitioner manufacturer retained all rights in the mark at issue since petitioner had actually established ownership rights in the mark in the United States before defendant distributor applied to register the mark in the United States); TMT N. Am., Inc. v. Magic Touch GmbH, 124 F.3d 876, 884 n.4 (7th Cir. 1997) (stating that agreement between parties explicitly provided that plaintiff manufacturer would supply trademark and instructions that defendant distributor would display on distributed products).

what constitutes false advertising. (Do Nasciemento Decl. ¶ 3). These laws would govern the statements on Consist Brazil's website and any oral statements in Brazil. Even if the statements were made in the U.S., which was not the case, the statements at issue, even were they false, are no longer in existence. As noted, Software AG asserts that certain statements on the website of Consist's affiliate in Brazil and supposedly made in connection with certain service contracts are "literally false."[9] Indeed, the Court recognized that Software AG is "going to go forward on a literal falseness theory" at the January 16, 2008 hearing. See Tr. at 42:12-13. Since Consist Brazil has amended the statements on its website to address those very aspects of the statements that Software AG characterized as "literally false," Software AG can no longer claim that this Court needs to issue a preliminary injunction to prevent false statements from being made on the Brazilian website. (Schaffer Decl. Exs. B and G.) The statements have been voluntarily changed; there no longer is anything even arguably to enjoin; the claim is moot.

Additionally, the statements on the Consist Brazil website and supposedly made in connection with service contracts entered into with its Brazilian customers are not "literally false," but mere good faith expressions of opinion. Indeed, Consist believes in good faith that Paragraph 3 did give it a right to enter into maintenance agreements extending beyond December 31, 2007, and accordingly entered into such agreements in Brazil. These statements are not covered by the Lanham Act since to fall within Lanham Act § 43(a), an alleged misrepresentation must be one of "fact." Groden v. Random House, 61 F.3d 1045, 1051 (2d Cir. 1995) ("Statements of opinion are generally not the basis for Lanham Act liability . . . ample leeway must be accorded to statements that express . . . opinions, no matter how extravagantly

---

[9]      Software AG seeks to enjoin oral statements from Brazilian salespeople. Whatever else might be said, there is certainly no proof of such statements.

17

worded"); <u>Randa Corp. v. Mulberry Thai Silk, Inc.</u>, 2000 U.S. Dist. LEXIS 17014, *8 (S.D.N.Y. Nov. 27, 2000) (stating that subjective claims or opinions regarding a possible future event are not actionable under § 43(a)); <u>Dial A Car v. Transportation, Inc.</u>, 884 F. Supp. 584 (D.D.C. 1995) (holding that defendant taxi cab company's statements that it has legal authority to offer corporate account transportation services in the District of Columbia are not within § 43(a); because the local D.C. authorities had not yet determined the legality of such actions by defendant, the statements were opinions, not "verifiably false representations of fact").[10]

Here, the statements on the Consist Brazil website and that might have been made in certain service contracts entered into with its Brazilian customers are good faith expressions of Consist's opinion that it will be able to continue providing services to its customers. The alleged misrepresentations are not factual statements, but expressions of opinion and, as such, cannot support a false advertising claim under the Lanham Act.

D.    <u>Plaintiffs' NY Gen. Bus. Law § 349 Claim Fails Because NY Consumers are Not Affected</u>

Similarly, there is no proof at all that Consist Brazil's supposedly "literally false advertising" affects anyone in New York at all. Software AG does not have a likelihood of success on its claim under New York General Business Law § 349. First, plaintiffs have not established that Consist's allegedly deceptive conduct would impact the public interest in New York, or for that matter, anywhere else in the United States. <u>Securitron Magnalock Corp. v. Schnabolk</u>, 65 F.3d 256, 264 (2d Cir. 1995) ("The critical question, then, is whether the matter affects the public interest in New York"). For a business competitor to bring a claim under New

---

[10]    In any event, oral statements generally are not covered by Lanham Act § 43(a). <u>See</u>, <u>e.g.</u>, <u>Licata & Co. v. Goldberg</u>, 812 F. Supp. 403, 408 (S.D.N.Y. 1993) (stating that oral remarks to customers by former employee that plaintiff is not qualified to serve their business needs is not within § 43(a); "oral comments about competitors are at the opposite pole from clearly definable media advertising.").

