UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SOFTWARE AG, INC. and SOFTWARE AG,

          Plaintiffs,

-against-

CONSIST SOFTWARE SOLUTIONS, INC. f/k/a CONSIST INTERNATIONAL, INC. and NATALIO FRIDMAN,

          Defendants;

Case No.  08 cv 00389 (CM) (FM)

## SOFTWARE AG'S MEMORANDUM OF LAW IN REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR A PRELIMINARY INJUNCTION

James David Jacobs
Frank M. Gasparo
Marcella Ballard
BAKER & McKENZIE LLP
1114 Avenue of the Americas
New York, NY 10036-7703
Tel: 212-626-4100
Fax: 212-310-1600

## TABLE OF CONTENTS

                                                                                         Page

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT...................................................................................................................................1

I. SOFTWARE AG IS ENTITLED TO AN INJUNCTION ENJOINING DEFENDANTS FROM OFFERING OR FALSELY REPRESENTING THAT THEY ARE AUTHORIZED AND ABLE TO PROVIDE MAINTENANCE SERVICES THAT ONLY SAG CAN LAWFULLY OFFER AND PROVIDE..................................................................................................1

    A. Defendants Are Bound Under The Agreement To Halt All Maintenance of SAG Software Products ...................................................2

        1. Defendants Are Bound By The Express Provisions Of The Agreement ................................................................................2

        2. Defendants Are Bound By The Implied Covenant Of Good Faith And Fair Dealing ........................................................3

    B. Defendants Are Prohibited By The Lanham Act From Falsely Representing That They Are Authorized Or Competent To Provide Maintenance Of SAG Software Products For SAG End-Users In The Territory As Of December 31, 2007 ......................................3

        1. The Lanham Act Applies Extraterritorially ....................................3

    C. Defendants Are Prohibited By New York Unfair Competition Law From Falsely Representing That They Are Authorized Or Competent To Provide Maintenance Of SAG Software Products For SAG End-Users In The Territory As Of December 31, 2007...............7

II. SOFTWARE AG IS ENTITLED TO AN INJUNCTION DIRECTING DEFENDANTS TO ASSIGN TRADEMARKS TO SOFTWARE AG BECAUSE ANY TRADEMARK RIGHTS IN SAG SOFTWARE PRODUCTS EXPIRED UPON TERMINATION OF THE AGREEMENT ..............................................................................................................9

# TABLE OF AUTHORITIES

Page(s)

CASES

*A.T.Cross v. Sunil Trading Corp.*,
  467 F.Supp. 47 (S.D.N.Y. 1979) ........................................................................................... 3

*Bank of China v. Chan*,
  937 F.2d 780 (2d Cir. 1991) .................................................................................................. 3

*Blue Planet Software, Inc. v. Games International, LLC*,
  334 F.Supp.2d 425 (SDNY 2004) ................................................................................... 9, 10

*Dalton v. Educ. Testing Serv.*,
  87 N.Y.2d 384 (N.Y. 1995) .................................................................................................. 3

*Filner v. Shapiro*,
  633 F.2d 139 (2d Cir. 1980) .................................................................................................. 3

*Fun-Damental Too Ltd. v. Gemmy Industries Corp.*,
  111 F.3d 993, 42 U.S.P.Q.2d 1348 (2d Cir. 1997) ................................................................ 4

*Gordon & Breach Science Publrs., S.A. v. American Inst. of Physics*,
  905 F. Supp. 169 (S.D.N.Y. 1995) ................................................................................ 4, 5, 6

*Kappa Sigma Fraternity v. Kappa Sigma Gamma Fraternity*,
  654 F.Supp. 1095 (D.N.H. 1987) ........................................................................................ 10

*Les Ballets Trockadero de Monte Carlo, Inc. v. Trevino*,
  945 F. Supp. 563, 41 U.S.P.Q.2d 1109 (S.D.N.Y. 1996) ...................................................... 4

