DUANE MORRIS LLP
Hyman L. Schaffer
Fran M. Jacobs
Gregory P. Gulia
Brian Damiano
1540 Broadway
New York, New York 10036
(212) 692-1000
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
SOFTWARE AG, INC. and SOFTWARE AG,      :
                                         :
                        Plaintiffs,      :    08 CV 00389 (CM) (FM)
                                         :
            -against-                    :    **DEFENDANTS'**
                                         :    **SUPPLEMENTAL PROPOSED**
CONSIST SOFTWARE SOLUTIONS, INC.,        :    **FINDINGS OF FACT AND**
f/k/a CONSIST INTERNATIONAL, INC.        :    **CONCLUSIONS OF LAW**
and NATALIO FRIDMAN,                     :
                                         :
                        Defendants.      :
------------------------------------------------------------------x

Defendants Consist Software Solutions, Inc. f/k/a Consist International, Inc. and Natalio

Fridman, by their attorneys Duane Morris LLP, submit the following supplemental proposed

findings of fact and conclusions of law relating to Plaintiffs Software AG, Inc. and Software

AG's (collectively, "Software AG") pending motion for preliminary injunctive relief:

## **FINDINGS OF FACT**

69.    On January 28, 2008, Consist Brasil filed an action in Brazil against Software AG

seeking a preliminary injunction compelling Software AG to cease all use and planned use of the

ADABAS and NATURAL marks in Brazil. Consist Brasil's lawsuit also includes claims that

Software AG's unauthorized use of Consist Brasil's ADABAS and NATURAL marks

constitutes unfair competition and causes the dilution of the distinctiveness of the ADABAS and

NATURAL marks. See the February 13, 2008 Declaration of Gregory P. Gulia (the "Gulia Decl.").

70.    On February 13, 2008, the Brazilian Federal Court granted Consist Brasil's request for a preliminary injunction. See Gulia Decl. at ¶¶ 5, 6.

71.    As of today's date, Software AG has not filed any action in Germany regarding its supposed trademark claims under German law.

72.    Software AG has not registered NATURAL as a trademark in the major countries covered by a comprehensive trademark search, such as the United States, Mexico, Portugal, Germany, France and the European Community. See Saegis Worldwide Trademark Search Report for NATURAL trademark, attached hereto as Ex. A.

## CONCLUSIONS OF LAW

### I.    The 1998 Agreement Specifies that New York Law Applies

85.    The most recent distributorship agreement that became effective on January 1, 1998 and was terminated as of December 31, 2007 specified that it was governed by New York law, not German law. This 1998 Agreement superseded the various distributorship agreements between the parties dating back to 1975. All of these agreements contained merger clauses. Accordingly, New York law applies in this instance.

### II.    Software AG's Contract Claims are Time Barred

86.    Although the parties' relationship in 1986, when Consist filed its trademark registrations, was governed by German law, that law is not relevant for current purposes.

87.    Any claim that Consist breached the 1984 Agreement is time barred under New York law. New York CPLR § 202 provides:

> "An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by

the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply."

New York's borrowing statute requires the use of the shorter statute of limitations when a non-resident files suit in a New York court. Brooks v. Topps Co., No. 06 Civ. 2359 (DLC), 2007 U.S. Dist. LEXIS 94036, at *9 n.6 (S.D.N.Y. Dec. 21, 2007).

88.    New York law provides for a six year breach of contract statute of limitations. Miller v. IBM World Trade Corp., No. 06 Civ. 4452 (DLC), 2007 U.S. Dist. LEXIS 16120, at *10 (S.D.N.Y. Mar. 8, 2007) ("Under New York law, the statute of limitations for breach of contract is six years.") (citing N.Y. C.P.L.R. § 213(2)).  Any alleged breach of the 1984 Agreement occurred in 1986, more than twenty years ago, and well beyond the six-year statute of limitations provided for under New York law.

89.    Whether or not Software AG could now pursue a breach of contract claim in Germany is irrelevant.  As set forth above, New York law requires that the shorter of the New York and German statutes of limitation govern this dispute.  Since more than six years have passed, any claim for breach of contract is time barred in New York.