York Gen. Bus. Law § 349, the plaintiff must show that the accused conduct is the kind of offense that so impacts on the public interest of consumers that the Federal Trade Commission would intervene.  See J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, §27:116 (4th ed. 2007).  Under this standard, basic trademark claims do not qualify.  See id.  As Judge Scheindlin held in Something Old, Something New, Inc. v. QVC, Inc., 1999 U.S. Dist. LEXIS 18878, *39 (S.D.N.Y. Dec. 7, 1999), "[a] trademark dispute concerning jewelry would not affect – much less harm – the public interest.  A deliberate effort by one competitor to destroy the other's business is not considered a harm to the public interest."

As a matter of law, an allegation of trademark infringement, see Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC, 221 F. Supp. 2d 410, 413 (S.D.N.Y. 2002), or a false representation regarding private commercial matters, does not state a claim under New York Gen. Bus. Law § 349.  Digigan, Inc. v. Ivalidate, Inc., 2004 U.S. Dist. LEXIS 1324, *20 (S.D.N.Y. Feb. 3, 2004) (stating that an allegation of a false claim to ownership of a patent is a "merely a private dispute" that is not within New York General Business Law § 349 and § 350 because it does not directly impact consumers); Gucci Am., Inc. v. Duty Free Apparel, Ltd., 277 F. Supp. 2d 269, 274 (S.D.N.Y. 2003) ("Where the gravamen of the complaint is harm to a business as opposed to the public at large, the business does not have a cognizable cause of action under § 349."); Boule v. Hutton, 320 F. Supp. 2d 132, 138 (S.D.N.Y. 2004) ("Courts generally find that competitors state a claim under § 349 only when they allege some harm to the public health or safety.").

In this case, Software AG merely makes conclusory allegations that Consist's conduct adversely affects the public interest in New York.  (Plaintiffs' Memorandum at 17).  Plaintiffs offer no evidence, such as witness testimony or consumer surveys, to support their claim that the supposedly literally false statements in Portuguese on a Brazilian website – which were since

19

revised – and in connection with certain maintenance contracts with Brazilian customers adversely affects the public interest in New York. And no oral representations are alleged to have been made in New York to a consumer in New York.

E.     Plaintiffs' New York Unfair Competition Law Claim
       Fails Because the Activity at Issue Occurred in Brazil

Software AG cannot establish a likelihood of success on its New York common law unfair competition claim. As a preliminary matter, the exact same activities underlying Software AG's federal Lanham Act claim also underlie its New York common law unfair competition claim – namely Consist Brazil's registration of its ADABAS and NATURAL marks in Brazil and its good faith expressions of opinion on its website and in certain maintenance contracts. Since the federal Lanham Act is clearly broader in scope than New York common law and, as discussed above, it would be inappropriate to apply the Lanham Act extraterritorially, it follows that New York common law should not be applied extraterritorially to Consist Brazil's conduct in Brazil. See Atlantic Richfield Co., 150 F.3d at194 n.5.

Software AG has not cited a single case in which a New York state court or federal court in the Second Circuit applied New York unfair competition law to activities outside the State of New York, let alone outside the United States. Indeed, the case law makes clear that New York unfair competition law does not apply to extraterritorial conduct. See, e.g., C.A. Westel de Venez. v. American Tel. & Tel. Co., 1992 U.S. Dist. LEXIS 12301, *35-36 (S.D.N.Y. Aug. 17, 1992) (holding that no cause of action existed for unfair competition under New York common law where allegedly unfair competition occurred within Venezuela). Further, New York unfair competition law is intended to protect New York consumers and address activity that adversely affects the New York customer. See, e.g., Aerogroup Int'l. v. Marlboro Footworks, 956 F. Supp. 427, 433-434 (S.D.N.Y. 1996); Sybron Corp. v. Wetzel, 413 N.Y.S.2d 127 (1978). No such

20

activity is alleged here. Finally, Software AG offers no support for issuing an order pursuant to New York law by a court in New York governing oral statements that were made – if at all – outside the United States to other individuals outside the United States concerning transactions outside the United States governed by foreign law.