*Major-Prodotti Dentari-Societa In Nome Collettivo Di Renaldo Giovanni & Figli
v. Shimer*,
  161 USPQ 437 (TTAB 1968) ............................................................................................. 10

*Omag Optik UND Mechanik A.G. v. Weinstein*, 85 F.Supp. 631, 637  (SDNY
  1949) ................................................................................................................................... 10

*Omega S.A. v. Omega Eng'g, Inc.*,
  396 F.Supp. 2d 166 (D. Conn. 2005) .................................................................................... 8

*Ramirez & Feraud Chili Co., v. Las Palmas Food Co., Inc.*,
  146 F.594 (S.D. Cal. 1956) ................................................................................................... 8

*Rowe v. Great Atl. & Pac. Tea Co.*,
  46 N.Y.2d 62, 385 N.E.2d 566, 412 N.Y.S.2d 827 (N.Y. 1978)) ......................................... 3

*Steele v. Bulova Watch Co.*,
   334 U.S. 280 (1952) ......................................................................................................... 3, 4

*Vanity Fair Mills, Inc. v. T. Eaton Co.*,
   234 F.2d 633 (2d Cir. 1956), cert. denied, 352 U.S. 871 (1956) ..................................... 4, 5, 7

*Warnaco Inc. v. VF Corp.*,
   844 F. Supp. 940 (2d Cir. 1994) ....................................................................................passim

**STATUTES**

NY Gen. Bus. Law § 349 ........................................................................................................... 7

Industrial Property Law of Brazil, no. 9279/96 (May 14, 1996), as amended by
   Law 10.196 (February 14, 2001) .......................................................................................... 7

## PRELIMINARY STATEMENT

Plaintiffs Software AG, Inc. ("SAGA") and Software AG ("SAG") (collectively "Software AG" or "Plaintiffs") submit this reply memorandum of law pertaining specifically to the issues of (1) the assignment of the ADABAS and NATURAL trademarks, (2) the extraterritorial application of the Lanham Act, and (3) rights under the Agreement raised by ("Consist") and Natalio Fridman ("Fridman") (collectively "Defendants") in opposition to the motion by Software AG for a preliminarily injunction.

## ARGUMENT

Defendants' Opposition Brief to Software AG's Motion for Preliminary Injunction ("Defendants' Opposition Brief") fails to comprehend the stated purpose of this lawsuit. Simply stated, Software AG seeks to enjoin Defendants from continuing to breach the now-expired Agreement, which is indisputably governed by New York law (the "Agreement"). Defendants' breaches include (1) offering, or falsely representing to SAG end-users that they are authorized and able to provide maintenance, and (2) asserting rights in Software AG's intellectual property, including the ADABAS and NATURAL trademarks (the "Trademarks").

I. **SOFTWARE AG IS ENTITLED TO AN INJUNCTION ENJOINING DEFENDANTS FROM OFFERING OR FALSELY REPRESENTING THAT THEY ARE AUTHORIZED AND ABLE TO PROVIDE MAINTENANCE SERVICES THAT ONLY SAG CAN LAWFULLY OFFER AND PROVIDE**

Egregiously absent from Defendants' Opposition Brief is *any* discussion of the very crux of this case, which is determining the Defendants' rights, if any, under the Agreement after its termination date of December 31, 2007. Instead of addressing the Agreement directly, Defendants naively misstate Software AG's claims by recasting them principally as trademark infringement claims in order to attack the jurisdiction of this court over the matter, which is clearly not an issue given the First Litigation.