90.    Moreover, Software AG's failure to take any steps to ascertain how Consist protected the marks at issue mandates a finding that the statute of limitations has not been tolled. "Software AG was well aware that Consist was registering the trademarks in Brazil and that Mr. Schnell gave Mr. Fridman permission to do so." Court's Feb. 1, 2008 Order.  See, e.g., Robles Vasquez v. Torres-Negron, No. 06 Civ. 619 (CM), 2007 U.S. Dist. LEXIS 57872, at *25 (S.D.N.Y. Jul. 11, 2007) (court declined to toll statute of limitations where plaintiff should have known of infringing song since it frequently played on public radio airwaves).

III.    **Mandatory Injunctive Relief Compelling an
        Assignment of the Marks at issue Conflicts with Brazilian Law**

91.     It would be legally impossible for this Court to issue an order regarding the

ADABAS and NATURAL trademark registrations in Brazil since Consist Brasil, the owner of

the Brazilian trademark registrations, has not been named or served as a defendant in this action.

> Article 5, Section LIV of the Brazilian Federal Constitution provides that "All
> persons are equal before the law, without any distinction whatsoever, Brazilians
> and foreigners residing in the country being ensured of inviolability of the right to
> life, to liberty, to equality, to security and to property, on the following terms:
>
> LIV – no one shall be deprived of freedom or his assets without the due process of
> law." See Brazilian Federal Constitution at
> http://www.v-brazil.com/government/laws/titleII.html (in English) (Attached hereto as
> Exhibit B).

Since Consist Brasil has not been named or served as a defendant in this action, its compliance

with an order directing it to assign its ADABAS and NATURAL marks to Software AG would

deprive Consist Brasil of its property without due process of law.

92.     Software AG contends that this Court can direct Consist Brasil to assign the

ADABAS and NATURAL marks to Software AG since "Brazilian law expressly permits that

registrations may be freely assigned, that the government will register notations of such (record)

assignments, and that the government will recognize court orders regulating the private parties'

rights to trademarks." Software AG's Proposed Conclusions of Law ("COL") at ¶ 130. This

assertion is patently misleading because, in Brazil as elsewhere, a trademark cannot be assigned

without the goodwill associated with the trademark. See, e.g., Marshak v. Green, 746 F.2d 927

(2d Cir. 1984) ("[A] trademark cannot be sold or assigned apart from the goodwill it

symbolizes."). In addition, Software AG's general assertion ignores the reality that the Instituto

Nacional de Propriedade Industrial (INPI) (Brazilian Patent and Trademark Office) is an

interested party in all actions involving intellectual property in Brazil in order to safeguard the

interests of Brazilian consumers. See Article 109, Section 1 of the Brazilian Federal Constitution attached hereto as Ex. C; see also the Declaration of Ricardo Do Nascimento submitted by Consist in connection with its Memorandum of Law in Opposition to Software AG's Motion for a Preliminary Injunction at ¶ 8. Most importantly, there would have to be a valid reason to assign the trademarks at issue. Here there is no reason whatsoever as all the goodwill in the Brazilian trademark registrations for ADABAS and NATURAL reside with Consist Brasil. See Defendants' Software AG, Inc. and Software AG's Expert Report of David A. MacSwain at p. 8.

93.     This Court cannot direct Consist Brasil to assign the ADABAS and NATURAL marks to Software AG because the Brazilian Federal Courts have jurisdiction over all matters involving a defendant domiciled in Brazil or where the obligation at issue, such as the assignment of a Brazilian trademark registration, would be complied with in Brazil.

> Article 88 of the Brazilian Civil Procedure Code provides that "It is competent the Brazilian Judicial authority when: I – the defendant, whatever being its nationality, is domiciled in Brazil; II – the obligation has to be complied in Brazil; III – the action arises from a fact occurred or act performed in Brazil."

Here, Consist Brasil is a Brazilian company domiciled in Brazil. In addition, Consist Brasil's obligation to assign the trademark registrations at issue would be complied with in the Brazilian Patent and Trademark Office as the marks are registered in Brazil. In fact, an action has already been commenced by Consist Brasil in the competent court of Brazil to, inter alia, enjoin Software AG from using the marks ADABAS and NATURAL and that court has issued a preliminary injunction against Software AG in accordance with Consist Brasil's request.

94.     Moreover, any order that this Court issues would first need to be ratified by the Brazilian Federal Supreme Court before it could possibly be executed in Brazil.

> Article 483 of the Brazilian Code of Civil Procedure provides that "[a] court decision taken by a Foreign Court shall not be effective in Brazil until ratification by the Federal Supreme Court."