F.   Plaintiffs' Tortious Interference with Prospective
     Business Relations Claim Must Fail

Plaintiffs also cannot establish a likelihood of success on their claim for injunctive relief against tortious interference with prospective business relations. First of all, any such claim would be compensable only in money damages. In any event, to establish this claim under New York law, "a plaintiff must prove four elements: (1) there was a business relationship with a third party; (2) defendants knew of that relationship and intentionally interfered with it; (3) defendants either acted solely out of malice or used wrongful means; and (4) defendants' interference caused injury to the relationship with the third party. " Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC, 2007 U.S. Dist. LEXIS 504, at **65-66 (S.D.N.Y. Jan. 8, 2007) ("But Plaintiffs present absolutely no evidence that [defendant] acted 'solely with malice' or through the use of wrongful conduct, and therefore Plaintiffs' tortious interference with prospective business relations claim fails as a matter of law.") (citing Carvel Corp. v. Noonan, 350 F.3d 6, 17 (2d Cir. 2003)).

"Under New York law, proof that a defendant was motivated by 'self-interest or other economic considerations' will not suffice to make out a claim for tortious interference with prospective business relations." Reading Int'l, Inc., 2007 U.S. Dist. LEXIS 504, at * 65 (citing Shared Communications Services of ESR, Inc. v. Goldman Sachs & Co., 23 A.D.3d 162, 163, 803 N.Y.S.2d 512 (NY App. Div. 1st Dep't 2005). "In fact, evidence of self-interest serves to rebut any allegation of malice." Reading Int'l, Inc., 2007 U.S. Dist. LEXIS 504, at *66.

21

Here, Software AG fails to establish that Consist intentionally interfered with PRODESP solely out of malice or through improper means. Moreover, the moving papers do not establish that Consist knew about Software AG's "prospective" relationship with PRODESP, nor could they since Consist entered into its agreement with PRODESP while the Agreement was in effect – at a time when Plaintiffs had no right to enter into agreements of their own in Brazil. Indeed, the only extant relationship was that between PRODESP and Consist – a relationship that goes back over 30 years.

Moreover, Software AG fails to establish any harm – much less irreparable harm. Software AG simply states that "[Consist's] actions have damaged Software AG and have caused actual confusion." (Plaintiff's Memorandum at 17). In his moving declaration, Karl-Heinz Streibich states: "I am informed that a SAG sales representative, who visited PRODESP after January 1, 2008, PRODESP is confused by Consist's representations to it regarding ongoing rights Consist supposedly has." See Streibich Dec. at ¶ 39. Significantly, however, Software AG does not identify any personnel at PRODESP who are confused, and more importantly, it does not articulate how Plaintiffs have allegedly been harmed – irreparably or otherwise.

Even if some level of harm could be established, it would be fully compensable in money damages. "Because monetary loss may be estimated and compensated, such harm is not considered irreparable harm, unless the movant can show the monetary loss cannot be compensated, for example, because it will probably result in bankruptcy." Freedom Calls Found. v. Bukstel, 2006 U.S. Dist. LEXIS 19685, at *73-74 (E.D.N.Y. Mar. 3, 2006).

For the reasons set forth above, Plaintiffs' conclusory allegations fail to establish a likelihood of success on its claim for tortious interference with prospective business relations.

G.   There is no Breach of the Implied Covenant of Good Faith and Fair Dealing

22

"For a complaint to state a cause of action alleging breach of an implied covenant of good faith and fair dealing, the plaintiff must allege facts which tend to show that the defendant sought to prevent performance of the contract or to withhold its benefits from the plaintiff." Macphee, 2008 U.S. Dist. LEXIS 3230, at *21 (S.D.N.Y. Jan. 14, 2008) (quoting Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Commerce, 697 N.Y.S.2d 128, 130 (NY App. Div. 2d Dep't 1999)). "Without question, 'the implied covenant does not extend so far as to undermine a party's 'general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract.'" Ferguson v. Lion Holding, Inc., 478 F. Supp. 2d 455, 469 (S.D.N.Y. 2007) (citing M/A-Com Sec. Corp. v. Galesi, 904 F.2d 134, 136 (2d Cir. 1990)).