In essence, Software AG seeks to enjoin Defendants from falsely representing that they have continuing rights in connection with SAG Software Products pursuant to the Agreement. Specifically, Software AG seeks to enjoin Defendants from offering or representing that they can provide Level 2 Support, Level 3 Support, System Maintenance Releases, New Software Releases, or New Software Versions. Three alternative theories support Software AG's position: First, Defendants are bound by the Agreement to halt, as of December 31, 2007, all maintenance of SAG Software Products for SAG end-users in the Territory. Second, Defendants are prohibited by the Lanham Act from falsely representing that they are authorized or competent to provide maintenance of SAG Software Products for SAG end-users in the Territory as of December 31, 2007. Finally, Defendants are prohibited by New York Unfair Competition Law from falsely representing that they are authorized or competent to provide maintenance of SAG Software Products for SAG end-users in the Territory as of December 31, 2007.

### A. Defendants Are Bound Under The Agreement To Halt All Maintenance of SAG Software Products

#### 1. Defendants Are Bound By The Express Provisions Of The Agreement

Software AG is entitled to an injunction enjoining Consist from offering maintenance services in the Territory because any rights Consist enjoyed to maintain Software AG products expired upon the termination of the Agreement. It is revealing that Defendants failed to discuss their rights under the Agreement in any substantive detail, as they would surely not dispute that any such rights terminated on December 31, 2007. Defendants' rights, including their "right to grant perpetual or time-limited licenses, and/or maintenance agreements," as provided in paragraph 3 of the Agreement, terminated upon December 31, 2007.

### 2. Defendants Are Bound By The Implied Covenant Of Good Faith And Fair Dealing

Under New York law, "[i]mplicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance." *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384 (N.Y. 1995); *accord Filner v. Shapiro,* 633 F.2d 139, 143 (2d Cir. 1980) (under New York law, "there is an implied covenant of good faith and fair dealing" in every contract). This implied obligation encompasses the performance of "'any promises which a reasonable person in the position of the promisee would be justified in understanding were included.'" *Dalton*, 663 N.E.2d at 291 (quoting *Rowe v. Great Atl. & Pac. Tea Co.*, 46 N.Y.2d 62, 385 N.E.2d 566, 569, 412 N.Y.S.2d 827 (N.Y. 1978)); *accord Bank of China v. Chan*, 937 F.2d 780, 789 (2d Cir. 1991) (to violate the implied covenant, the purported bad-faith action "must directly violate an obligation that falls within their reasonable expectations").

Here, Defendants have breached the implied covenant of good faith and fair dealing by (1) entering into contracts with SAG end-user customers that provide for the maintenance of SAG Software Products beyond the Agreement's termination date and (2) refusing to assign the Trademarks to Software AG upon the expiration of Consist's rights thereto.

### B. Defendants Are Prohibited By The Lanham Act From Falsely Representing That They Are Authorized Or Competent To Provide Maintenance Of SAG Software Products For SAG End-Users In The Territory As Of December 31, 2007

#### 1. The Lanham Act Applies Extraterritorially.

It is beyond dispute that the Lanham Act may be applied to conduct outside of the United States. *Warnaco Inc. v. VF Corp.*, 844 F. Supp. 940 (2d Cir. 1994), citing *Steele v. Bulova Watch Co.*, 334 U.S. 280, 282-283 (1952)("The Lanham Act . . . confers broad jurisdictional powers upon the courts of the United States."); *A.T.Cross v. Sunil Trading Corp.*, 467 F.Supp. 47, 50 (S.D.N.Y. 1979)(stating that legislative intent behind the Lanham Act was for broad jurisdictional reach). This

court has applied the Lanham Act extraterritorially where a U.S. defendant directed from New York the dissemination in Mexico of misrepresentations that were made in Mexico pertaining to a U.K. publisher's services. *See Gordon & Breach Science Publrs., S.A. v. American Inst. of Physics*, 905 F. Supp. 169 (S.D.N.Y. 1995) (applying Lanham Act extraterritorially in false advertising case).