Article 15 of the Civil Procedure Introductory Law provides that "A court decision which has been taken in a foreign country shall be effective in Brazil if the following requirements are met: a) it has been taken by an appropriate judge; b) the parties have been summoned, or a default judgment has taken place; c) the trial has been made final and irrevocable, and it complies with the necessary formalities for the enforcement in the place the decision has issued; d) it has been translated by the sworn translator; e) it has been ratified by the Federal Supreme Court."

Consist Brasil has not been named or summoned in the action presently before this Court or in a

Brazilian court with appropriate jurisdiction.

## IV. German Law Is Not Applicable to Dispute – Choice of Law Provision Superseded By Later Agreements Which State That New York Law Governs Interpretation and Enforcement of Contract

95.    Plaintiffs' claim, as recast at the hearing for a preliminary injunction here, is that

any rights that Consist Brasil had to the Brazilian trademarks derived from the 1998 Agreement,

which is expressly subject to New York law. Thus, to the extent that Plaintiffs have articulated

their claim, German law is inapplicable. The Court held that Consist Brasil's rights to the

Brazilian trademarks were obtained in 1986, a time when the parties' relationship was governed

by German law. As noted above, any claims by Plaintiffs for breach of the 1984 Distribution

Agreement have long since expired in New York, and are time barred. To the extent that

Plaintiffs' claim derives from the 1998 Agreement, German law is not applicable because the

1984 Distribution Agreement, which contained a choice of law provision for German law, is no

longer in force, having been superseded by subsequent agreements governed by U.S. law. The

Court finds, however, that Consist Brasil's actions in registering the trademarks were taken at a

time when the parties' relationship was governed by German law, that Consist Brasil's actions

gave it incontestable rights to the marks in Brazil, and that, certainly by the time the 1998

Agreement was entered into, all rights to the marks in Brazil were incontestably owned by

Consist Brasil.

-6-

V.    **The German Trademark Act Does Not Govern This Dispute Because There Is No Subject Matter Jurisdiction Under The German Trademark Act**

96.    Even were German law to apply, Plaintiffs' claims for return of the trademarks registered by Consist in Brazil would fail. It is well established that trademark rights are territorial by nature. See Sections 107-125 of the German Trademark Act of 1994; see also Fezer, Markenrecht, 3rd ed., 2001, Introduction [EinL MarkenG], note 160 (referring to a decision of the Supreme Court of the German Reich (Reichsgericht) dated September 20, 1927 published in RGZ 118, 76, 81 – Hengstenberg), attached hereto as Ex. D.

97.    The German Trademark Act is applicable only in Germany and only with respect to German trademarks registered in Germany. Accordingly, the German Trademark Act cannot govern the dispute between the parties regarding the ownership of the Brazilian trademark registrations because there is no subject matter jurisdiction under the German Trademark Act. See German Trademark Act of 1995 at http://www.ip-firm.de/markeng_e.pdf (in English) (English and German translations attached hereto as Exhibit E). See also Court of Appeal of Munich, decision of January 12, 2006 – doc. no. 29 U 3736/05 (UltraMind), published in GRUR-RR 2006, 130; Federal Supreme Court, decision of May 2, 2002 – doc. no. I ZR 300/99 (FROMMIA), published in GRUR 2000, 972; Federal Supreme Court, decision of June 29, 1979 – doc. no. I ZB 24/77 (Contiflex), published in GRUR 1980, 52 (all holding that the German Trademark Act is applicable to the assignment of a German national trademark because of the principle of territoriality).

98.    In Germany, trademark rights arise from registration of the trademark and not use. While limited rights can be acquired through use in certain situations, protection is only afforded in exceptional cases of high notoriety of the trademark in Germany. See id. at § 4. There is no clear definition about when such notoriety among the relevant consumers is given; this depends

-7-

on the circumstances of the concrete case. The requirements for notoriety are generally very high. According to some decisions it does not even suffice if 70% of the relevant consumers know the designation if the designation refers to a bulk good. See Ingerl/Rohnke, Markengesetz, 2d ed, § 4 no. 21 for additional cases).

99.    An unregistered mark in Germany has no status, the right to a mark being absolutely dependent upon its registration, unless the mark has become commonly and generally known in the trade as distinguishing the goods of the owner. 1 A. Covin, Trademarks throughout the World § 60.29 (5th ed. 2007).