Here, Software AG alleges breach of the implied covenant of good faith and fair dealing "based on Consist's flagrant and bad faith misrepresentation of the Agreement to include their right to issue perpetual maintenance agreements and to obligate Software AG to forever provide Consist with all new versions. . . ." (Plaintiffs' Memorandum at 18). This does not constitute a breach of the covenant of good faith and fair dealing. Consist believes in good faith that Paragraph 3 of the Agreement gave it a right to enter into maintenance agreements that extend beyond December 31, 2007. Whether or not Software AG agrees, this is still a fair, reasonable and good faith interpretation of the Agreement.

In any event, the remedy for a breach of the implied covenant of good faith and fair dealing is money damages – not a preliminary injunction. See Goldblatt v. Englander Communs., L.L.C., 431 F. Supp. 2d 420, 424 (S.D.N.Y. 2006) (where a claim was raised for breach of the implied covenant of good faith and fair dealing, noting that "[w]here monetary damages are adequate compensation, a preliminary injunction will not issue.") (emphasis added). As set forth above, simply because the Agreement empowered Consist to provide maintenance to

23

its customers beyond January 1, 2008, and therefore lessens Software AG's "anticipated fruits" (i.e. acquiring Consist's customers), does not constitute a breach of the implied covenant of good faith and fair dealing.

III.     Consist's Conduct has Not Caused Software AG Irreparable Harm

It is undisputed that Consist Brazil has owned the trademarks for ADABAS and NATURAL since 1986. There is thus no basis for Software AG to claim that it will now suffer irreparable harm if Consist is not immediately ordered to give the Brazilian marks to Software AG. Moreover, with respect to any pre-December 31, 2007 license or maintenance agreements in the Territory, Consist Brazil is merely continuing to honor those contracts entered into while the Agreement was still in effect. Consist is not offering any new licenses or maintenance agreements, nor is it representing to current or potential customers that it now has any exclusive distribution rights to Software AG technologies in South America, or the ability to enter into new maintenance agreements which rely on Software AG performance. Accordingly, Software AG has not – and cannot – demonstrate that the mere continuation of these private contracts between Consist Brazil and various third parties – to which Software AG is not even a party – are causing Software AG irreparable harm.

IV.     The Balance of Hardships Favors Consist

For over 20 years, Consist Brazil has been registered as owner the trademarks for ADABAS and NATURAL and the Brazilian registrations therefor. Plaintiffs never did anything to police these marks in the Territory because they did not and do not own the marks in the Territory. To alter the status quo now by removing the marks from Consist Brazil without fully considering the effect on Brazilian consumers would be tragic for Consist Brazil and Brazilian consumers.

Even if Peter Schnell's admitted knowledge that Consist Brazil registered the trademarks were not imputed to Plaintiffs – and it should be – Plaintiffs clearly should have known about the trademark registrations that were registered by Consist Brazil for more than 20 years. Even in October, 2007, when Plaintiffs' U.S. counsel learned of the registrations, they did not amend their counterclaims to include a trademark claim. These actions belie Plaintiffs' claim that emergency relief is now warranted. Plaintiffs' laches in bringing these trademark claims further tilts the balance of hardships against them. See Citibank, N.A. v. Citytrust, 756 F.2d 273, 277 (2d Cir. 1985) (preliminary injunction denied where there was ten-week delay in seeking preliminary injunction after plaintiff learned of defendant's allegedly infringing use, with court holding delay "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury").

In this case, there is no hardship to Software AG – rather than self-caused consequences – if the Court were to preserve the status quo as it has existed since at least 1986. Accordingly, the balance of equities tips in favor of Consist.

## CONCLUSION

For all the foregoing reasons, this Court should deny Software AG's motion for a preliminary injunction in its entirety.

Dated: New York, New York    DUANE MORRIS LLP
   January 22, 2008

          By: /s Hyman L. Schaffer
            Hyman L. Schaffer
            Fran M. Jacobs
            Gregory P. Gulia
            Brian Damiano
          1540 Broadway
          New York, New York 10036
          Telephone: (212) 692-1000
          Facsimile: (212) 692-1020
          *Attorneys for Defendants*