The Second Circuit has a test referred to as the *Vanity Fair* test directs a court to consider: (1) whether the defendant's conduct has a substantial effect on United States commerce, (2) whether the defendant is a citizen of the United States, and (3) whether there exists a conflict with foreign law. *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 642 (2d Cir. 1956), cert. denied, 352 U.S. 871 (1956); *Les Ballets Trockadero de Monte Carlo, Inc. v. Trevino*, 945 F. Supp. 563, 41 U.S.P.Q.2d 1109 (S.D.N.Y. 1996) (granting preliminary injunction and applying Lanham Act extraterritorially to defendant's dance performances in Japan under an infringing mark); *Fun-Damental Too Ltd. v. Gemmy Industries Corp.*, 111 F.3d 993, 42 U.S.P.Q.2d 1348 (2d Cir. 1997) (granting injunction ordering U.S. company to bring products from China to the U.S)..

Jurisdiction attaches even where the sole conduct complained of within the United States was otherwise lawful, where the acts were "an essential part of the unlawful scheme." *Steele*, supra, 344 U.S. at 287. *See* PROSDESP Agreement: <u>Comp. Ex. 7 § 7.1.5</u>: "*'Upgrade' Contract For Assigning Rights of Use and Warranty of Technical Updates For Computer Programs Contracted Between [PRODESP] and [Consist Brazil]*".

The facts in this case are analogous to those in *Gordon & Breach*, 905 F. Supp. 169, where both defendants and plaintiffs published scientific journals, and the defendants disseminated mailings and advertisements to potential customers worldwide containing allegedly false and deceptive statements about the plaintiffs. In rejecting the defendants' motion for summary judgment on this issue, the court held that the defendants' misleading publications and mailings--even those sent abroad--that "directly . . . target relevant consumers [was] precisely the type of

promotional activity that the Lanham Act seeks to regulate." *Gordon & Breach*, 905 F. Supp., at 180. In applying the *Vanity Mills* factors, the court held that "the extraterritorial application of the Lanham Act" was warranted, given

> (1) the mailing of the letters from New York City and the promotion of journals of American corporations; (2) the American citizenship of [the defendants]; and (3) the absence of any interference with foreign sovereignty . . .

*Gordon & Breach*, 905 F. Supp., at 181-82.

Software AG's Lanham Act claims rely on Consist's false representation, not on its misappropriation or use of Software AG's trademarks. Therefore, Defendants' references to Brazilian trademark law or whether United States consumers have "come to view Software AG's NATURAL and ADABAS marks less favorably" are, again, wholly irrelevant.

    **a. Consist's Conduct Has a "Substantial Effect" on U.S. Commerce**

In *Warnaco*, the court ruled that the first prong was satisfied where Defendants' infringing activities in Spain and Portugal (1) diverted sales from Warnaco and had caused confusion among consumers, presumably both abroad and in the U.S.; (2) adversely impacted Warnaco's income and reputation; (3) adversely impacted Warnaco's competitive position with the defendant; where (4) the relationship between the parties are regulated by agreements that are governed by New York law; and (5) Warnaco's relationships with its licensees is directed from New York.. *Warnaco*, 844 F.Supp. at 952.

Defendants' misrepresentations concerning Consist Brazil's unauthorized maintenance contracts with Brazilian end-users of SAG Software Products has and will divert sales from Software AG; cause confusion among its end-users; and continue to adversely impact Software AG's income, reputation, and competitive position with Defendants. Products beginning on January 1, 2008.

Defendants' public announcement that it will provide "uninterrupted continuity" in licensing and maintaining SAG Software Products is creating confusion among Software AG's end-users worldwide, including in New York. Many of the Brazilian end-users of the SAG Software Products are among the largest worldwide conglomerates, resident not only throughout the world, but also in the United States and specifically, New York City, *e.g.*, Honda, HSBC, Sumitomo Bank, Banco Brasil, etc.