100.    Requirements for the establishment of the protection of a national trademark are subject to the law of the country in which the trademark shall be protected. See German Federal Court of Justice, official collection BGHZ volume 18, pages 1, 13, BGHZ volume 41, pages 84, 85 and 88; Court of Appeal of Stuttgart, NJW-RR volume 1988, pages 490, 491; Kreuzer in: Münchener Kommentar, nach Art. 38 EGBGB, Anhang II, note 160 (application to cancellation proceedings)

101.    Software AG's trademark claims regarding Consist Brasil's Brazilian trademark registrations arise under the applicable Brazilian trademark laws, not from the parties' contracts or German trademark law.

102.    Furthermore, in Germany, the parties cannot contractually create subject matter jurisdiction under the German Trademark Act. Thus, parties cannot waive the defense of lack of subject matter jurisdiction by contract. See Federal Supreme Court, doc. No. I ZR 8895, published in MMR 1998, 35 et. seq., dated October 2, 1999; see also Fezer, Markenrecht, 3rd ed., 2001, Introduction [EinL MarkenG], note 199, attached hereto as Ex. F.

103.    Given that the Brazilian trademark registrations at issue are registered with the

Brazilian Trademark Office, the Brazilian trademark registrations clearly do not fall under the

jurisdiction of the German Trademark Act, nor can German trademark laws be applied to

determine the ownership of trademarks created by operation of Brazilian law.

**VI.    Sections 11 and 17 of the Current German Trademark Act Are Inapplicable
Because Software AG's Claims Would Arise Under A Prior Version of the
German Trademark Act Which Did Not Provide for the Relief Sought**

104.    To the extent that Software AG's claims are made under German law, those

claims would not be governed by the German Trademark Act of 1994, but by the trademark laws

in effect during the term of the 1984 Distribution Agreement, when Consist Brasil registered

ADABAS and NATURAL trademarks in Brazil. Thus, Section 11(1)(a) of the German

Trademark Act of 1968 would govern Software AG's right of relief under the 1984 Distribution

Agreement.

105.    Under Section 11(1)(a) of the German Trademark Act of 1968, a principal could

not seek assignment of a trademark registration made by its distributor. See German Trademark

Act of 1968 at § 11(1)(a). Under the governing statute, the principal's right of relief was limited

to the right to have the trademark registration deleted from the German trademark registry a right

that could be granted only under special circumstances such as fraud or improper registration.

See id.

106.    Furthermore, under Section 8(1) of the German Trademark Act of 1968, a

trademark could not be assigned separately from the business for which it had been registered

and used on the theory that the trademark should not be separated from the goodwill which had

been created in connection with the use of the trademark. See id.

107.    Accordingly, Plaintiff is essentially seeking an interpretation of the 1984 Distribution Agreement that would create a right that did not exist—and was indeed contrary even to German trademark law in effect during the term of the 1984 Distribution Agreement.

## VII.    Software AG's Is Not Entitled to Relief Under Section 11(1)(a) of the German Trademark Act of 1968

108.    The statute of limitations for claims arising under Section 11(1)(a) of the German Trademark Act of 1968 is three years. See German Trademark Act of 1968 at § 11(1)(a). Furthermore, the statute of limitations for Software AG's claims under Section 11(1)(a) would have begun to run at least upon the expiration of the last agreement applying German law, on December 31, 1994. Accordingly, Software AG's claims have been time-barred since December 31, 1997, at the latest.

109.    Applying the applicable statute of limitations, Software AG would be barred from enforcing a claim under Section 11(1)(a) of the German Trademark Act of 1968, which was applicable during the term of the 1984 Distribution Agreement.

110.    Section 11(1) (a) of the German Trademark Act of 1968 required that : (1) the principal is the owner of a trademark registration for the respective trademarks in another country; and (2) these trademark registrations must have priority over the trademarks as registered by the distributor. See Ingerl/Rohnke, Markengesetz, side notes 11-16, Section 11, attached as Ex. G.

111.    At the time that the ADABAS and NATURAL trademarks were registered by Consist Brasil in Brazil, Software AG did not own any trademark registration for NATURAL in any of the major countries such as the United States, Canada, Germany and the European Community. Software AG has not alleged that it owned a trademark registration for NATURAL

in any country. Under German law, Software AG would have the burden to prove protection

through use at the time Consist Brasil applied for the mark in Brazil.