Defendants' unauthorized post-expiration maintenance contracts, their misrepresentations about their rights and authority to provide maintenance to Software AG's end-users and the consequent confusion in the enterprise database software market negatively impacts Software AG's reputation and market confidence. This negative impact affects both Software AG end-users and potential licensees. Although the acts complained of take place in Brazil, they are directed and controlled by a New York resident pursuant to rights allegedly granted under a New York contract expressly providing that New York law governs the Agreement. This court should therefore conclude, as did the *Warnaco* court, that such conduct abroad harms the reputation and goodwill of a U.S. company with worldwide sales, and that this "harm to its reputation and goodwill will have a substantial impact on United States commerce…" *Warnaco*, 844 F.Supp. at 951.

Contrary to the contracts between the parties that preceded the Agreement (which expressly invoked German law), SAGA and Consist deliberately chose New York – Mr. Fridman's home and business residence -- as the forum to interpret and enforce the Agreement. In doing so, Defendants agreed to submit to the jurisdiction of New York for any disputes arising from the Agreement. Therefore, the Defendants' actions in Brazil that flow and originate from this Agreement have a "substantial effect" on U.S. commerce. *See also Gordon Breach*, 905 F. Supp. 169 (S.D.N.Y. 1995)

### b. Consist and Fridman are U.S. Residents.

The second *Vanity Fair* factor asks whether Defendants are U.S. citizens. Consist is a U.S. corporation and Fridman resides in this district. Therefore, this factor is satisfied.

### c. Restraining Misrepresentations In Commerce Does Not Conflict With Brazilian Law.

Like Section 43(a) of the Lanham Act, which prohibits false and misleading descriptions and representations of fact in commerce which are likely to cause confusion or mistake, or to deceive the relevant purchasing public, Sections I and II of Article 195 of Brazil's Industrial Property Law prohibits the publication of a "false affirmation" in "detriment to a competitor with a view to obtaining advantage" and "false information" with "respect to a competitor," "with a view to obtaining advantage." Industrial Property Law of Brazil, no. 9279/96 (May 14, 1996), as amended by Law 10.196 (February 14, 2001). Both the Lanham Act and the Industrial Property Law aim to protect consumers and competitors alike from deceitful behavior in the market.

## C. Defendants Are Prohibited By New York Unfair Competition Law From Falsely Representing That They Are Authorized Or Competent To Provide Maintenance Of SAG Software Products For SAG End-Users In The Territory As Of December 31, 2007

Software AG may recover under NY Gen. Bus. Law § 349 for false advertising if it can show that Defendants (1) intentionally made false and deceptive statements (2) in the conduct of their business (3) knowing that they were false and deceptive, and (4) these statements harmed the New York public interest. The *Warnaco* case is on point in this regard. In adjudicating whether to dismiss the defendants' New York common law claims for unfair competition and trademark dilution, *Warnaco* rejected defendants' attempt to argue that there were not sufficient contacts with commerce in New York, and that Warnaco must seek relief under the laws of Spain or Portugal instead. In denying the defendants' motion to dismiss Warnaco's New York claims, the *Warnaco* court reasoned that the parties' "choice of law clause mandates the application of New York law to

disputes arising out of the [agreement]," even where the defendant's infringing conduct took place entirely in Spain and Portugal. *Warnaco Inc.*, 844 F. Supp. at 953. Further, the court stated that the "activities alleged in the Complaint are sufficiently related to commerce in New York to make the application of New York law appropriate." *Id.*

Here, the parties expressly provided for New York law to govern disputes arising out of the Agreement. The activities alleged in the *Warnaco* complaint are similar to those alleged in this case. In both cases, a company with worldwide sales and a "favorable worldwide reputation" to uphold sued a licensee for activities that took place entirely abroad in breach of a contract that had previously terminated. *Warnaco Inc.*, 844 F. Supp. at 943. Courts have long recognized that unfair trade practices committed by a U.S. company abroad may harm another company's reputation and goodwill in the U.S., leading to "drastic decreases of its products" in the U.S. *Omega S.A. v. Omega Eng'g, Inc.*, 396 F.Supp. 2d 166, 183 (D. Conn. 2005), discussing *Ramirez & Feraud Chili Co., v. Las Palmas Food Co., Inc.*, 146 F.594, 598 (S.D. Cal. 1956)(holding that unfair trade practices committed by an American citizen in Mexico could **'radiate unlawful consequences'** in the United States) (emphasis added).