## VIII.   Software AG's Claims Is Not Entitled to Relief Under Sections 11 and 17 of the German Trademark Act of 1994

112.   Nor would Software AG be entitled to relief under the current German Trademark

Law. Section 11 and 17 of the German Trademark Act of 1994 govern trademark registrations

registered in Germany—not trademark registrations registered in other foreign territories. See

German Trademark Act of 1994 at §§ 1, 17; Ingerl/Rohnke, Markengesetz, 2d ed., § 11 no. 1,

attached as Ex. H.

113.   Sections 11 and § 17 of the German Trademark Act of 1994 apply to trademarks

registered in Germany and to cases where the principal owns trademark rights outside Germany,

the distributor registers a trademark in Germany, and the principal wants the German trademark

to be transferred to it. See German Trademark Act of 1994 at §§ 11, 17. It does not apply to

claims regarding the ownership of foreign trademark registrations. See Ingerl/Rohnke,

Markengesetz, 2d ed., § 11 no. 1, attached as Ex. H.

114.   Sections 11 and 17 of the current German Trademark Act are applicable only if

the trademark registrations were obtained without the principal's consent. See German

Trademark Act of 1994 at §§ 11, 17.

115.   Under German law, the statutory requirement that the registration be obtained

without the proprietor's consent also has significant policy implications. The policy underlying

this requirement reflects the belief that statutory protection of the supposed trademark proprietor

is not necessary if the trademark proprietor consented to the registration of the trademarks and

therefore was in a position to impose a contractual obligation on the agent/representative.

116.    The trademarks were registered with Software AG's full knowledge and consent, and Software AG did nothing to protect its supposed rights to the marks by contract. Thus, Sections 11 and 17 of the German Trademark Act of 1994 are inapplicable to the instant dispute.

117.    Under German law, Software AG would not be entitled to assert a claim to the Brazilian registration for NATURAL under Sections 11 and 17 of German Trademark Act of 1994 because it did not own prior registrations for the mark.

## IX.    There is No Right of Revocation for the Brazilian Trademark Registrations

118.    Although Software AG cites to a court decision which recognizes a right of revocation, this decision has no precedential value.

119.    Germany is a civil law country in which lower court decisions have no precedential value. "As a civil law jurisdiction German courts are not bound by precedent. There is no doctrine of stare decisis in German law." Article 69 and European Patent Integration, 92 Nw. U.L. Rev. 1082, n.214 (1998).

120.    "A realization that the German legal system is a predicated on written legal codes, that stare decisis is not important, and that the precedential value of judicial decisions by trial courts is almost non-existent makes one realize why the decisions often are conclusory. There is relatively little need for or value placed on well-reasoned and carefully analyzed trial court opinions in the German system." A Comparative Look at Refugee Status Based on Persecution Due to Membership in a Particular Social Group, 26 Cornell Int'l L.J. 505, n.174 (1993).

121.    The applicable statutes do not address the issue of revocation of consent. There is no German Supreme Court decision on the issue of revocation.

122.    Many leading German legal authorities have stated that consent to the registration of a trademark cannot be revoked. See Ingerl/Rohnke, Markengesetz, 2d ed. 2003, § 11, note 18,

attached hereto as Ex. I; Stroebele/Hacker, <u>Markengesetz</u>, 8th ed., 2006, § 11, note 19); German

Civil Court Rule § 183, sentence 1. This understanding is based on the wording of Sections 11

and 17 of the German Trademark Act of 1994 and Art. 6 septies of the Paris Convention, which

is the basis of Sections 11 and 17 of the German Trademark Act of 1994.

123. If one desires to maintain the ability to revoke consent, this provision must be

included in the parties' agreement. The 1984 Distribution Agreement did not permit Software

AG to revoke its consent for Consist Brasil to register the Brazilian trademarks. A leading

treatise on German trademark law, which states:

> "At the time he gives the consent, the principal has the possibility to provide
> the consequences of a revocation of the consent or of the end of the agency
> relationship in an agreement, in particular he can oblige the agent (in the
> agreement) to assign the mark. Accordingly, the revocation of the consent
> has consciously not been included in Art 6 septies of the Paris Convention."