Finally, New York has in interest in retaining jurisdiction. The Defendants are New York citizens who entered into a license agreement that is governed by New York law. The parties themselves, in fact, chose New York as governing law. It was under this Agreement that the Defendants' improper activities abroad were made possible, and Defendants now claim that their activities abroad extend beyond the reach of New York law. Additionally, many of the confused customers, some of the largest companies in the world, have offices in New York.

## II. SOFTWARE AG IS ENTITLED TO AN INJUNCTION DIRECTING DEFENDANTS TO ASSIGN TRADEMARKS TO SOFTWARE AG BECAUSE ANY TRADEMARK RIGHTS IN SAG SOFTWARE PRODUCTS EXPIRED UPON TERMINATION OF THE AGREEMENT

Software AG is entitled to an injunction directing Defendants to assign the Trademarks to Software AG because any rights Defendants had in Software AG's trademarks, in Brazil and otherwise, expired according to the terms of the Agreement.

Under the Agreement, which binds "all Consist subsidiaries and affiliates," Defendants agreed to "oblige its personnel to protect . . . [Software AG's] . . . trademarks and to prevent them from unauthorized use." Compl. Ex. 1, at 3. It further states that Defendants agree to "take all necessary and reasonable measures to ensure that the proprietary nature and integrity of the SYSTEMS," which include ADABAS and NATURAL, "are safeguarded against unauthorized use, duplication or modification." On December 17, 2007, this Court issued a judgment that held that Software AG properly terminated the Agreement, causing the Agreement to terminate as of December 31, 2007. Compl. Ex. 4, at ¶ 2. Therefore, any rights to the Trademarks terminated as of December 31, 2007.

Defendants' defense of laches is irrelevant because Software AG's claim did not ripen until January 1, 2008, immediately upon expiration of Defendants' rights to any trademarks and other intellectual property. Further, Defendants' musings on the nuances of Brazilian trademark law are wholly irrelevant and serve only to distract from the fact that Defendants reduced to a single footnote the only relevant legal analysis on this point. That they misconstrued the relevant cases is not surprising given that the weight of law is in Software AG's favor.

In *Blue Planet Software, Inc. v. Games International, LLC*, 334 F.Supp.2d 425 (SDNY 2004), this court held that "registrations will not trump contractually agreed upon ownership rights," reasoning that a licensee's right to use a licensor's intellectual property ceases when the license

expires. *Blue Planet Software, Inc. v. Games International, LLC*, 334 F.Supp.2d 425, 437 (S.D.N.Y. 2004), *citing Kappa Sigma Fraternity v. Kappa Sigma Gamma Fraternity*, 654 F.Supp. 1095, 1100 (D.N.H. 1987)("A licensee 'acquires only the right to use the trademark, while title to the mark and the reversionary interest in that use remains with the owner.'") In *Major-Prodotti Dentari-Societa In Nome Collettivo Di Renaldo Giovanni & Figli v. Shimer*, 161 USPQ 437 (TTAB 1968); *Omag Optik UND Mechanik A.G. v. Weinstein*, 85 F.Supp. 631, 637 (SDNY 1949)

## CONCLUSION

WHEREFORE, the court should enter a temporary and preliminary injunctive order in the form set forth in Plaintiffs' Order to Show Cause.

Dated: New York, New York
January 23, 2008

Respectfully submitted,

By: _____
James David Jacobs
Frank M. Gasparo
Marcella Ballard
BAKER & McKENZIE LLP
1114 Avenue of the Americas
New York, NY 10036-7703
Tel: 212-626-4100
Fax: 212-310-1600