<u>See</u> Ingerl/Rohnke, <u>Markengesetz</u>, Section 11, no. 18, attached hereto as Ex. I. <u>See also</u> NJW

1994, 1247 "Die Umsetzung der Markenrechts-Richtlinie durch das deutsche Markengesetz",

attached hereto as Ex. J; <u>see</u> page 1252GRUR 1998, 1 "Die Neuregelung der Agentenmarke im

Markengesetz", see pages 3 and 4, attached hereto as Ex. K.

124. Thus, Section 11 of the German Trademark Act of 1994 must be interpreted

restrictively. <u>See</u> Hoffmann, <u>Agentenmarke vs. Lokale, Inländische Geschäftsherrenmarke</u> in

<u>Markengesetz</u>, 4th ed., 2002 at 112 ("The principal pulls the strings whether he safeguards his

interests either through a trademark application in time or through express contractual

agreements with the Agent. If he refrains from doing so, he generally does not deserve any

privileged treatment vis-à-vis other market participants"), attached hereto as Ex. L. "Just

because the right to request the assignment according to § 17 para. 1 Trademark Act is such a big

exception in trademark law, this right has to be treated in a restricted manner." <u>See</u> <u>id.</u>

125.    German law also acknowledges that the registration of a mark without consent of

the "proprietor" can be justified. This is expressly stated in Art. 6 septies Paragraph 1 of the Paris

Convention for the Protection of Industrial Property which states:

> (1) If the agent or representative of the person who is the proprietor of a mark in one of
> the countries of the Union applies, without such proprietor's authorization, for the
> registration of the mark in his own name, in one or more countries of the Union, the
> proprietor shall be entitled to oppose the registration applied for or demand its
> cancellation or, if the law of the country so allows, the assignment in his favor of the said
> registration, unless such agent or representative justifies his action.
>
> While the possibility of justification of the agent is not expressly mentioned in section 11
> of the German Trademark Act, the German legislators saw this possibility as a matter of
> course (Ingerl/Rohnke, <u>Markengesetz</u>, 2d ed., § 11 no. 19, which refers to the official
> grounds of the legislator to section 11).

<u>See</u> Art. 6 septies Paragraph 1 of the Paris Convention for the Protection of Industrial Property.

126.    Registration can be thus be justified when the agent has acquired a good will with

regard to the designation based on his owns effort and costs. <u>See</u> OLG (Court of appeal)

Munich, OLG-Report 1999, 338 – *RRS Rohrreinigungsservice*; Ingerl/Rohnke, <u>Markengesetz</u>, 2d

ed., § 11 no. 19), attached hereto as Ex. M.

127.    Consist Brasil not only had the consent of Software AG to register the Brazilian

trademarks. Substantial justification for enforcing Consist Brasil's rights to the Brazilian

trademark exists because Consist Brasil owns all the goodwill in the Brazilian trademarks in

Brazil. Consist Brasil also registered the ADABAS and NATURAL marks in Brazil at its own

efforts and costs.

**X.    The German Trademark Act Does Not Govern This Dispute Because Plaintiffs'
        Claims Are Statutory Claims And Not Subject to the Choice of Law Provisions**

128.    German law clearly distinguishes between statutory and contractual claims. <u>See</u>

Palandt, BGB, 65th ed., 2006 Überblick Vor § 311, notes 3 and 5, attached hereto as Ex. N.

129.    Software AG's claim for the assignment of the Brazilian trademark registrations is a statutory claim which Software AG alleges arises under Sections 11 and 17 of the German Trademark Act of 1994 – it is not a contractual claim arising under the 1984 Distribution Agreement.

130.    The choice of law clause in the 1984 Distribution Agreement merely stated that "[t]his contract shall be subject to and interpreted in accordance with German law." Because of the clear distinction between statutory and contractual claims under German law, the choice of law clause in the 1984 Distribution Agreement cannot be interpreted in a way that permits parties to avail themselves of protections arising from statutory law. There is no provision in the 1984 Distribution Agreement expressly stating that German law should apply to trademark claims as well as other statutory claims. The parties further could not have conferred German trademark jurisdiction over trademark registrations that were registered in Brazil.

**XI.    Software AG's Claims Are Waived Because Software AG Tolerated Consist's Registration of the Brazilian Trademarks For Over Thirteen Years**

131.    German law provides that a registration cannot be challenged on the basis of an earlier right if the holder of the earlier right has tolerated the use of the younger mark for five or more years.

§ 51 Nichtigkeit wegen des Bestehens älterer Rechte

(1) Die Eintragung einer Marke wird auf Klage wegen Nichtigkeit gelöscht, wenn ihr ein Recht im Sinne der §§ 9 bis 13 mit älterem Zeitrang entgegensteht.
(2) Die Eintragung kann aufgrund der Eintragung einer Marke mit älterem Zeitrang nicht gelöscht werden, soweit der Inhaber der Marke mit älterem Zeitrang die Benutzung der Marke mit jüngerem Zeitrang für die Waren oder Dienstleistungen, für die sie eingetragen ist, während eines Zeitraums von fünf aufeinanderfolgenden Jahren in Kenntnis dieser Benutzung geduldet hat, es sei denn, daß die Anmeldung der Marke mit jüngerem Zeitrang bösgläubig vorgenommen worden ist. Das gleiche gilt für den Inhaber eines Rechts mit älterem Zeitrang an einer durch Benutzung erworbenen Marke im Sinne des § 4 Nr. 2, an einer notorisch bekannten Marke im Sinne des § 4 Nr. 3, an einer geschäftlichen Bezeichnung im Sinne des § 5 oder an einer

Sortenbezeichnung im Sinne des § 13 Abs. 2 Nr. 4. Die Eintragung einer Marke kann ferner nicht gelöscht werden, wenn der Inhaber eines der in den §§ 9 bis 13 genannten Rechte mit älterem Zeitrang der Eintragung der Marke vor der Stellung des Antrags auf Löschung zugestimmt hat.

51.- (1) The registration of a trade mark shall be canceled by bringing an action on the grounds of nullity if it is prejudiced by a right having seniority within the meaning of Sections 9 to 13.

(2) The registration may not be canceled on the grounds of the registration of an earlier trade mark where the proprietor of the earlier trade mark has acquiesced, for a period of five successive years, in the use of the later trade mark for the goods or services for which it is registered, while being aware of such use, unless registration of the later trade mark was applied for in bad faith. The same shall apply to the proprietor of a right to a trade mark having seniority and acquired by use within the meaning of Section 4, No. 2, to a well-known trade mark within the meaning of Section 4, No. 3, to a commercial designation within the meaning of Section 5, or to a plant variety name within the meaning of Section 13(2), No. 4. Furthermore, registration of a trade mark may not be canceled if the proprietor of a right having seniority referred to in Sections 9 to 13 has consented to the registration of the trade mark prior to the filing of the cancellation request. See German Trademark Act of 1995 at § 51 at http://www.ip-firm.de/markeng_e.pdf (in English) (Attached hereto as Exhibit E).

132.    Furthermore, under German law, Software AG's claims are not only time-barred, but also waived. The Court has found that Software AG knew of Consist Brasil's registration of the Brazilian trademarks in Brazil and did nothing to attempt to claim any rights to those marks by contract or otherwise. Despite Software AG's knowledge that Consist Brasil obtained registrations for the trademarks in Brazil in 1986, Software AG has not attempted to claim ownership of these registrations or seek the assignment of these registrations for over 21 years.

133.    The principle of laches or forfeiture is a general principle of German Law which follows from Section 242 German Civil Code.

134.    Under German law, a claim is forfeited and can no longer be enforced if the claimant (i) during a long period of time has not enforced the claims ("element of time") and (ii) the defendant therefore relied on the fact that the claimant would not enforce the claim any longer ("element of confidence"). See Palandt, German Civil Code, 67 ed., sec. 242, note 87 et

seq., Federal Supreme Court, decision of October, 19 2005 - XII ZR 224/03, published in NJW

2006, 219) (period of two years was generally sufficient to forfeit claim).

135.    Because Software AG tolerated the registrations for over 21 years and never

provided that the registrations should be assigned at the end of the distribution contract, Software

AG's claims have been forfeited even under German law.


Dated: New York, New York
      February 13, 2008

DUANE MORRIS LLP

By:  /s/ Gregory P. Gulia
         Hyman L. Schaffer
         Fran M. Jacobs
         Gregory P. Gulia
         Brian Damiano
1540 Broadway
New York, New York 10036
Telephone: (212) 692-1000
Facsimile: (212) 692-1020
*Attorneys for Defendants*

DM2\1373417.1