James David Jacobs
Frank M. Gasparo
Marcella Ballard
BAKER & McKENZIE LLP
1114 Avenue of the Americas
New York, NY 10036-7703
Tel: 212-626-4100
Fax: 212-310-1600

Attorneys for Software AG, Inc.
and Software AG

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SOFTWARE AG, INC. and SOFTWARE
AG,

                              Plaintiffs,

               -against-

CONSIST SOFTWARE SOLUTIONS,
INC. f/k/a CONSIST INTERNATIONAL,
INC. and NATALIO FRIDMAN,
                              Defendants.

Case No. 08-CV-00389 (CM) (FM)

**DECLARATION OF ESTHER M. FLESCH**

ESTHER MIRIAM FLESCH hereby declares:

　　　1.　　　I am a partner in the Brazilian law firm Trench, Rossi e Watanabe Advogados

associated with Baker & McKenzie International, a Swiss Verein, Av. Dr. Chucri

Zaidan, 920, 13th floor, São Paulo, SP, Brazil.

　　　2.　　　I submit this declaration on behalf of plaintiffs Software AG, Inc. ("SAGA")

and Software AG ("SAG") (collectively "Software AG" or "Plaintiffs"). I have personal

knowledge of the facts and law stated herein and am competent to testify thereto. I am

fluent in English, German and Portuguese and have translated the Brazilian laws quoted

in this declaration from Portuguese to English.

3.      I am an experienced Intellectual Property lawyer.  My areas of practice include General Corporate and Commercial Law, Intellectual Property and Information Technology, Communication and E-Commerce Law.

4.      I have a J.D. degree from the University of São Paulo (1988), an L.L.M degree from the University of Michigan (1992) and a PhD. from the University of São Paulo Law School (1996).

**There is No Brazilian Public Policy Preventing Free Assignment of Trademarks and The Brazilian Trademark Office has the Mere Role of  Recording Them.**

5.      I have been asked to opine regarding whether this Court's order directing the assignment of a Brazilian trademark conflicts with any articulated policy of Brazil.  The answer is quite easy:  there is no strong public policy in Brazil, or indeed any policy, requiring Brazilian courts, the Brazilian Trademark Office (the "INPI"), or any other governmental agency to participate in the assignment of a trademark between parties.

6.      On the contrary the assignment of a Brazilian trademark is a purely private matter between the contracting parties that involves no Brazilian governmental involvement except the  recordation of the assignment by the INPI.

7.      The INPI, like the United States Patent and Trademark Office, has the mere role of recording assignments. *See* Articles 134, 135, 136 of the Brazilian Industrial Property Law No. 9279/96 of May 14, 1996 (as amended by Law No. 10196 of February 14, 2001) (http://www.inpi.gov.br/menu-esquerdo/marca/dirma_legislacao/oculto/LEI9279INGLES.pdf/download (English); http://www.inpi.gov.br/menuesquerdo/marca/dirmalegislacao/oculto/lei_92791996html (Portuguese)). (Attached hereto as Exhibit A).

8.    Article 134 of the Brazilian Industrial Property Law provides that trademark applications and registrations are assignable by meeting certain legal requirements. That article provides:

> Applications for registration and registrations may be assigned provided that the assignee meets the legal requirements for requesting such registrations.

*See* Brazilian Industrial Property Law No. 9279/96 of May 14, 1996 (as amended by Law No. 10196 of February 14, 2001) (http://www.inpi.gov.br/menu-esquerdo/marca/dirma_legislacao/oculto/LEI9279INGLES.pdf/download (English); http://www.inpi.gov.br/menu-esquerdo/marca/dirma_legislacao/oculto/lei_92791996html (Portuguese)). (Attached hereto as Exhibit A).

9.    The legal requirements for an assignment are set forth in Articles 128 and 135. Article 128 provides that:

> Private individuals or private or public legal entities may apply for the registration of a mark. §1 - Private legal entities may only request the registration of a mark relating to the activity that they effectively and licitly exercise directly or through undertakings that they control directly or indirectly, such condition having to be declared on the actual request, subject to the penalties of the law.

and Article 135 provides that:

> An assignment must include all the registrations or applications, in the name of the assignee, for identical or similar marks relating to a product or service that is identical, similar or akin, on the pain of cancellation of the registrations or shelving of the unassigned applications.

*See* Brazilian Industrial Property Law No. 9279/96 of May 14, 1996 (as amended by Law No. 10196 of February 14, 2001) (http://www.inpi.gov.br/menu-esquerdo/marca/dirma_legislacao/oculto/LEI9279INGLES.pdf/download (English);

http://www.inpi.gov.br/menu-esquerdo/marca/dirma_legislacao/oculto/lei_92791996html (Portuguese)). (Attached hereto as Exhibit A).

10.    If an assignment satisfies Articles 128, 134 and 135, Brazilian law requires that the INPI record that assignment. Article 136 provides in pertinent part, "INPI will make a note of the following: I – assignments, indicating the complete qualification of the assignee …." (Attached hereto as Annex A). The "complete qualification of the assignee" merely means that the assignee must state the name, address, State of incorporation, and tax payer's registration number, if applicable, in the assignment form.

11.    Denis Borges Barbosa (http://denisbarbosa.addr.com/ip.htm), a well-known scholar in the intellectual property area, provides further support that Brazil has no policy interest in the assignment of registered trademarks. Mr. Barbosa notes that:

> Pursuant to section 134 of Law # 9.279/96, both the application for registration and the registration itself can be transferred provided that the assignee complies with the legal requirements for registration. The condition for the legal transaction is that the assignment encompasses all registrations and applications related to identical, similar or related products or services, under penalty of cancellation of the non-assigned registrations or applications.

*See* Denis Borges Barbosa, "An Introduction to Intellectual Property" 2003 2d Ed. p. 1057 (emphasis added).

12.    Furthermore, "the assignment can be proved by any document which demonstrates the transfer of the ownership of the trademark application or registration, such as merger, spin-off, legal or testamentary succession; or court order." Translation of Section 10 of Resolution no. 083/2001 (emphasis added) (issued by the INPI on January 2, 2002) (www.inpi.gov.br/menu-esquerdo/marca/dirma_legislacao/oculto/resolucao083_2001 (Portuguese)). (Attached hereto as Exhibit B).

13.    The INPI under the above cited provisions then provides the ministerial function of recording the document demonstrating the assignment; it does not interfere or participate in the assignment itself. *See, e.g., Massa Falida de O Alquimista Cosméticos Ltda. and G Brasil Industria e Comercio Ltda. v. Massa Falida de Giovanna Fábrica Ltda. e Notec Comercial Ltda.Appeal*, No. 448.414-4/1/00, March 13, 2007 (State Court of São Paulo) (ruling by State Court between two private parties to determine the effectiveness of a trademark assignment and declaring void the recordation of the assignment by the Brazilian trademark office without INPI being a party); *see also* http://cjo.tj.sp.gov.br/esaj/jurisprudencia/consultaCompleta.do (enter case number "448.414-4/1-00" in the field "Número do Processo")). (Attached hereto as Exhibit C).

14.    Thus, a deed of an assignment of Brazilian trademarks made pursuant to a United States court order, assuming it encompasses all Brazilian registrations and applications related to identical, similar or related products or services, will be duly noted by the INPI without further inquiry and does not run afoul of any Brazilian laws, statutes, or policy.

15.    Furthermore, the Brazilian Industrial Property Law does not require the assignment of the goodwill of the trademark with the assignment deed in order for it to be effective.

16.    Nor does Brazilian law require a "quality control" provision in the distribution agreement in order for the implied license which arises to use the trademarks to be valid. *See* discussion of implied licenses *infra* at ¶¶ 33-35. Former IP Law (Law no. 5772/71), in effect when the Brazilian trademarks were registered by Consist, did require a licensor to exercise quality control in connection with a trademark license. However there was no

penalty imposed by the former IP law for not including such a provision. There were consequences if one tried to register the license agreement without such a provision such as non-recordation by INPI or failure to benefit from tax deductions when remitting payment to a licensor abroad. However, the current IP law (Law no. 9279/96) imposes no such "quality control" obligation on the licensor and considers quality control as an optional right of the licensor.

17.    The lack of a quality control provision in the Agreement at issue in this case does not impact its validity or the validity of the implied trademark license (discussed in paragraphs 33-35 below). The quality control provision in the former IP law merely applied to the registration of trademark licenses before the INPI and did not apply to distributorship agreements even if an implied trademark license arose from the distributorship agreement. *see* ¶¶ 33-35 *infra*.

18.    In sum, Brazil has no public policy interest in regulating trademark assignments. Trademark assignments between parties in Brazil are a private matter. The INPI has the ministerial role in merely recording the assignment (not participating in the proceeding) upon the parties' request . There is no interference from the INPI or any other authority in assignments of Brazilian trademarks between parties.

19.    I have reviewed the declaration of Ricardo do Nascimento, filed on behalf of defendants Consist Software Solutions, Inc. ("Consist") and Natalio Fridman (together "Defendants").

20.    Mr. Nascimento's declaration is irrelevant to the issue of whether Brazil or the INPI has any interest in the assignment of registered trademarks. The Nascimento declaration is silent on this issue. Mr. Nascimento does not address whatsoever whether

two parties may freely <u>assign</u> a trademark between each other without interference or involvement from the INPI or any other Brazilian authorities.

21.     Instead, Mr. Nascimento discusses <u>cancellation</u> of trademarks. Thus, he focused only on Article 175 of the Brazilian IP Law (¶ 10). Software AG does not seek to cancel the trademark registrations. Nowhere in the declaration does Mr. Nascimento discuss Brazilian assignment law or the obligations of parties to an expired or terminated distribution agreement.

**Interpretation of Brazilian Law Indicates that Consist Must Assign the Trademarks to Software AG now that the Agreement Has Expired.**

22.     I understand that Brazilian law does not govern the interpretation of the exclusive distributorship agreement(s) between Software AG and Consist. However, the principles of Brazilian contract law indicate that a Brazilian court would order that Consist transfer its registrations for NATURAL and ADABAS to Software AG now that the Agreement has expired. This result further confirms that Brazil has no policy interest that conflicts with a New York court order directing the assignment of Brazilian trademarks.

23.     Brazilian Civil Code, Law No. 10,406/2002 sets forth the applicable law on contracts. It seeks to honor the intent of the parties at the time they entered into their agreement. There are also additional provisions dealing specifically with good faith when entering into and performing an agreement. A link to the law in Portuguese is found at http://www.planalto.gov.br/ccivil_03/Leis/2002/L10406.htm. I have translated into English various relevant provisions of the law below.

24.     The parties' Agreement in this case is a 1998 Distribution Agreement in which Consist was to distribute the "SYSTEMS" in the Territory for the Term. The SYSTEMS included ADABAS and NATURAL. Paragraph 5(1) provides:

> Consist acknowledges the SYSTEMS and all documentation or information as trade secrets of SAGA and undertakes to oblige its personnel to protect the SYSTEMS as well as their copyrights and trademarks and to prevent them from unauthorized use.

25.     Article 112 of the Brazilian Civil Code concerns the statements of intent in agreements. It requires that "attention shall be given more to the intention embedded therein than to the literal wording."

26.     Article 422 requires that contracting parties comply with the principles of probity and good faith both when concluding, and performing, the contract.

27.     Considering Article 422 in connection with Paragraph 5(1) quoted above, a Brazilian judge should look at the meaning of the words "protect the . . . trademarks" in light of what the parties intended by this language.

28.     While Consist registered the trademarks in "good faith" at that time it had a contractual obligation to protect those marks. The very same language, *i.e.,* "to protect" the trademarks likewise obligates Consist, under the same principle of good faith, to assign the trademarks to Software AG upon the termination of the Agreement. This is because Consist's contractual obligation to "protect" the trademarks is extinguished when the Agreement expired.

29.     Case law in Brazil confirms these principles. The <u>Gilbarco</u> case is on point. In that case, a partnership between the plaintiff and defendant expired as of December 31, 2004. After the expiration, defendant no longer had the right to use the plaintiff's trademark and company name. Like in this case, the <u>Gilbarco</u> plaintiff had not

transferred ownership rights in the trademark and name "Gilbarco" to the defendant through the contractual agreement.  (A translation of the Gilbarco case is attached as Exhibit D).

30.     The Gilbarco court held that defendant's failure to cease using the trademark and company name of plaintiff after expiration of the contractual relationship would cause irreparable harm and confusion in the international market, since "their common customers would not be able to ascertain whether there is any relation between the two companies." Id.

31.     Thus, the court ordered the Gilbarco defendant to take the necessary steps to remove "Gilbarco" from its company name before the Commercial Registry of the State of São Paulo and cease using the "Gilbarco" trademark in all media. Id.

32.     This case is not dissimilar.  Upon expiration of the Agreement Consist's duty to "protect" the trademarks of Software AG ceased and the corresponding obligation to return the trademarks to Software AG arose.

33.     The Brazilian Civil Code Law No. 10,406/2002 generally governs distribution agreements  under the heading of "Agency and Distribution".  Specifically, Article 710 provides the following :

> By means of an agency agreement, a person takes the obligation, continuously and independently, of promoting for another, upon compensation, the conduct of certain businesses in a determined zone.  The distribution occurs when the goods involved in the business are available to the agent.

(A copy of Brazilian Civil Code Law No. 10,406/2002 (Article 710) is attached as Exhibit E).

34.     The provisions in the Civil Code relating to distribution do not expressly mention trademarks.  However, an analogous law does. Brazilian Law # 6.729/79,

which regulates the distribution of road vehicles between suppliers of these products and distributor, provides to the distributor a right of a "gratuitous use" of the trademark in accordance with its Article 3 (III).

35.    Distribution agreements necessarily imply a license for use of the trademark— it is expressly so in the law cited above, and understood to be the case for distribution agreements in general.  This makes sense.  If a party is expected by grant of the distribution agreement to distribute the products of another, it must correspondingly use the trademark to identify the product distributed.  Thus a license to use the trademark only for the duration of the distribution agreement is a natural consequence of a distribution agreement.

36.    This implied license to use the trademark under a distribution agreement is an ancillary (or "accessory") obligation to the other obligations in the agreement.  Thus, if the main obligation (*i.e.,* to distribute the goods) is terminated, the corresponding ancillary obligations terminate as well.

37.    It defies business logic to allow a distributor to continue to use the trademarks when the distributor no longer has the right to distribute the products under that trademark.

38.    This doctrine has been explained in a Brazilian distribution agreement treatise as follows:

> [T]he distribution agreement often encompasses the obligations that will determine the outline of the production strategy, regarded by the jurisprudence as accessory conditions of the main agreement.  We highlight the most common ones …(ix) license to use the trademark…

Paula A. Forgioni, "Distribution Agreements", Published by Editora Revista dos Tribunais, São Paulo, 2004 p. 65.

39.     In sum, the obligation of the distributor to distribute the supplier's product, contains the ancillary obligation that it properly name those products. Thus a right to use the trademark impliedly arises. That ancillary obligation to the main agreement (*i.e.,* to distribute the goods) necessarily is extinguished when the distribution agreement expires.

40.     Thus, Brazilian Intellectual Property law, contract law and by analogy Law # 6.729/79 do not prevent this court from ordering Defendants to assign the trademarks ADABAS and NATURAL back to the supplier, *i.e.,* Software AG, pursuant to the parties' Agreement which expired by its terms on December 31, 2007.

41.     Such an assignment will be properly registered in Brazil at the INPI and it does not run afoul of any Brazilian policy or governmental authority.

**Brazilian Law Concerning "False Affirmations"**

42.     I am informed that Defendants have contended that Software AG has failed to show that applying the Lanham Act extraterritorially to false statements by Consist on its website and to the representations made by Consist to customers would not conflict with Brazilian law concerning false advertising. *See* Defendants' Findings of Fact / Conclusions of Law ¶ 59.

43.     That is incorrect. Software AG raised this point in its Reply Memorandum of Law in Support of its Motion for a Preliminary Injunction citing to Sections I and II of Article 195 of Brazil's Industrial Property Law.

44.     Article 195 prohibits the publication of a "false affirmation" in "detriment to a competitor with a view to obtaining advantage" and "false information" with "respect to a competitor," "with a view to obtaining advantage." Industrial Property Law of Brazil,

no. 9279/96 (May 14, 1996), as amended by Law 10.196 (February 14, 2001) (Attached hereto as Exhibit A).

45.    Thus, both the Lanham Act and the Brazilian Industrial Property Law aim to protect consumers and competitors alike from engaging in deceitful behavior in the market.   To my knowledge, Consist has never raised any contrary law on this point and I know of none in Brazil.  It does not conflict with Brazilian law therefore to order a competitor to refrain from issuing false affirmations in the marketplace.


I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on:   February 12, 2008
               São Paulo, Brazil

_____
Esther Miriam Flesch

A − Part 1.

# Lei 9279/96 (versão em inglês)

LAW N° 9279

OF 14th MAY 1996

(published on 15th of May 1996)

Regulating rights and obligations relating to industrial property.

PRELIMINARY PROVISIONS

Article 1 - This law regulates rights and obligations relating to industrial property.

Article 2 - The protection of rights relating to industrial property, taking into account the interests of society and the technological and economic development of the country, is effected by means of:

I - the grant of patents of invention and utility model patents;

II - the grant of industrial design registrations;

III - the grant of trademark registrations;

IV - the repression of false geographical indications; and

V - the repression of unfair competition.

Article 3 - The provisions of this law also apply:

I - to an application for a patent or registration originating from abroad and filed in this country by a person having protection guaranteed by a treaty or convention in force in Brazil; and

II - to nationals or persons domiciled in a country that guarantees reciprocity of identical or equivalent rights to Brazilians or persons domiciled in Brazil.

Article 4 - The provisions of treaties in force in Brazil, are applicable, in equal conditions, to natural and legal persons that are nationals or domiciled in this country.

Article 5 - For all legal effects, industrial property rights are considered to be chattels

TITLE I

PATENTS

CHAPTER I

OWNERSHIP

Article 6 - The author of an invention or of a utility model will be assured the right to obtain a patent that guarantees to him the property, under the terms established by this law.

§ 1 - In the absence of proof to the contrary, the applicant is presumed to have the right to obtain a patent.

§ 2 - A patent may be applied for   by the author, his heirs or successors, by the assignee or by whoever the law or a work or service contract determines to be the owner.

§ 3 - When an invention or utility model is created jointly by two or more persons, the patent may be applied for  by all or any one of them, by naming and qualifying the others to guarantee their respective rights.

§ 4 - The author will be named and qualified, but may request his authorship not to be divulged.

Article 7 - If two or more authors have independently devised   the same invention or utility model, the right to obtain a patent will be assured to whoever proves the earliest filing, independently of the dates of invention or creation.

*Sole Paragraph* - The withdrawal of an earlier filing without producing any efects will give priority to the first later filing.

CHAPTER II

PATENTABILITY

Section I

Patentable Inventions and Utility Models

Article 8 - To be patentable an invention must meet the requirements of novelty, inventive activity and industrial application.

Article 9 - An object of practical use, or part thereof, is patentable as a utility model, when it is susceptible of industrial application, presents a new shape or arrangement and involves an inventive act that results in a functional improvement in its use or manufacture.

Article 10 - The following are not considered to be inventions or utility models:

I - discoveries, scientific theories and mathematical methods;

II - purely abstract concepts;

III - schemes, plans, principles or methods of a commercial, accounting, financial, educational, publishing, lottery or fiscal nature;

IV - literary, architectural, artistic and scientific works or any aesthetic creation;

V - computer programmes per se;

VI - the presentation of information;

VII - rules of games;

VIII - operating or surgical techniques and therapeutic or diagnostic methods, for use on the human or animal body; and

IX - natural living beings, in whole or in part, and biological material, including the genome or germ plasm of any natural living being, when found in nature or isolated therefrom, and natural biological processes.

Article 11 - Inventions and utility models are considered to be new when not included in the state of the art.

§ 1 - The state of the art comprises everything made accessible to the public before the date of filing of a patent application, by written or oral description, by use or any other means, in Brazil or abroad, without prejudice to the provisions of articles 12, 16 and 17.

§ 2 - For the purpose of determining novelty, the whole contents of an application filed in Brazil, but not yet published, will be considered as state of the art from the date of filing, or from the priority claimed, provided that it is published, even though subsequently.

§ 3 - The provisions of the previous paragraph will be applied to an international patent application filed in accordance with a treaty or convention in force in Brazil, provided that there is national processing.

Article 12 - The disclosure of an invention or utility model which occurs during the twelve months preceding the date of filing or priority of the patent application will not be considered as part of the state of the art, provided such disclosure is made:

I - by the inventor;

II - by the National Institute of Industrial Property - INPI, by means of the official publication of a patent application filed without the consent of the inventor and based on information obtained from him or as a result of his acts; or

III - by third parties, on the basis of information received directly or indirectly from the inventor or as the result of his acts.

*Sole Paragraph* - INPI may require the inventor to provide a declaration relating to the disclosure, accompanied or not by proof, under the conditions established in the rules.

Article 13 - An invention shall be taken to involve inventive activity when, for a person skilled in the art, it does not derive in an evident or obvious manner from the state of the art.

Article 14 - A utility model shall be taken to involve an inventive act when, for a person skilled in the art, it does not derive in a common or usual manner from the state of the art.

Article 15 - Inventions and utility models are considered to be susceptible of industrial application when they can be made or used in any kind of industry.

Section II

Priority

Article 16 - Priority rights will be guaranteed to a patent application filed in a country that maintains an agreement with Brazil or in an international organisation, that produces the effect of a national filing, within the time limits established in the agreement, the filing not being invalidated nor prejudiced by facts that occur within such time limits.

§ 1 - Priority claims must be made at the time of filing, but may be supplemented within 60 (sixty) days by other priorities earlier than the date of filing in Brazil.

§ 2 - A priority claim must be proved by means of a suitable document of origin, containing the number, date, title, specification and, when they exist, claims and drawings, accompanied by a simple translation of the certificate of filing or equivalent document containing data identifying the application, the contents of which will be of the entire responsibility of the applicant.

§ 3 - If not effected at the time of filing, the proof must be presented within 180 (one hundred and eighty) days from filing.

§ 4 - For international applications filed in virtue of a treaty in force in Brazil, the translation provided for in § 2 must be filed within the period of 60 (sixty) days from the date of entry into national processing.

§ 5 - When the application filed in Brazil is completely contained in the document of origin, a declaration by the applicant in this respect will be sufficient to substitute the simple translation.

§ 6 - When the priority is obtained by virtue of assignment, the corresponding document must be filed within 180 (one hundred and eighty) days from filing or, in the case of entry into national processing, within 60 (sixty) days from the date of such entry, consular legalisation in the country of origin not being required.

§ 7 - Failure to file proof within the time limits established in this article will result in loss of the priority.

§ 8 - In the case of an application filed with a priority claim, any request for early publication must be made with proof of the priority having been filed.

Article 17 - An application for a patent of invention or for a utility model originally filed in Brazil, without a priority claim and not yet published, will guarantee a right of priority to a later application in respect of the same subject matter filed in Brazil by the same applicant or by his successors, within the period of 1 (one) year.

§ 1 - Priority will only be recognised for subject matter that is disclosed in the earlier application and will not extend to any new matter that is introduced.

§ 2 - The pending earlier application will be considered as definitively shelved.

§ 3 - A patent application resulting from the division of an earlier application cannot serve as the basis for a priority claim.

Section III

Non-patentable Inventions and Utility Models

Article 18 - The following are not patentable:

I - that which is contrary to morals, good customs and public security, order and health;



II - substances, matter, mixtures, elements or products of any kind, as well as the modification of their physical-chemical properties and the respective processes of obtaining or modifying them, when they result from the transformation of the atomic nucleus; and

III - living beings, in whole or in part, except transgenic micro-organisms meeting the three patentability requirements - novelty, inventive activity and industrial application - provided for in article 8 and which are not mere discoveries;

*Sole Paragraph* - For the purposes of this law, transgenic micro-organisms are organisms, except the whole or part of plants or animals, that exhibit, due to direct human intervention in their genetic composition, a characteristic that can not normally be attained by the species under natural conditions.

CHAPTER III

PATENT APPLICATIONS

Section I

Filing of the Application

Article 19 - A patent application, in accordance with the conditions established by INPI, will contain:

I - a request;

II - a specification;

III - claims;

IV- drawings, if any;

V - an abstract; and

VI - proof of payment of the filing fee.

Article 20 - Once presented, the application will be submitted to a formal preliminary examination and, if in due order, will be protocolled, the date of presentation being considered as the filing date.

Article 21 - An application that does not formally meet the requirements of article 19, but which does contain data relating to the subject matter, the applicant and the inventor, may be delivered to INPI against a dated receipt which will establish the requirements to be met within a period of 30 (thirty) days, on pain of return or shelving of the documentation.

*Sole Paragraph* - Once the requirements have been met, filing will be considered to have been made on the date of the receipt.

Section II

Conditions of the Application

Article 22 - An application for a patent of invention must refer to a single invention or to a group of inventions so interrelated as to comprise a single inventive concept.

Article 23 - An application for a utility model must refer to a single principal model that may include a plurality of distinct additional elements or structural or configurative variations, provided that technical-functional and corporeal unity of the object is maintained.

Article 24 - The specification must describe the subject matter clearly and sufficiently so as to enable a person skilled in the art to carry it out and to indicate, when applicable, the best mode of execution.

*Sole Paragraph* - In the case of biological material essential for the practical execution of the subject matter of the application, which cannot be described in the form of this article and which has not been accessible to the public, the specification will be supplemented by a deposit of the material in an institution authorised by INPI or indicated in an international agreement.

Article 25 - The claims must be based on the specification, characterising the particularities of the application and defining clearly and precisely the subject matter to be protected.

Article 26 - A patent application may, until the end of examination, be divided, *ex officio* or on request of the applicant, into two or more applications, provided that the divisional application:

I - makes specific reference to the original application; and

II - does not exceed the matter disclosed in the original application.

*Sole Paragraph* - A request for division not in accordance with the provisions of this article will be shelved.

Article 27 - Divisional applications will have the filing date of the original application and the benefit of the priority of the latter, if any.

Article 28 - Each divisional application will be subject to payment of the corresponding fees.

Article 29 - A patent application which is withdrawn or abandoned will be published.

§ 1 - A request for withdrawal must be filed within 16 (sixteen) months counted from the date of filing or of the earliest priority.

§ 2 - Withdrawal of an earlier application without producing any effect will confer priority on the first later application.

Section III

Prosecution and examination of an application

Article 30 - A patent application will be kept secret during 18 (eighteen) months counted from the date of filing or of the earliest priority, if any, after which it will be published, with the exception of the case provided for in article 75.

§ 1 - Publication of the application may be anticipated on request by the applicant.

§ 2 - The publication must include data identifying the patent application, a copy of the specification, claims, abstract and drawings being made available to the public at INPI.

§ 3 - In the case provided for in the sole paragraph of article 24, the biological material will be made available to the public at the time of the publication to which this article refers.

Article 31 - Documents and information for aiding examination may be filed by interested parties between the publication of the application and the termination of examination.

*Sole Paragraph* - Examination will not be initiated prior to 60 (sixty) days from publication of the application.

Article 32 - In order better to clarify or define a patent application, the applicant may effect alterations up to the request for examination, provided that they be limited to the subject matter initially disclosed in the application.

Article 33 - Examination of a patent application must be requested by the applicant or by any interested party, within 36 (thirty six) months counted from the date of filing, under pain of shelving of the application.

*Sole Paragraph* - The patent application may be reinstated, on request by the applicant, within 60 (sixty) days counted from the shelving, on payment of a specific fee, under pain of definitive shelving.

Article 34 - Once examination has been requested and whenever so requested, the following should be filed within 60 (sixty) days, on pain of shelving of the application:

I - objections, prior art searches and the results of examination for the grant of corresponding applications in other countries, when there is a priority claim;

II - documents necessary to regularise the proceedings and examination of the application; and

III - a simple translation of the suitable document mentioned in § 2 of article 16, should it have been substituted by the declaration provided for in § 5 of that same article.

Article 35 - At the time of the technical examination, a search report and an opinion will be prepared with respect to:

I - the patentability of the application;

II - the adaptation of the application to the nature of protection claimed;

III - the reformulation of the application or the division thereof; or

IV - technical requirements.

Article 36 - When the opinion is for non-patentability or for the inadequacy of the application for the nature of protection claimed or formulates any requirement, the applicant will be notified to reply within a period of 90 (ninety) days.

§ 1 - If no reply to a requirement is filed, the application will be definitively shelved.

§ 2 - If a reply to a requirement is filed, but the latter is not met or its formulation is contested, and independently of arguments being filed regarding patentability or adequacy, examination will be continued.

Article 37 - Once examination is concluded, a decision will be issued, allowing or rejecting the patent application.

CHAPTER IV

PATENT GRANT AND TERM

Section I

Patent Grant

Article 38 - A Patent will be granted after the application is allowed and, after proving payment of the corresponding fee, the respective letters-patent will be issued.

§ 1 - Payment of the fee and the respective proof thereof must be effected within 60 (sixty) days from allowance.

§ 2 - The fee provided for in this article may also be paid and proved within 30 (thirty) days after the time limit provided for in the previous paragraph, independently of any notification, by payment of a specific fee, on pain of definitive shelving of the application.

§ 3 - The patent will be considered granted as of the date of publication of the respective act.

Article 39 - The letters-patent will include the respective number, title and nature of protection, the name of the inventor, observing the provisions of article 6, § 4, the qualification and domicile of the patentee, the term, the specification, the claims and the drawings, as well as data relating to the priority.

Section II

Patent Term

Article 40 - A Patent of invention will have a term of 20 (twenty) years and a utility model patent a term of 15 (fifteen) years, counted from the filing date.

*Sole Paragraph* - The term will not be less than 10 (ten) years for patents of invention and 7 (seven) years for utility model patents, counted from grant, except when INPI is prevented from proceeding with the examination as to the merit of the application, due to a proven *pendente lite* or for reasons of "force majeure".

CHAPTER V

PROTECTION CONFERRED BY A PATENT

Section I

The Rights

Article 41 - The extension of the protection conferred by a patent will be determined by the content of the claims, interpreted in the light of the specification and drawings.

Article 42 - A patent confers on its proprietor the right to prevent third parties from manufacturing, using, offering for sale, selling or importing for such purposes without his consent:

I - a product that is the subject of a patent;

II - a process, or product directly obtained by a patented process;

§ 1 - The patentee is further guaranteed the right to prevent third parties from contributing to the practice by other parties of the acts referred to in this article.

§ 2 - The rights in a process patent will be violated, insofar as item II is concerned, when the holder or owner of a product fails to prove, through specific judicial ruling, that it was obtained by a manufacturing process different from that protected by the patent.

Article 43 - The provisions of the previous article do not apply:

I - to acts practised by unauthorised third parties privately and without commercial ends, provided they do not result in prejudice to the economic interests of the patentee;

II - to acts practised by unauthorised third parties for experimental purposes, related to studies or to scientific or technological research;

III - to the preparation of a medicine according to a medical prescription for individual cases, executed by a qualified professional, as well as to a medicine thus prepared;

IV - to a product manufactured in accordance with a process or product patent that has been placed on the internal market directly by the patentee or with his consent;

V - to third parties who, in the case of patents related to living matter, use, without economic ends, the patented product as the initial source of variation or propagation for obtaining other products; and

VI - to third parties who, in the case of patents related to living matter, use, place in circulation or commercialise a patented product that has been introduced lawfully onto the market by the patentee or his licensee, provided that the patented product is not used for commercial multiplication or propagation of the living matter in question.

Article 44 - A patentee is guaranteed the right to obtain compensation for the unauthorised exploitation of the subject matter of the patent, including exploitation that occurred between the date of publication of the application and that of grant of the patent.

§ 1 - If the infringer obtains, by any means, knowledge of the contents of a filed application, prior to publication, the period of undue exploitation, for the effect of compensation, will be counted from the date of commencement of the exploitation.

§ 2 - When the subject matter of a patent application relates to biological material, deposited under the terms of the sole paragraph of article 24, the right to compensation will only be conferred when the biological material has been made available to the public.

§ 3 - The right to obtain compensation for unauthorised exploitation, including with respect to the period prior to grant of the patent, is limited to the contents of the subject matter of the patent, under the terms of article 41.

Section II

Prior User

Article 45 - A person who in good faith, prior to the date of filing or of priority of a patent application, exploits its object in this country, will be guaranteed without onus the right to continue the exploitation, in the previous form and conditions.

§ 1 - The right conferred under the terms of this article can only be ceded by transfer or leasing, together with the business of the undertaking, or the part thereof that has direct relation with the exploitation of the subject matter of the patent.

§ 2 - The right to which this article refers will not be guaranteed to a person who had knowledge of the subject of the patent due to disclosure under the terms of article 12, provided that the application was filed within 1 (one) year from the disclosure .

CHAPTER VI

PATENT NULLITY

Section I

General Provisions

Article 46 - A patent is null when granted contrary to the provisions of this law.

Article 47 - Nullity may not be applicable to all of the claims, a condition for partial nullity being that the subsisting claims constitute subject matter that is patentable per se.

Article 48 - Nullity of a patent will produce effects as from the filing date of the application.

Article 49 - In the case of the provisions of article 6 not having been observed, the inventor may alternatively claim, in a court action, the adjudication of the patent.

Section II

Administrative Nullity Procedure

Article 50 - Nullity of a patent will be declared administratively when:

I - any of the legal requisites have not been met;

II - the specification and the claims do not meet the provisions of articles 24 and 25, respectively;

III - the subject of protection of the patent extends beyond the contents of the application as originally filed; or

IV - any of the essential formalities indispensable for grant were omitted during prosecution.

Article 51 - The nullity procedure may be instituted *ex officio* or at the request of any person having legitimate interest, within 6 (six) months counted from the grant of the patent.

*Sole Paragraph* - The nullity procedure will continue even if the patent is extinct.

Article 52 - The patentee will be notified to respond within a period of 60 (sixty) days.

Article 53 - Independently of a reply having been filed, once the period determined in the previous article has passed, INPI will issue an opinion, notifying the patentee and the applicant to reply within a common period of 60 (sixty) days.

Article 54 - Once the period determined in the previous article has passed, even if no replies have been presented, the process will be decided by the President of INPI, terminating the administrative instance.

Article 55 - The provisions of this Section apply, where appropriate, to certificates of addition.

Section III

Nullity Actions

Article 56 - A nullity action can be filed at any time during the term of a patent by INPI or by any legitimately interested party.

§ 1 - Nullity of a patent may be argued, at any time, as matter for defence.

§ 2 - The judge may, as a preventive or incidental measure, determine the suspension of the effects of a patent, provided the relevant procedural requirements are met.

Article 57 - Nullity actions will be adjudged in the forum of the Federal Courts, and INPI, when not plaintiff, will participate in the action.

§ 1 - The period for the defendant to reply will be 60 (sixty) days.

§ 2 - Once the decision on a nullity action becomes *res judicata*, INPI will publish a notice to inform third parties.

CHAPTER VII

ASSIGNMENT AND NOTATIONS

Article 58 - A patent application or patent, the contents of which are indivisible, may be assigned in whole or in part.

Article 59 - INPI will make the following notations:

I - assignments, mentioning the complete qualification of the assignee;

II - any limitation or onus applied to the application or patent; and

III - alterations of name, headquarters or address of the applicant or patentee.

Article 60 - Notations will produce effect with regard to third parties as from the date of their publication.

CHAPTER VIII

LICENSES

Section I

Voluntary Licenses

Article 61 - A patentee or applicant may execute a license contract for exploitation.

*Sole Paragraph* - The licensee may be invested by the patentee with all powers to act in defence of the patent.

Article 62 - A license contract must be recorded at INPI to produce effect with regard to third parties.

§ 1 - The recordal will produce effect with regard to third parties as from the date of its publication.

§2 - A license contract need not be recorded at INPI for it to have effect for validating proof of use.

Article 63 - Any improvement to a licensed patent belongs to the person who made it, the other contracting party being guaranteed the right of preference with respect to a license.

Section II

Offer to License

Article 64 - A patentee may request INPI to place his patent under offer with a view to its exploitation.

§ 1 - INPI will promote publication of the offer.

§ 2 - No exclusive voluntary license contract will be recorded by INPI without the patentee having withdrawn the offer.

§ 3 - No patent subject to an exclusive voluntary license may be made the subject of an offer.

§ 4 - The patentee may withdraw the offer at any time prior to the express acceptance of its terms by an interested party, whereby the provisions of article 66 will not apply.

Article 65 - In the absence of an agreement between the patentee and the licensee, the parties may request INPI to arbitrate the remuneration.

§ 1 - For the effects of this article, INPI will observe the provisions of § 4 of article 73.

§ 2 - The remuneration may be reviewed after 1 (one) year of it being established.

Article 66 - A patent under offer will have its annuities reduced by one half during the period between the offer and the grant of the first license of any type.

Article 67 - The patentee may request cancellation of the license if the licensee does not initiate effective exploitation within 1 (one) year of the grant of the license, interrupts exploitation for a period longer than 1 (one) year or, further, if the conditions for exploitation are not obeyed.

Section III

Compulsory Licenses

Article 68 - A patentee will be subject to have his patent licensed compulsorily if he exercises the rights resulting therefrom in an abusive manner or by means of it practices abuse of economic power that is proven under the terms of the law by an administrative or court decision.

§ 1 - The following may also result in a compulsory license:

I - the non-exploitation of the subject matter of the patent in the territory of Brazil, by lack of manufacture or incomplete manufacture of the product or, furthermore, by lack of complete use of a patented process, except in the case of non-exploitation due to economic inviability, when importation will be admitted; or

II - commercialisation that does not meet the needs of the market.

§ 2 - The license can only be requested by a party with legitimate interest and that has the technical and economic capacity to carry out the efficient exploitation of the subject matter of the patent, that should be destined predominantly for the internal market, suppressing, in this case, the exception provided for in item I of the previous paragraph.

§ 3 - In the case that a compulsory license is granted due to abuse of economic power, a period of time, limited to that provided for in article 74, will be guaranteed to the licensee proposing to manufacture locally, to proceed with the importation of the subject matter of the license, provided it has been placed on the market directly by the patentee or with his consent

§ 4 - In the case of importation for exploitation of a patent and in the case of importation provided for in the previous paragraph, the importation by third parties of a product manufactured according to a process or product patent will equally be allowed, provided it has been placed on the market directly by the patentee or with his consent.

§ 5 - A compulsory license, to which § 1 relates, may only be requested after 3 (three) years from grant of the patent.

Article 69 - A compulsory license will not be granted if, at the date of the request, the patentee:

I - justifies non-use for legitimate reasons;

II - proves that serious and effective preparations for exploitation have been carried out; or

III - justifies lack of manufacture or commercialisation due to legal obstacles.

Article 70 - A compulsory license will also be granted when the following hypotheses are shown to exist cumulatively:

I - a situation of dependency of one patent on another is characterised;

II - the subject matter of the dependent patent constitutes a substantial technical advance in relation to the earlier patent; and

III - the patentee does not come to an agreement with the patentee of the dependent patent for the exploitation of the earlier patent.

§ 1 - For the purposes of this article, a dependent patent is considered to be one the exploitation of which depends obligatorily on the use of the subject matter of the earlier patent.

§ 2 - For the purposes of this article, a process patent may be considered as dependent on a patent for the respective product, as also a product patent may be dependent upon a process patent.

§ 3 - The proprietor of a patent licensed under the terms of this article will have the right to a compulsory cross license under the dependent patent.

Article 71 - In cases of national emergency or public interest, declared in an act of the Federal Executive Authorities, insofar as the patentee or his licensee does not meet such necessity, a temporary *ex officio* non-exclusive compulsory license for the exploitation of the patent may be granted, without prejudice to the rights of the respective patentee.

*Sole Paragraph* - The act of grant of the license will establish its term of validity and the possibility of extension.

Article 72 - Compulsory licenses will always be granted without exclusivity, sublicensing not being permitted.

Article 73 - An application for a compulsory license must be formulated by indicating the conditions offered to the patentee.

§ 1 - Once the application for a license has been filed, the patentee will be notified to respond within a period of 60 (sixty) days, at the end of which, in the absence of a response from the patentee, the proposal will be considered as accepted under the conditions offered.

§ 2 - An applicant for a license who alleges abuse of patent rights or abuse of economic power must file documentary proof.

§ 3 - If a compulsory license is requested on the basis of lack of exploitation, it will rest with the patentee to prove exploitation.

§ 4 - If there is a contestation, INPI may take the necessary steps, including the establishment of a committee that may include specialists that are not part of INPI, with a view to arbitrating the remuneration that will be paid to the patentee.

§ 5 - The organs and entities of the direct or indirect, federal, state and municipal public administration will provide INPI with such information as is requested with a view to assisting the arbitration of remuneration.

§ 6 - In arbitrating remuneration, the circumstances of each case will be considered, taking into account obligatorily the economic value of the license granted.

§ 7 - Once the process is duly filed, INPI will come to a decision regarding the grant and the conditions of the compulsory license within a period of 60 (sixty) days.

§ 8 - Appeals against decisions granting a compulsory license will not have suspensive effects.

Article 74 - In the absence of legitimate reasons, the licensee must initiate exploitation of the subject matter of the patent within a period of 1 (one) year from the grant of the license, interruption for an equal period being permitted.

§ 1 - The patentee may request revocation of the license if the provisions of this article are not met.

§ 2 - The licensee will be vested with all powers to act in defence of the patent.

§ 3 - After grant of a compulsory license, the assignment thereof will only be permitted when effected together with the assignment, transfer or leasing of that part of the undertaking that exploits it.

CHAPTER IX

PATENTS OF INTEREST TO NATIONAL DEFENCE

Article 75 - A patent application originated in Brazil the object of which is of interest to national defence will be processed in secrecy and will not be subject to the publications provided for in this law.

§ 1 - INPI will send the application immediately to the competent organ of the Executive Authorities for the purpose of providing, within 60 (sixty) days, an opinion regarding secrecy. After such period has passed without any opinion by the competent organ, the application will be processed normally.

§ 2 - Excepting express authorisation by the competent organ, the filing abroad of a patent application the subject matter of which is considered to be of interest to national defence, as well as any disclosure thereof, is prohibited.

§ 3 - The exploitation and the assignment of an application or patent of interest to national defence are conditioned to prior authorisation by the competent organ, due compensation being guaranteed whenever this implies a restriction to the rights of the applicant or patentee.

CHAPTER X

CERTIFICATE OF ADDITION OF AN INVENTION

Article 76 - On payment of a specific fee, the applicant or patentee of a patent of invention may request a certificate of addition to protect an improvement or development introduced in the subject matter of the invention, even if lacking inventive activity, provided that it shares the same inventive concept.

§ 1 - If publication of the main application has already taken place, the application for the certificate of addition will be published immediately.

§ 2 - Examination of the application for a certificate of addition will be in accordance with the provisions of articles 30 to 37, without prejudice to the provisions of the previous paragraph.

§ 3 - An application for a certificate of addition will be rejected if its subject matter does not involve the same inventive concept.

§ 4 - The applicant may, within the period for appeal, by payment of the corresponding fee, request the conversion of an application for a certificate of addition into a patent application benefiting from the date of filing of the application for the certificate.

Article 77 - A certificate of addition is accessory to the patent, has the same expiry date and accompanies it for all legal effects.

*Sole Paragraph* - In a nullity process, the patentee may request that the subject matter contained in the certificate of addition be examined to verify the possibility of its subsistence, without prejudice to the term of protection of the patent.

CHAPTER XI

EXTINCTION OF PATENTS

Article 78 - A patent shall become extinct:

I - on expiry of the term of protection;

II - on waiver by the patentee, without prejudice to the rights of third parties;

III - on forfeiture;

IV - on non-payment of the annual fee, within the periods provided for in § 2 of article 84 and in article 87; and

V - on non-observance of the provisions of article 217.

*Sole Paragraph* - Once a patent becomes extinct, its object falls within the public domain.

Article 79 - Waiver will only be permitted if it does not prejudice the rights of third parties.

Article 80 - A patent becomes forfeit, *ex officio,* or at the request of any party with a legitimate interest if, after 2 (two) years from the grant of the first compulsory license, such period has not been sufficient to prevent or correct abuse or disuse, excepting legitimate reasons.

§ 1 - A patent will become forfeit when, on the date of application for forfeiture or of the *ex officio* commencement of the respective process, its exploitation has not been initiated.

§ 2 - In the process for forfeiture commenced at the request of any party with a legitimate interest, INPI may continue the process on desistment by that party.

Article 81 - The patentee will be notified to respond to the forfeiture request within a period of 60 (sixty) days, the onus of proof regarding exploitation falling on him.

Article 82 - A decision will be pronounced within 60 (sixty) days counted from the end of the period mentioned in the previous article.

Article 83 - A decision of the forfeiture process will produce effect as from the day of the request or of the publication of the commencement of the *ex officio* process.

CHAPTER XII

ANNUAL FEES

Article 84 - The applicant and patentee are subject to the payment of annual fees, as from the beginning of the third year from the date of filing.

§ 1 - Advance payment of the annual fees will be regulated by INPI.

§ 2 - The payment should be effected within the first 3 (three) months of each annual period, but may still be effected within the following 6 (six) months, independently of notification, by payment of an additional fee.

Article 85 - The provisions of the previous article apply to international applications filed in virtue of a treaty in force in Brazil, the payment of annual fees due before the date of entry into national processing having to be effected within a period of 3 (three) months from that date.

Article 86 - Failure to pay an annual fee, under the terms of articles 84 and 85, will result in the shelving of the application or extinction of the patent.

CHAPTER XIII

RESTORATION

Article 87 - A patent application and patent may be restored, if the applicant or patentee so requests, within 3 (three) months counted from notification of shelving of the application or extinction of the patent, on payment of a specific fee.

CHAPTER XIV

INVENTIONS AND UTILITY MODELS MADE BY EMPLOYEES OR SUPPLIERS OF SERVICES

Article 88 - An invention or utility model will belong exclusively to the employer when it results from a work contract being executed in Brazil and the object of which is research or the exercise of inventive activity or when such results from the nature of the services for which the employee was contracted.

§1 - Except when there are express contractual provisions to the contrary, remuneration for the work to which this article refers will be limited to the salary agreed upon.

§ 2 - In the absence of proof to the contrary, an invention or utility model for which a patent is requested by an employee within 1 (one) year from the extinction of the contract of employment will be considered as having been developed while the contract was in force.

Article 89 - An employer, who is the proprietor of a patent, may grant the employee, who is the author of the invention or improvement, participation in the economic gains resulting from the exploitation of the patent, as a result of negotiation with the interested party or as provided for by a norm of the undertaking.

*Sole Paragraph* - The participation referred to in this article will not in any way be incorporated into the salary of the employee.

Article 90 - An invention or utility model developed by an employee will belong exclusively to the employee provided that it is unconnected to his work contract and when it does not result from the use of resources, means, data, materials, installations or equipment of the employer.

Article 91 - The ownership of an invention or utility model will be common, in equal parts, when it results from the personal contribution of the employee and from resources, data, means, materials, installations or equipment of the employer, without prejudice to express contractual provisions to the contrary.

§ 1 - When there is more than one employee, the part due to them will be divided equally between all of them, except when agreed to the contrary.

§ 2 - The employer will be guaranteed the right to an exclusive license for exploitation and the employee will be guaranteed fair remuneration.

§ 3 - Exploitation of the subject matter of the patent, in the absence of an agreement, must be initiated by the employer within 1 (one) year counted from the date of grant, under pain of the property in the patent being transferred to the exclusive ownership of the employee, without prejudice to the hypothesis of lack of exploitaiton for legitimate reasons.

§ 4 - In the case of assignment, any of the co-owners may exercise the right of preference under identical conditions.

Article 92 - The provisions of the preceding articles, as far as they are applicable, apply to the relationship between an autonomous worker or a trainee and the contracting undertaking and between contracting and contracted undertakings.

Article 93 - The provisions of this Chapter, as far as they are applicable, apply to entities of the direct or indirect and foundational, federal, state or municipal, Public Administration.

*Sole Paragraph* - In the hypothesis of article 88, a reward corresponding to part of the value of the advantages obtained as a result of the application or the patent will be guaranteed to the inventor, under the terms and conditions provided for in the statutes or internal regulations of the entity to which this article refers.

TITLE II

INDUSTRIAL DESIGNS

CHAPTER I

OWNERSHIP

Article 94 - The author is assured the right to obtain a registration of an industrial design that guarantees to him the property, under the terms established by this law.

*Sole Paragraph* - As far as they are applicable, the provisions of articles 6 and 7 will apply to the registration of industrial designs.

CHAPTER II

REGISTRABILITY

Section I

Registrable Industrial Designs

Article 95 - An industrial design is considered to be any ornamental plastic form of an object or any ornamental arrangement of lines and colours that may be applied to a product, that provides a new and original visual result in its external configuration, and that may serve as a type for industrial manufacture.

Article 96 - An industrial design is considered to be new when not comprised by the state of the art.

§ 1 - The state of the art comprises everything made accessible to the public before the date of filing of the application, in Brazil or abroad, by use or any other means, without prejudice to the provisions of § 3 of this article and of article 99.

§ 2 - For the sole purpose of determining novelty, the whole contents of an application for a patent or a registration filed in Brazil, but not yet published, will be considered as included in the state of the art from the date of filing, or from the priority claimed, provided that it is published, even though subsequently.

§ 3 - An industrial design of which disclosure occurred within the 180 (one hundred and eighty) days preceding the date of filing the application or of the priority claimed will not be considered as included in the state of the art, provided such disclosure is made in accordance with the situations provided for in items I to III of article 12.

Article 97 - An industrial design is considered original when it results in a distinctive visual configuration in relation to other prior objects.

*Sole Paragraph* - The original visual result may be the result of the combination of known elements.

Article 98 - Works of a purely artistic nature are not considered to be industrial designs.

Section II

Priority

Article 99 - As far as they are applicable, the provisions of article 16, except for the time limit provided for in § 3 of that article, which will be 90 (ninety) days, apply to applications for registration.

Section III

Non-Registrable Industrial Designs

Article 100 - An industrial design is not registrable for:

I - that which is contrary to morals and good customs or which offends the honour or image of people or is contrary to the liberty of conscience, belief, religious cults or ideas and feelings worthy of respect and veneration.

II - the necessary common or ordinary shape of an object or, further, that which is determined essentially by technical or functional considerations.

CHAPTER III

APPLICATIONS FOR REGISTRATION

Section I

Filing of the application

Article 101 - An application for registration, in accordance with conditions established by INPI, will contain:

I - a request;

II - a specification, if applicable;;

III - claims, if applicable;

IV - drawings or photographs;

V - the field of application of the object; and

VI - proof of payment of the filing fee.

*Sole Paragraph* - The documents that comprise an application for registration must be filed in the Portuguese language.

Article 102 - Once presented, the application will be submitted to a formal preliminary examination and, if in due order, will be protocolled, the filing date being considered to be the date of presentation.

Article 103 - An application that does not formally meet the requirements of article 101, but which does contain sufficient data relating to the applicant, to the industrial design and to the author, may be delivered to INPI against a dated receipt which will establish the requirements to be met within a period of 5 (five) days, on pain of being considered non-existent.

*Sole Paragraph* - Once the requirements have been met, filing will be considered to have been made on the date of presentation of the application.

Section II

Conditions of the Application

Article 104 - An application for an industrial design registration must refer to a single object, a plurality of variations being permitted, provided that they are destined for the same purpose and maintain between them the same preponderant distinctive characteristic, each application being limited to a maximum of 20 (twenty) variations.

*Sole Paragraph* - The drawing must clearly and sufficiently represent the object and its variations, if they exist, so as to allow its reproduction by a person skilled in the art.

Article 105 - When secrecy is requested under the terms of article 106, § 1, the application may be withdrawn up to 90 (ninety) days counted from the date of filing.

*Sole Paragraph* - Withdrawal of an earlier application without producing any effect will confer priority on the first later application.

Section III

Prosecution and examination of an application

Article 106 - Once an application for an industrial design registration has been filed and the provisions of articles 100, 101 and 104 have been observed, it will be published automatically and the registration will be simultaneously granted, the respective certificate being issued.

§ 1 - On request by the applicant at the time of filing, the application may be kept secret for a period of 180 (one hundred and eighty) days counted from the filing date, after which it will be processed.

§ 2 - If the applicant avails himself of the provisions of article 99, processing of the application will await presentation of the priority document.

§ 3 - If the provisions of articles 101 and 104 are not met, a requirement will be made to which a response should be filed within 60 (sixty) days, on pain of definitive shelving.

§ 4 - If the provisions of article 100 are not met, the application for registration will be rejected.

CHAPTER IV

GRANT AND TERM OF THE REGISTRATION

Article 107 - The certificate must include the number and title, the name of the author, observing the provisions of § 4 of article 6, the name, nationality and domicile of the registrant, the term, the drawings, data relating to any foreign priority and, when applicable, the specification and claims.

Article 108 - The registration will have a term of 10 (ten) years counted from the date of filing and will be renewable for three successive periods of 5 (five) years each.

§ 1 - An application for renewal must be made during the last year of the term of the registration and be accompanied by proof of payment of the respective fee.

§ 2 - If an application for renewal has not been requested prior to the end of the term of the registration, the registrant may make such request within the subsequent 180 (one hundred and eighty) days, on payment of an additional fee.

CHAPTER V

PROTECTION CONFERRED BY A REGISTRATION

Article 109 - The property in an industrial design is acquired by a validly granted registration.

*Sole Paragraph* - As far as applicable, the provisions of article 42 and of items I, II and IV of article 43, will apply.

Article 110 - A person who in good faith, prior to the date of filing or of the priority of an application for registration, exploited the subject matter in this country, will be guaranteed the right to continue the exploitation in the previous manner and conditions, without onus.

§ 1 - The right conferred under the terms of this article can only be ceded, by transfer or leasing, together with the business or undertaking, or part thereof that has direct relation with the exploitation of the object of the registration.

§ 2 - The right to which this article refers will not be guaranteed to a person who had knowledge of the object of the registration due to disclosure under the terms of § 3 of article 96, provided that the application was filed within 6 (six) months from the disclosure.

CHAPTER VI

EXAMINATION ON MERIT

Article 111 - A registrant of an industrial design may, at any time during the term of registration, request examination as to novelty and originality of the object of the registration.

*Sole Paragraph -* INPI will issue an opinion on merit that will serve as the basis for the *ex officio* institution of nullity proceedings of the registration if it is concluded that at least one of the requirements provided for in articles 95 to 98 are absent.

CHAPTER VII

Nullity of RegistrationS

Section I

General Provisions

Article 112 - A registration is null if granted contrary to the provisions of this law.

§ 1 - Nullity of a registration will produce effects as from the date of filing of the application.

§ 2 - In the case of inobservance of the provisions of article 94, the author may alternatively claim adjudication of the registration.

Section II

Administrative Nullity Proceedings

Article 113 - Nullity of a registration will be declared administratively when it has been granted contrary to articles 94 to 98.

§ 1 - Nullity proceedings may be instituted *ex officio* or at the request of any person having a legitimate interest within 5 (five) years from grant of the registration, without prejudice to the hypothesis provided for in the sole paragraph of article 111.

§ 2 - A request or *ex officio* institution will suspend the effects of grant of a registration if presented or published within 60 (sixty) days from grant.

Article 114 - The registrant will be notified to respond within 60 (sixty) days counted from the date of the publication.

Article 115 - INPI will issue an opinion after the period specified in the previous article, whether there is a response or not, notifying the registrant and the applicant to respond within 60 (sixty) days.

Article 116 - After the period specified in the previous article, even if no responses have been made, the process will be decided by the president of INPI, thereby bringing to a close the administrative instance.

Article 117 - Nullity proceedings will be continued even when the registration is extinct.

Section III

Nullity Action

Article 118 - As far as they are applicable, the provisions of articles 56 and 57 will apply to actions for nullity of a registration for an industrial design.

CHAPTER VIII

Extinction of RegistrationS

Article 119 - A registration will become extinct:

I - on expiry of the term of protection;

II - on waiver by the registrant, without prejudice to the rights of third parties;

III - on non-payment of the fee, provided for in articles 108 and 120; or

IV - on non-observance of the provisions of article 217.

CHAPTER IX

Quinquennial Fee

Article 120 - The proprietor of a registration is subject to the payment of a quinquennial fee as of the second quinquennium from the filing date.

§ 1 - Payment of the second quinquennium will be made during the 5th (fifth) year of the term of the registration.

§ 2 - Payment of the following quinquennial fees will be presented together with the application for renewal referred to in article 108.

§ 3 - Payment of quinquennial fees may still be made within the 6 (six) months following the period established in the previous paragraph, by payment of an additional fee.

CHAPTER X

Final Provisions

Article 121 - As far as they are applicable, the provisions of articles 58 to 63 apply to subject matter covered by the present Title, the rights of the employee or supplier of services being governed by the provisions of articles 88 to 93.

TITLE III

MARKS

CHAPTER I

REGISTRABILITY

Section I

Signs Registrable as Marks

Article 122 - Any visually perceptive distinctive sign, when not prohibited under law, is susceptible of registration as a mark.

Article 123 - For the effects of this law, the following definitions apply:

I - product or service mark: that used to distinguish a product or service from one having a different origin, that is identical, similar or akin;

II - certification mark: that used to attest that a product or service conforms with determined technical norms or specifications, notably with reference to its quality, its nature, the material used and the methodology employed; and

III - collective mark: that used to identify products or services originated by members of a given entity.

Section II

Signs Not Registrable as Marks

Article 124 - The following are not registrable as marks:

I - crests, armorial bearings, medals, flags, emblems, official public distinctions and monuments, be they national, foreign or international, as well as any respective designations, figures or imitations;

II - an isolated letter, digit or date, except when sufficiently distinctive;

III - expressions, figures, drawings or any other sign contrary to morals and good customs or which offend a person's honour or image or are an affront to the liberty of conscience, beliefs, religious cults or to ideas and sentiments worthy of respect and veneration;

IV - designations or acronyms of a public entity or establishment, when registration is not requested by that public entity or establishment;

V - reproductions or imitations of a characteristic or differentiating element of a title of establishment or the name of an undertaking belonging to a third party, which are likely to cause confusion or association with such distinctive signs;

VI - signs of a generic, necessary, common, usual or simply descriptive character, when related to the product or service to be distinguished, or those commonly used to designate a characteristic of the product or service with respect to its nature, nationality, weight, value, quality and moment of production or of giving a service, except when presented in a sufficiently distinctive manner;

VII - signs or expressions used only as a means of advertising;

VIII - colours and their names, except when arranged or combined in an unusual and distinctive manner;

IX - geographic indications, imitations thereof likely to cause confusion or signs that might falsely suggest a geographic indication;

X - signs that suggest a false indication with respect to origin, source, nature, quality or utility of the product or service to which the mark is directed;

XI - reproductions or imitations of oficial seals, normally adopted for the guarantee of a standard of any type or nature;

XII - reproductions or imitations of signs that have been registered as a collective or a certification mark by a third party, without prejudice to the provisions of article 154;

XIII - names, prizes or symbols of sporting, artistic, cultural, social, political, economic or technical official or officially recognised events, as well as imitations likely to cause confusion, except when authorised by the competent authority or entity promoting the event;

XIV - reproductions or imitations of titles, bonds, coins and bank notes of the Union, the States, the Federal District, the Territories, the Municipalities or of any country;

XV - personal names or signatures thereof, family or patronymic names and images of third parties, except with the consent of the owner, his heirs or his successors;

XVI - well-known pseudonyms or nicknames and singular or collective artistic names, except with the consent of the owner, his heirs or his successors;

XVII - literary, artistic or scientific works, as well as titles protected by copyright and likely to cause confusion or association, except with the consent of the author or owner;

XVIII - technical terms used in the industry, science or art that is related to the product or service to be distinguished;

XIX - reproductions or imitations, in whole or in part, even with additions, of a mark registered by a third party, to distinguish or certify a product or service that is identical, similar or akin, and which are likely to cause confusion or association with the third party's mark;

XX - duplications of marks of a single proprietor for the same product or service, except when, in the case of marks of the same nature, they are presented in a sufficiently distinctive manner;

XXI - necessary, common or usual shapes of a product or of its packaging, or, furthermore, shapes that cannot be disassociated from a technical effect;

XXII - objects that are protected by industrial design registrations in the name of third parties; and

XXIII - signs that imitate or reproduce, wholly or in part, a mark of which the applicant could obviously not fail to have knowledge in view of his activity, and of which the proprietor is established or domiciled in the national territory or in a country with which Brazil maintains an agreement or guarantees reciprocity of treatment, if the mark is intended to distinguish a product or service that is identical, similar or akin, and is likely to cause confusion or association with such third party mark.

Section III

Famous Marks

Article 125 - Marks registered in Brazil and considered to be famous will be guaranteed special protection, in all fields of activity.

Section IV

Well-Known Marks

Article 126 - Marks that are well-known in their field of activity in the terms of article 6 bis (1) of the Paris Convention for the Protection of Industrial Property will enjoy special protection, independently of whether they have been previously filed or registered in Brazil.

§ 1 - The protection to which this article refers is also applicable to service marks.

§ 2 - INPI may reject *ex officio* an application to register a mark that wholly or partially reproduces or imitates a well-known mark.

CHAPTER II

PRIORITY

Article 127 - Priority rights will be guaranteed to an application for the registration of a mark filed in a country that maintains an agreement with Brazil or in an international organisation, that produces the effect of a national filing, within the time limits established in the agreement, the filing not being invalidated nor prejudiced by facts that occur within such time limits.

§ 1 - The priority claim must be made at the time of filing, but may be supplemented within 60 (sixty) days by other priorities earlier than the date of filing in Brazil.

§ 2 - A priority claim must be proved by means of a suitable document of origin, containing the number, date and reproduction of the application or of the registration, accompanied by a simple translation, the contents of which will be of the entire responsibility of the applicant.

§ 3 - If not effected at the time of filing, the proof must be presented within 4 (four) months from filing, under pain of loss of the priority.

§ 4 - When the priority is obtained by virtue of assignment, the corresponding document must be filed together with the priority document itself.

CHAPTER III

APPLICANTS FOR REGISTRATION

Article 128 - Private individuals or private or public legal entities may apply for the registration of a mark.

§1 - Private legal entities may only request the registration of a mark relating to the activity that they effectively and licitly exercise directly or through undertakings that they control directly or indirectly, such condition having to be declared on the actual request, subject to the penalties of the law.

§2- The registration of a collective mark may only be requested by a legal entity representing a group and able to exercise an activity different from that of its members.

§3 - The registration of a certification mark can only be requested by a person without any direct commercial or industrial interest in the product or service being certified.

§4 - A priority claim does not exempt the application from the provisions of this Title.

CHAPTER IV

RIGHTS RELATING TO A MARK

Section I

Acquisition

Article 129 - The property in a mark is acquired by a validly granted registration, in accordance with the provisions of this law, the owner being guaranteed exclusive use thereof throughout the national territory, without prejudice to the provisions of articles 147 and 148 with respect to collective and certification marks.

§1 - Any person who in good faith at the date of priority or of the application was using an identical or similar mark for at least 6 (six) months in the country, to distinguish or certify a product or service that is identical, similar or akin, will have preferential right to registration.

§2 - The preferential right can only be ceded, by transfer or leasing, together with the business of an undertaking, or part thereof, that has a direct relation to the use of the mark.

Section II

Protection afforded by a Registration

Article 130 - The registrant of, or applicant for, a mark is also guaranteed the right to:

I - assign his registration or application for registration;

II - license its use;

III - care for its material integrity or reputation.

Article 131 - The protection afforded by this law extends to the use of the mark on papers, printed matter, advertisements and documents related to the activity of the owner.

Article 132 - The owner of a mark may not:

I - prevent tradesmen or distributors from using distinctive signs that belong to them, together with the mark of the product for its promotion and commercialisation;

II - prevent manufacturers of accessories from using the mark to indicate the use of the product, provided they obey fair competition practices;

III - prevent the free circulation of products placed on the internal market by himself or by another with his consent, without prejudice to the provisions of §§ 3 and 4 of article 68; and

IV - prevent the mention of the mark in speeches, scientific or literary works or in any other type of publication, provided that it is without any commercial connotation and without prejudice to its distinctive character.

CHAPTER V

TERM, ASSIGNMENT AND NOTATIONS

Section I

Term

Article 133 - The registration of a mark will have a term of 10 (ten) years counted from the date of its grant, it being renewable for equal and successive periods.

§ 1 - An application for renewal must be made during the last year of the term of the registration and must be accompanied by proof of payment of the respective fee.

§ 2 - If the request for renewal has not been made by the end of the registration, the proprietor may make such request within the following 6 (six) months on payment of an additional fee.

§ 3 - Renewal will not be granted if the provisions of article 128 are not met.

Section II

Assignment

Article 134 - Applications for registration and registrations may be assigned, provided that the assignee meets the legal requirements for requesting such registration.

Article 135 - An assignment must include all the registrations or applications, in the name of the assignee, for identical or similar marks relating to a product or service that is identical, similar or akin, on the pain of cancellation of the registrations or shelving of the unassigned applications.

Section III

Notations

Article 136 - INPI will make a note of the following:

I - assignments, indicating the complete qualification of the assignee;

II - any limitation or onus on the application or registration; and

III - alterations of the name, headquarters or address of the applicant or registrant.

Article 137 - Notations will produce effect with respect to third parties as from the date of their publication.

Article 138 - Appeals may be filed against a decision which:

I - rejects the notation of assignment; and

II - cancels the registration or shelves the application under the terms of article 135.

Section IV

Licence of Use

Article 139 - The proprietor of a registration or the applicant of an application for registration may enter into a licence contract for use of the mark, without prejudice to his right to exercise effective control over the specifications, nature and quality of the respective products or services.

*Sole Paragraph* - The licensee may be invested by the registrant with full powers to act in defence of the mark, without prejudice to his own rights.

Article 140 - Licence contracts must be recorded at INPI in order to produce effect with respect to third parties.

§ 1 - Recordals will produce effect with respect to third parties as from the date of their publication.

§ 2 - In order to validate proof of use, licence contracts need not be recorded at INPI.

Article 141 - An appeal may be filed against a decision rejecting the recordal of a license agreement.

CHAPTER VI

LOSS OF RIGHTS

Article 142 - The registration of a mark will become extinct:

I - on expiry of the term of protection;

II - on waiver, which may be total or partial with respect to the products or services indicated by the mark;

III - by forfeiture; or

IV - for failure to observe the provisions of article 217.

Article 143 - A registration will become forfeit, on the request of any person with a legitimate interest, if, after 5 (five) years from its grant, on the date of such request:

I - use of the mark in Brazil has not been initiated; or

II - use of the mark has been interrupted for more than 5 (five) consecutive years or if, within that time, the mark has been used in a modified form that implies alteration in its original distinctive character, as found on the certificate of registration.

§ 1 - The mark will not become forfeit if the registrant justifies the lack of use for legitimate reasons.

§ 2 - The registrant will be notified to reply within a period of 60 (sixty) days, the onus falling on him to prove the use of the mark or justify its lack of use for legitimate reasons.

Article 144 - Use of the mark must include products or services mentioned on the certificate, under penalty of partial forfeiture of the registration with respect to those products or services not similar or akin to those for which use of the mark has been proved.

Article 145 - No recognition will be given to requests for forfeiture if use of the mark has been proved or if its lack of use has been justified in an earlier procedure requested less than 5 (five) years previously.

Article 146 - An appeal may be filed against a decision which either declares or rejects forfeiture.

CHAPTER VII

COLLECTIVE AND CERTIFICATION MARKS

Article 147 - An application for the registration of a collective mark must include regulations of use, determining the conditions and prohibitions for use of the mark.

*Sole Paragraph* - The regulations of use, when they do not accompany the application, must be protocolled within a period of 60 (sixty) days from filing, under pain of definitive shelving of the application.

Article 148 - An application for the registration of a certification mark must include:

I - the characteristics of the product or the service to be certified; and

II - the measures of control that are to be adopted by the registrant.

*Sole Paragraph* - The documentation foreseen in items I and II of this article, when not accompanying the application, must be protocolled within a period of 60 (sixty) days, under pain of definitive shelving of the application.

Article 149 - Any alteration in the regulations of use must be communicated to INPI, by means of a duly protocolled petition, containing all the altered conditions, under pain of it not being considered.

Article 150 - Use of the mark will be independent of a license, it being sufficient for its authorisation to be contained in the regulations of use.

Article 151 - Apart from the grounds for extinction established in article 142, registrations for collective and certification marks will become extinct when:

I - the entity ceases to exist; or

II - the mark is used under conditions that differ from those foreseen in the regulations of use.

Article 152 - Waiver of a registration for a collective mark will only be admitted when requested in accordance with the terms of the articles of association or statutes of the entity itself or, further, in accordance with the regulations of use.

Article 153 - Forfeiture of the registration will be declared if the collective mark is not used by more than one authorised person, without prejudice to the provisions of articles 143 to 146.

Article 154 - Collective marks and certification marks that have already been used and the registrations of which have become extinct may not be registered in the name of a third party, prior to the expiry of a period of 5 (five) years counted from the extinction of the registration.

CHAPTER VIII

FILING

Article 155 - The application must refer to a single distinctive sign and, in accordance with the conditions established by INPI, must contain:

I - a request

II - prints, when applicable; and

III - proof of payment of the filing fee.

*Sole Paragraph* - the request and any documents that accompany it must be presented in the Portuguese language and, whenever there is a document in a foreign language, a simple translation must be presented at the time of filing the application or within the following 60 (sixty) days, on pain of the document not being taken into consideration.

Article 156 - Once the application has been filed, it will be submitted to a preliminary formal examination and, if in due order, will be protocolled, the filing date being considered to be the date of its presentation.

Article 157 - Applications that do not formally meet the provisions of article 155, but which contain sufficient data relating to the applicant, the sign of the mark and the class, may be delivered to INPI, against a dated receipt which will establish the

requirements to be met by the applicant within 5 (five) days, on pain of being considered non-existent.

*Sole Paragraph* - Once the requirements have been met, the filing will be considered as having been made on the date of presentation of the application.

CHAPTER IX

EXAMINATION

Article 158- Once protocolled, the application will be published for the filing of oppositions within a period of 60 (sixty) days.

§ 1 - The applicant will be notified of the opposition and may respond within a period of 60 (sixty) days.

§ 2 - Oppositions, administrative nullity procedures and nullity actions based on item XXIII of article 124, or article 126 will not be recognised if proof of the filing of an application for the registration of the mark in accordance with this law is not provided within 60 (sixty) days after filing the opposition or nullity procedure or action.

Article 159 - Once the period for opposition has passed or, if such has been filed, after the period for reply, examination will be conducted during which requirements may be formulated, which must be responded to within a period of 60 (sixty) days.

§ 1 - If no response to a requirement is filed, the application will be definitively shelved.

§ 2 - Once a response has been filed, even if the requirement has not been met or the formulation thereof has been contested, examination will continue.

Article 160 - Once examination has been concluded, a decision will be issued, allowing or rejecting the application for registration.

CHAPTER X

ISSUANCE OF CERTIFICATES OF REGISTRATIONS

Article 161 - A certificate of registration will be granted after the application has been allowed and payment of the corresponding fees has been proved.

Article 162 - The payment of the fees and the respective proof thereof, relating to the issuance of the certificate of registration and the first ten year period of protection, must be effected within 60 (sixty) days counted from allowance.

*Sole Paragraph* - The fees may still be paid and proved within 30 (thirty) days after the period mentioned in this article, independently of notification, by payment of a specific fee, on pain of definitive shelving of the application.

Article 163 - The certificate of registration will be considered to have been granted on the date of publication of the corresponding act.

Article 164 - The certificate will mention the mark, the number and date of the registration, the name, nationality and domicile of the registrant, the products or services, the characteristics of the registration and the foreign priority.

CHAPTER XI

NULLITY OF REGISTRATIONS

Section I

General Provisions

Article 165 - A registration is null if granted contrary to the provisions of this law.

*Sole Paragraph* - Nullity of a registration may be total or partial, it being a condition for partial nullity that the remaining part can be considered registrable.

Article 166 - The proprietor of a mark registered in a country that is signatory to the Paris Convention for the Protection of Industrial Property may, alternatively, by means of a court action, claim adjudication of the registration, in accordance with the terms of article 6 "septies"(1) of the Convention.

Article 167 - A declaration of nullity will produce effect as from the date of filing of the application.

Section II

Administrative Nullity Procedure

Article 168 - Nullity of a registration may be declared administratively if it was granted in conflict with the provisions of this law.

Article 169 - A nullity procedure may be commenced *ex officio* or on the request of any person with a legitimate interest, within 180 (one hundred and eighty) days counted from the date of issuance of the certificate of registration.

Article 170 - The registrant will be notified to respond within a period of 60 (sixty) days.

Article 171 - Once the period referred to in the previous article has passed and even if no response has been presented, the procedure will be decided by the President of INPI, thereby terminating the administrative instance.

Article 172 - The nullity proceedings will be continued even if the registration is extinct.

Section III

Nullity Actions

Article 173 - A nullity action may be filed by INPI or by any person with a legitimate interest.

*Sole Paragraph* - The judge may, in the course of the proceedings, grant an injunction suspending the effects of the registration and of the use of the mark, provided the appropriate procedural requirements are met.

Article 174 - The limitation for bringing an action for declaring the nullity of a registration is 5 (five) years counted from the date of registration.

Article 175 - Nullity actions must be brought before the Federal Courts of Justice and INPI, when it is not the plaintiff, will participate in the action.

§ 1 - The period for reply by a defendant that is a registrant will be 60 (sixty) days.

§ 2 - Once the decision in a nullity action is *res judicata*, INPI will publish a note for the information of third parties.

TITLE IV

GEOGRAPHICAL INDICATIONS

Article 176 - A geographical indication is constituted by an indication of source or an appellation of origin.

Article 177 - An indication of source is considered to be the geographical name of a country, city, region or locality of its territory, which has become known as a centre of extraction, production or manufacture of a determined product or for providing a determined service.

Article 178 - An appellation of origin is considered to be the geographical name of a country, city, region or locality of its territory, which designates a product or service, the qualities or characteristics of which are exclusively or essentially due to the geographical environment, including natural and human factors.

Article 179 - Protection is extended to the graphical or figurative representation of a geographical indication, as well as to the geographical representation of the country, city, region or locality of its territory of which the name is a geographical indication.

Article 180 - When a geographical name comes into common use, with respect to a given product or service, it will not be considered as a geographical indication.

Article 181 - A geographical name that does not constitute an indication of source or an appellation of origin may serve as a characteristic element of a product or service mark, provided that it does not suggest a false source.

Article 182 - The use of a geographical indication is restricted to the producers and providers of services established in the locality, quality requirements also having to be met in relation to appellations of origin.

*Sole Paragraph* - INPI will establish the conditions of registration for geographical indications.

TITLE V

CRIMES AGAINST INDUSTRIAL PROPERTY

CHAPTER I

CRIMES AGAINST PATENTS

Article 183 - A crime is committed against a patent of invention or a utility model patent by he who:

I - manufactures a product that is the subject matter of a patent of invention or a utility model patent, without authorisation of the patentee; or

II - uses a means or process that is the subject matter of a patent of invention, without authorisation of the patentee.

Penalty - detention of 3 (three) months to 1 (one) year, or a fine.

Article 184 - A crime is committed against a patent of invention or a utility model patent by he who:

I - exports, sells, exhibits or offers for sale, maintains in stock, hides or receives, with a view to use for economic purposes, a product manufactured in violation of a patent of invention or of a utility model patent, or that is obtained by a patented means or process; or

II - imports a product that is the subject matter of a patent of invention or of a utility model patent or is obtained by a means or process patented in this country, for the purposes mentioned in the previous item, and that has not been placed on the external market directly by the proprietor or with his consent.

Penalty - detention of 1 (one) to 3 (three) months, or a fine.

Article 185 - Supplying a component of a patented product, or material or equipment for carrying out a patented process, provided that the final application of the component, material or equipment necessarily leads to the exploitation of the subject matter of the patent.

Penalty - detention of 1 (one) to 3 (three) months or a fine.

Article 186- The crimes of this Chapter are committed even if the violation does not affect all the claims of the patent or if it is restricted to the use of means equivalent to the subject matter of the patent.

CHAPTER II

CRIMES AGAINST INDUSTRIAL DESIGNS

Article 187 - Manufacturing, without the authorisation of the registrant, a product that incorporates a registered industrial design, or a substantial imitation thereof that may lead to error or confusion.

Penalty - detention of 3 (three) months to 1 (one) year, or a fine.

Article 188 - A crime is committed against an industrial design registration by he who:

I - exports, sells, exhibits or offers for sale, maintains in stock, hides or receives, with a view to use for economic purposes, an object that illicitly incorporates a registered industrial design, or a substantial imitation thereof that may lead to error or confusion; or

II - imports a p roduct that incorporates an industrial design registered in this country, or a substantial imitation thereof that may lead to error or confusion, for the purposes provided for in the previous item, and which was not placed on the external market directly by the registrant or with his consent.

Penalty - detention of 1 (one) to 3 (three) months, or a fine.

CHAPTER III

CRIMES AGAINST MARKS

Article 189 - A crime is committed against the registration of a mark by he who:

I - reproduces a registered mark wholly or in part, without the authorisation of the registrant, or imitates it in a manner that may induce confusion; or

II - alters the registered mark of a third party already applied to a product placed on the market.

Penalty - detention of 3 (three) months to 1 (one) year, or a fine.

Article 190 - A crime is committed against the registration of a mark by he who imports, exports, sells, offers or exhibits for sale, hides or maintains in stock:

I - a product branded with an illicitly, wholly or partially, reproduced or imitated mark of a third party; or

II - a product from his industry or commerce, held in a vessel, container or package carrying a legitimate mark of a third party.

Penalty - detention of 1 (one) to 3 (three) months, or a fine.

CHAPTER IV

CRIMES COMMITTED BY MEANS OF MARKS, TITLES OF ESTABLISHMENT AND ADVERTISING SIGNS

Article 191 - Reproducing or imitating wholly or in part, in a manner that may lead to error or confusion, armorial bearings, crests or official public distinctions, be they national, foreign or international, without the necessary authorisation, in a mark, title of establishment, commercial name, insignia or advertising sign, or using such reproductions or imitations for economic purposes.

Penalty - detention of 1 (one) to 3 (three) months, or a fine.

*Sole Paragraph* - He who sells or exhibits or offers for sale products branded with such marks are subject to the same penalty.

CHAPTER V

CRIMES AGAINST GEOGRAPHICAL AND OTHER INDICATIONS

Article 192 - Manufacturing, importing, exporting, selling, exhibiting or offering for sale or maintaining in stock a product that presents a false geographical indication.

Penalty - detention of 1 (one) to 3 (three) months, or a fine.

Article 193 - Using, on a p roduct, container, casing, belt, label, invoice, circular, poster or on any other means of disclosure or advertisement, indicative terms, such as "type", "species", "kind", "system", "similar", "substitute", "identical", or the equivalent, without making c lear the true source of the product.

Penalty - detention of 1 (one) to 3 (three) months, or a fine.

Article 194 - Using a mark, commercial name, title of establishment, insignia, advertising expression or sign or any other form that indicates a source other than the true one, or selling or exhibiting for sale a product carrying such signs.

Penalty - detention of 1 (one) to 3 (three) months, or a fine.

CHAPTER VI

CRIMES OF UNFAIR COMPETITION

Article 195 - A crime of unfair competition is committed by he who:

I - publishes, by any means, a false affirmation, in detriment to a competitor, with a view to obtaining advantage;

II - provides or divulges, with respect to a competitor, false information, with a view to obtaining advantage;

III - uses fraudulent means to divert, for his own or a third party's benefit, another's clientele;

IV - uses another's advertising expression or sign, or imitates it, in a manner to cause confusion between the products or establishments;

V - unduly uses another's commercial name, title of establishment or insignia or sells, exhibits or offers for sale or maintains in stock a product with such references;

VI - substitutes, with his own name or company name, on a product of another party, the name or company name of such other party, without his consent.

VII - claims, as a means of advertising, to have received a prize or distinction that he did not obtain;

VIII - sells, exhibits or offers for sale, in another's container or package, an adulterated or falsified product, or uses it to do business with a product of the same type, even if not adulterated or falsified, if the fact does not constitute a more serious crime;

IX - gives or promises money or other utility to the employee of a competitor, whereby that employee, in failing in his duty in his employment, provides him with an advantage;

X - receives money or other utility, or accepts a promise of payment or reward, for, in failing in his duty in his employment, providing a competitor with an advantage;

XI - discloses, exploits or uses, without authorisation, confidential knowledge, information or data, usable in industry, commerce or the providing of services, excepting that which is of public knowledge or which is obvious to a person skilled in the art, to which he has had access by means of a contractual or employment relationship, even after the termination of the contract;

XII - discloses, exploits or uses, without authorisation, knowledge or information as mentioned in the previous item, when obtained directly or indirectly by illicit means or to which he has had access by fraud;

XIII - sells, exhibits or offers for sale a product which he declares to be subject of a patent filed or granted or of a registered industrial design, when it is not, or mention it, in a commercial announcement or paper, as filed or patented or registered, when it is not; or

XIV - divulges, exploits or uses, without authorisation, the results of tests or other undisclosed data the elaboration of which involved considerable effort and which has been presented to government entities as a condition for approving the commercialisation of products.

Penalty - detention of 3 (three) months to 1 (one) year, or a fine.

§ 1 - The employer, partner or administrator of an undertaking that commits an act falling within the types of crime established in items XI and XII of this article are included in the hypotheses to which such items refer.

§ 2 - The provisions of item XIV do not apply with respect to disclosure by a government entity competent to authorise commercialisation of a product, when necessary to protect the public.

CHAPTER VII

GENERAL PROVISIONS

Article 196 - The penalties of detention provided for in Chapters I, II and III of this Title will be increased by one third to one half when:

I - the party is or was a representative, proxy, agent, partner or employee of the patentee or registrant or, further, of his licensee; or

II - the altered, reproduced or imitated mark is famous, is well-known or is a certification or collective mark.

Article 197 - The penalties of fines provided for in this Title will be fixed at a minimum of 10 (ten) and a maximum of 360 (three hundred and sixty) days-fine, in accordance with the Criminal Code system.

*Sole Paragraph* - The fine may be increased or reduced by up to 10 (ten) times in view of the personal conditions of the agent and of the magnitude of the advantage obtained, independently of the provisions established in the previous article.

Article 198 - The customs authorities, *ex officio* or at the request of an interested party, may seize, at the time of checking, any products carrying falsified, altered or imitated marks or a false indication of source.

Article 199 - An action against crimes provided for in this Title will be brought through the filing of a complaint, except in the case of the crime of article 191, in which case the criminal action will be public.

Article 200 - Criminal actions and preliminary measures of search and seizure, in the case of crimes against industrial property, will be regulated by the provisions of the Criminal Process Code, with the modifications present in the articles of this Chapter.

Article 201 - During execution of a search and seizure measure, with respect to a crime against a patent relating to a process, the baliff will be accompanied by an expert who will verify, preliminarily, the existence of the illicit act, the judge being able to order the seizure of products obtained by the infringer using the patented process.

Article 202 - Apart from the preliminary measures of search and seizure, the interested party may request:

I - seizure of a falsified, altered or imitated mark at its place of preparation or where it is found, prior to use for criminal purposes; or

II - destruction of a falsified mark on packets or products that contain it, before they are distributed, even if the packages or even the products themselves are destroyed.

Article 203 - In the case of legally organised and publicly functioning industrial or commercial establishments, the preliminary measures will be limited to the inspection and seizure of the products, when so ordered by the judge, it not being permitted to paralyse their legally exercised activity.

Article 204 - Once a search and seizure measure has been carried out, he who requested it in bad faith, in a spirit of rivalry, mere caprice or gross error will be liable for losses and damages.

Article 205 - An allegation of nullity of the patent or registration on which the action is based may constitute matter of defence in a criminal action. Absolution of the defendant, however, will not signify nullity of the patent or registration which can only be requested in an action before the competent courts.

Article 206 - If, in the course of a court action, information is revealed that is of a confidential nature, be it an industrial or a trade secret, the judge must determine that the action continues "in camera", the use of such information by the other party for other purposes also being forbidden.

Article 207 - Independently of the criminal action, the aggrieved party may file civil actions that he considers suitable, as laid down in the Civil Process Code.

Article 208 - Compensation will be determined by the benefits that the injured party would have gained had the violation not occurred.

Article 209 - The aggrieved party is reserved the right to receive losses and damages in compensation for losses caused by acts of violation of industrial property rights and acts of unfair competition that are not provided for in this law but which tend to prejudice another's reputation or business or to cause confusion between commercial or industrial establishments or providers of services, or between products and services placed on the market.

§ 1 - The judge may, in the formal record of the same action, so as to avoid irreparable damages or damages that would be difficult to recover, grant an injunctive order to suspend the violation or act that has such in view, before

summonsing the defendant, against, if he judges necessary, monetary caution or a fiduciary guarantee.

§ 2 - In the case of flagrant reproduction or imitation of a registered mark, the judge may determine the seizure of all the merchandise, products, objects, packages, labels and others that carry the falsified or imitated mark.

Article 210 - Loss of profits will be determined by the most favourable to the injured party of the following criteria.

I - The benefits that would have been gained by the injured party if the violation had not occurred;

II - The benefits gained by the author of the violation of the rights; or

III - The remuneration that the author of the violation would have paid to the proprietor of the violated rights for a granted license which would have legally permitted him to exploit the subject of the rights.

TITLE VI

TRANSFER OF TECHNOLOGY AND FRANCHISING

Article 211- INPI will effect the recordal of contracts that involve transfer of technology, franchising contracts and the like so that they may produce effect with respect to third parties.

*Sole Paragraph* - A decision with respect to applications for the recordal of contracts of the type to which this article refers will be given within a period of 30 (thirty) days counted from the date of the application for recordal.

TITLE VII

GENERAL PROVISIONS

CHAPTER I

APPEALS

Article 212 - In the absence of express provisions to the contrary, appeals may be filed against decisions provided for in this law, within a period of 60 (sixty) days.

§ 1 - Appeals will be received with suspensive and full devolutive effects, all provisions pertinent to examination in the first instance, in so far as they are applicable, being applied.

§ 2 - An appeal can not be filed against a decision which determines the definitive shelving of an application for a patent or for a design registration or against that which allows an application for a patent, a certificate of addition or the registration of a mark.

§ 3 - The appeals will be decided by the President of INPI, thus ending the administrative instance.

Article 213 - Interested parties will be notified to file counter-arguments to the appeal, within a period of 60 (sixty) days.

Article 214 - For the purposes of complementing the arguments of the appeal brief, INPI can make requirements, which should be met within the period of 60 (sixty) days.

*Sole paragraph* - Once the period defined in the "caput" has passed, a decision on the appeal will be given.

Article 215 - An appeal decision is final with no right to appeal in the administrative instance.

CHAPTER II

ACTS OF THE PARTIES

Article 216- The acts provided for in this law will be practised by the parties or by their attorneys who should be duly qualified.

§ 1 - Powers of attorney, in the form of an original, an official copy or an authenticated photocopy, must be in the Portuguese language, consular legalisation and notarial recognition being waived.

§ 2 - The power of attorney must be filed within 60 (sixty) days counted from the practice of the first act by the party in the process, independently of notification or requirement, on pain of shelving, the shelving of a patent application, an application for registration of an industrial design or an application for the registration of a mark being definitive.

Article 217 - A person domiciled abroad must maintain permanently a duly qualified attorney resident in the country, with powers to represent him administratively and judicially, including for receiving summons.

Article 218 - Petitions will not be recognised:

I - when presented after the legal deadline; or

II - when they are not accompanied by proof of payment of the respective fee having the value in force at the date of their presentation.

Article 219 - Petitions, oppositions and appeals shall not be recognised when:

I - presented after the period provided for in this law;

II - not having legal basis; or

III - not accompanied by proof of payment of the respective fee.

Article 220 - INPI will make use of the acts of the parties, whenever possible, making any applicable requirements.

CHAPTER III

TIME LIMITS

Article 221 - The time limits established in this law are continuous, the right to carry out the act becoming automatically extinct on their termination, unless the party proves that it was not carried out for legitimate reasons.

§ 1 - A legitimate reason is considered to be an unforeseen event, outside the control of the party and which prevented the party from carrying out the act.

§ 2 - When legitimate reasons are recognised, the party will carry out the act within the period granted by INPI.

Article 222 - In calculating time limits, the first day should be excluded and the last day included.

Article 223 - Time limits only begin to run from the first working day after notification which will be made by publication in the official means of communication of INPI.

Article 224 - In the absence of express stipulation in this law, time limits for practising acts will be 60 (sixty) days.

CHAPTER IV

LIMITATIONS

Article 225 - The limitation for actions for repairing damages caused to industrial property rights is 5 (five) years.

CHAPTER V

ACTS OF INPI

Article 226 - Acts of INPI in administrative processes relating to industrial property will only produce effect as from their publication in the respective official means of communication, except:

I - those which expressly do not depend on notification or publication by virtue of the provisions of this law;

II - administrative decisions when notification is made by post or knowledge is given  to the party interested in the process; and

III - internal opinions and despatches that do not need to be known by the parties.

CHAPTER VI

CLASSIFICATIONS

Article 227 - Classifications relative to the subject matter of Titles I, II and III of this law will be established by INPI, when they are not determined in an international treaty or agreement in force in Brazil.

CHAPTER VII

FEES

Article 228 - Fees will be charged for the services provided for in this law, the values and manner of collection of which will be established by act of the head officer of the federal public administrative entity to which INPI is bound.

TITLE VIII

TRANSITORY AND FINAL PROVISIONS

Article 229 - The provisions of this law will be applied to all pending applications, except with respect to the patentability of substances, matter or products obtained by chemical means or processes and alimentary and chemical-pharmaceutical substances, matter, mixtures or products and medicaments of any type, as well as the respective processes of obtaining or modifying them, which will only be patentable under the conditions established in articles 230 and 231.

Article 230 - A patent application may be filed relating to substances, matter or products obtained by chemical means or processes and alimentary and chemical-pharmaceutical substances, matter, mixtures or products and medicaments of any type, as well as the respective processes of obtaining or modifying them, by he who has protection guaranteed by treaty or convention in force in Brazil, the date of

the first foreign filing being recognised, provided that its subject matter has not been placed on any market on the direct initiative of the proprietor or by third parties with his consent, nor have third parties carried out, in this country, serious and effective preparations for exploiting the subject matter of the application or patent.

§ 1 - The application must be filed within the period of 1 (one) year from the publication of this law and must indicate the date of the first application filed abroad.

§ 2 - Patent applications filed on the basis of this article will be published automatically, interested parties having the right to intervene, within a period of 90 (ninety) days, with respect to whether the conditions of the "caput" of this article have been met.

§ 3 - Without prejudice to articles 10 and 18 of this law, and once the conditions established in this article have been met and grant of a patent in the country where the first application was filed has been proved, the patent will be granted in Brazil, exactly as granted in the country of origin.

§ 4 - A patent granted on the basis of this article will be guaranteed the remainder of the term of protection in the country where the first application was filed, counted from the date of filing in Brazil and limited to the term defined in article 40, the provisions of the sole paragraph thereof not being applicable.

§ 5 - An applicant that has a pending application, relating to substances, matter or products obtained by chemical means or processes and alimentary and chemical-pharmaceutical substances, matter, mixtures or products and medicaments of any type, as well as the respective processes of obtaining or modifying them, may file a new application, within the time period and under the conditions established in this article, submitting proof of desistance of the pending application.

§ 6 - The provisions of this law will apply, where applicable, to applications filed and to patents granted in accordance with this article.

Article 231 - A patent application may be filed relating to the matter to which the previous article refers by a national or a person domiciled in the country, the date of disclosure of the invention being guaranteed, provided that its subject matter has

not been placed on any market on the direct initiative of the owner or by third parties with his consent, nor have third parties carried out, in this country, serious and effective preparations for exploiting the subject matter of the application.

§ 1 - The application must be filed within the period of 1 (one) year from the publication of this law.

§ 2 - Patent applications filed on the basis of this article will be processed in accordance with the terms of this law.

§ 3 - A patent granted on the basis of this article will be guaranteed the remainder of the term of protection of 20 (twenty) years from the date of disclosure of the invention, counted from the date of filing in Brazil.

§ 4 - An applicant that has a pending application, relating to the matter to which the previous article refers, may file a new application, within the time period and under the conditions established in this article, submitting proof of desistance of the pending application.

Article 232 - The production or use, under the terms of the previous legislation, of substances, matter or products obtained by chemical means or processes and alimentary and chemical-pharmaceutical substances, matter, mixtures or products and medicaments of any type, as well as the respective processes of obtaining or modifying them, even when protected by product or process patents in another country, in accordance with a treaty or convention in force in Brazil, may continue under the same conditions existing prior to the approval of this law.

§ 1 - No retroactive or future claim, of any value or on any grounds, will be admitted relating to products produced or processes used in Brazil in conformity with this article.

§ 2 - Equally, no claim in the terms of the previous paragraph will be admitted when, during the period prior to the entry into force of this law, significant investments have been made for the exploitation of a product or of a process as referred to in this article, even if they are protected by product or process patents in another country.

Article 233 - Applications for the registration of advertising expressions and signs and for declarations of notoriety will be definitively shelved whereas such

registrations and declarations will remain in force for the remainder of their terms but may not be renewed.

Article 234 - Guarantees of priority, as provided for in article 7 of Law N° 5772 of 21st December 1971 , are guaranteed to the applicant until the end of any current time limit.

Article 235 - All current time limits granted under Law N° 5772 of 21st December 1971 are guaranteed.

Article 236 - Applications for industrial model and industrial design patents that were filed when Law N° 5772 of 21st December 1971 was in force, will automatically be named as applications for the registration of an industrial design and, for all legal effects, publication will be considered as already having been effected.

*Sole Paragraph* - In such adapted applications, payments will be considered for the effect of calculation of the quinquennial fee.

Article 237 - The provisions of article 111 will not apply to applications for industrial model or industrial design patents that have already been examined in accordance with Law N° 5772 of 21st December 1971.

Article 238 - Appeals filed when Law N° 5772 of 21st December 1971 was in force, will be decided in accordance therewith.

Article 239 - The Government is authorised to promote any changes in INPI that are necessary to ensure financial and administrative autonomy thereto, INPI being able to:

I - contract technical and administrative personnel by way of public competition;

II - establish a table of salaries for its employees, which will be subject to approval by the ministry to which INPI is bound; and

III - propose a basic structure and internal regulations that will be subject to approval by the ministry to which INPI is bound.

*Sole Paragraph* - Expenses resulting from the application of this article will be at the cost of the funds of INPI itself.

Article 240 - Article 2 of Law N° 5.648 of 11th December 1970 will be altered to have the following wording:

"Article 2 - The principal purpose of INPI is the execution, nationally, of the norms that regulate industrial property, taking into account its social, economic, juridical and technical function, as well as making pronouncements regarding the convenience of signature, ratification and termination of conventions, treaties, pacts and agreements relating to industrial property".

Article 241 - The Judiciary is authorised to create special courts to settle questions relating to intellectual property.

Article 242 - The Government will submit to the National Congress a bill with a view to promoting, whenever necessary, the harmonisation of this law with the policy for industrial property adopted by the other countries that are members of the MERCOSUL.

Article 243- This law will enter into force on the date of its publication with respect to the matter contained in articles 230, 231 and 239, and 1 (one) year after its publication with respect to the remaining articles.

Article 244 - Law N° 5,772 of 21st December 1971, Law N° 6,348 of 7th July 1976, articles 187 to 196 of Decree-Law N° 2,848 of 7th December 1940, articles 169 to 189 of Decree-Law N° 7,903 of 27th August 1945 and other contrary provisions are repealed.


Translator's note: movable goods as opposed to real estate.

A – Part 2.

Lei 9279/96 — Portal INPI

**O Instituto**
**Ouvidoria**
**Procuradoria**
**Serviços**
**Articulação**
**Institucional**
**Patentes**
**Marcas**
Quem somos
O que é marca?
O que mudou com
o e-MARCAS?
e-MARCAS
Sobre seu pedido
Como registrar a
sua marca passo a
passo
Manual do
Usuário
Busca
Classificações de
Marcas
Custos dos
serviços
Legislação
Downloads
Dúvidas
Links
Perguntas
Freqüentes
**Contrato de**
**Tecnologia**
**Desenho**
**Industrial**
**Indicação**
**Geográfica**
**Programa de**
**Computador**
**Topografia de**
**Circuitos**
**Informação**
**Tecnológica**
**Centro de**
**Treinamento**
**Academia de**
**Inovação e**
**Propriedade**
**Intelectual**

# Lei 9279/96

**Lei nº 9.279 de 14 de maio de 1996**

Regula direitos e obrigações relativos à propriedade industrial.

DISPOSIÇÕES PRELIMINARES

**TÍTULO I - DAS PATENTES**

CAPÍTULO I - DA TITULARIDADE

CAPÍTULO II - DA PATENTEABILIDADE

    Seção I - Das Invenções e dos Modelos de Utilidade Patenteáveis

    Seção II - Da Prioridade

    Seção III - Das Invenções e dos Modelos de Utilidade não Patenteáveis

CAPÍTULO III - DO PEDIDO DE PATENTE

    Seção I - Do Depósito do Pedido

    Seção II - Das Condições do Pedido

    Seção III - Do Processo e do Exame do Pedido

CAPÍTULO IV - DA CONCESSÃO E DA VIGÊNCIA DA PATENTE

    Seção I - Da Concessão da Patente

    Seção II - Da Vigência da Patente

CAPÍTULO V - DA PROTEÇÃO CONFERIDA PELA PATENTE

    Seção I - Dos Direitos

    Seção II - Do Usuário Anterior

CAPÍTULO VI - DA NULIDADE DA PATENTE

    Seção I - Das Disposições Gerais

    Seção II - Do Processo Administrativo de Nulidade

    Seção III - Da Ação de Nulidade

Lei 9279/96 — Portal INPI

**Biblioteca
Economista
Cláudio
Treiguer
Fórum
Chat**



Site anterior

CAPÍTULO VII - DA CESSÃO E DAS ANOTAÇÕES

CAPÍTULO VIII - DAS LICENÇAS

    Seção I - Da Licença Voluntária

    Seção II - Da Oferta de Licença

    Seção III - Da Licença Compulsória

CAPÍTULO IX - DA PATENTE DE INTERESSE DA DEFESA NACIONAL

CAPÍTULO X - DO CERTIFICADO DE ADIÇÃO DE INVENÇÃO

CAPÍTULO XI - DA EXTINÇÃO DA PATENTE

CAPÍTULO XII - DA RETRIBUIÇÃO ANUAL

CAPÍTULO XIII - DA RESTAURAÇÃO

CAPÍTULO XIV - DA INVENÇÃO E DO MODELO DE UTILIDADE
REALIZADO POR EMPREGADO OU PRESTADOR DE SERVIÇO

**TÍTULO II - DOS DESENHOS INDUSTRIAIS**

CAPÍTULO I - DA TITULARIDADE

CAPÍTULO II - DA REGISTRABILIDADE

    Seção I - Dos Desenhos Industriais Registráveis

    Seção II - Da Prioridade

    Seção III - Dos Desenhos Industriais Não Registráveis

CAPÍTULO III - DO PEDIDO DE REGISTRO

    Seção I - Do Depósito do Pedido

    Seção II - Das Condições do Pedido

    Seção III - Do Processo e do Exame do Pedido

CAPÍTULO IV - DA CONCESSÃO E DA VIGÊNCIA DO REGISTRO

CAPÍTULO V - DA PROTEÇÃO CONFERIDA PELO REGISTRO

CAPÍTULO VI - DO EXAME DE MÉRITO

CAPÍTULO VII - DA NULIDADE DO REGISTRO

Lei 9279/96 — Portal INPI

Seção I - Das Disposições Gerais

Seção II - Do Processo Administrativo de Nulidade

Seção III - Da Ação de Nulidade

CAPÍTULO VIII - DA EXTINÇÃO DO REGISTRO

CAPÍTULO IX - DA RETRIBUIÇÃO QUINQUENAL

CAPÍTULO X - DAS DISPOSIÇÕES FINAIS

**TÍTULO III - DAS MARCAS**

CAPÍTULO I - DA REGISTRABILIDADE

Seção I - Dos Sinais Registráveis como Marca

Seção II - Dos Sinais Não Registráveis como Marca

Seção III - Marca de Alto Renome

Seção IV - Marca Notoriamente Conhecida

CAPÍTULO II - PRIORIDADE

CAPÍTULO III - DOS REQUERENTES DE REGISTRO

CAPÍTULO IV - DOS DIREITOS SOBRE A MARCA

Seção I - Aquisição

Seção II - Da Proteção Conferida pelo Registro

CAPÍTULO V - DA VIGÊNCIA, DA CESSÃO E DAS ANOTAÇÕES

Seção I - Da Vigência

Seção II - Da Cessão

Seção III - Das Anotações

Seção IV - Da Licença de Uso

CAPÍTULO VI - DA PERDA DOS DIREITOS

CAPÍTULO VII - DAS MARCAS COLETIVAS E DE CERTIFICAÇÃO

CAPÍTULO VIII - DO DEPÓSITO

Lei 9279/96 — Portal INPI

CAPÍTULO IX - DO EXAME

CAPÍTULO X - DA EXPEDIÇÃO DO CERTIFICADO DE REGISTRO

CAPÍTULO XI - DA NULIDADE DO REGISTRO

    Seção I - Disposições Gerais

    Seção II - Do Processo Administrativo de Nulidade

    Seção III - Da Ação de Nulidade

**TÍTULO IV - DAS INDICAÇÕES GEOGRÁFICAS**

**TÍTULO V - DOS CRIMES CONTRA A PROPRIEDADE INDUSTRIAL**

CAPÍTULO I - DOS CRIMES CONTRA AS PATENTES

CAPÍTULO II - DOS CRIMES CONTRA OS DESENHOS INDUSTRIAIS

CAPÍTULO III - DOS CRIMES CONTRA AS MARCAS

CAPÍTULO IV - DOS CRIMES COMETIDOS POR MEIO DE MARCA, TÍTULO DE ESTABELECIMENTO E SINAL DE PROPAGANDA

CAPÍTULO V - DOS CRIMES CONTRA INDICAÇÕES GEOGRÁFICAS E DEMAIS INDICAÇÕES

CAPÍTULO VI - DOS CRIMES DE CONCORRÊNCIA DESLEAL

CAPÍTULO VII - DAS DISPOSIÇÕES GERAIS

TÍTULO VI - DA TRANSFERÊNCIA DE TECNOLOGIA E DA FRANQUIA

TÍTULO VII - DAS DISPOSIÇÕES GERAIS

CAPÍTULO I - DOS RECURSOS

CAPÍTULO II - DOS ATOS DAS PARTES

CAPÍTULO III - DOS PRAZOS

CAPÍTULO IV - DA PRESCRIÇÃO

CAPÍTULO V - DOS ATOS DO INPI

CAPÍTULO VI - DAS CLASSIFICAÇÕES

CAPÍTULO VII - DA RETRIBUIÇÃO

TÍTULO VIII - DAS DISPOSIÇÕES TRANSITÓRIAS E FINAIS

## DISPOSIÇÕES PRELIMINARES

Art. 1o.- Esta lei regula direitos e obrigações relativos à propriedade industrial.

Art. 2o.- A proteção dos direitos relativos à propriedade industrial, considerado o seu interesse social e o desenvolvimento tecnológico e econômico do País, efetua-se mediante:

I - concessão de patentes de invenção e de modelo de utilidade;
II - concessão de registro de desenho industrial;
III - concessão de registro de marca;
IV - repressão às falsas indicações geográficas; e
V - repressão à concorrência desleal.

Art. 3o.- Aplica-se também o disposto nesta lei:

I - ao pedido de patente ou de registro proveniente do exterior e depositado no País por quem tenha proteção assegurada por tratado ou convenção em vigor no Brasil; e
II - aos nacionais ou pessoas domiciliadas em país que assegure aos brasileiros ou pessoas domiciliadas no Brasil a reciprocidade de direitos iguais ou equivalentes.

Art. 4o.- As disposições dos tratados em vigor no Brasil são aplicáveis, em igualdade de condições, às pessoas físicas e jurídicas nacionais ou domiciliadas no País.

Art. 5o.- Consideram-se bens móveis, para os efeitos legais, os direitos de propriedade industrial.

## TÍTULO I - DAS PATENTES CAPÍTULO I - DA TITULARIDADE

Art. 6o.- Ao autor de invenção ou modelo de utilidade será assegurado o direito de obter a patente que lhe garanta a propriedade, nas condições estabelecidas nesta lei.

Parágrafo 1o.- Salvo prova em contrário, presume-se o requerente legitimado a obter a patente.

Parágrafo 2o.- A patente poderá ser requerida em nome próprio, pelos herdeiros ou sucessores do autor, pelo cessionário ou por aquele a quem a lei ou o contrato de trabalho ou de prestação de serviços determinar que pertença a titularidade.

Parágrafo 3o.- Quando se tratar de invenção ou de modelo de utilidade realizado conjuntamente por duas ou mais pessoas, a patente poderá ser requerida por todas ou qualquer delas, mediante nomeação e qualificação das demais, para ressalva dos respectivos direitos.

Lei 9279/96 — Portal INPI

Parágrafo 40.- O inventor será nomeado e qualificado, podendo requerer a não divulgação de sua nomeação.

Art. 70.- Se dois ou mais autores tiverem realizado a mesma invenção ou modelo de utilidade, de forma independente, o direito de obter patente será assegurado àquele que provar o depósito mais antigo, independentemente das datas de invenção ou criação.

Parágrafo único - A retirada de depósito anterior sem produção de qualquer efeito dará prioridade ao depósito imediatamente posterior.

## CAPÍTULO II - DA PATENTEABILIDADE SEÇÃO I - DAS INVENÇÕES E DOS MODELOS DE UTILIDADE PATENTEÁVEIS

Art. 80.- É patenteável a invenção que atenda aos requisitos de novidade, atividade inventiva e aplicação industrial.

Art. 90.- É patenteável como modelo de utilidade o objeto de uso prático, ou parte deste, suscetível de aplicação industrial, que apresente nova forma ou disposição, envolvendo ato inventivo, que resulte em melhoria funcional no seu uso ou em sua fabricação.

Art. 10 - Não se considera invenção nem modelo de utilidade:

I - descobertas, teorias científicas e métodos matemáticos;
II - concepções puramente abstratas;
III - esquemas, planos, princípios ou métodos comerciais, contábeis, financeiros, educativos, publicitários, de sorteio e de fiscalização;
IV - as obras literárias, arquitetônicas, artísticas e científicas ou qualquer criação estética;
V - programas de computador em si;
VI - apresentação de informações;
VII - regras de jogo;
VIII - técnicas e métodos operatórios, bem como métodos terapêuticos ou de diagnóstico, para aplicação no corpo humano ou animal; e
IX - o todo ou parte de seres vivos naturais e materiais biológicos encontrados na natureza, ou ainda que dela isolados, inclusive o genoma ou germoplasma de qualquer ser vivo natural e os processos biológicos naturais.

Art. 11 - A invenção e o modelo de utilidade são considerados novos quando não compreendidos no estado da técnica.

Parágrafo 10.- O estado da técnica é constituído por tudo aquilo tornado acessível ao público antes da data de depósito do pedido de patente, por descrição escrita ou oral, por uso ou qualquer outro meio, no Brasil ou no exterior, ressalvado o disposto nos arts. 12,16 e 17.

Parágrafo 20.- Para fins de aferição da novidade, o conteúdo completo de pedido depositado no Brasil, e ainda não publicado, será considerado estado da técnica a partir da data de depósito, ou da prioridade reivindicada, desde que venha a ser publicado, mesmo que subseqüentemente.

Parágrafo 30.- O disposto no parágrafo anterior será aplicado ao pedido internacional de patente depositado segundo tratado ou convenção em vigor no Brasil, desde que haja processamento nacional.

Art. 12 - Não será considerada como estado da técnica a divulgação de invenção ou modelo de utilidade, quando ocorrida durante os 12 (doze) meses que precederem a data de depósito ou a da prioridade do pedido de patente, se promovida:

I - pelo inventor;

II - pelo Instituto Nacional da Propriedade Industrial - INPI, através de publicação oficial do pedido de patente depositado sem o consentimento do inventor, baseado em informações deste obtidas ou em decorrência de atos por ele realizados; ou

III - por terceiros, com base em informações obtidas direta ou indiretamente do inventor ou em decorrência de atos por este realizados.

Parágrafo único - O INPI poderá exigir do inventor declaração relativa à divulgação, acompanhada ou não de provas, nas condições estabelecidas em regulamento.

Art. 13 - A invenção é dotada de atividade inventiva sempre que, para um técnico no assunto, não decorra de maneira evidente ou óbvia do estado da técnica.

Art. 14 - O modelo de utilidade é dotado de ato inventivo sempre que, para um técnico no assunto, não decorra de maneira comum ou vulgar do estado da técnica.

Art. 15 - A invenção e o modelo de utilidade são considerados suscetíveis de aplicação industrial quando possam ser utilizados ou produzidos em qualquer tipo de indústria.

## SEÇÃO II - DA PRIORIDADE

Art. 16 - Ao pedido de patente depositado em país que mantenha acordo com o Brasil, ou em organização internacional, que produza efeito de depósito nacional, será assegurado direito de prioridade, nos prazos estabelecidos no acordo, não sendo o depósito invalidado nem prejudicado por fatos ocorridos nesses prazos.

Parágrafo 10.- A reivindicação de prioridade será feita no ato de depósito, podendo ser suplementada dentro de 60 (sessenta) dias por outras prioridades anteriores à data do depósito no Brasil.

Parágrafo 20.- A reivindicação de prioridade será comprovada por documento hábil da origem, contendo número, data, título, relatório descritivo e, se for o caso, reivindicações e desenhos, acompanhado de tradução simples da certidão de depósito ou documento equivalente, contendo dados identificadores do pedido, cujo teor será de inteira responsabilidade do depositante.

Parágrafo 3o.- Se não efetuada por ocasião do depósito, a comprovação deverá ocorrer em até 180 (cento e oitenta dias) contados do depósito.

Parágrafo 4o.- Para os pedidos internacionais depositados em virtude de tratado em vigor no Brasil, a tradução prevista no parágrafo 2o.deverá ser apresentada no prazo de 60 (sessenta) dias contados da data da entrada no processamento nacional.

Parágrafo 5o.- No caso de o pedido depositado no Brasil estar fielmente contido no documento da origem, será suficiente uma declaração do depositante a este respeito para substituir a tradução simples.

Parágrafo 6o.- Tratando-se de prioridade obtida por cessão, o documento correspondente deverá ser apresentado dentro de 180 (cento e oitenta) dias contados do depósito, ou, se for o caso, em até 60 (sessenta) dias da data da entrada no processamento nacional, dispensada a legalização consular no país de origem.

Parágrafo 7o.- A falta de comprovação nos prazos estabelecidos neste artigo acarretará a perda da prioridade.

Parágrafo 8o.- Em caso de pedido depositado com reivindicação de prioridade, o requerimento para antecipação de publicação deverá ser instruído com a comprovação da prioridade.

Art. 17 - O pedido de patente de invenção ou de modelo de utilidade depositado originalmente no Brasil, sem reivindicação de prioridade e não publicado, assegurará o direito de prioridade ao pedido posterior sobre a mesma matéria depositado no Brasil pelo mesmo requerente ou sucessores, dentro do prazo de 1 (um) ano.

Parágrafo 1o.- A prioridade será admitida apenas para a matéria revelada no pedido anterior, não se estendendo a matéria nova introduzida.

Parágrafo 2o.- O pedido anterior ainda pendente será considerado definitivamente arquivado.

Parágrafo 3o.- O pedido de patente originário de divisão de pedido anterior não poderá servir de base a reivindicação de prioridade.

## SEÇÃO III - DAS INVENÇÕES E DOS MODELOS DE UTILIDADE NÃO PATENTEÁVEIS

Art. 18 - Não são patenteáveis:

I - o que for contrário à moral, aos bons costumes e à segurança, à ordem e à saúde públicas;
II - as substâncias, matérias, misturas, elementos ou produtos de qualquer espécie, bem como a modificação de suas propriedades físico-químicas e os respectivos processos de obtenção ou modificação, quando resultantes de transformação do núcleo atômico; e
III - o todo ou parte dos seres vivos, exceto os microorganismos transgênicos

que atendam aos três requisitos de patenteabilidade - novidade, atividade inventiva e aplicação industrial - previstos no art. 8o.e que não sejam mera descoberta.

Parágrafo único - Para os fins desta lei, microorganismos transgênicos são organismos, exceto o todo ou parte de plantas ou de animais, que expressem, mediante intervenção humana direta em sua composição genética, uma característica normalmente não alcançável pela espécie em condições naturais.

## CAPÍTULO III - DO PEDIDO DE PATENTE SEÇÃO I - DO DEPÓSITO DO PEDIDO

Art. 19 - O pedido de patente, nas condições estabelecidas pelo INPI, conterá:

I - requerimento;
II - relatório descritivo;
III - reivindicações;
IV - desenhos, se for o caso;
V - resumo; e
VI - comprovante do pagamento da retribuição relativa ao depósito.

Art. 20 - Apresentado o pedido, será ele submetido a exame formal preliminar e, se devidamente instruído, será protocolizado, considerada a data de depósito a da sua apresentação.

Art. 21 - O pedido que não atender formalmente ao disposto no art. 19, mas que contiver dados relativos ao objeto, ao depositante e ao inventor, poderá ser entregue, mediante recibo datado, ao INPI, que estabelecerá as exigências a serem cumpridas, no prazo de 30 (trinta) dias, sob pena de devolução ou arquivamento da documentação.

Parágrafo único - Cumpridas as exigências, o depósito será considerado como efetuado na data do recibo.

## SEÇÃO II - DAS CONDIÇÕES DO PEDIDO

Art. 22 - O pedido de patente de invenção terá de se referir a uma única invenção ou a um grupo de invenções inter-relacionadas de maneira a compreenderem um único conceito inventivo.

Art. 23 - O pedido de patente de modelo de utilidade terá de se referir a um único modelo principal, que poderá incluir uma pluralidade de elementos distintos, adicionais ou variantes construtivas ou configurativas, desde que mantida a unidade técnico-funcional e corporal do objeto.

Art. 24 - O relatório deverá descrever clara e suficientemente o objeto, de modo a possibilitar sua realização por técnico no assunto e indicar, quando for o caso, a melhor forma de execução.

Parágrafo único - No caso de material biológico essencial à realização prática do objeto do pedido, que não possa ser descrito na forma deste artigo e que não estiver acessível ao público, o relatório será suplementado por depósito do

Lei 9279/96 —— Portal INPI

material em instituição autorizada pelo INPI ou indicada em acordo internacional.

Art. 25 - As reivindicações deverão ser fundamentadas no relatório descritivo, caracterizando as particularidades do pedido e definindo, de modo claro e preciso, a matéria objeto da proteção.

Art. 26 - O pedido de patente poderá ser dividido em dois ou mais, de ofício ou a requerimento do depositante, até o final do exame, desde que o pedido dividido:

I - faça referência específica ao pedido original; e
II - não exceda à matéria revelada constante do pedido original.

Parágrafo único - O requerimento de divisão em desacordo com o disposto neste artigo será arquivado.

Art. 27 - Os pedidos divididos terão a data de depósito do pedido original e o benefício de prioridade deste, se for o caso.

Art. 28 - Cada pedido dividido estará sujeito a pagamento das retribuições correspondentes.

Art. 29 - O pedido de patente retirado ou abandonado será obrigatoriamente publicado.

Parágrafo 1o.- O pedido de retirada deverá ser apresentado em até 16 (dezesseis) meses, contados da data do depósito ou da prioridade mais antiga.

Parágrafo 2o.- A retirada de um depósito anterior sem produção de qualquer efeito dará prioridade ao depósito imediatamente posterior.

## SEÇÃO III - DO PROCESSO E DO EXAME DO PEDIDO

Art. 30 - O pedido de patente será mantido em sigilo durante 18 (dezoito) meses contados da data de depósito ou da prioridade mais antiga, quando houver, após o que será publicado, à exceção do caso previsto no art. 75.

Parágrafo 1o.- A publicação do pedido poderá ser antecipada a requerimento do depositante.

Parágrafo 2o.- Da publicação deverão constar dados identificadores do pedido de patente, ficando cópia do relatório descritivo, das reivindicações, do resumo e dos desenhos à disposição do público no INPI.

Parágrafo 3o.- No caso previsto no parágrafo único do art. 24, o material biológico tornar-se-á acessível ao público com a publicação de que trata este artigo.

Art. 31 - Publicado o pedido de patente e até o final do exame, será facultada a apresentação, pelos interessados, de documentos e informações para subsidiarem o exame.

Parágrafo único - O exame não será iniciado antes de decorridos 60 (sessenta) dias da publicação do pedido.

Art. 32 - Para melhor esclarecer ou definir o pedido de patente, o depositante poderá efetuar alterações até o requerimento do exame, desde que estas se limitem à matéria inicialmente revelada no pedido.

Art. 33 - O exame do pedido de patente deverá ser requerido pelo depositante ou por qualquer interessado, no prazo de 36 (trinta e seis) meses contados da data do depósito, sob pena do arquivamento do pedido.

Parágrafo único - O pedido de patente poderá ser desarquivado, se o depositante assim o requerer, dentro de 60 (sessenta) dias contados do arquivamento, mediante pagamento de uma retribuição específica, sob pena de arquivamento definitivo.

Art. 34 - Requerido o exame, deverão ser apresentados, no prazo de 60 (sessenta) dias, sempre que solicitado, sob pena de arquivamento do pedido:

I - objeções, buscas de anterioridade e resultados de exame para concessão de pedido correspondente em outros países, quando houver reivindicação de prioridade;
II - documentos necessários à regularização do processo e exame do pedido; e
III - tradução simples do documento hábil referido no Parágrafo 2o.do art. 16, caso esta tenha sido substituída pela declaração prevista no Parágrafo 5o.do mesmo artigo.

Art. 35 - Por ocasião do exame técnico, será elaborado o relatório de busca e parecer relativo a:

I - patenteabilidade do pedido;
II - adaptação do pedido à natureza reivindicada;
III - reformulação do pedido ou divisão; ou
IV - exigências técnicas.

Art. 36 - Quando o parecer for pela não patenteabilidade ou pelo não enquadramento do pedido na natureza reivindicada ou formular qualquer exigência, o depositante será intimado para manifestar-se no prazo de 90 (noventa) dias.

Parágrafo 1o.- Não respondida a exigência, o pedido será definitivamente arquivado.

Parágrafo 2o.- Respondida a exigência, ainda que não cumprida, ou contestada sua formulação, e havendo ou não manifestação sobre a patenteabilidade ou o enquadramento, dar-se-á prosseguimento ao exame.

Art. 37 - Concluído o exame, será proferida decisão, deferindo ou indeferindo o pedido de patente.

## CAPÍTULO IV - DA CONCESSÃO E DA VIGÊNCIA DA PATENTE
## SEÇÃO I - DA CONCESSÃO DA PATENTE

Lei 9279/96 — Portal INPI

Art. 38 - A patente será concedida depois de deferido o pedido, e comprovado o pagamento da retribuição correspondente, expedindo-se a respectiva carta-patente.

Parágrafo 1o.- O pagamento da retribuição e respectiva comprovação deverão ser efetuados no prazo de 60 (sessenta) dias contados do deferimento.

Parágrafo 2o.- A retribuição prevista neste artigo poderá ainda ser paga e comprovada dentro de 30 (trinta) dias após o prazo previsto no parágrafo anterior, independentemente de notificação, mediante pagamento de retribuição específica, sob pena de arquivamento definitivo do pedido.

Parágrafo 3o.- Reputa-se concedida a patente na data de publicação do respectivo ato.

Art. 39 - Da carta-patente deverão constar o número, o título e a natureza respectivos, o nome do inventor, observado o disposto no Parágrafo 4o.do art. 6º, a qualificação e o domicílio do titular, o prazo de vigência, o relatório descritivo, as reivindicações e os desenhos, bem como os dados relativos à prioridade.

## SEÇÃO II - DA VIGÊNCIA DA PATENTE

Art. 40 - A patente de invenção vigorará pelo prazo de 20 (vinte) anos e a de modelo de utilidade pelo prazo 15(quinze) anos contados da data de depósito.

Parágrafo único - O prazo de vigência não será inferior a 10 (dez) anos para a patente de invenção e a 7 (sete) anos para a patente de modelo de utilidade, a contar da data de concessão, ressalvada a hipótese de o INPI estar impedido de proceder ao exame de mérito do pedido, por pendência judicial comprovada ou por motivo de força maior.

## CAPÍTULO V - DA PROTEÇÃO CONFERIDA PELA PATENTE SEÇÃO I - DOS DIREITOS

Art. 41 - A extensão da proteção conferida pela patente será determinada pelo teor das reivindicações, interpretado com base no relatório descritivo e nos desenhos.

Art. 42 - A patente confere ao seu titular o direito de impedir terceiro, sem o seu consentimento, de produzir, usar, colocar à venda, vender ou importar com estes propósitos:

I - produto objeto de patente;
II - processo ou produto obtido diretamente por processo patenteado.

Parágrafo 1o.- Ao titular da patente é assegurado ainda o direito de impedir que terceiros contribuam para que outros pratiquem os atos referidos neste artigo.

Parágrafo 2o.- Ocorrerá violação de direito da patente de processo, a que se refere o inciso II, quando o possuidor ou proprietário não comprovar, mediante determinação judicial específica, que o seu produto foi obtido por processo de

fabricação diverso daquele protegido pela patente.

Art.43 - O disposto no artigo anterior não se aplica:

I - aos atos praticados por terceiros não autorizados, em caráter privado e sem finalidade comercial, desde que não acarretem prejuízo ao interesse econômico do titular da patente;
II - aos atos praticados por terceiros não autorizados, com finalidade experimental, relacionados a estudos ou pesquisas científicas ou tecnológicas;
III - à preparação de medicamento de acordo com prescrição médica para casos individuais, executada por profissional habilitado, bem como ao medicamento assim preparado;
IV - a produto fabricado de acordo com patente de processo ou de produto que tiver sido colocado no mercado interno diretamente pelo titular da patente ou com seu consentimento;
V - a terceiros que, no caso de patentes relacionadas com matéria viva, utilizem, sem finalidade econômica, o produto patenteado como fonte inicial de variação ou propagação para obter outros produtos; e
VI - a terceiros que, no caso de patentes relacionadas com matéria viva, utilizem, ponham em circulação ou comercializem um produto patenteado que haja sido introduzido licitamente no comércio pelo detentor da patente ou por detentor de licença, desde que o produto patenteado não seja utilizado para multiplicação ou propagação comercial da matéria viva em causa.
VII - aos atos praticados por terceiros não autorizados, relacionados à invenção protegida por patente, destinados exclusivamente à produção de informações, dados e resultados de testes, visando à obtenção do registro de comercialização, no Brasil ou em outro país, para a exploração e comercialização do produto objeto da patente, após a expiração dos prazos estipulados no art. 40. (Incísio inclúido pela Lei nº 10.196, de 14.2.2001)

Art. 44 - Ao titular da patente é assegurado o direito de obter indenização pela exploração indevida de seu objeto, inclusive em relação à exploração ocorrida entre a data da publicação do pedido e a da concessão da patente.

Parágrafo 1o.- Se o infrator obteve, por qualquer meio, conhecimento do conteúdo do pedido depositado, anteriormente à publicação, contar-se-á o período da exploração indevida para efeito da indenização a partir da data de início da exploração.

Parágrafo 2o.- Quando o objeto do pedido de patente se referir a material biológico, depositado na forma do parágrafo único do art. 24, o direito à indenização será somente conferido quando o material biológico se tiver tornado acessível ao público.

Parágrafo 3o.- O direito de obter indenização por exploração indevida, inclusive com relação ao período anterior à concessão da patente, está limitado ao conteúdo do seu objeto, na forma do art. 41.

## SEÇÃO II - DO USUÁRIO ANTERIOR

Art. 45 - À pessoa de boa fé que, antes da data de depósito ou de prioridade de pedido de patente, explorava seu objeto no País, será assegurado o direito de

efeitos em relação a terceiros.

Parágrafo 10.- A averbação produzirá efeitos em relação a terceiros a partir da data de sua publicação.

Parágrafo 20.- Para efeito de validade de prova de uso, o contrato de licença não precisará estar averbado no INPI.

Art. 63 - O aperfeiçoamento introduzido em patente licenciada pertence a quem o fizer, sendo assegurado à outra parte contratante o direito de preferência para seu licenciamento.

## SEÇÃO II - DA OFERTA DE LICENÇA

Art. 64 - O titular da patente poderá solicitar ao INPI que a coloque em oferta para fins de exploração.

Parágrafo 10.- O INPI promoverá a publicação da oferta.

Parágrafo 20.- Nenhum contrato de licença voluntária de caráter exclusivo será averbado no INPI sem que o titular tenha desistido da oferta.

Parágrafo 30.- A patente sob licença voluntária, com caráter de exclusividade, não poderá ser objeto de oferta.

Parágrafo 40.- O titular poderá, a qualquer momento, antes da expressa aceitação de seus termos pelo interessado, desistir da oferta, não se aplicando o disposto no art. 66.

Art. 65 - Na falta de acordo entre o titular e o licenciado, as partes poderão requerer ao INPI o arbitramento da remuneração.

Parágrafo 1º- Para efeito deste artigo, o INPI observará o disposto no Parágrafo 40.do art. 73.

Parágrafo 20.- A remuneração poderá ser revista decorrido 1 (um) ano de sua fixação.

Art. 66 - A patente em oferta terá sua anuidade reduzida à metade no período compreendido entre o oferecimento e a concessão da primeira licença, a qualquer título.

Art. 67 - O titular da patente poderá requerer o cancelamento da licença se o licenciado não der início a exploração efetiva dentro de 1 (um) ano da concessão, interromper a exploração por prazo superior a 1 (um) ano ou, ainda, se não forem obedecidas as condições para a exploração.

## SEÇÃO III - DA LICENÇA COMPULSÓRIA

Art. 68 - O titular ficará sujeito a ter a patente licenciada compulsoriamente se exercer os direitos dela decorrentes de forma abusiva, ou por meio dela praticar

abuso de poder econômico, comprovado nos termos da lei, por decisão administrativa ou judicial.

Parágrafo 1o.- Ensejam, igualmente, licença compulsória:

I - a não exploração do objeto da patente no território brasileiro por falta de fabricação ou fabricação incompleta do produto, ou, ainda, a falta de uso integral do processo patenteado, ressalvados os casos de inviabilidade econômica, quando será admitida a importação; ou
II - a comercialização que não satisfizer às necessidades do mercado.

Parágrafo 2o.- A licença só poderá ser requerida por pessoa com legítimo interesse e que tenha capacidade técnica e econômica para realizar a exploração eficiente do objeto da patente, que deverá destinar-se, predominantemente, ao mercado interno, extinguindo-se nesse caso a excepcionalidade prevista no inciso I do parágrafo anterior.

Parágrafo 3o.- No caso de a licença compulsória ser concedida em razão de abuso de poder econômico, ao licenciado, que propõe fabricação local, será garantido um prazo, limitado ao estabelecido no art. 74, para proceder à importação do objeto da licença, desde que tenha sido colocado no mercado diretamente pelo titular ou com o seu consentimento.

Parágrafo 4o.- No caso de importação para exploração de patente e no caso da importação prevista no parágrafo anterior, será igualmente admitida a importação por terceiros de produto fabricado de acordo com patente de processo ou de produto, desde que tenha sido colocado no mercado diretamente pelo titular ou com o seu consentimento.

Parágrafo 5o.- A licença compulsória de que trata o Parágrafo 1o. somente será requerida após decorridos 3 (três) anos da concessão da patente.

Art. 69 - A licença compulsória não será concedida se, à data do requerimento, o titular:

I - justificar o desuso por razões legítimas;
II - comprovar a realização de sérios e efetivos preparativos para a exploração; ou
III - justificar a falta de fabricação ou comercialização por obstáculo de ordem legal.

Art. 70 - A licença compulsória será ainda concedida quando, cumulativamente, se verificarem as seguintes hipóteses:

I - ficar caracterizada situação de dependência de uma patente em relação a outra;
II - o objeto da patente dependente constituir substancial progresso técnico em relação à patente anterior; e
III - o titular não realizar acordo com o titular da patente dependente para exploração da patente anterior.

Parágrafo 1o.- Para os fins deste artigo considera-se patente dependente aquela

cuja exploração depende obrigatoriamente da utilização do objeto de patente anterior.

Parágrafo 2o.- Para efeito deste artigo, uma patente de processo poderá ser considerada dependente de patente do produto respectivo, bem como uma patente de produto poderá ser dependente da patente do processo.

Parágrafo 3o.- O titular da patente licenciada na forma deste artigo terá direito a licença compulsória cruzada da patente dependente.

Art. 71 - Nos casos de emergência nacional ou interesse público, declarados em ato do Poder Executivo Federal, desde que o titular da patente ou seu licenciado não atenda a essa necessidade, poderá ser concedida, de ofício, licença compulsória, temporária e não exclusiva, para a exploração da patente, sem prejuízo dos direitos do respectivo titular.

Parágrafo único - O ato de concessão da licença estabelecerá seu prazo de vigência e a possibilidade de prorrogação.

Art. 72 - As licenças compulsórias serão sempre concedidas sem exclusividade, não se admitindo o sublicenciamento.

Art. 73 - O pedido de licença compulsória deverá ser formulado mediante indicação das condições oferecidas ao titular da patente.

Parágrafo 1o.- Apresentado o pedido de licença, o titular será intimado para manifestar-se no prazo de 60 (sessenta) dias, findo o qual, sem manifestação do titular, será considerada aceita a proposta nas condições oferecidas.

Parágrafo 2o.- O requerente de licença que invocar abuso de direitos patentários ou abuso de poder econômico deverá juntar documentação que o comprove.

Parágrafo 3o.- No caso de a licença compulsória ser requerida com fundamento na falta de exploração, caberá ao titular da patente comprovar a exploração.

Parágrafo 4o.- Havendo contestação, o INPI poderá realizar as necessárias diligências, bem como designar comissão, que poderá incluir especialistas não integrantes dos quadros da autarquia, visando arbitrar a remuneração que será paga ao titular.

Parágrafo 5o.- Os órgãos e entidades da administração pública direta ou indireta, federal, estadual e municipal, prestarão ao INPI as informações solicitadas com o objetivo de subsidiar o arbitramento da remuneração.

Parágrafo 6o.- No arbitramento da remuneração, serão consideradas as circunstâncias de cada caso, levando-se em conta, obrigatoriamente, o valor econômico da licença concedida.

Parágrafo 7o.- Instruído o processo, o INPI decidirá sobre a concessão e condições da licença compulsória no prazo de 60 (sessenta) dias.

Parágrafo 8o.- O recurso da decisão que conceder a licença compulsória não terá

efeito suspensivo.

Art. 74 - Salvo razões legítimas, o licenciado deverá iniciar a exploração do objeto da patente no prazo de 1 (um) ano da concessão da licença, admitida a interrupção por igual prazo.

Parágrafo 1o.- O titular poderá requerer a cassação da licença quando não cumprido o disposto neste artigo.

Parágrafo 2o.- O licenciado ficará investido de todos os poderes para agir em defesa da patente.

Parágrafo 3o.- Após a concessão da licença compulsória, somente será admitida a sua cessão quando realizada conjuntamente com a cessão, alienação ou arrendamento da parte do empreendimento que a explore.

## CAPÍTULO IX - DA PATENTE DE INTERESSE DA DEFESA NACIONAL

Art. 75 - O pedido de patente originário do Brasil cujo objeto interesse à defesa nacional será processado em caráter sigiloso e não estará sujeito às publicações previstas nesta lei.

Parágrafo 1o.- O INPI encaminhará o pedido, de imediato, ao órgão competente do Poder Executivo para, no prazo de 60 (sessenta) dias, manifestar-se sobre o caráter sigiloso. Decorrido o prazo sem a manifestação do órgão competente, o pedido será processado normalmente.

Parágrafo 2o.- É vedado o depósito no exterior de pedido de patente cujo objeto tenha sido considerado de interesse da defesa nacional, bem como qualquer divulgação do mesmo, salvo expressa autorização do órgão competente.

Parágrafo 3o.- A exploração e a cessão do pedido ou da patente de interesse da defesa nacional estão condicionadas à prévia autorização do órgão competente, assegurada indenização sempre que houver restrição dos direitos do depositante ou do titular.

## CAPÍTULO X - DO CERTIFICADO DE ADIÇÃO DE INVENÇÃO

Art. 76 - O depositante do pedido ou titular de patente de invenção poderá requerer, mediante pagamento de retribuição específica, certificado de adição para proteger aperfeiçoamento ou desenvolvimento introduzido no objeto da invenção, mesmo que destituído de atividade inventiva, desde que a matéria se inclua no mesmo conceito inventivo. Parágrafo 1o.- Quando tiver ocorrido a publicação do pedido principal, o pedido de certificado de adição será imediatamente publicado.

Parágrafo 2o.- O exame do pedido de certificado de adição obedecerá ao disposto nos arts. 30 a 37, ressalvado o disposto no parágrafo anterior.

Parágrafo 3o.- O pedido de certificado de adição será indeferido se o seu objeto não apresentar o mesmo conceito inventivo.

Parágrafo 4o.- O depositante poderá, no prazo do recurso, requerer a transformação do pedido de certificado de adição em pedido de patente, beneficiando-se da data de depósito do pedido de certificado, mediante pagamento das retribuições cabíveis.

Art. 77 - O certificado de adição é acessório da patente, tem a data final de vigência desta e acompanha-a para todos os efeitos legais. Parágrafo único - No processo de nulidade, o titular poderá requerer que a matéria contida no certificado de adição seja analisada para se verificar a possibilidade de sua subsistência, sem prejuízo do prazo de vigência da patente.

## CAPÍTULO XI - DA EXTINÇÃO DA PATENTE

Art. 78 - A patente extingue-se:

I - pela expiração do prazo de vigência;
II - pela renúncia de seu titular, ressalvado o direito de terceiros;
III - pela caducidade;
IV - pela falta de pagamento da retribuição anual, nos prazos previstos no Parágrafo 2o.do art. 84 e no art. 87; e
V - pela inobservância do disposto no art. 217.

Parágrafo único - Extinta a patente, o seu objeto cai em domínio público.

Art. 79 - A renúncia só será admitida se não prejudicar direitos de terceiros.

Art. 80 - Caducará a patente, de ofício ou a requerimento de qualquer pessoa com legítimo interesse, se, decorridos 2 (dois) anos da concessão da primeira licença compulsória, esse prazo não tiver sido suficiente para prevenir ou sanar o abuso ou desuso, salvo motivos justificáveis.

Parágrafo 1o.- A patente caducará quando, na data do requerimento da caducidade ou da instauração de ofício do respectivo processo, não tiver sido iniciada a exploração.

Parágrafo 2o.- No processo de caducidade instaurado a requerimento, o INPI poderá prosseguir se houver desistência do requerente.

Art. 81 - O titular será intimado mediante publicação para se manifestar, no prazo de 60 (sessenta) dias, cabendo-lhe o ônus da prova quanto à exploração.

Art. 82 - A decisão será proferida dentro de 60 (sessenta) dias, contados do término do prazo mencionado no artigo anterior.

Art. 83 - A decisão da caducidade produzirá efeitos a partir da data do requerimento ou da publicação da instauração de ofício do processo.

## CAPÍTULO XII - DA RETRIBUIÇÃO ANUAL

Art. 84 - O depositante do pedido e o titular da patente estão sujeitos ao pagamento de retribuição anual, a partir do início do terceiro ano da data do depósito.

Parágrafo 1o.- O pagamento antecipado da retribuição anual será regulado pelo INPI.

Parágrafo 2o.- O pagamento deverá ser efetuado dentro dos primeiros 3 (três) meses de cada período anual, podendo, ainda, ser feito, independente de notificação, dentro dos 6 (seis) meses subsequentes, mediante pagamento de retribuição adicional.

Art. 85 - O disposto no artigo anterior aplica-se aos pedidos internacionais depositados em virtude de tratado em vigor no Brasil, devendo o pagamento das retribuições anuais vencidas antes da data da entrada no processamento nacional ser efetuado no prazo de 3 (três) meses dessa data.

Art. 86 - A falta de pagamento da retribuição anual, nos termos dos arts. 84 e 85, acarretará o arquivamento do pedido ou a extinção da patente.

## CAPÍTULO XIII - DA RESTAURAÇÃO

Art. 87 - O pedido de patente e a patente poderão ser restaurados, se o depositante ou o titular assim o requerer, dentro de 3 (três) meses, contados da notificação do arquivamento do pedido ou da extinção da patente, mediante pagamento de retribuição específica.

## CAPÍTULO XIV - DA INVENÇÃO E DO MODELO DE UTILIDADE REALIZADO POR EMPREGADO OU PRESTADOR DE SERVIÇO

Art. 88 - A invenção e o modelo de utilidade pertencem exclusivamente ao empregador quando decorrerem de contrato de trabalho cuja execução ocorra no Brasil e que tenha por objeto a pesquisa ou a atividade inventiva, ou resulte esta da natureza dos serviços para os quais foi o empregado contratado.

Parágrafo 1o.- Salvo expressa disposição contratual em contrário, a retribuição pelo trabalho a que se refere este artigo limita-se ao salário ajustado.

Parágrafo 2o.- Salvo prova em contrário, consideram-se desenvolvidos na vigência do contrato a invenção ou o modelo de utilidade, cuja patente seja requerida pelo empregado até 1 (um) ano após a extinção do vínculo empregatício.

Art. 89 - O empregador, titular da patente, poderá conceder ao empregado, autor de invento ou aperfeiçoamento, participação nos ganhos econômicos resultantes da exploração da patente, mediante negociação com o interessado ou conforme disposto em norma da empresa.

Parágrafo único - A participação referida neste artigo não se incorpora, a qualquer título, ao salário do empregado.

Art. 90 - Pertencerá exclusivamente ao empregado a invenção ou o modelo de utilidade por ele desenvolvido, desde que desvinculado do contrato de trabalho e não decorrente da utilização de recursos, meios, dados, materiais, instalações ou equipamentos do empregador.

Lei 9279/96 --- Portal INPI

Art. 91 - A propriedade de invenção ou de modelo de utilidade será comum, em partes iguais, quando resultar da contribuição pessoal do empregado e de recursos, dados, meios, materiais, instalações ou equipamentos do empregador, ressalvada expressa disposição contratual em contrário.

Parágrafo 1o.- Sendo mais de um empregado, a parte que lhes couber será dividida igualmente entre todos, salvo ajuste em contrário.

Parágrafo 2o.- É garantido ao empregador o direito exclusivo de licença de exploração e assegurada ao empregado a justa remuneração.

Parágrafo 3o.- A exploração do objeto da patente, na falta de acordo, deverá ser iniciada pelo empregador dentro do prazo de 1(um) ano, contado da data de sua concessão, sob pena de passar à exclusiva propriedade do empregado a titularidade da patente, ressalvadas as hipóteses de falta de exploração por razões legítimas.

Parágrafo 4o.- No caso de cessão, qualquer dos co-titulares, em igualdade de condições , poderá exercer o direito de preferência.

Art. 92 - O disposto nos artigos anteriores aplica-se, no que couber, às relações entre o trabalhador autônomo ou o estagiário e a empresa contratante e entre empresas contratadas.

Art. 93 - Aplica-se o disposto neste Capítulo, no que couber, às entidades da Administração Pública, direta, indireta e fundacional, federal, estadual ou municipal.

Parágrafo único - Na hipótese do art. 88, será assegurada ao inventor, na forma e condições previstas no estatuto ou regimento interno da entidade a que se refere este artigo, premiação de parcela no valor das vantagens auferidas com o pedido ou com a patente, a título de incentivo.

## TÍTULO II - DOS DESENHOS INDUSTRIAIS CAPÍTULO I - DA TITULARIDADE

Art. 94 - Ao autor será assegurado o direito de obter registro de desenho industrial que lhe confira a propriedade, nas condições estabelecidas nesta lei.

Parágrafo único - Aplicam-se ao registro de desenho industrial, no que couber, as disposições dos arts. 6o.e 7º.

## CAPÍTULO II - DA REGISTRABILIDADE SEÇÃO I - DOS DESENHOS INDUSTRIAIS REGISTRÁVEIS

Art. 95 - Considera-se desenho industrial a forma plástica ornamental de um objeto ou o conjunto ornamental de linhas e cores que possa ser aplicado a um produto, proporcionando resultado visual novo e original na sua configuração externa e que possa servir de tipo de fabricação industrial.

Art. 96 - O desenho industrial é considerado novo quando não compreendido no estado da técnica.

Parágrafo 1o.- O estado da técnica é constituído por tudo aquilo tornado acessível ao público antes da data de depósito do pedido, no Brasil ou no exterior, por uso ou qualquer outro meio, ressalvado o disposto no Parágrafo 3o. deste artigo e no art. 99.

Parágrafo 2o.- Para aferição unicamente da novidade, o conteúdo completo de pedido de patente ou de registro depositado no Brasil, e ainda não publicado, será considerado como incluído no estado da técnica a partir da data de depósito, ou da prioridade reivindicada, desde que venha a ser publicado, mesmo que subseqüentemente.

Parágrafo 3o.- Não será considerado como incluído no estado da técnica o desenho industrial cuja divulgação tenha ocorrido durante os 180 (cento e oitenta) dias que precederem a data do depósito ou da prioridade reivindicada, se promovida nas situações previstas nos incisos I a III do art. 12.

Art. 97 - O desenho industrial é considerado original quando dele resulte uma configuração visual distintiva, em relação a outros objetos anteriores.

Parágrafo único - O resultado visual original poderá ser decorrente da combinação de elementos conhecidos.

Art. 98 - Não se considera desenho industrial qualquer obra de caráter puramente artístico.

## SEÇÃO II - DA PRIORIDADE

Art. 99 - Aplicam-se ao pedido de registro, no que couber, as disposições do art. 16, exceto o prazo previsto no seu Parágrafo 3º, que será de 90 (noventa) dias.

## SEÇÃO III - DOS DESENHOS INDUSTRIAIS NÃO REGISTRÁVEIS

Art. 100 - Não, são registráveis como desenho industrial:

l - o que for contrário à moral e aos bons costumes ou que ofenda a honra ou imagem de pessoas, ou atente contra liberdade de consciência, crença, culto religioso ou idéia e sentimentos dignos de respeito e veneração;
II - a forma necessária comum ou vulgar do objeto ou, ainda, aquela determinada essencialmente por considerações técnicas ou funcionais.

## CAPÍTULO III - DO PEDIDO DE REGISTRO SEÇÃO I - DO DEPÓSITO DO PEDIDO

Art. 101 - O pedido de registro, nas condições estabelecidas pelo INPI, conterá:

I - requerimento;
II - relatório descritivo, se for o caso;
III - reivindicações, se for o caso;
IV - desenhos ou fotografias;
V - campo de aplicação do objeto; e
VI - comprovante do pagamento da retribuição relativa ao depósito.

Lei 9279/96 — Portal INPI

Parágrafo único - Os documentos que integram o pedido de registro deverão ser apresentados em língua portuguesa.

Art. 102 - Apresentado o pedido, será ele submetido a exame formal preliminar e, se devidamente instruído, será protocolizado, considerada a data do depósito a da sua apresentação.

Art. 103 - O pedido que não atender formalmente ao disposto no art. 101, mas que contiver dados suficientes relativos ao depositante, ao desenho industrial e ao autor, poderá ser entregue, mediante recibo datado, ao INPI, que estabelecerá as exigências a serem cumpridas, em 5 (cinco) dias, sob pena de ser considerado inexistente.

Parágrafo único - Cumpridas as exigências, o depósito será considerado como efetuado na data da apresentação do pedido.

## SEÇÃO II - DAS CONDIÇÕES DO PEDIDO

Art. 104 - O pedido de registro de desenho industrial terá que se referir a um único objeto, permitida uma pluralidade de variações, desde que se destinem ao mesmo propósito e guardem entre si a mesma característica distintiva preponderante, limitado cada pedido ao máximo de 20 (vinte) variações.

Parágrafo único - O desenho deverá representar clara e suficientemente o objeto e suas variações, se houver, de modo a possibilitar sua reprodução por técnico no assunto.

Art. 105 - Se solicitado o sigilo na forma do Parágrafo 1o.do art.106, poderá o pedido ser retirado em até 90 (noventa) dias contados da data do depósito.

Parágrafo único - A retirada de um depósito anterior sem produção de qualquer efeito irá dará prioridade ao depósito imediatamente posterior.

## SEÇÃO III - DO PROCESSO E DO EXAME DO PEDIDO

Art. 106 - Depositado o pedido de registro de desenho industrial e observado o disposto nos arts. 100, 101 e 104, será automaticamente publicado e simultaneamente concedido o registro, expedindo-se o respectivo certificado.
Parágrafo 1o. - A requerimento do depositante, por ocasião do depósito, poderá ser mantido em sigilo o pedido, pelo prazo de 180 (cento e oitenta) dias contados da data do depósito, após o que será processado.

Parágrafo 2o.- Se o depositante se beneficiar do disposto no art. 99, aguardar-se-á a apresentação do documento de prioridade para o processamento do pedido.

Parágrafo 3o.- Não atendido o disposto nos arts. 101 e 104, será formulada exigência, que deverá ser respondida em 60 (sessenta) dias, sob pena de arquivamento definitivo.

Parágrafo 4o.- Não atendido o disposto no art. 100, o pedido de registro será indeferido.

## CAPÍTULO IV - DA CONCESSÃO E DA VIGÊNCIA DO REGISTRO

Art. 107 - Do certificado deverão constar o número e o título, nome do autor - observado o disposto no Parágrafo 4o.do art. 6º, o nome, a nacionalidade e o domicílio do titular, o prazo de vigência, os desenhos, os dados relativos à prioridade estrangeira, e, quando houver, relatório descritivo e reivindicações .

Art. 108 - O registro vigorará pelo prazo de 10 (dez) anos contados da data do depósito, prorrogável por 3 (três) períodos sucessivos de 5 (cinco) anos cada.

Parágrafo 1o. O pedido de prorrogação deverá ser formulado durante o último ano de vigência do registro, instruído com o comprovante do pagamento da respectiva retribuição.

Parágrafo 2o.- Se o pedido de prorrogação não tiver sido formulado até o termo final da vigência do registro, o titular poderá fazê-lo nos (180) cento e oitenta dias subsequentes, mediante o pagamento de retribuição adicional.

## CAPÍTULO V - DA PROTEÇÃO CONFERIDA PELO REGISTRO

Art. 109 - A propriedade do desenho industrial adquire-se pelo registro validamente concedido.

Parágrafo único - Aplicam-se ao registro do desenho industrial, no que couber, as disposições do art. 42 e dos incisos I, II e IV do art. 43.

Art. 110 - À pessoa que, de boa fé, antes da data do depósito ou da prioridade do pedido de registro explorava seu objeto no País, será assegurado o direito de continuar a exploração, sem ônus, na forma e condição anteriores.

Parágrafo 1o.- O direito conferido na forma deste artigo só poderá ser cedido juntamente com o negócio ou empresa, ou parte deste, que tenha direta relação com a exploração do objeto do registro, por alienação ou arrendamento.

Parágrafo 2o.- O direito de que trata este artigo não será assegurado a pessoa que tenha tido conhecimento do objeto do registro através de divulgação nos termos do Parágrafo 3o.do art. 96, desde que o pedido tenha sido depositado no prazo de 6 (seis) meses contados da divulgação.

## CAPÍTULO VI - DO EXAME DE MÉRITO

Art. 111 - O titular do desenho industrial poderá requerer o exame do objeto do registro, a qualquer tempo da vigência, quanto aos aspectos de novidade e de originalidade.

Parágrafo único - O INPI emitirá parecer de mérito, que, se concluir pela ausência de pelo menos um dos requisitos definidos nos arts. 95 a 98, servirá de fundamento para instauração de ofício de processo de nulidade do registro.

## CAPÍTULO VII - DA NULIDADE DO REGISTRO SEÇÃO I - DAS DISPOSIÇÕES GERAIS

Art. 120 - O titular do registro está sujeito ao pagamento de retribuição qüinqüenal, a partir do segundo quinquênio da data do depósito.

Parágrafo 1o.- O pagamento do segundo quinquênio será feito durante o 5o. (quinto) ano da vigência do registro.

Parágrafo 2o.- O pagamento dos demais quinquênios será apresentado junto com o pedido de prorrogação a que se refere o art. 108.

Parágrafo 3o.- O pagamento dos quinquênios poderá ainda ser efetuado dentro dos 6 (seis) meses subsequentes ao prazo estabelecido no parágrafo anterior, mediante pagamento de retribuição adicional.

## CAPÍTULO X - DAS DISPOSIÇÕES FINAIS

Art. 121 - As disposições dos arts. 58 a 63 aplicam-se, no que couber, à matéria de que trata o presente Título, disciplinando-se o direito do empregado ou prestador de serviços pelas disposições dos arts. 88 a 93.

TÍTULO III - DAS MARCAS CAPÍTULO I - DA REGISTRABILIDADE SEÇÃO I - DOS SINAIS REGISTRÁVEIS COMO MARCA

Art. 122 - São suscetíveis de registro como marca os sinais distintivos visualmente perceptíveis, não compreendidos nas proibições legais.

Art. 123 - Para os efeitos desta lei, considera-se:

I - marca de produto ou serviço: aquela usada para distinguir produto ou serviço de outro idêntico, semelhante ou afim, de origem diversa;
II - marca de certificação: aquela usada para atestar a conformidade de um produto ou serviço com determinadas normas ou especificações técnicas, notadamente quanto à qualidade, natureza, material utilizado e metodologia empregada; e
III - marca coletiva: aquela usada para identificar produtos ou serviços provindos de membros de uma determinada entidade.

## SEÇÃO II - DOS SINAIS NÃO REGISTRÁVEIS COMO MARCA

Art. 124 - Não são registráveis como marca:

I - brasão, armas, medalha, bandeira, emblema, distintivo e monumento oficiais, públicos, nacionais, estrangeiros ou internacionais, bem como a respectiva designação, figura ou imitação;
II - letra, algarismo e data, isoladamente, salvo quando revestidos de suficiente forma distintiva;
III - expressão, figura, desenho ou qualquer outro sinal contrário à moral e aos bons costumes ou que ofenda a honra ou imagem de pessoas ou atente contra liberdade de consciência, crença, culto religioso ou idéia e sentimento dignos de respeito e veneração;
IV - designação ou sigla de entidade ou órgão público, quando não requerido o registro pela própria entidade ou órgão público;
V - reprodução ou imitação de elemento característico ou diferenciador de título

°½⊔⊥↑=#–#→–#–▲¶#––#'¶–'¶'' –#°»¿à⊔⊥▶MS PCLXLFont 002°¿R⊥7°ó⊥N©°

de estabelecimento ou nome de empresa de terceiros, suscetível de causar confusão ou associação com estes sinais distintivos;

VI - sinal de caráter genérico, necessário, comum, vulgar ou simplesmente descritivo, quando tiver relação com o produto ou serviço a distinguir, ou aquele empregado comumente para designar uma característica do produto ou serviço, quanto à natureza, nacionalidade, peso, valor, qualidade e época de produção ou de prestação do serviço, salvo quando revestidos de suficiente forma distintiva;

VII - sinal ou expressão empregada apenas como meio de propaganda;

VIII - cores e suas denominações, salvo se dispostas ou combinadas de modo peculiar e distintivo;

IX - indicação geográfica, sua imitação suscetível de causar confusão ou sinal que possa falsamente induzir indicação geográfica;

X - sinal que induza a falsa indicação quanto à origem, procedência, natureza, qualidade ou utilidade do produto ou serviço a que a marca se destina;

XI - reprodução ou imitação de cunho oficial, regularmente adotada para garantia de padrão de qualquer gênero ou natureza;

XII - reprodução ou imitação de sinal que tenha sido registrado como marca coletiva ou de certificação por terceiro, observado o disposto no art. 154;

XIII - nome, prêmio ou símbolo de evento esportivo, artístico, cultural, social, político, econômico ou técnico, oficial ou oficialmente reconhecido, bem como a imitação suscetível de criar confusão, salvo quando autorizados pela autoridade competente ou entidade promotora do evento;

XIV - reprodução ou imitação de título, apólice, moeda e cédula da União, dos Estados, do Distrito Federal, dos Territórios, dos Municípios, ou de país;

XV - nome civil ou sua assinatura, nome de família ou patronímico e imagem de terceiros, salvo com consentimento do titular, herdeiros ou sucessores;

XVI - pseudônimo ou apelido notoriamente conhecidos, nome artístico singular ou coletivo, salvo com consentimento do titular, herdeiros ou sucessores;

XVII - obra literária, artística ou científica, assim como os títulos que estejam protegidos pelo direito autoral e sejam suscetíveis de causar confusão ou associação, salvo com consentimento do autor ou titular;

XVIII - termo técnico usado na indústria, na ciência e na arte, que tenha relação com o produto ou serviço a distinguir;

XIX - reprodução ou imitação, no todo ou em parte, ainda que com acréscimo, de marca alheia registrada, para distinguir ou certificar produto ou serviço idêntico, semelhante ou afim, suscetível de causar confusão ou associação com marca alheia;

XX - dualidade de marcas de um só titular para o mesmo produto ou serviço, salvo quando, no caso de marcas de mesma natureza, se revestirem de suficiente forma distintiva;

XXI - a forma necessária, comum ou vulgar do produto ou de acondicionamento, ou, ainda, aquela que não possa ser dissociada de efeito técnico;

XXII - objeto que estiver protegido por registro de desenho industrial de terceiro; e

XXIII - sinal que imite ou reproduza, no todo ou em parte, marca que o requerente evidentemente não poderia desconhecer em razão de sua atividade, cujo titular seja sediado ou domiciliado em território nacional ou em país com o qual o Brasil mantenha acordo ou que assegure reciprocidade de tratamento, se a marca se destinar a distinguir produto ou serviço idêntico, semelhante ou afim, suscetível de causar confusão ou associação com aquela marca alheia.

## SEÇÃO III - MARCA DE ALTO RENOME

Art. 125 - À marca registrada no Brasil considerada de alto renome será assegurada proteção especial, em todos os ramos de atividade.

## SEÇÃO IV - MARCA NOTORIAMENTE CONHECIDA

Art. 126 - A marca notoriamente conhecida em seu ramo de atividade nos termos do art. 6o.bis (I), da Convenção da União de Paris para Proteção da Propriedade Industrial, goza de proteção especial, independentemente de estar previamente depositada ou registrada no Brasil.

Parágrafo 1o.- A proteção de que trata este artigo aplica-se também as marcas de serviço.

Parágrafo 2o.- O INPI poderá indeferir de ofício pedido de registro de marca que reproduza ou imite, no todo ou em parte, marca notoriamente conhecida.

## CAPÍTULO II - PRIORIDADE

Art. 127 - Ao pedido de registro de marca depositado em país que mantenha acordo com o Brasil ou em organização internacional, que produza efeito de depósito nacional, será assegurado direito de prioridade, nos prazos estabelecidos no acordo, não sendo o depósito invalidado nem prejudicado por fatos ocorridos nesses prazos.

Parágrafo 1o.- A reivindicação da prioridade será feita no ato de depósito, podendo ser suplementada dentro de 60 (sessenta) dias, por outras prioridades anteriores à data do depósito no Brasil.

Parágrafo 2o.- A reivindicação da prioridade será comprovada por documento hábil da origem, contendo o número, a data e a reprodução do pedido ou do registro, acompanhado de tradução simples, cujo teor será de inteira responsabilidade do depositante.

Parágrafo 3o.- Se não efetuada por ocasião do depósito, a comprovação deverá ocorrer em até 4 (quatro) meses, contados do depósito, sob pena de perda da prioridade.

Parágrafo 4o.- Tratando-se de prioridade obtida por cessão, o documento correspondente deverá ser apresentado junto com o próprio documento de prioridade.

## CAPÍTULO III - DOS REQUERENTES DE REGISTRO

Art. 128 - Podem requerer registro de marca as pessoas físicas ou jurídicas de direito público ou de direito privado.

Parágrafo 1o.- As pessoas de direito privado só podem requerer registro de marca relativo à atividade que exerçam efetiva e licitamente, de modo direto ou através de empresas que controlem direta ou indiretamente, declarando, no próprio requerimento, esta condição, sob as penas da lei.

Parágrafo 2o.- O registro de marca coletiva só poderá ser requerido por pessoa

jurídica representativa de coletividade, a qual poderá exercer atividade distinta da de seus membros.

Parágrafo 3o.- O registro da marca de certificação só poderá ser requerido por pessoa sem interesse comercial ou industrial direto no produto ou serviço atestado.

Parágrafo 4o.- A reivindicação de prioridade não isenta o pedido da aplicação dos dispositivos constantes deste Título.

## CAPÍTULO IV - DOS DIREITOS SOBRE A MARCA SEÇÃO I - AQUISIÇÃO

Art. 129 - A propriedade da marca adquire-se pelo registro validamente expedido, conforme as disposições desta lei, sendo assegurado ao titular seu uso exclusivo em todo o território nacional, observado quanto às marcas coletivas e de certificação o disposto nos arts. 147 e 148.

Parágrafo 1o.- Toda pessoa que, de boa fé, na data da prioridade ou depósito, usava no País, há pelo menos 6 (seis) meses, marca idêntica ou semelhante, para distinguir ou certificar produto ou serviço idêntico, semelhante ou afim, terá direito de precedência ao registro.

Parágrafo 2o.- O direito de precedência somente poderá ser cedido juntamente com o negócio da empresa, ou parte deste, que tenha direta relação com o uso da marca, por alienação ou arrendamento.

## SEÇÃO II - DA PROTEÇÃO CONFERIDA PELO REGISTRO

Art. 130 - Ao titular da marca ou ao depositante é ainda assegurado o direito de:

I - ceder seu registro ou pedido de registro;
II - licenciar seu uso;
III - zelar pela sua integridade material ou reputação.

Art. 131 - A proteção de que trata esta lei abrange o uso da marca em papéis, impressos, propaganda e documentos relativos à atividade do titular.

Art. 132 - O titular da marca não poderá:

I - impedir que comerciantes ou distribuidores utilizem sinais distintivos que lhes são próprios, juntamente com a marca do produto, na sua promoção e comercialização;
II - impedir que fabricantes de acessórios utilizem a marca para indicar a destinação do produto, desde que obedecidas as práticas leais de concorrência;
III - impedir a livre circulação de produto colocado no mercado interno, por si ou por outrem com seu consentimento, ressalvado o disposto nos Parágrafo 3o.e 4o.do art. 68; e
IV - impedir a citação da marca em discurso, obra científica ou literária ou qualquer outra publicação, desde que sem conotação comercial e sem prejuízo para seu caráter distintivo.

Lei 9279/96 — Portal INPI

## CAPÍTULO V - DA VIGÊNCIA, DA CESSÃO E DAS ANOTAÇÕES
## SEÇÃO I - DA VIGÊNCIA

Art. 133 - O registro da marca vigorará pelo prazo de 10 (dez) anos, contados da data da concessão do registro, prorrogável por períodos iguais e sucessivos.

Parágrafo 1o.- O pedido de prorrogação deverá ser formulado durante o último ano de vigência do registro, instruído com o comprovante do pagamento da respectiva retribuição.

Parágrafo 2o.- Se o pedido de prorrogação não tiver sido efetuado até o termo final da vigência do registro, o titular poderá fazê-lo nos 6 (seis) meses subsequentes, mediante o pagamento de retribuição adicional.

Parágrafo 3o.- A prorrogação não será concedida se não atendido o disposto no art. 128.

## SEÇÃO II - DA CESSÃO

Art. 134 - O pedido de registro e o registro poderão ser cedidos, desde que o cessionário atenda aos requisitos legais para requerer tal registro.

Art. 135 - A cessão deverá compreender todos os registros ou pedido , em nome do cedente, de marcas iguais ou semelhantes, relativas a produto ou serviço idêntico, semelhante ou afim, sob pena de cancelamento dos registros ou arquivamento dos pedidos não cedidos.

## SEÇÃO III - DAS ANOTAÇÕES

Art. 136 - O INPI fará as seguintes anotações:

I - da cessão, fazendo constar a qualificação completa do cessionário;
II - de qualquer limitação ou ônus que recaia sobre o pedido ou registro; e
III - das alterações de nome, sede ou endereço do depositante ou titular.

Art. 137 - As anotações produzirão efeitos em relação a terceiros a partir da data de sua publicação.

Art. 138 - Cabe recurso da decisão que:

I - indeferir anotação de cessão;
II - cancelar o registro ou arquivar o pedido, nos termos do art. 135.

## SEÇÃO IV - DA LICENÇA DE USO

Art. 139 - O titular de registro ou o depositante de pedido de registro poderá celebrar contrato de licença para uso da marca, sem prejuízo de seu direito de exercer controle efetivo sobre as especificações, natureza e qualidade dos respectivos produtos ou serviços.

Parágrafo único - O licenciado poderá ser investido pelo titular de todos os

Art. 140 - O contrato de licença deverá ser averbado no INPI para que produza efeitos em relação a terceiros.

Parágrafo 1o.- A averbação produzirá efeitos em relação a terceiros a partir da data de sua publicação.

Parágrafo 2o.- Para efeito de validade de prova de uso, o contrato de licença não precisará estar averbado no INPI.

Art. 141 - Da decisão que indeferir a averbação do contrato de licença cabe recurso.

## CAPÍTULO VI - DA PERDA DOS DIREITOS

Art. 142 - O registro da marca extingue-se:

I - pela expiração do prazo de vigência;
II - pela renúncia, que poderá ser total ou parcial em relação aos produtos ou serviços assinalados pela marca;
III - pela caducidade; ou
IV - pela inobservância do disposto no art. 217.

Art. 143 - Caducará o registro, a requerimento de qualquer pessoa com legítimo interesse se, decorridos 5 (cinco) anos da sua concessão, na data do requerimento:

I - o uso da marca não tiver sido iniciado no Brasil; ou
II - o uso da marca tiver sido interrompido por mais de 5 (cinco) anos consecutivos, ou se, no mesmo prazo, a marca tiver sido usada com modificação que implique alteração de seu caráter distintivo original, tal como constante do certificado de registro.

Parágrafo 1o.- Não ocorrerá caducidade se o titular justificar o desuso da marca por razões legítimas.

Parágrafo 2o.- O titular será intimado para se manifestar no prazo de 60 (sessenta) dias, cabendo-lhe o ônus de provar o uso da marca ou justificar seu desuso por razões legítimas.

Art. 144 - O uso da marca deverá compreender produtos ou serviços constantes do certificado, sob pena de caducar parcialmente o registro em relação aos não semelhantes ou afins daqueles para os quais a marca foi comprovadamente usada.

Art. 145 - Não se conhecerá do requerimento de caducidade se o uso da marca tiver sido comprovado ou justificado seu desuso em processo anterior, requerido há menos de 5 (cinco) anos.

Art. 146 - Da decisão que declarar ou denegar a caducidade caberá recurso.

## CAPÍTULO VII - DAS MARCAS COLETIVAS E DE CERTIFICAÇÃO

Art. 147 - O pedido de registro de marca coletiva conterá regulamento de utilização, dispondo sobre condições e proibições de uso da marca.

Parágrafo único - O regulamento de utilização, quando não acompanhar o pedido, deverá ser protocolizado no prazo de 60 (sessenta) dias do depósito, sob pena de arquivamento definitivo do pedido.

Art. 148 - O pedido de registro da marca de certificação conterá:

I - as características do produto ou serviço objeto de certificação; e
II - as medidas de controle que serão adotadas pelo titular.

Parágrafo único - A documentação prevista nos incisos I e II deste artigo, quando não acompanhar o pedido, deverá ser protocolizada no prazo de 60 (sessenta) dias, sob pena de arquivamento definitivo do pedido.

Art. 149 - Qualquer alteração no regulamento de utilização deverá ser comunicada ao INPI, mediante petição protocolizada, contendo todas as condições alteradas, sob pena de não ser considerada.

Art. 150 - O uso da marca independe de licença, bastando sua autorização no regulamento de utilização.

Art. 151 - Além das causas de extinção estabelecidas no art. 142, o registro da marca coletiva e de certificação extingue-se quando:

I - a entidade deixar de existir; ou
II - a marca for utilizada em condições outras que não aquelas previstas no regulamento de utilização.

Art. 152 - Só será admitida a renúncia ao registro de marca coletiva quando requerida nos termos do contrato social ou estatuto da própria entidade, ou, ainda, conforme o regulamento de utilização.

Art. 153 - A caducidade do registro será declarada se a marca coletiva não for usada por mais de uma pessoa autorizada, observado o disposto nos arts. 143 a 146.

Art. 154 - A marca coletiva e a de certificação que já tenham sido usadas e cujos registros tenham sido extintos não poderão ser registradas em nome de terceiro, antes de expirado o prazo de 5 (cinco) anos, contados da extinção do registro.

## CAPÍTULO VIII - DO DEPÓSITO

Art. 155 - O pedido deverá referir-se a um único sinal distintivo e, nas condições estabelecidas pelo INPI, conterá:

I - requerimento;
II - etiquetas, quando for o caso; e

III - comprovante do pagamento da retribuição relativa ao depósito.

Parágrafo único - O requerimento e qualquer documento que o acompanhe deverão ser apresentados em língua portuguesa e, quando houver documento em língua estrangeira, sua tradução simples deverá ser apresentada no ato do depósito ou dentro dos 60 (sessenta) dias subsequentes, sob pena de não ser considerado o documento.

Art. 156 - Apresentado o pedido, será ele submetido a exame formal preliminar e, se devidamente instruído, será protocolizado, considerada a data de depósito a da sua apresentação.

Art. 157 - O pedido que não atender formalmente ao disposto no art. 155, mas que contiver dados suficientes relativos ao depositante, sinal marcário e classe, poderá ser entregue, mediante recibo datado, ao INPI, que estabelecerá as exigências a serem cumpridas pelo depositante, em 5 (cinco) dias, sob pena de ser considerado inexistente.

Parágrafo único - Cumpridas as exigências, o depósito será considerado como efetuado na data da apresentação do pedido.

## CAPÍTULO IX - DO EXAME

Art. 158 - Protocolizado, o pedido será publicado para apresentação de oposição no prazo de 60 (sessenta) dias.

Parágrafo 10.- O depositante será intimado da oposição, podendo se manifestar no prazo de 60 (sessenta) dias.

Parágrafo 20.- Não se conhecerá da oposição, nulidade administrativa ou de ação de nulidade se, fundamentada no inciso XXIII do art. 124 ou no art. 126, não se comprovar, no prazo de 60 (sessenta) dias após a interposição, o depósito do pedido de registro da marca na forma desta lei.

Art. 159 - Decorrido o prazo de oposição ou, se interposta esta, findo o prazo de manifestação, será feito o exame, durante o qual poderão ser formuladas exigências, que deverão ser respondidas no prazo de 60 (sessenta) dias.

Parágrafo 10.- Não respondida a exigência, o pedido será definitivamente arquivado.

Parágrafo 20.- Respondida a exigência, ainda que não cumprida, ou contestada a sua formulação, dar-se-á prosseguimento ao exame.

Art. 160 - Concluído o exame, será proferida decisão, deferindo ou indeferindo o pedido de registro.

## CAPÍTULO X - DA EXPEDIÇÃO DO CERTIFICADO DE REGISTRO

Art. 161 - O certificado de registro será concedido depois de deferido o pedido e comprovado o pagamento das retribuições correspondentes.

Art. 162 - O pagamento das retribuições , e sua comprovação, relativas à expedição do certificado de registro e ao primeiro decênio de sua vigência, deverão ser efetuados no prazo de 60 (sessenta) dias contados do deferimento.

Parágrafo único - A retribuição poderá ainda ser paga e comprovada dentro de 30 (trinta) dias após o prazo previsto neste artigo, independentemente de notificação, mediante o pagamento de retribuição específica, sob pena de arquivamento definitivo do pedido.

Art. 163 - Reputa-se concedido o certificado de registro na data da publicação do respectivo ato.

Art. 164 - Do certificado deverão constar a marca, o número e data do registro, nome, nacionalidade e domicílio do titular, os produtos ou serviços, as características do registro e a prioridade estrangeira.

## CAPÍTULO XI - DA NULIDADE DO REGISTRO SEÇÃO I - DISPOSIÇÕES GERAIS

Art. 165 - É nulo o registro que for concedido em desacordo com as disposições desta lei.

Parágrafo único - A nulidade do registro poderá ser total ou parcial, sendo condição para a nulidade parcial o fato de a parte subsistente poder ser considerada registrável.

Art. 166 - O titular de uma marca registrada em país signatário da Convenção da União de Paris para Proteção da Propriedade Industrial poderá, alternativamente, reivindicar, através de ação judicial, a adjudicação do registro, nos termos previstos no art. 6o.septies (1) daquela Convenção.

Art. 167 - A declaração de nulidade produzirá efeito a partir da data do depósito do pedido.

## SEÇÃO II - DO PROCESSO ADMINISTRATIVO DE NULIDADE

Art. 168 - A nulidade do registro será declarada administrativamente quando tiver sido concedida com infringência do disposto nesta lei.

Art. 169 - O processo de nulidade poderá ser instaurado de ofício ou mediante requerimento de qualquer pessoa com legítimo interesse, no prazo de 180 (cento e oitenta) dias contados da data da expedição do certificado de registro.

Art. 170 - O titular será intimado para se manifestar no prazo de 60 (sessenta) dias.

Art. 171 - Decorrido o prazo fixado no artigo anterior, mesmo que não apresentada a manifestação, o processo será decidido pelo Presidente do INPI, encerrando-se a instância administrativa.

Art. 172 - O processo de nulidade prosseguirá ainda que extinto o registro.

### SEÇÃO III - DA AÇÃO DE NULIDADE

Art. 173 - A ação de nulidade poderá ser proposta pelo INPI ou por qualquer pessoa com legítimo interesse.

Parágrafo único - O juiz poderá, nos autos da ação de nulidade, determinar liminarmente a suspensão dos efeitos do registro e do uso da marca, atendidos os requisitos processuais próprios.

Art. 174 - Prescreve em 5 (cinco) anos a ação para declarar a nulidade do registro, contados da data da sua concessão.

Art. 175 - A ação de nulidade do registro será ajuizada no foro da justiça federal e o INPI, quando não for autor, intervirá no feito.

Parágrafo 10.- O prazo para resposta do réu titular do registro será de 60 (sessenta) dias.

Parágrafo 20.- Transitada em julgado a decisão da ação de nulidade, o INPI publicará anotação, para ciência de terceiros.

### TÍTULO IV - DAS INDICAÇÕES GEOGRÁFICAS

Art. 176 - Constitui indicação geográfica a indicação de procedência ou a denominação de origem.

Art. 177- Considera-se indicação de procedência o nome geográfico de país, cidade, região ou localidade de seu território, que se tenha tornado conhecido como centro de extração, produção ou fabricação de determinado produto ou de prestação de determinado serviço.

Art. 178 - Considera-se denominação de origem o nome geográfico de país, cidade, região ou localidade de seu território, que designe produto ou serviço cujas qualidades ou características se devam exclusiva ou essencialmente ao meio geográfico, incluídos fatores naturais e humanos.

Art. 179 - A proteção estender-se-á à representação gráfica ou figurativa da indicação geográfica, bem como à representação geográfica de país, cidade, região ou localidade de seu território cujo nome seja indicação geográfica.

Art. 180 - Quando o nome geográfico se houver tornado de uso comum, designando produto ou serviço, não será considerado indicação geográfica.

Art. 181 - O nome geográfico que não constitua indicação de procedência ou denominação de origem poderá servir de elemento característico de marca para produto ou serviço, desde que não induza falsa procedência.

Art. 182 - O uso da indicação geográfica é restrito aos produtores e prestadores de serviço estabelecidos no local, exigindo-se, ainda, em relação às denominações de origem, o atendimento de requisitos de qualidade.

Parágrafo único - O INPI estabelecerá as condições de registro das indicações geográficas.

## TÍTULO V -DOS CRIMES CONTRA A PROPRIEDADE INDUSTRIAL
## CAPÍTULO I - DOS CRIMES CONTRA AS PATENTES

Art. 183 - Comete crime contra patente de invenção ou de modelo de utilidade quem:

I - fabrica produto que seja objeto de patente de invenção ou de modelo de utilidade, sem autorização do titular; ou
II - usa meio ou processo que seja objeto de patente de invenção, sem autorização do titular.

Pena - detenção, de 3 (três) meses a 1 (um) ano, ou multa.

Art. 184 - Comete crime contra patente de invenção ou de modelo de utilidade quem:

I - exporta, vende, expõe ou oferece à venda, tem em estoque, oculta ou recebe, para utilização com fins econômicos, produto fabricado com violação de patente de invenção ou de modelo de utilidade, ou obtido por meio ou processo patenteado; ou
II - importa produto que seja objeto de patente de invenção ou de modelo de utilidade ou obtido por meio ou processo patenteado no País, para os fins previstos no inciso anterior, e que não tenha sido colocado no mercado externo diretamente pelo titular da patente ou com seu consentimento.

Pena - detenção, de 1 (um) a 3 (três) meses, ou multa.

Art.185 - Fornecer componente de um produto patenteado, ou material ou equipamento para realizar um processo patenteado, desde que a aplicação final do componente, material ou equipamento induza, necessariamente, à exploração do objeto da patente.

Pena - detenção, de 1 (um) a 3 (três) meses, ou multa.

Art. 186 - Os crimes deste capítulo caracterizam-se ainda que a violação não atinja todas as reivindicações da patente ou se restrinja à utilização de meios equivalentes ao objeto da patente.

## CAPÍTULO II - DOS CRIMES CONTRA OS DESENHOS INDUSTRIAIS

Art. 187 - Fabricar, sem autorização do titular, produto que incorpore desenho industrial registrado, ou imitação substancial que possa induzir em erro ou confusão .

Pena - detenção, de 3 (três) meses a 1 (um) ano, ou multa.

Art. 188 - Comete crime contra registro de desenho industrial quem:

I - exporta, vende, expõe ou oferece à venda, tem em estoque, oculta ou recebe, para utilização com fins econômicos, objeto que incorpore ilicitamente desenho industrial registrado, ou imitação substancial que possa induzir em erro ou confusão; ou
II - importa produto que incorpore desenho industrial registrado no País, ou imitação substancial que possa induzir em erro ou confusão, para os fins previstos no inciso anterior, e que não tenha sido colocado no mercado externo diretamente pelo titular ou com seu consentimento.

Pena - detenção, de 1 (um) a 3 (três) meses, ou multa.

## CAPÍTULO III - DOS CRIMES CONTRA AS MARCAS

Art. 189 - Comete crime contra registro de marca quem:

I - reproduz, sem autorização do titular, no todo ou em parte, marca registrada, ou imita-a de modo que possa induzir confusão; ou
II - altera marca registrada de outrem já aposta em produto colocado no mercado.

Pena - detenção, de 3 (três) meses a 1 (um) ano, ou multa.

Art. 190 - Comete crime contra registro de marca quem importa, exporta, vende, oferece ou expõe à venda, oculta ou tem em estoque:

I - produto assinalado com marca ilicitamente reproduzida ou imitada, de outrem, no todo ou em parte; ou
II - produto de sua indústria ou comércio, contido em vasilhame, recipiente ou embalagem que contenha marca legítima de outrem.

Pena - detenção, de 1 (um) a 3 (três) meses, ou multa.

## CAPÍTULO IV - DOS CRIMES COMETIDOS POR MEIO DE MARCA, TÍTULO DE ESTABELECIMENTO E SINAL DE PROPAGANDA

Art. 191 - Reproduzir ou imitar, de modo que possa induzir em erro ou confusão , armas, brasões ou distintivos oficiais nacionais, estrangeiros ou internacionais, sem a necessária autorização, no todo ou em parte, em marca, título de estabelecimento, nome comercial, insígnia ou sinal de propaganda, ou usar essas reproduções ou imitações com fins econômicos.

Pena - detenção, de 1 (um) a 3 (três) meses, ou multa.

Parágrafo único - Incorre na mesma pena quem vende ou expõe ou oferece à venda produtos assinalados com essas marcas.

## CAPÍTULO V - DOS CRIMES CONTRA INDICAÇÕES GEOGRÁFICAS E DEMAIS INDICAÇÕES

Art. 192 - Fabricar, importar, exportar, vender, expor ou oferecer à venda ou ter em estoque produto que apresente falsa indicação geográfica.

Pena - detenção, de 1 (um) a 3 (três) meses, ou multa.

Art. 193 - Usar, em produto, recipiente, invólucro, cinta, rótulo, fatura, circular, cartaz ou em outro meio de divulgação ou propaganda, termos retificativos, tais como "tipo", "espécie", "gênero", "sistema", "semelhante", "sucedâneo", "idêntico", ou equivalente, não ressalvando a verdadeira procedência do produto.

Pena - detenção, de 1 (um) a 3 (três) meses, ou multa.

Art. 194 - Usar marca, nome comercial, título de estabelecimento, insígnia, expressão ou sinal de propaganda ou qualquer outra forma que indique procedência que não a verdadeira, ou vender ou expor à venda produto com esses sinais.

Pena - detenção, de 1 (um) a 3 (três) meses, ou multa.

## CAPÍTULO VI - DOS CRIMES DE CONCORRÊNCIA DESLEAL

Art. 195 - Comete crime de concorrência desleal quem:

I - publica, por qualquer meio, falsa afirmação, em detrimento de concorrente, com o fim de obter vantagem;
II - presta ou divulga, acerca de concorrente, falsa informação, com o fim de obter vantagem;
III - emprega meio fraudulento, para desviar, em proveito próprio ou alheio, clientela de outrem;
IV - usa expressão ou sinal de propaganda alheios, ou os imita, de modo a criar confusão entre os produtos ou estabelecimentos;

V - usa, indevidamente, nome comercial, título de estabelecimento ou insígnia alheios ou vende, expõe ou oferece à venda ou tem em estoque produto com essas referências;
VI - substitui, pelo seu próprio nome ou razão social, em produto de outrem, o nome ou razão social deste, sem o seu consentimento;
VII - atribui-se, como meio de propaganda, recompensa ou distinção que não obteve;
VIII - vende ou expõe ou oferece à venda, em recipiente ou invólucro de outrem, produto adulterado ou falsificado, ou dele se utiliza para negociar com produto da mesma espécie, embora não adulterado ou falsificado, se o fato não constitui crime mais grave;
IX - dá ou promete dinheiro ou outra utilidade a empregado de concorrente, para que o empregado, faltando ao dever do emprego, lhe proporcione vantagem;
X - recebe dinheiro ou outra utilidade, ou aceita promessa de paga ou recompensa, para, faltando ao dever de empregado, proporcionar vantagem a concorrente do empregador;
XI - divulga, explora ou utiliza-se, sem autorização, de conhecimentos, informações ou dados confidenciais, utilizáveis na indústria, comércio ou prestação de serviços, excluídos aqueles que sejam de conhecimento público ou que sejam evidentes para um técnico no assunto, a que teve acesso mediante relação contratual ou empregatícia, mesmo após o término do contrato; XII -

divulga, explora ou utiliza-se, sem autorização, de conhecimentos ou informações a que se refere o inciso anterior, obtidos por meios ilícitos ou a que teve acesso mediante fraude; ou

XIII - vende, expõe ou oferece à venda produto, declarando ser objeto de patente depositada, ou concedida, ou de desenho industrial registrado, que não o seja, ou menciona-o, em anúncio ou papel comercial, como depositado ou patenteado, ou registrado, sem o ser;

XIV - divulga, explora ou utiliza-se, sem autorização, de resultados de testes ou outros dados não divulgados, cuja elaboração envolva esforço considerável e que tenham sido apresentados a entidades governamentais como condição para aprovar a comercialização de produtos.

Pena - detenção, de 3 (três) meses a 1 (um) ano, ou multa.

Parágrafo 1o.- Inclui-se nas hipóteses a que se referem os incisos XI e XII o empregador, sócio ou administrador da empresa, que incorrer nas tipificações estabelecidas nos mencionados dispositivos.

Parágrafo 2o.- O disposto no inciso XIV não se aplica quanto à divulgação por órgão governamental competente para autorizar a comercialização de produto, quando necessário para proteger o público.

## CAPÍTULO VII - DAS DISPOSIÇÕES GERAIS

Art. 196 - As penas de detenção previstas nos Capítulos I, II e III deste Título serão aumentadas de um terço à metade se:

I - o agente é ou foi representante, mandatário, preposto, sócio ou empregado do titular da patente ou do registro, ou, ainda, do seu licenciado; ou

II - a marca alterada, reproduzida ou imitada for de alto renome, notoriamente conhecida, de certificação ou coletiva.

Art. 197 - As penas de multa previstas neste Título serão fixadas, no mínimo, em 10 (dez) e, no máximo, em 360 (trezentos e sessenta) dias-multa, de acordo com a sistemática do Código Penal.

Parágrafo único - A multa poderá ser aumentada ou reduzida, em até 10 (dez) vezes, em face das condições pessoais do agente e da magnitude da vantagem auferida, independentemente da norma estabelecida no artigo anterior.

Art. 198 - Poderão ser apreendidos, de ofício ou a requerimento do interessado, pelas autoridades alfandegárias, no ato de conferência, os produtos assinalados com marcas falsificadas, alteradas ou imitadas ou que apresentem falsa indicação de procedência.

Art. 199 - Nos crimes previstos neste Título somente se procede mediante queixa, salvo quanto ao crime do art. 191, em que a ação penal será pública.

Art. 200 - A ação penal e as diligências preliminares de busca e apreensão, nos crimes contra a propriedade industrial, regulam-se pelo disposto no Código de Processo Penal, com as modificações constantes dos artigos deste Capítulo.

!!

Art. 201 - Na diligência de busca e apreensão, em crime contra patente que tenha por objeto a invenção de processo, o oficial do juízo será acompanhado por perito, que verificará, preliminarmente, a existência do ilícito, podendo o juiz ordenar a apreensão de produtos obtidos pelo contrafator com o emprego do processo patenteado.

Art. 202 - Além das diligências preliminares de busca e apreensão, o interessado poderá requerer:

I - apreensão de marca falsificada, alterada ou imitada onde for preparada ou onde quer que seja encontrada, antes de utilizada para fins criminosos; ou
ll - destruição de marca falsificada nos volumes ou produtos que a contiverem, antes de serem distribuídos, ainda que fiquem destruídos os envoltórios ou os próprios produtos.

Art. 203 - Tratando-se de estabelecimentos industriais ou comerciais legalmente organizados e que estejam funcionando publicamente, as diligências preliminares limitar-se-ão à vistoria e apreensão dos produtos, quando ordenadas pelo juiz, não podendo ser paralisada a sua atividade licitamente exercida.

Art. 204 - Realizada a diligência de busca e apreensão, responderá por perdas e danos a parte que a tiver requerido de má-fé, por espírito de emulação, mero capricho ou erro grosseiro.

Art. 205 - Poderá constituir matéria de defesa na ação penal a alegação de nulidade da patente ou registro em que a ação se fundar. A absolvição do réu, entretanto, não importará a nulidade da patente ou do registro, que só poderá ser demandada pela ação competente.

Art. 206 - Na hipótese de serem reveladas, em juízo, para a defesa dos interesses de qualquer das partes, informações que se caracterizem como confidenciais, sejam segredo de indústria ou de comércio, deverá o juiz determinar que o processo prossiga em segredo de justiça, vedado o uso de tais informações também à outra parte para outras finalidades.

Art. 207 - Independentemente da ação criminal, o prejudicado poderá intentar as ações cíveis que considerar cabíveis na forma do Código de Processo Civil.

Art. 208 - A indenização será determinada pelos benefícios que o prejudicado teria auferido se a violação não tivesse ocorrido.

Art. 209 - Fica ressalvado ao prejudicado o direito de haver perdas e danos em ressarcimento de prejuízos causados por atos de violação de direitos de propriedade industrial e atos de concorrência desleal não previstos nesta Lei, tendentes a prejudicar a reputação ou os negócios alheios, a criar confusão entre estabelecimentos comerciais, industriais ou prestadores de serviço, ou entre os produtos e serviços postos no comércio.

Parágrafo 1o.- Poderá o juiz, nos autos da própria ação, para evitar dano irreparável ou de difícil reparação, determinar liminarmente a sustação da violação ou de ato que a enseje, antes da citação do réu, mediante, caso julgue

necessário, caução em dinheiro ou garantia fidejussória. Parágrafo 2o.- Nos casos de reprodução ou de imitação flagrante de marca registrada, o juiz poderá determinar a apreensão de todas as mercadorias, produtos, objetos, embalagens, etiquetas e outros que contenham a marca falsificada ou imitada.

Art. 210 - Os lucros cessantes serão determinados pelo critério mais favorável ao prejudicado, dentre os seguintes:

I - os benefícios que o prejudicado teria auferido se a violação não tivesse ocorrido; ou
II - os benefícios que foram auferidos pelo autor da violação do direito; ou
III - a remuneração que o autor da violação teria pago ao titular do direito violado pela concessão de uma licença que lhe permitisse legalmente explorar o bem.

## TÍTULO VI - DA TRANSFERÊNCIA DE TECNOLOGIA E DA FRANQUIA

Art. 211 - O INPI fará o registro dos contratos que impliquem transferência de tecnologia, contratos de franquia e similares para produzirem efeitos em relação a terceiros.

Parágrafo único - A decisão relativa aos pedidos de registro de contratos de que trata este artigo será proferida no prazo de 30 (trinta) dias, contados da data do pedido de registro.

## TÍTULO VII - DAS DISPOSIÇÕES GERAIS CAPÍTULO I - DOS RECURSOS

Art. 212 - Salvo expressa disposição em contrário, das decisões de que trata esta Lei cabe recurso, que será interposto no prazo de 60 (sessenta) dias.

Parágrafo 1o.- Os recursos serão recebidos nos efeitos suspensivo e devolutivo pleno, aplicando-se todos os dispositivos pertinentes ao exame de primeira instância, no que couber.

Parágrafo 2o.- Não cabe recurso da decisão que determinar o arquivamento definitivo de pedido de patente ou de registro e da que deferir pedido de patente, de certificado de adição ou de registro de marca.

Parágrafo 3o.- Os recursos serão decididos pelo Presidente do INPI, encerrando-se a instância administrativa.

Art. 213 - Os interessados serão intimados para, no prazo de 60 (sessenta) dias, oferecerem contra-razões ao recurso.

Art. 214 - Para fins de complementação das razões oferecidas a título de recurso, o INPI poderá formular exigências, que deverão ser cumpridas no prazo de 60 (sessenta) dias.

Parágrafo único - Decorrido o prazo do caput, será decidido o recurso.

Art. 215 - A decisão do recurso é final e irrecorrível na esfera administrativa.

## CAPÍTULO II - DOS ATOS DAS PARTES

Art. 216 - Os atos previstos nesta Lei serão praticados pelas partes ou por seus procuradores, devidamente qualificados.

Parágrafo 1o.- O instrumento de procuração, no original, traslado ou fotocópia autenticada, deverá ser em língua portuguesa, dispensados a legalização consular e o reconhecimento de firma.

Parágrafo 2o.- A procuração deverá ser apresentada em até 60 (sessenta) dias contados da prática do primeiro ato da parte no processo, independente de notificação ou exigência, sob pena de arquivamento, sendo definitivo o arquivamento do pedido de patente, do pedido de registro de desenho industrial e de registro de marca.

Art. 217 - A pessoa domiciliada no exterior deverá constituir e manter procurador devidamente qualificado e domiciliado no País, com poderes para representá-la administrativa e judicialmente, inclusive para receber citações.

Art. 218 - Não se conhecerá da petição:

I - se apresentada fora do prazo legal; ou
II - se desacompanhada do comprovante da respectiva retribuição no valor vigente à data de sua apresentação.

Art. 219 - Não serão conhecidos a petição, a oposição e o recurso, quando:

I - apresentados fora do prazo previsto nesta Lei;
II - não contiverem fundamentação legal; ou
III - desacompanhados do comprovante do pagamento da retribuição correspondente.

Art. 220 - O INPI aproveitará os atos das partes, sempre que possível, fazendo as exigências cabíveis.

## CAPÍTULO III - DOS PRAZOS

Art. 221 - Os prazos estabelecidos nesta Lei são contínuos, extinguindo-se automaticamente o direito de praticar o ato, após seu decurso, salvo se a parte provar que não o realizou por justa causa.

Parágrafo 1o.- Reputa-se justa causa o evento imprevisto, alheio à vontade da parte e que a impediu de praticar o ato.

Parágrafo 2o.- Reconhecida a justa causa, a parte praticará o ato no prazo que lhe for concedido pelo INPI.

Art. 222 - No cômputo dos prazos, exclui-se o dia do começo e inclui-se o do vencimento.

Art. 223 - Os prazos somente começam a correr a partir do primeiro dia útil após a intimação, que será feita mediante publicação no órgão oficial do INPI.

Art. 224 - Não havendo expressa estipulação nesta Lei, o prazo para a prática do ato será de 60 (sessenta) dias.

## CAPÍTULO IV - DA PRESCRIÇÃO

Art. 225 - Prescreve em 5 (cinco) anos a ação para reparação de dano causado ao direito de propriedade industrial.

## CAPÍTULO V - DOS ATOS DO INPI

Art. 226 - Os atos do INPI nos processos administrativos referentes à propriedade industrial só produzem efeitos a partir da sua publicação no respectivo órgão oficial, ressalvados:

I - os que expressamente independerem de notificação ou publicação por força do disposto nesta Lei;

II - as decisões administrativas, quando feita notificação por via postal ou por ciência dada ao interessado no processo; e
III - os pareceres e despachos internos que não necessitem ser do conhecimento das partes.

## CAPÍTULO VI - DAS CLASSIFICAÇÕES

Art. 227 - As classificações relativas às matérias dos Títulos I, II e III desta Lei serão estabelecidas pelo INPI, quando não fixadas em tratado ou acordo internacional em vigor no Brasil.

## CAPÍTULO VII - DA RETRIBUIÇÃO

Art. 228 - Para os serviços previstos nesta Lei será cobrada retribuição, cujo valor e processo de recolhimento serão estabelecidos por ato do titular do órgão da administração pública federal a que estiver vinculado o INPI.

## TÍTULO VIII - DAS DISPOSIÇÕES TRANSITÓRIAS E FINAIS

Art. 229. Aos pedidos em andamento serão aplicadas as disposições desta Lei, exceto quanto à patenteabilidade dos pedidos depositados até 31 de dezembro de 1994, cujo objeto de proteção sejam substâncias, matérias ou produtos obtidos por meios ou processos químicos ou substâncias, matérias, misturas ou produtos alimentícios, químico-farmacêuticos e medicamentos de qualquer espécie, bem como os respectivos processos de obtenção ou modificação e cujos depositantes não tenham exercido a faculdade prevista nos arts. 230 e 231 desta Lei, os quais serão considerados indeferidos, para todos os efeitos, devendo o INPI publicar a comunicação dos aludidos indeferimentos. (Redação dada pela Lei nº 10.196, de 14.2.2001)

Parágrafo único. Aos pedidos relativos a produtos farmacêuticos e produtos químicos para a agricultura, que tenham sido depositados entre 1º de janeiro de

1995 e 14 de maio de 1997, aplicam-se os critérios de patenteabilidade desta Lei, na data efetiva do depósito do pedido no Brasil ou da prioridade, se houver, assegurando-se a proteção a partir da data da concessão da patente, pelo prazo remanescente a contar do dia do depósito no Brasil, limitado ao prazo previsto no caput do art. 40. (Parágrafo único inclúido pela Lei nº 10.196, de 14.2.2001)

Art. 229-A.  Consideram-se indeferidos os pedidos de patentes de processo apresentados entre 1o de janeiro de 1995 e 14 de maio de 1997, aos quais o art. 90, alínea "c", da Lei no 5.772, de 21 de dezembro de 1971, não conferia proteção, devendo o INPI publicar a comunicação dos aludidos indeferimentos. (Artigo inclúido pela Lei nº 10.196, de 14.2.2001)

Art. 229-B.  Os pedidos de patentes de produto apresentados entre 1º de janeiro de 1995 e 14 de maio de 1997, aos quais o art. 9º, alíneas "b" e "c", da Lei no 5.772, de 1971, não conferia proteção e cujos depositantes não tenham exercido a faculdade prevista nos arts. 230 e 231, serão decididos até 31 de dezembro de 2004, em conformidade com esta Lei. (Artigo inclúido pela Lei nº 10.196, de 14.2.2001)

Art. 229-C.  A concessão de patentes para produtos e processos farmacêuticos dependerá da prévia anuência da Agência Nacional de Vigilância Sanitária - ANVISA. (Artigo inclúido pela Lei nº 10.196, de 14.2.2001)

Art. 230 - Poderá ser depositado pedido de patente relativo às substâncias, matérias ou produtos obtidos por meios ou processos químicos e as substâncias, matérias, misturas ou produtos alimentícios, químico-farmacêuticos e medicamentos de qualquer espécie, bem como os respectivos processos de obtenção ou modificação, por quem tenha proteção garantida em tratado ou convenção em vigor no Brasil, ficando assegurada a data do primeiro depósito no exterior, desde que seu objeto não tenha sido colocado em qualquer mercado, por iniciativa direta do titular ou por terceiro com seu consentimento, nem tenham sido realizados, por terceiros, no País, sérios e efetivos preparativos para a exploração do objeto do pedido ou da patente.

Parágrafo 1o.- O depósito deverá ser feito dentro do prazo de 1 (um) ano contado da publicação desta Lei, e deverá indicar a data do primeiro depósito no exterior.

Parágrafo 2o.- O pedido de patente depositado com base neste artigo será automaticamente publicado, sendo facultado a qualquer interessado manifestar-se, no prazo de 90 (noventa) dias, quanto ao atendimento do disposto no caput deste artigo.

Parágrafo 3o.- Respeitados os arts. 10 e 18 desta Lei, e uma vez atendidas as condições estabelecidas neste artigo e comprovada a concessão da patente no país onde foi depositado o primeiro pedido, será concedida a patente no Brasil, tal como concedida no país de origem.

Parágrafo 4o.- Fica assegurado à patente concedida com base neste artigo o prazo remanescente de proteção no país onde foi depositado o primeiro pedido, contado da data do depósito no Brasil e limitado ao prazo previsto no art. 40, não se aplicando o disposto no seu parágrafo único.

Parágrafo 5o.- O depositante que tiver pedido de patente em andamento, relativo às substâncias, matérias ou produtos obtidos por meios ou processos químicos e as substâncias, matérias, misturas ou produtos alimentícios, químico-farmacêuticos e medicamentos de qualquer espécie, bem como os respectivos processos de obtenção ou modificação, poderá apresentar novo pedido, no prazo e condições estabelecidos neste artigo, juntando prova de desistência do pedido em andamento.

Parágrafo 6o.- Aplicam-se as disposições desta Lei, no que couber, ao pedido depositado e à patente concedida com base neste artigo.

Art. 231 - Poderá ser depositado pedido de patente relativo às matérias de que trata o artigo anterior, por nacional ou pessoa domiciliada no País, ficando assegurada a data de divulgação do invento, desde que seu objeto não tenha sido colocado em qualquer mercado, por iniciativa direta do titular ou por terceiro com seu consentimento, nem tenham sido realizados, por terceiros, no País, sérios e efetivos preparativos para a exploração do objeto do pedido. Parágrafo 1o.- O depósito deverá ser feito dentro do prazo de 1 (um) ano contado da publicação desta Lei.

Parágrafo 2o.- O pedido de patente depositado com base neste artigo será processado nos termos desta Lei.

Parágrafo 3o.- Fica assegurada à patente concedida com base neste artigo o prazo remanescente de proteção de 20 (vinte) anos contado da data da divulgação do invento, a partir do depósito no Brasil.

Parágrafo 4o.- O depositante que tiver pedido de patente em andamento, relativo às matérias de que trata o artigo anterior, poderá apresentar novo pedido, no prazo e condições estabelecidos neste artigo, juntando prova de desistência do pedido em andamento.

Art. 232 - A produção ou utilização, nos termos da legislação anterior, de substâncias, matérias ou produtos obtidos por meios ou processos químicos e as substâncias, matérias, misturas ou produtos alimentícios, químico-farmacêuticos e medicamentos de qualquer espécie, bem como os respectivos processos de obtenção ou modificação, mesmo que protegidos por patente de produto ou processo em outro país, de conformidade com tratado ou convenção em vigor no Brasil, poderão continuar, nas mesmas condições anteriores à aprovação desta Lei.

Parágrafo 1o.- Não será admitida qualquer cobrança retroativa ou futura, de qualquer valor, a qualquer título, relativa a produtos produzidos ou processos utilizados no Brasil em conformidade com este artigo.

Parágrafo 2o.- Não será igualmente admitida cobrança nos termos do parágrafo anterior, caso, no período anterior à entrada em vigência dessa Lei, tenham sido realizados investimentos significativos para a exploração de produto ou de processo referidos neste artigo, mesmo que protegidos por patente de produto ou de processo em outro país.

Art. 233 - Os pedidos de registro de expressão e sinal de propaganda e de

declaração de notoriedade serão definitivamente arquivados e os registros e declaração permanecerão em vigor pelo prazo de vigência restante, não podendo ser prorrogados.

Art. 234 - Fica assegurada ao depositante a garantia de prioridade de que trata o art. 70.da Lei no.5.772, de 21 de dezembro de 1971, até o término do prazo em curso.

Art. 235 - É assegurado o prazo em curso concedido na vigência da Lei no.5.772, de 21 de dezembro de 1971.

Art. 236 - O pedido de patente de modelo ou de desenho industrial depositado na vigência da Lei no.5.772, de 21 de dezembro de 1971, será automaticamente denominado pedido de registro de desenho industrial, considerando-se, para todos os efeitos legais, a publicação já feita.

Parágrafo único - Nos pedidos adaptados serão considerados os pagamentos para efeito de cálculo de retribuição qüinqüenal devida.

Art. 237 - Aos pedidos de patente de modelo ou de desenho industrial que tiverem sido objeto de exame na forma da Lei no.5.772, de 21 de dezembro de 1971, não se aplicará o disposto no art. 111.

Art. 238 - Os recursos interpostos na vigência da Lei no.5.772, de 21 de dezembro de 1971, serão decididos na forma nela prevista.

Art. 239 - Fica o Poder Executivo autorizado a promover as necessárias transformações no INPI, para assegurar à Autarquia autonomia financeira e administrativa, podendo esta:

I - contratar pessoal técnico e administrativo mediante concurso público;

II - fixar tabela de salários para os seus funcionários, sujeita à aprovação do Ministério a que estiver vinculado o INPI; e

III - dispor sobre a estrutura básica e regimento interno, que serão aprovados pelo Ministério a que estiver vinculado o INPI.

Parágrafo único - As despesas resultantes da aplicação deste artigo correrão por conta de recursos próprios do INPI.

Art. 240 - O art. 20. da Lei no.5.648, de 11 de dezembro de 1970, passa a ter a seguinte redação:

"Art. 20.- O INPI tem por finalidade principal executar, no âmbito nacional, as normas que regulam a propriedade industrial, tendo em vista a sua função social, econômica, jurídica e técnica, bem como pronunciar-se quanto à conveniência de assinatura, ratificação e denúncia de convenções, tratados, convênios e acordos sobre propriedade industrial".

Art. 241 - Fica o Poder Judiciário autorizado a criar juízos especiais para dirimir questões relativas à propriedade intelectual.

Art. 242 - O Poder Executivo submeterá ao Congresso Nacional projeto de lei destinado a promover, sempre que necessário, a harmonização desta Lei com a política para propriedade industrial adotada pelos demais países integrantes do MERCOSUL.

Art. 243 - Esta Lei entra em vigor na data de sua publicação quanto às matérias disciplinadas nos arts. 230, 231, 232 e 239 e 1 (um) ano após sua publicação quanto aos demais artigos.

Art. 244 - Revogam-se a Lei no. 5.772, de 21 de dezembro de 1971, a Lei no.6.348, de 7 de julho de 1976, os arts. 187 a 196 do Decreto-Lei no.2.848, de 7 de dezembro de 1940, os arts. 169 a 189 do Decreto-Lei no.7.903, de 27 de agosto de 1945, e as demais disposições em contrário.

Brasília, 14 de maio de 1996; 175o. da Independência e 108o. da República.

FERNANDO HENRIQUE CARDOSO
Nelson A. Jobim
Sebastião do Rego Barros Neto
Pedro Malan
Francisco Dornelles
José Israel Vargas

**B**

**O Instituto**
**Ouvidoria**
**Procuradoria**
**Serviços**
**Articulação**
**Institucional**
**Patentes**
**Marcas**
Quem somos
O que é marca?
O que mudou com
o e-MARCAS?
e-MARCAS
Sobre seu pedido
Como registrar a
sua marca passo a
passo
Manual do
Usuário
Busca
Classificações de
Marcas
Custos dos
serviços
Legislação
Downloads
Perguntas
Freqüentes
Dúvidas
Links
**Contrato de**
**Tecnologia**
**Desenho**
**Industrial**
**Indicação**
**Geográfica**
**Programa de**
**Computador**
**Topografia de**
**Circuitos**
**Informação**
**Tecnológica**
**Centro de**
**Treinamento**
**Academia de**
**Inovação e**
**Propriedade**
**Intelectual**

# RESOLUÇÃO Nº 083/2001

**MINISTÉRIO DO DESENVOLVIMENTO, INDÚSTRIA E COMÉRCIO EXTERIOR**
**INSTITUTO NACIONAL DA PROPRIEDADE INDUSTRIAL**

**PRESIDÊNCIA 14/12/2001**

**RESOLUÇÃO Nº 083/2001**

**Assunto: Normaliza o processamento dos depósitos de pedidos de registro de marca**

**O PRESIDENTE DO INPI**, no uso de suas atribuições legais e **CONSIDERANDO** a necessidade contínua de adequar os procedimentos da área de marcas às disposições constantes da Lei nº 9.279/96, e **CONSIDERANDO** a necessidade de atualizar as orientações administrativas quanto ao processamento de pedidos e registros de marca, em face da atualização das Classificações Internacionais adotadas pelo INPI;

**RESOLVE:**

**I.** Normalizar os processamentos de depósito de registro de marcas, estabelecendo as seguintes regras:

**1. Sobre o Pedido de Registro**

**2. Sobre o Exame do Pedido de Registro**

**3. Sobre a Classificação Internacional de Produtos e Serviços**

**4. Sobre a Classificação Internacional de Elementos Figurativos de Marcas**

**5. Sobre a Desistência de Pedido de Registro**

**6. Sobre Recursos**
6.1 Contra Indeferimento de Pedido de Registro
6.2 Contra Indeferimento Parcial de Pedido de Registro
6.3 Contra Declaração ou Denegação de Caducidade
6.4 Contra Indeferimento ou Deferimento de Pedido de Prorrogação da Vigência de Registro
6.5 Contra Indeferimento ou Deferimento de Pedido de Transferência de Titularidade
6.6 Contra Cancelamento de Registro ou Arquivamento de Pedido, nos termos do art. 135 da Lei da Propriedade Industrial - LPI

**7. Sobre Registros**
7.1 Processo Administrativo de Nulidade
7.2 Prorrogação de Vigência
7.3 Extinção

**Biblioteca
Economista
Cláudio
Treiguer**

**Fórum
Chat**



Site anterior

7.3.1 Pela expiração do prazo de vigência
7.3.2 Pela inobservância do disposto no art. 217 da LPI
7.3.3 Pela renúncia
7.4 Caducidade

**8. Sobre ação de Nulidade**

**9. Sobre Prioridade Unionista**

**10. Sobre Cessão de Direitos**

**11. Sobre Anotações**
11.1 Alteração de nome, sede ou endereço
11.2 Limitação ou Ônus

**12. Sobre Certidões**
12.1 Certidão de Busca
12.2 Certidão de Andamento

**13. Sobre Cópia Oficial e Fotocópias**

**14. Sobre Procuração**

**15. Sobre Prazos**
15.1 Contagem de prazo
15.2 Devolução de prazo

**16. Sobre Dados das Publicações**
16.1 Dados que constarão de todas as publicações
16.2 Dados que constarão de publicações específicas

**17. Sobre Devolução de Taxa**

**18. Sobre Restauração de Processos**

**19. Disposições Transitórias e Finais**

**1. Sobre o Pedido de Registro**

**1.1** Conforme estabelecido pelo art. 155 da LPI, o pedido de registro de marca
deverá referir-se a um único sinal distintivo. O pedido será submetido a exame
formal preliminar, nos termos do art. 156, observado ainda o disposto no artigo
157.
**1.2** O tratamento administrativo, bem como os documentos necessários a
instrução do pedido estão contidos no Manual Usuário.

**2. Sobre o Exame do Pedido de Registro**

**2.1** Publicado o pedido de registro, passará a fluir o prazo de 60 (sessenta) dias
para apresentação de eventual oposição, que será apresentada em petição,
conforme instruções contidas no Manual do Usuário.
**2.1.1** Não se conhecerá da oposição se:

a) apresentada fora do prazo legal de 60 (sessenta) dias, contados da data da publicação do pedido de registro;
b) desacompanhada do comprovante do pagamento da retribuição correspondente à oposição;
c) não contiver fundamentação legal;
d) fundamentada no inciso XXIII do art. 124 ou no art. 126 da LPI, o oponente não comprovar o depósito do pedido de registro de sua marca no INPI, no prazo de 60 (sessenta) dias, contados do dia imediatamente subseqüente ao da apresentação da oposição, independente de notificação ou exigência por parte do INPI.

**2.1.2** Estando a oposição conforme, o requerente do pedido de registro será intimado, mediante publicação, para se manifestar no prazo de 60 (sessenta) dias, contados da referida publicação.

**2.1.3** Decorrido o prazo para apresentação de oposição ou, se interposta esta, findo o prazo para manifestação do requerente, o pedido de registro será objeto de exame pelo INPI.

**2.1.4** Por ocasião do exame, verificar-se-á se os documentos anexados ao pedido de registro preenchem os requisitos formais exigidos e se estão de acordo com as prescrições legais, procedendo-se à busca de anterioridades e levando-se em conta eventual(ais) oposição(ões).

**2.1.5** Quando necessário, serão formuladas as exigências julgadas cabíveis relativas ao enquadramento técnico do pedido de registro, inclusive aquelas introduzidas pelas classificações internacionais adotadas pelo INPI, que deverão ser respondidas no prazo de 60 (sessenta) dias, contados da data da respectiva publicação.

**2.1.6** Não cumprida a exigência, o pedido de registro será definitivamente arquivado, encerrando-se a instância administrativa, nos termos do § 1º do art. 159 da LPI.

**2.1.7** Cumprida a exigência, ainda que não satisfatoriamente, ou contestada a sua formulação, dar-se-á prosseguimento ao exame do pedido de registro.

**2.1.8** Por ocasião do exame será verificada a existência de impedimento definitivo ou temporário à decisão do pedido de registro, decisão esta que, em se tratando de indeferimento, ou de sobrestamento do seu exame, será publicada, identificando-se o objeto do impedimento.

**2.1.9** A partir da publicação da decisão de deferimento do pedido de registro, da qual não caberá recurso (art. 212, § 2º, da LPI), passará a fluir o prazo de 60 (sessenta) dias para que o requerente comprove o pagamento da retribuição correspondente à expedição do certificado de registro e ao primeiro decênio de proteção de sua vigência, mediante apresentação de requerimento com identificação do signatário, devidamente qualificado, conforme instruções previstas no Manual do Usuário.

**2.1.10** A comprovação do pagamento das retribuições correspondentes à expedição do certificado de registro e ao primeiro decênio de proteção de sua vigência, se não efetuada no prazo de 60 (sessenta) dias, prazo ordinário, poderá ser feita no prazo extraordinário de 30 (trinta) dias, contados a partir do dia imediatamente subseqüente ao dia do término do prazo estabelecido no art. 152 da LPI, independentemente de notificação ou exigência por parte do INPI.

**2.1.11** Comprovado o devido pagamento das retribuições referidas acima, será publicada a concessão do registro. A data desta publicação será a data do respectivo certificado de registro, a partir da qual passará a fluir o prazo decenal de proteção.

**2.1.12** Não havendo a comprovação das retribuições correspondentes nos prazos referidos anteriormente, o pedido será definitivamente arquivado,

encerrando-se a instância administrativa.

## 3. Sobre a Classificação Internacional de Produtos e Serviços

Com a adoção pelo INPI da Classificação Internacional de Produtos e Serviços, a partir de 03.01.2000, mudou-se basicamente o princípio até então estabelecido pela Classificação Nacional (Ato Normativo 051/81), já que na Classificação Internacional os
produtos e os serviços assinalados pela marca pretendida têm de ser especificados. A Lei da Propriedade Industrial em vigor, ao instituir dentre outros, a caducidade parcial e a nulidade parcial, também privilegiou o princípio da especialidade da marca, como
se pode depreender do art. 144 da LPI, pois que estabelece que o registro caducará parcialmente em relação aos produtos e serviços não compreendidos pelo uso da marca, desde que não semelhantes ou afins àqueles para os quais a marca foi comprovadamente usada.

Os instrumentos acima citados, aliados à Classificação Internacional, se afinam, corroborando a obrigatoriedade de que os pedidos de registros contenham a especificação de produtos ou de serviços.

Com a entrada em vigor, em 1º de janeiro de 2002, da oitava edição da Classificação de NICE, se verificará a reestruturação da classe 42, a criação das classes 43, 44 e 45, a supressão de indicações existentes e transferências de indicações para as classes 35, 40
e 41, e revisão da Lista Alfabética de Produtos e Serviços, dos Títulos das classes, Notas Explicativas e Observações Gerais.

A adoção da Classificação Internacional impôs a criação de novos procedimentos administrativos, que têm por finalidade adequar os processos em tramitação à nova realidade por meio da reclassificação, desdobramento e/ou agrupamento de processos, em face da
metodologia de enquadramento dos produtos e serviços da Classificação Internacional de Produtos e Serviços, matéria essa detalhada no Manual do Usuário.

## 4. Sobre a Classificação Internacional de Elementos Figurativos de Marcas

A adoção da Classificação Internacional de Elementos Figurativos de Marcas propicia uma mudança no princípio da definição da proteção requerida e obtida em relação aos elementos figurativos da marca.

Fica estabelecida, através do Ato Normativo 151, de 09 de setembro de 1999, a responsabilidade do usuário na indicação da classificação que contemple o objeto do direito pretendido.

As disposições sobre a Classificação Internacional de Elementos Figurativos de Marcas estão contidas no em Ato Normativo próprio, e as instruções no Manual do Usuário.

## 5. Sobre a Desistência de Pedido de Registro

**5.1** A desistência do pedido de registro poderá ser apresentada a qualquer momento antes da data de publicação da concessão e será instruída com os documentos discriminados no Manual do Usuário.

## 6. Sobre Recursos

**A)** A decisão proferida em primeira instância cabe recurso, nos termos do art. 212 da LPI, que serão decididos pelo Presidente do INPI, cuja decisão é final e irrecorrível na esfera administrativa.
**B)** Não se conhecerá do recurso se:
**(i)** interposto fora do prazo legal de 60 (sessenta) dias, contados da data da publicação do pedido de registro;
**(ii)** desacompanhado do comprovante do pagamento da retribuição correspondente; e
**(iii)** não contiver fundamentação legal;

**6.1** Contra Indeferimento de Pedido de Registro
**6.1.1** Da decisão que indeferir o pedido de registro caberá recurso, no prazo de 60 (sessenta) dias, contados da data da respectiva publicação.
**6.1.2** Não sendo interposto recurso do ato que indeferir o pedido de registro, ou, se interposto este, não for o mesmo conhecido, o INPI publicará o arquivamento definitivo do pedido de registro, encerrando-se a instância administrativa.
**6.1.3** Se o recurso estiver conforme, será publicado e, da data da publicação, passará a fluir, automaticamente, o prazo de 60 (sessenta) dias para apresentação de contra-razões pelos interessados. Findo esse prazo, o recurso será objeto de exame.
**6.1.4** Por ocasião do exame do recurso, o INPI poderá formular as exigências necessárias ao exame, que deverão ser cumpridas no prazo de 60 (sessenta) dias, contados da respectiva publicação.
**6.1.5** Verificada, no momento do exame, a existência de impedimentos temporários à decisão do recurso, será publicado o sobrestamento do seu exame, identificando-se o objeto do impedimento.
**6.1.6** Concluído o exame do recurso, será publicada a decisão, mantendo-se o indeferimento ou reformando-o, para deferir o pedido de registro.
**6.1.7** A partir da data da publicação da decisão que reformar o ato indeferitório de primeira instância, para deferir o pedido de registro, passará a fluir o prazo de 60 (sessenta) dias para que o requerente quando domiciliado no Brasil ou seu procurador comprove o pagamento da retribuição correspondente à expedição do certificado de registro e ao primeiro decênio de proteção de sua vigência, mediante apresentação de requerimento, em língua portuguesa, com a assinatura do requerente quando domiciliado no Brasil ou seu procurador, com identificação do signatário, devidamente qualificado, conforme instruções previstas no Manual do Usuário.
**6.1.8** A comprovação do pagamento das retribuições correspondentes à expedição do certificado de registro e ao primeiro decênio de proteção de sua vigência, se não efetuada no prazo de 60 (sessenta) dias, prazo ordinário, poderá ser feita no prazo de 30 (trinta) dias, prazo extraordinário, contados a partir do dia imediatamente subseqüente ao dia do término do prazo estabelecido no art. 152 da LPI, independentemente de notificação ou exigência por parte do INPI.
**6.1.9** Comprovado o devido pagamento das retribuições referidas acima, será publicada a concessão do registro. A data desta publicação será a data do respectivo certificado de registro, a partir da qual passará a fluir o prazo decenal de proteção.

**6.1.10** Não havendo a comprovação das retribuições correspondentes nos prazos referidos anteriormente, o pedido será definitivamente arquivado, encerrando-se a instância administrativa.

**6.2** Contra Indeferimento Parcial de Pedido de Registro

**6.2.1** O deferimento com restrições será considerado pelo INPI como um indeferimento parcial, motivo pelo qual será admitida a interposição de recurso contra o indeferimento parcial, que deverá observar o prazo previsto em Lei, no caso do depositante discordar do mesmo.

**6.2.2** O recurso contra o indeferimento parcial deverá ser apresentado simultaneamente com a comprovação do pagamento da retribuição correspondente à expedição do certificado de registro e ao primeiro decênio de proteção de sua vigência, nos termos do art. 152 da LPI.

**6.2.3** Não sendo interposto recurso do ato que indeferir parcialmente o pedido de registro, ou, se interposto este, não for o mesmo conhecido, o INPI publicará a concessão do registro, consoante decisão de primeira instância.

**6.2.4** Se o recurso estiver conforme, será publicado e, da data da publicação, passará a fluir, automaticamente, o prazo de 60 (sessenta) dias para apresentação de contra-razões pelos interessados. Findo esse prazo, o recurso será objeto de exame.

**6.2.5** Por ocasião do exame do recurso, o INPI poderá formular as exigências necessárias ao exame, que deverão ser cumpridas no prazo de 60 (sessenta) dias, contados da respectiva publicação.

**6.2.6** Concluído o exame do recurso, será publicada a decisão, mantendo-se a decisão recorrida, ou reformando-a, quando será publicada a concessão do registro, nos termos da decisão de segunda instância, caso o depositante tenha observado o item 6.2.2 deste ato. A data desta publicação será a data do respectivo certificado de registro, a partir da qual passará a fluir o prazo decenal de proteção.

**6.2.7** Não havendo a comprovação das retribuições correspondentes nos prazos referidos nos itens anteriores, o recurso perderá o seu objeto e o pedido será definitivamente arquivado, encerrando-se a instância administrativa.

**6.3** Contra Declaração ou Denegação de Caducidade

**6.3.1** Da decisão que declarar ou denegar a caducidade do registro caberá recurso, no prazo de 60 (sessenta) dias, contados da data da respectiva publicação.

**6.3.2** Se o recurso estiver conforme, o mesmo será publicado, e, da data da publicação, passará a fluir, automaticamente, o prazo de 60 (sessenta) dias para apresentação de contra-razões pelo(s) interessado(s). Findo esse prazo, o recurso será objeto de exame.

**6.3.3** Por ocasião do exame de recurso, o INPI poderá formular as exigências necessárias, que deverão ser cumpridas no prazo de 60 (sessenta) dias, contados da respectiva publicação.

**6.3.4** Concluído o exame do recurso, será publicada a decisão, encerrando-se a instância administrativa do processo de caducidade.

**6.4** Contra Indeferimento ou Deferimento de Pedido de Prorrogação da Vigência de Registro

**6.4.1** Da decisão que indeferir ou deferir o pedido de prorrogação da vigência de registro caberá recurso, no prazo de 60 (sessenta) dias, contados da data da

respectiva publicação.

**6.4.2** Se o recurso estiver conforme, o mesmo será publicado, e, da data da publicação, passará a fluir, automaticamente, o prazo de 60 (sessenta) dias para apresentação de contra-razões pelo(s) interessado(s). Findo esse prazo, o recurso será objeto de exame.

**6.4.3** Por ocasião do exame de recurso, o INPI poderá formular as exigências necessárias, que deverão ser cumpridas no prazo de 60 (sessenta) dias, contados da respectiva publicação.

**6.4.4** Concluído o exame do recurso, será publicada a decisão.

**6.5** Contra Indeferimento ou Deferimento de Pedido de Transferência de Titularidade

**6.5.1** Da decisão que indeferir ou deferir o pedido de transferência de titularidade caberá recurso, no prazo de 60 (sessenta) dias, contados da data da respectiva publicação.

**6.5.2** Se o recurso estiver conforme, o mesmo será publicado, e, da data da publicação, passará a fluir, automaticamente, o prazo de 60 (sessenta) dias para apresentação de contra-razões pelo(s) interessado(s). Findo esse prazo, o recurso será objeto de exame.

**6.5.3** Por ocasião do exame de recurso, o INPI poderá formular as exigências necessárias, que deverão ser cumpridas no prazo de 60 (sessenta) dias, contados da respectiva publicação.

**6.5.4** Concluído o exame do recurso, será publicada a decisão.

**6.6** Contra Cancelamento de Registro ou Arquivamento de Pedido, nos termos do art. 135 da LPI

**6.6.1** Da decisão que cancelar o registro ou que arquivar o pedido de registro por infringir o art.135 da LPI caberá recurso, no prazo de 60 (sessenta) dias, contados da data da respectiva publicação.

**6.6.2** Se o recurso estiver conforme, o mesmo será publicado, e, da data da publicação, passará a fluir, automaticamente, o prazo de 60 (sessenta) dias para apresentação de contra-razões pelo(s) interessado(s). Findo esse prazo, o recurso será objeto de exame.

**6.6.3** Por ocasião do exame de recurso, o INPI poderá formular as exigências necessárias, que deverão ser cumpridas no prazo de 60 (sessenta) dias, contados da respectiva publicação.

**6.6.4** Concluído o exame do recurso, será publicada a decisão.

## 7. Sobre Registros

**7.1** Processo Administrativo de Nulidade

**7.1.1** O processo administrativo de nulidade poderá ser instaurado pelo INPI ou a requerimento de pessoa com legítimo interesse, que será apresentado através de petição, conforme instruções previstas no Manual do Usuário.

**7.1.2** Não se conhecerá do pedido de processo administrativo de nulidade de registro se:

a) instaurado ou apresentado fora do prazo legal de 180 (cento e oitenta) dias, contados da data da concessão do registro;

b) desacompanhado do comprovante da retribuição correspondente, quando não instaurado de ofício pelo INPI;

c) não contiver fundamentação legal;

d) requerido por pessoa sem legítimo interesse; quando fundamentado no inciso XXIII do art. 124 ou no art. 126, o requerente da nulidade não comprovar o depósito do pedido de registro de sua marca no INPI, no prazo de 60 (sessenta)

dias, contados do dia imediatamente subseqüente ao da apresentação do requerimento da nulidade administrativa, independentemente de notificação ou exigência por parte do INPI.

**7.1.3** Estando conforme o pedido de instauração de processo administrativo de nulidade, será o titular do registro intimado, mediante publicação, para se manifestar no prazo de 60 (sessenta) dias, contados da data da referida publicação.

**7.1.4** Decorrido o prazo fixado acima, mesmo que não apresentada manifestação e ainda que extinto o registro, o processo administrativo de nulidade será objeto de exame e decisão.

**7.1.5** Por ocasião do exame do processo administrativo de nulidade, o INPI poderá formular as exigências necessárias à sua instrução e decisão, que deverão ser cumpridas no prazo de 60 (sessenta) dias, contados da respectiva publicação.

**7.1.6** Por ocasião do exame, verificada a existência de impedimento temporário à decisão do processo administrativo de nulidade, será publicado o sobrestamento do seu exame, identificando-se o objeto do impedimento.

**7.1.7** Concluído o exame do processo administrativo de nulidade, será publicada a decisão, mantendo-se o registro ou declarando-se sua nulidade, total ou parcial.

**7.1.8** A decisão proferida no processo administrativo de nulidade encerrará a instância administrativa do feito.

**7.2** Prorrogação de Vigência

**7.2.1** O pedido de prorrogação de vigência de registro deverá ser formulado durante o último ano de vigência do registro.

**7.2.2** Se não efetuado no prazo mencionado no item anterior, o pedido de prorrogação de vigência de registro poderá, ainda, ser formulado no prazo de 06 (seis) meses, contados a partir do dia imediatamente subseqüente ao dia do término da vigência do registro, independentemente de qualquer notificação por parte do INPI.

**7.2.3** A prorrogação não será concedida se não atendido o disposto no art. 128 da LPI, segundo estabelece o § 3º do art. 133 da LPI.

**7.2.4** Quando não instruir o pedido de prorrogação, a procuração deverá ser apresentada no prazo de 60 (sessenta) dias, contados a partir do dia imediatamente subseqüente ao dia da apresentação do pedido de prorrogação, independentemente de notificação ou exigência por parte do INPI, sob pena de arquivamento do pedido de prorrogação.

**7.2.5** Por ocasião do exame do pedido de prorrogação serão formuladas as exigências julgadas cabíveis, inclusive aquelas introduzidas pelas Classificações Internacionais adotadas pelo INPI, que deverão ser respondidas no prazo de 60 (sessenta) dias, contados da respectiva publicação.

**7.2.6** Decorrido o prazo referido acima, o pedido de prorrogação será examinado. Concluído o exame, será publicada a decisão.

**7.3** Extinção

**7.3.1** Pela Expiração do Prazo de Vigência

Expirado o prazo de vigência do registro e observado o prazo extraordinário de 6 (seis) meses, previsto no parágrafo segundo do art. 133 da LPI, sem que tenha havido a competente prorrogação, será publicada a extinção do registro.

**7.3.2** Pela Inobservância do Disposto no art. 217 da LPI

Constatada a ausência de procuração nos termos do art. 217 da LPI, será publicada a extinção do registro.

**7.3.3** Pela Renúncia

**7.3.3.1** A renúncia ao registro poderá ser apresentada a qualquer momento após

a sua concessão, podendo ser total ou parcial em relação aos produtos ou serviços, especificados por classe, nos termos da Classificação Internacional de Produtos e Serviços vigente, assinalados pela marca, e deverá ser instruída com os documentos previstos no Manual do Usuário.

**7.4** Caducidade
**7.4.1** O pedido de Caducidade será indeferido se o requente não justificar o seu legítimo interesse.
**7.4.2** Não se conhecerá do requerimento de declaração de caducidade de registro de marca se:
a) na data do requerimento, não tiverem decorrido, pelo menos 05 (cinco) anos da data da concessão do registro;
b) na data do requerimento, o uso da marca tiver sido comprovado ou justificado seu desuso por razões legítimas, em processo anterior, requerido há menos de 05 (cinco) anos;
c) desacompanhado do comprovante do pagamento da retribuição correspondente.
**7.4.3** Estando conforme o requerimento de declaração de caducidade de registro, será o titular intimado, mediante publicação, para comprovar o uso da marca ou justificar seu desuso por razões legítimas, no prazo de 60 (sessenta) dias, contados da data da referida publicação.
**7.4.4** Por ocasião do exame das provas de uso apresentadas, o INPI poderá formular as exigências necessárias, que deverão ser cumpridas no prazo de 60 (sessenta) dias, contados da respectiva publicação.
**7.4.5** Concluído o exame, será publicada a decisão, declarando a caducidade do registro, que poderá ser parcial (art. 144 da LPI), em face dos produtos ou serviços especificados ou em face da classe reivindicada, ou denegando a caducidade do registro, se provado o uso para todos os produtos ou serviços especificados na classe em que a marca estiver registrada.
**7.4.6** A desistência do pedido de caducidade será homologada pelo INPI, em qualquer fase processual.

## 8. Sobre Ação de Nulidade

A ação de nulidade, que prescreve em 5 (cinco) anos da prática do ato administrativo, poderá ser proposta pelo INPI ou qualquer pessoa com legítimo interesse, a contar da data da publicação na Revista da Propriedade Industrial - RPI, conforme estabelecem os arts. 173, 174, e 175 da LPI.

## 9. Sobre Prioridade Unionista

**9.1** O direito de prioridade de depósito assegurado por acordos que o Brasil mantenha com países ou organizações internacionais está previsto no artigo 127 da LPI. No caso da Convenção da União de Paris (CUP), o direito deverá ser exercido no prazo de 06 (seis) meses, contados da data de depósito mais antiga.
**9.2** A reivindicação de prioridade, deverá ser requerida obrigatoriamente no ato do depósito e comprovada por documento hábil da origem, contendo o número, a data e a reprodução do pedido ou do registro, acompanhado da tradução simples do documento, em até 04 (quatro) meses, contados da data do depósito.
**9.3** Quando a prioridade tiver sido obtida por cessão, deverá ser apresentado juntamente com o documento da prioridade o respectivo instrumento de cessão ou a declaração de cessão, acompanhado da tradução simples e dispensada a legalização consular.
**9.4** As formalidades do documento de cessão do direito de prioridade serão

aquelas determinadas pela legislação do país onde houver sido firmado.

**9.5** A reivindicação de prioridade não isenta o pedido da aplicação dos dispositivos legais constantes da LPI, no que couber.

## 10. Sobre Cessão de Direitos

**10.1** A cessão poderá ser comprovada por qualquer documento hábil que demonstre a transferência da titularidade do pedido ou do registro da marca, tais como por incorporação, cisão, fusão, sucessão legítima ou testamentária ou determinação judicial.

**10.2** O INPI fará a anotação da cessão, fazendo constar a qualificação completa do cessionário, e a publicará, para que produza efeitos em relação a terceiros.

**10.3** No caso de cessão de registro de marca que se encontre em fase de exame de prorrogação ou concessão de registro, o certificado já será expedido em nome do cessionário.

**10.4** Da decisão que indeferir a anotação de cessão ou que cancelar registro ou arquivar pedido, nos termos do art. 135 da LPI, caberá recurso, no prazo de 60 (sessenta) dias, contados da respectiva publicação, cuja decisão encerrará a instância administrativa.

**10.5** O pedido de anotação da cessão será instruído com os documentos previstos no Manual do Usuário.

## 11. Sobre Anotações

**11.1** Alteração de Nome, Sede ou Endereço

**11.1.1** O INPI fará a anotação das alterações de nome, de sede ou de endereço e a publicará, para que produza efeitos em relação a terceiros.

**11.1.2** No caso de alteração de nome, de sede ou de endereço em registro que se encontre em fase de exame de prorrogação ou concessão de registro, o certificado já será expedido com o nome e/ou sede ou endereço alterados.

**11.1.3** O pedido de anotação de alteração de nome, de sede ou de endereço do requerente ou titular será instruído com os documentos previstos no Manual do Usuário.

**11.2** Limitação ou Ônus

O INPI fará anotação de qualquer limitação ou ônus que recaia sobre pedido de registro ou registro, mediante comprovação específica, fazendo-a publicar, para que produza efeitos em relação a terceiros, na Revista da Propriedade Industrial - RPI.

## 12. Sobre Certidões

A Diretoria de Marcas expedirá as certidões demandadas pelos usuários, quais sejam:

**12.1** Certidão de Busca

Procedida pelo Setor de Buscas, consistirá de pesquisa sobre pedidos e registros de marcas, por classe e por titular.

**12.2** Certidão de Andamento

Procedida pelo Núcleo de Expedição de Certificados, consistirá de informações sobre a situação dos processos.

**12.3** Os pedidos de Certidão de Busca e de Certidão de Andamento serão instruídos com os documentos previstos no Manual do Usuário.

### 13. Sobre Cópia Oficial e Fotocópias

A Diretoria de Marcas preparará Cópias Oficiais e extrairá Fotocópias de documentos relativos a processos, mediante requerimento de interessados, conforme instruções previstas no Manual do Usuário.

### 14. Sobre Procuração

**14.1** Quando o ato não for praticado pelo interessado domiciliado no país pessoalmente, deverá ser apresentado o instrumento de procuração juntamente com o requerimento, ou no prazo de 60 (sessenta) dias, contados a partir do dia imediatamente subseqüente ao do primeiro ato da parte no processo, nos termos do art. 215 da LPI, independentemente de notificação ou exigência por parte do INPI.
**14.2** Para a apresentação do respectivo instrumento, deverão ser observados a forma e o prazo estabelecidos no parágrafo 2º do art. 215 da LPI, independentemente de notificação ou exigência por parte do INPI, sob pena de arquivamento, conforme previsto nesse dispositivo legal.
**14.3** Em se tratando de pessoa domiciliada no exterior, a procuração é obrigatória e deve atender ao disposto no art. 217 da LPI.

### 15. Sobre Prazos

**15.1** Contagem de Prazo
**15.1.1** A contagem de prazo é contínua, extinguindo-se automaticamente o direito de praticar o ato após seu decurso.
**15.1.2** Este dispositivo, contemplado no art. 221 da LPI, ressalva o ato não realizado por justa causa.
**15.1.3** Entende-se por justa causa o evento imprevisto, alheio à vontade da parte e que a impediu de praticar o ato. Sendo reconhecida a justa causa, a parte praticará o ato, no prazo que lhe for concedido pelo INPI.
**15.1.4** Para fins de contagem dos prazos, devem ser observadas as regras previstas no Manual do Usuário.

**15.2** Devolução de Prazo
**15.2.1** O pedido para concessão de prazo adicional para a prática de ato não realizado por justa causa, deverá ser apresentado mediante requerimento, conforme modelo instituído, com a assinatura do requerente, com a identificação do signatário, devidamente qualificado, conforme instrução prevista no Manual do Usuário.
**15.2.2** Reconhecida pelo INPI a justa causa que impediu a parte de praticar o ato no prazo legal, o INPI dará ciência ao interessado, na forma do art. 226 da LPI, sobre o prazo que lhe foi concedido, o qual não poderá ser menor que 15 (quinze) dias e maior do que 60 (sessenta) dias.
**15.2.3** Na hipótese de o INPI não acolher o pedido de devolução de prazo, por não reconhecer como justa a causa argüida pela parte, o INPI publicará, na forma do art. 226 da LPI, o indeferimento deste pedido.
**15.2.4** O INPI assegurará aos interessados o fornecimento de cópias oficiais, certidões ou fotocópias, regularmente requeridas, com relação às matérias de que trata a LPI, no prazo de 30 (trinta) dias, salvo por razões justificadas.
**15.2.5** O não fornecimento pelo INPI, no prazo previsto no item anterior, de fotocópias de peças processuais, necessárias à fundamentação de quaisquer das medidas administrativas previstas na LPI, não desobriga o interessado de apresentar a respectiva petição dentro do prazo legal previsto, acompanhada do

comprovante da retribuição correspondente.

**15.2.6** Fornecidas as fotocópias a que se refere o item anterior, o interessado poderá apresentar, no prazo que lhe for concedido pelo INPI, argumentos suplementares, através de petição, isenta de recolhimento de retribuição, acompanhada de cópia do pedido de fotocópia, no qual conste a data do atendimento do pedido.

## 16. Sobre Dados das Publicações

A disponibilizarão de dados através da Internet, ou por qualquer outro meio eletrônico, se constitui em alternativa de consulta para o usuário, já que o órgão oficial de publicação dos atos praticados pela Diretoria de Marcas, é a REVISTA DA PROPRIEDADE INDUSTRIAL – RPI, conforme previsto no art. 226 da LPI.

**16.1** Dados que constarão de todas as publicações:
a) número e data do pedido de registro ou do registro de marca;
b) código do despacho correspondente;
c) nome do depositante ou do titular;
d) Sigla do país, do organismo internacional ou, no caso do Brasil, sigla do País e Unidade da Federação;
e) Procurador/Interessado.

**16.2** Dados que constarão de publicações específicas
**16.2.1** Pedidos comunicados, indeferimento e deferimento de pedido, concessão e prorrogação de registro e suas respectivas retificações:
a) marca;
b) natureza e forma de apresentação da marca;
c) Classificação Internacional de Elementos Figurativos;
d) Classificação Internacional de Produtos e Serviços;
e) especificação dos produtos ou serviços que a marca visa assinalar;
f) dados da prioridade, se for o caso, quando se tratar de pedido de registro.
**16.2.2** Das publicações de intimação de oposição, interposição de recursos de terceiros, instauração de processo administrativo de nulidade e requerimento de declaração de caducidade, além dos dados constantes do item 16.1, também constará o nome do oponente, recorrente ou requerente.
**16.2.3** Além dos dados referidos nos itens 16.1 e 16.2.1, das publicações de deferimento do pedido de registro, de concessão e de prorrogação de registro, constará a eventual anotação sobre a restrição da proteção conferida à marca.
**16.2.4** Além dos dados do item 16.1, das publicações de decisões de sobrestamento, constará o objeto do impedimento.
**16.2.5** Das publicações de decisões de indeferimento dos pedidos de registro, além dos dados referidos nos itens 16.1 e 16.2.1, constarão a base legal e eventuais complementos.
**16.2.6** Das publicações de decisões de deferimento ou indeferimento de recursos, dos processos administrativos de nulidade e de declaração de caducidade, bem como das publicações de extinção de registros constarão a base legal e eventuais complementos, além dos dados do item 16.1.
**16.2.7** Das publicações de instauração de processo administrativo de nulidade instaurada de ofício, além dos dados constantes do item 16.1, constarão a base legal e eventuais complementos.
**16.2.8** Das publicações de intimação de requerimento de declaração de caducidade, além dos dados constantes do item 16.1, também constarão o nome do requerente, o nº da petição, a data em que foi protocolada e a sigla da Unidade do INPI que recebeu o documento.

**16.2.9** Das publicações de anotação de cessão de direitos, além dos dados constantes do item 16.1, constará(ão) o(s) nome(s) do(s) cedente(s) e do (s) cessionário(s).

## 17. Sobre Devolução de Taxa

**17.1** Não será restituída a retribuição devidamente recolhida.
**17.2** O pedido de devolução de preço público deve ser dirigido à Diretoria de Administração Geral, conforme condições estabelecidas pela mesma.
**17.3** As instruções sobre o formulário, retribuição devida e demais documentos necessários à aceitação desta solicitação são estabelecidas pela Diretoria de Administração Geral do INPI.

## 18. Sobre Restauração de Processos

**18.1** O pedido de restauração de processos poderá ser apresentado ao INPI pelo requerente do pedido/titular do registro, ou seu representante legal, e deverá ser instruído com os documentos previstos no Manual do Usuário.

**18.2** O pedido de restauração de processos é um serviço isento de retribuição.

**18.3** Somente poderá ser solicitado este serviço para processos efetivamente protocolizado.

## 19. Disposições Transitórias e Finais

**19.1** As instruções sobre o preenchimento, recebimento e aceitação do comprovante do pagamento da retribuição devida são estabelecidas pela Diretoria de Administração Geral do INPI.

**19.2** As Petições somente serão protocolizadas, quando atendidas as formalidades legais.

**19.3** O processamento do exame de marcas de alto renome, art. 125 da LPI, será objeto de ato específico.

**19.4** As Papeletas de Reclamação, que devem ser protocolizadas, têm por finalidade solicitar consultas e/ou requerer retificações de publicações incorretas. As questões relativas ao exame de mérito devem ser apresentada através de petição própria, devidamente protocolizada.
**19.5** Somente será permitido postular perante o INPI o próprio, quando domiciliado no Brasil, Advogado, devidamente inscrito na OAB, e Agente da Propriedade Industrial cadastrado no INPI.

Esta Resolução entrará em vigor no dia 02 de janeiro de 2002, revogado o Ato Normativo 154, de 21 de dezembro de 1999 e quaisquer disposições em contrário, no que se refere às marcas.

**José Graça Aranha** - Presidente

C

13



**PODER JUDICIÁRIO**
**TRIBUNAL DE JUSTIÇA DE SÃO PAULO**

**ACÓRDÃO**



TRIBUNAL DE JUSTIÇA DE SÃO PAULO
ACÓRDÃO/DECISÃO MONOCRÁTICA
REGISTRADO(A) SOB Nº

*01250091*

Vistos, relatados e discutidos estes autos de APELAÇÃO CÍVEL COM REVISÃO nº 448.414-4/1-00, da Comarca de SÃO PAULO, em que são apelantes MASSA FALIDA de O ALQUIMISTA COSMÉTICOS LTDA. e G BRASIL INDÚSTRIA E COMÉRCIO LTDA. sendo apelados MASSA FALIDA de GIOVANNA FÁBRICA LTDA. e NOTEC COMERCIAL LTDA.:

**ACORDAM**, em Décima Câmara de Direito Privado do Tribunal de Justiça do Estado de São Paulo, proferir a seguinte decisão: "NEGARAM PROVIMENTO AOS RECURSOS, AFASTADA A QUESTÃO INCIDENTAL TRAZIDA NA PETIÇÃO DE FLS. 1360/1364, V.U.", de conformidade com o voto do Relator, que integra este acórdão.

O julgamento teve a participação dos Desembargadores TESTA MARCHI e GALDINO TOLEDO JÚNIOR.

São Paulo, 13 de março de 2007.

*Helene.*

**OCTAVIO HELENE**
**Presidente e Relator**

87



TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO

## APELAÇÃO CÍVEL n° 448.414-4/1-00
### Comarca: São Paulo

**Apelantes: O Alquimista Cosméticos Ltda. (Massa Falida) e outro**
**Apelados : Giovanna Fabrica Ltda (Massa Falida) e outros**

**Voto n° 9.672**

> Ementa: Ação Revocatória – Alienação de marcas de
> fábrica devidamente registradas – Propósito de subtrair
> da falida bens de seu ativo em prejuízo dos credores –
> Requisitos do "consilium fraudis" e do "eventus damni"
> evidenciados – Ação Procedente – Sentença mantida –
> Preliminares rejeitadas - Recursos improvidos –
> Questão incidental afastada.

Vistos, relatados e discutidos estes autos de Apelação
Cível n° 448.414-4/1-00, da Comarca de São Paulo, em que são
apelantes **O Alquimista Cosméticos Ltda. (Massa falida) e outro**,
sendo apelados **Giovanna Fabrica Ltda. (Massa Falida) e outros**

ACORDAM, em Décima Câmara de Direito Privado do
Tribunal de Justiça do Estado de São Paulo, por votação unânime,
rejeitadas as preliminares arguidas, **negar provimento aos recursos**,
dando por afastada a questão incidental

 TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO

1. **MASSA FALIDA GIOVANNA FÁBRICA Ltda.**, por intermédio de seu síndico, propôs ação revocatória, com pedido de antecipação de tutela, objetivando a revogação ou a declaração de ineficácia da alienação das marcas de fábrica indicadas nos autos, com registro na repartição competente, valendo-se do disposto no artigo 53 da Lei de Falência vigente à época (Decreto-lei 7661/45) A demanda veio justificada na alegação de existência de plano elaborado com o propósito de subtrair da falida valiosos bens de seu ativo, em prejuízo a credores, bem como no fato de existir relacionamento afetivo entre os representantes legais da requerente e da requerida, configurando o *consilium fraudis* e o *eventus damni*, dada a simulação da venda

Sentenciado o feito, foi julgada procedente a demanda para, com fundamento no artigo 53 do Decreto-lei 7661/45, **I)** declarar ineficaz em relação à Massa Falida de Giovanna Fábrica Ltda, autora, os atos ilegais, porque fraudatórios, de cessão dos direitos marcários especificados nos instrumentos de fls 07/38; **II)** condenar as requeridas Massa Falida de O Alquimista Cosméticos Ltda e Giovanna Baby Indústria e Comércio Ltda sucedida por G Brasil Indústria e Comércio Ltda a restituir o valor dos lucros potenciais com a exploração das marcas fraudulentamente subtraídas do patrimônio da Giovanna Fábrica Ltda, apurados em liquidação por artigos, no período de 17/02/1996 até a efetiva restituição dos direitos marcários à Massa Falida autora, deduzindo-se os valores depositados à ordem deste Juízo pela Notec Comercial Ltda, **III)** declarar nulos e ineficazes ex tunc, como se nunca tivessem existido, os atos de registro de transferência dos direitos marcários executados pelo INPI Assim, vencidas as requeridas e suas assistentes litisconsorciais foram condenadas nas custas processuais e honorários aos patronos da

**Apelação Cível n° 448.414-4/1-00 – Voto n° 9.672**

 TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO

Massa Falida autora, arbitrados em R$30 000,00, determinada a expedição das comunicações necessárias ao cumprimento da tutela antecipada para tornar definitivo o cancelamento dos registros das marcas em nome da co-ré O Alquimista Cosméticos Ltda para que sejam arrecadados como bens da Massa Falida autora

Irresignadas com tal desfecho, recorrem a Massa Falida de O Alquimista Cosméticos Ltda e G Brasil Indústria e Comércio Ltda , sucessora de Giovanna Baby Indústria e Comércio Ltda , anteriormente denominada Baby World Indústria e Comércio Ltda , pleiteando sua reforma A primeira aduz não existir prova de fraude e conluio fraudulento dos representantes das falidas Alega, em síntese, que não existiu fraude quando da transferência das marcas da Giovanna Fábrica Ltda , tendo ocorrido cessão dos direitos das marcas de forma legal e bem antes da situação de insolvência da Giovanna Fábrica Tanto é assim, que a apelada tentou anular a cessão de marcas feita à apelante, ingressando com ação perante a 9ª Vara Cível do Foro Central da Capital, a qual foi julgada improcedente Além disso, se a sócia da Giovanna Fábrica manteve relações amorosas com o sócio da apelante-Alquimista e, ainda, houve outorga de procuração, isso tudo não é prova de que existiu o "consilium fraudis" na transferência das marcas Diante da ausência do "consilium fraudis" a ação não pode se enquadrar no artigo 53 do Decreto-Lei nº 7661/45 Dessa forma, pleiteia o provimento do recurso para que seja reformada a r sentença, julgando improcedente a ação, com inversão do ônus da sucumbência (fls 1122/1125)

A segunda, G Brasil Indústria e Comércio Ltda , sucessora da Giovanna Baby Indústria e Comércio Ltda , alega, preliminarmente, a

 TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO

falta de interesse processual e a impossibilidade jurídica do pedido, isto porque, a ação revocatória não se presta a rescindir coisa julgada – processos da 9ª Vara Cível do Foro Central da Comarca de São Paulo e da 4ª Vara Cível Federal de São Paulo. Embora haja necessidade do provimento, não há adequação, o que gera a carência da ação. Assim, pleiteia a extinção do processo, sem julgamento do mérito, por inépcia da inicial. Alega, ainda, em preliminar, a ocorrência da decadência, pela não publicação do aviso do art. 114 do DL nº 7661/45. No mérito, alega, em resumo, que o fato da autora ter celebrado negócio jurídico de cessão de direitos sobre marcas com outra empresa, quando ambas estavam ativas, representa exercício regular de direito, o que afasta qualquer ilicitude, fraude. Alega que o d. Magistrado não pode tornar ineficazes os negócios jurídicos por mera presunção, sem fundamento consistente ou sem indícios veementes. Dessa forma, afirma inexistir prova da fraude e conluio fraudulento entre as partes falidas. Assim, pleiteia o provimento do recurso, para reformar a r. sentença e inverter o ônus da sucumbência (fls 1130/1136).

Incidentalmente sobreveio petição de fls. 1360/1364, com alegação de nulidade absoluta do processo, vez que a) r. decisão que rejeitou os embargos de declaração opostos em face de r. decisão que recebeu o recurso de apelação somente no efeito devolutivo não foi devidamente publicada; b) negou vigência ao art. 56, §2º do Decreto-lei 7.661/45; c) o escritório de Advocacia De Vivo, Whitaker e Gouveia Gioielli patrocina os interesses de Giovanna Fábrica e de Notec Comercial Ltda, interesses estes antagônicos; d) ocorrência de obscuridade na r. sentença. Assim, por tal petição, pleiteia o reconhecimento e declaração da ocorrência da nulidade pela não publicação da r. decisão de fl. 1244, devolvendo integralmente o prazo

Apelação Cível nº 448.414-4/1-00 – Voto nº 9.672

 TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO

ou para que seja concedido o efeito suspensivo ao recurso de apelação de G Brasil Indústria e Comércio Ltda Com vista às partes não se manifestaram.

Os recursos foram recebidos no efeito devolutivo (fls 1129 e 1140) Contra-razões às fls 1164/1171, 1174/1181, 1183/1184, 1204/1216 (argüição de preliminares de não conhecimento e de ausência de combate a sentença, com final pedido de improvimento dos recursos)

2 Examino a questão incidental onde vem argüida a eventual nulidade absoluta do processo contada do despacho que recebeu o recurso da apelante somente no efeito devolutivo A apelação da recorrente "G Brasil Ind e Com Ltda." foi recebida no efeito devolutivo pelo r despacho de fl 1140. Essa decisão, conforme se verifica da certidão de fl 1161, foi publicada no Diário da Justiça em 04/10/2005 Então, não ocorreu a nulidade alegada, porque intimada a parte do efeito devolutivo da apelação que interpôs, já poderia ela, inconformada, agravar dessa decisão buscando o pretendido duplo efeito O fato de ter embargado não tira a evidência de ter a parte tomado ciência do que foi decidido – o efeito do recurso. Ademais, houve um questionamento anterior aos embargos decidido pelo Juiz que indeferiu a republicação, não ocorrente a nulidade e nem prejuízo "porque os advogados constituídos na data da publicação, 04/10/2005, f 1161, foram incluídos na publicação, que convalesceu" (fls 1231/verso)

Os embargos de declaração (fls 1240/1243), reavivantando essa questão, mereceram o despacho de fl 1244 do

 TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO

seguinte teor "Premissa equivocada em decisão desafia recurso infringente ( )" Alega a apelante que não foi intimada dessa decisão, se verdadeiro esse fato não tem ele o condão de anular o processo ou de reabrir o prazo recursal porque do despacho que determinou o processamento do recurso no efeito devolutivo foi a parte regularmente intimada Então, o Juízo não privou a parte do recurso cabível porque feita regular intimação contra a decisão que emprestou efeito devolutivo ao recurso De nulidade absoluta, então, não se cuida O que veio arguido à conta de negativa de vigência ao art 56 § 2° do Decreto-lei 7661/45, é questão que fica superada porque os recursos serão examinados pelo mérito, independendo do efeito processual em que foram recebidos A última questão posta nesta petição incidental – patrocínio de interesses antagônicos – é questão que não diz respeito ao recurso Assim, afastada essa questão incidental, examino as preliminares trazidas em um dos recursos

Improcedem as preliminares arguidas Não há que se falar em decadência, porque o aviso do artigo 114 do Decreto-lei 7661/45, não foi publicado por não restar composto o ativo da falida de modo a permitir a liquidação e, ainda, por estar evidente que o processo falimentar da autora – Giovanna Fábrica Ltda – demonstra maior dificuldade do que os feitos assemelhados Assim, ausente descaso ou negligência no retardamento do processo falimentar, fica afastada a alegada decadência Nesse sentido, os seguintes julgados

> FALÊNCIA - Revocatória - Decadência - Prazo que se
> conta a partir do aviso previsto no artigo 114 da Lei de
> Falências - Não publicado tal aviso sem que para tanto
> tenha concorrido o síndico não se há de reconhecer a
> decadência - Recurso não provido (Agravo de

Apelação Cível n° 448.414-4/1-00 – Voto n° 9.672



TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO

Instrumento n 141 145-4 - São Paulo - 9ª Câmara de Direito Privado - Relator  Ruiter Oliva - 22 02.00 - V U )

FALÊNCIA - Revocatória - Prazo - Contagem a partir da publicação do aviso previsto no artigo 114 da Lei de Falências - Publicação não efetivada, sem que para isso tenha concorrido o síndico - Decadência inocorrente - Recurso não provido JTJ 194/148

FALÊNCIA - Revocatória - Decadência - Prazo de um ano a contar da data da publicação do aviso do artigo 114 da Lei de Falência - Artigo 56, § 1º da Lei de Falência - Motivo de força maior para a não publicação do aviso e atraso no procedimento falimentar - Recurso conhecido e provido para afastar o decreto de extinção do feito (Apelação Cível n 251 185-4 - São Paulo - 7ª Câmara de Direito Privado - Relator  De Santi Ribeiro - 23 04.03 - V U.)

        Tampouco, há que se falar em reconhecimento de coisa julgada, isso porque, se verifica que a demanda ajuizada por O Alquimista Cosméticos Ltda , ocorrida antes da própria falência, objetivava impelir o INPI a manter o registro das marcas em seu nome o que veio impugnado em outra ação proposta por Giovanna Fábrica Ltda onde se tratava da regularidade das assinaturas lançadas pela representante legal A esse respeito, bem anotou o d  Magistrado, à fl 1104, da r  sentença recorrida, cujo trecho aqui se transcreve

        "Está decidido, f. 807, e convém repetir, que a ação da 9ª Vara Cível Central, cópia da inicial em fl 85/90, não interfere com o objeto e com a pretensão ajuizada nesta ação revocatória falimentar  É que o fato de ser verdadeira a assinatura de Jeanette Irene Kupfer nos instrumentos de cessão de direitos marcários não prejudica a pretensão ajuizável demandando a ineficácia do ato de alienação de bens e direitos, fundada na fraude do devedor e do

Apelação Cível nº 448.414-4/1-00 – Voto nº 9.672



TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO

terceiro que com ele contrata, a teor do artigo 53 do Decreto 7661 de 1945, dita Lei de Falências

( .) A consequência do acolhimento dessa pretensão apresentada na 4ª Vara Cível da Justiça Federal seria permitir a exploração das marcas alienadas pela Falida GIOVANNA FÁBRICA até o momento em que esse negócio jurídico de alienação das marcas e patentes viesse a ser declarado ineficaz por outro Juízo, em demanda como é aquela sob exame

Daí a conclusão de que nem esta ação da 4ª Vara Cível da Justiça Federal de São Paulo interfere, prejudica ou modifica aquilo que vier a ser julgado nesta ação revocatória falimentar"

Por derradeiro, se faz necessário afastar as preliminares arguidas também nas contra-razões de fls. 1204/1216, a saber, não conhecimento do apelo da G Brasil por intempestivo e ausência de combate a sentença em relação ao apelos, isto porque, sucintamente, deve ser observado que o dispositivo e preparo de fls 1112/1114 foram novamente relacionados para publicação em 16/08/05 e publicados no Diário Oficial da Justiça em 18/08/05, reabrindo-se a contagem do prazo quanto à interposição de recurso (certidão cartorária de fls 1114verso). Logo, tempestivo o apelo Improcede, ainda, a outra preliminar arguida, por se mostrarem em termos para apreciação e análise meritória os apelos ofertados.

Dessa forma, inacolhidas as preliminares suscitadas, passo a análise meritória dos recursos

Segundo consta da peça inicial, a autora – Giovanna Fábrica Ltda teve sua quebra decretada em 18/08/1997 e, no momento em que se encontrou com dificuldades financeiras, transferiu os direitos

**Apelação Cível nº 448.414-4/1-00 – Voto nº 9.672**

 TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO

que detinha sobre marcas de grande popularidade, de alto valor estimado no mercado e que integralizavam o estabelecimento empresarial, tudo em conluio fraudulento com um dos seus administradores e também representante legal de O Alquimista Cosméticos Ltda., com desfalque do ativo e, consequente, prejuízo de credores

É dos autos a comprovação da efetiva transferência das marcas e do depósito perante o INPI no período de 16/02/1996 e 03/12/1996 (fls 07 a 74 e 1290/1337) Dentro deste lapso temporal, a sócia gerente de Giovanna Fabrica Ltda - a Sra Jeanete Irene Kupfer, que também assina Giovanna Baby ou Giovanna Kupfer -, outorgou plenos poderes para agir isoladamente a Jacques Broder Cohen, sócio gerente de O Alquimista Cosméticos Ltda e também sócio gerente de Baby World Indústria e Comércio Ltda nome anterior de Giovanna Baby Indústria e Comércio Ltda, agora G Brasil Indústria e Comércio Ltda, para administrar as empresas de que era sócia, inclusive a falida (fl 140, 150/153 e 175 e ss)

Observa-se que, a empresa Baby World Ind Com Ltda foi constituída em 12/08/1996 (fls 308/316) e registrada na JUCESP em 21/08/1996, dia posterior à revogação de procuração "ad negocia" outorgada pela sócia gerente de Giovanna Fábrica ao sócio gerente Jacques (fls 140, 146, 308/316) Além disso, também após a revogação da referida procuração, a empresa Alquimista - administrada por Jacques - cedeu a licença de uso da marcas à Baby World Ind Com Ltda (fls 106/115) Decretada a quebra da Giovanna Fábrica Ltda, em 18/08/1997, o sócio Jacques da empresa Baby World se retirou da mesma (21/07/1997) e em ato posterior, 16/09/1997, alterou a



TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO

razão social para Giovanna Baby Ind Com Ltda (fls 146/147) Em seqüência, o mesmo cedeu a licença de uso para a empresa Notec Comercial Ltda. Consta nos autos que, o registro das marcas ocorreu em 23/07/1996 e 03/12/1996 (fls 1290/1325), ou seja, dentro do termo legal da quebra - 60 (sessenta) dias anteriores ao primeiro protesto (07/08/1996) -.

Não bastasse isso, o sócio Jacques Cohen reconhece seu envolvimento na Giovanna Fábrica desde o período de janeiro de 1996, vez que ante ao estado de insolvabilidade da mesma, desenvolveu um projeto para constituição de sociedades, demonstrando que a intenção das partes era esvaziar o patrimônio da falida  Tal fato está confirmado nas iniciais de ações trabalhistas ajuizadas em face da Giovanna Fábrica e as empresas de Jacques (fls  159 e ss).

Além disso, se verifica que nos livros comerciais da falida não há qualquer registro relativo à transferência das marcas (fls 473/483). Certo é que, a transferência de todas as marcas se deu quando a falida já estava em estado de insolvência  As marcas foram registradas a partir de julho de 1996 em nome de Alquimista, dentro do prazo legal, tanto é assim que havia lançamentos sobre tributos não pagos desde 1996 

Como é sabido, para a configuração do "consilium fraudis" basta o simples conhecimento que tenha ou deva ter o devedor de seu estado de insolvência, o que no caso restou demonstrado  A insolvabilidade foi reconhecida pelo perito da falida ante os resultados negativos, especialmente a partir de 1995 (fl 481)  Os representantes das falidas Giovanna Fábrica e Alquimista mantinham relacionamento

11



TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO

desde o final de 1995 e conhecimento de que a empresa Giovanna Fábrica tinha dificuldades econômico-financeiras, posto que desde janeiro de 1996 Jacques Cohen passou a gerir os negócios da Giovanna Fábrica, culminando na transferência de bens de maior valor para sua empresa – marcas avaliadas em mais de R$5 000 000,00 – acarretando prejuízos aos credores da apelada  Há que se consignar que, a insolvabilidade e a insolvência de Giovanna Fábrica foi reconhecida pelo representante de O Alquimista em depoimento e em ação por ele ajuizada, além do que administrou a falida desde a morte do marido e sócio de Jeanete (fls  77 e ss, 484/487)

Assim, caracterizada está a fraude e o conluio fraudulento entre as partes na transferência dos bens de maior valor da falida

Nesse sentido:

> FRAUDE CONTRA CREDORES - Requisito - "Consilium fraudis" - Reconhecimento que se impõe em face dos indícios veementes e da prova indireta - Insolvência do devedor, ademais, bem caracterizada, sendo efetivo o prejuízo do credor - Anulatória de negócio jurídico procedente - Recurso provido JTJ 132/113

O "eventus damni", definido como elemento objetivo, é todo ato prejudicial ao credor, por tornar insolvente o devedor, ou por ter sido praticado em estado de insolvência  Além dos fundamentos retro apresentados, nota-se que a própria sentença declaratória da falência demonstra a presença de prejuízo pela insolvência de bens no ativo da falida para pagamento de todos os credores  Há que se ressaltar, ainda, a extensão dos efeitos da falida a outras empresas que transacionaram com a mesma no período suspeito ou anterior a ele,



**Apelação Cível nº 448.414-4/1-00 – Voto nº 9.672**

12

 TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO

momento em que as causas da quebra se evidenciavam e eram de conhecimento de Jeanette e Jacques

Assim entendendo, diante de todo exposto, rejeitadas as preliminares arguidas, pelo meu voto, **nego provimento aos recursos,** dando por afastada a questão incidental trazida na petição de fls 1360/1364

**OCTAVIO HELENE**
**Desembargador Relator**

# D

## THE GILBARCO CASE – FREE ENGLISH TRANSLATION OF LOWER COURT DECISION GRANTING INJUNCTION

http://www.tj.sp.gov.br/PortalTJ/Paginas/Pesquisas/Primeira_Instancia/Por_comarca_civel.aspx (enter "Forum Central Civel João Mendes Junior" ; check "Autor" (Plaintiff) followed by Plaintiff's name – "Gilbarco Inc.".

---

▽1ª Instância Comarca da Capital - Cível

| | |
|---|---|
| **Fórum de Origem:** | Fórum Central Civel João Mendes Júnior ▼ |
| **Competência:** ⊙ | Fazenda Pública ◯ Acidentes do Trabalho |
| **Pesquisa por** ◯ | Processo Ano: Número: |
| ◯ | Nº OAB Número: UF: SP ▼ |
| ⊙ | Autor ◯ Réu ◯ Advogado |
| **Nome:** | gilbarco inc. |
| **Data da Distribuição de** | até |
| | **Formato dd/mm/aaaa** |

The Plaintiff demands the granting of an injunction to order Defendant to take the necessary steps before the Commercial Registry of the State of São Paulo, within the inextensible term of 48 hours, to remove the expression "GILBARCO" from its company name, replacing it by an expression that is not similar to "GILBARCO", and also to remove its current company name, replacing it by the new one, from printed material, documents, advertising material, internet, and any other media. A daily fine of R$10.000,00 [approximately US$4,500.00] was requested Plaintiff in case Defendant failed to comply with the court order.

After careful analysis of Plaintiff's initial claims, the requested injunction is granted. There is undisputable evidence of Plaintiff's claims and risk of irreparable harm. It seems that the partnership between Plaintiff and Defendant ended on December 31, 2004 and, as of this date, Defendant would be prevented from using the Plaintiff's trademark and company name.

By failing to comply with the contractual obligation, Defendant would cause irreparable harm to Plaintiff's image as a result of lawsuits filed against Defendant based on social security debts as well as confusion in the international market, since that their common customers would not be able to ascertain whether there is any relation between the two companies.

Such facts will better analyzed during the evidentiary phase, but are sufficient to evidence the existence of the legal requirements for the granting of the injunction. In light of the above, as the requirements of Article 461, 3rd paragraph, of the Civil Procedure Code, I hereby grant the injunction to order Defendant to take the necessary steps before the Commercial Registry of the State of São Paulo, within the inextensible term of 15 days, to

remove the expression "GILBARCO" from its company name, replacing it by an expression that is not similar to "GILBARCO", and also to remove is current company name from printed material, documents, advertising material, internet, and any other media. A daily fine of R$2.000,00 [approximately US$900.00] was requested Plaintiff in case Defendant failed to comply with the court order.

**E**



# Presidência da República
## Casa Civil
### Subchefia para Assuntos Jurídicos

## LEI Nº 10.406, DE 10 DE JANEIRO DE 2002.

ÍNDICE

Texto compilado

Institui o Código Civil.

Lei de Introdução ao Código Civil Brasileiro

**O PRESIDENTE DA REPÚBLICA** Faço saber que o Congresso Nacional decreta e eu sanciono a seguinte Lei:

PARTE GERAL

LIVRO I
DAS PESSOAS

TÍTULO I
DAS PESSOAS NATURAIS

CAPÍTULO I
DA PERSONALIDADE E DA CAPACIDADE

Art. 1º Toda pessoa é capaz de direitos e deveres na ordem civil.

Art. 2º A personalidade civil da pessoa começa do nascimento com vida; mas a lei põe a salvo, desde a concepção, os direitos do nascituro.

Art. 3º São absolutamente incapazes de exercer pessoalmente os atos da vida civil:

I - os menores de dezesseis anos;

II - os que, por enfermidade ou deficiência mental, não tiverem o necessário discernimento para a prática desses atos;

III - os que, mesmo por causa transitória, não puderem exprimir sua vontade.

Art. 4º São incapazes, relativamente a certos atos, ou à maneira de os exercer:

I - os maiores de dezesseis e menores de dezoito anos;

II - os ébrios habituais, os viciados em tóxicos, e os que, por deficiência mental, tenham o discernimento reduzido;

III - os excepcionais, sem desenvolvimento mental completo;

IV - os pródigos.

Art. 704. Salvo disposição em contrário, pode o comitente, a qualquer tempo, alterar as instruções dadas ao comissário, entendendo-se por elas regidos também os negócios pendentes.

Art. 705. Se o comissário for despedido sem justa causa, terá direito a ser remunerado pelos trabalhos prestados, bem como a ser ressarcido pelas perdas e danos resultantes de sua dispensa.

Art. 706. O comitente e o comissário são obrigados a pagar juros um ao outro; o primeiro pelo que o comissário houver adiantado para cumprimento de suas ordens; e o segundo pela mora na entrega dos fundos que pertencerem ao comitente.

Art. 707. O crédito do comissário, relativo a comissões e despesas feitas, goza de privilégio geral, no caso de falência ou insolvência do comitente.

Art. 708. Para reembolso das despesas feitas, bem como para recebimento das comissões devidas, tem o comissário direito de retenção sobre os bens e valores em seu poder em virtude da comissão.

Art. 709. São aplicáveis à comissão, no que couber, as regras sobre mandato.

CAPÍTULO XII
Da Agência e Distribuição

Art. 710. Pelo contrato de agência, uma pessoa assume, em caráter não eventual e sem vínculos de dependência, a obrigação de promover, à conta de outra, mediante retribuição, a realização de certos negócios, em zona determinada, caracterizando-se a distribuição quando o agente tiver à sua disposição a coisa a ser negociada.

Parágrafo único. O proponente pode conferir poderes ao agente para que este o represente na conclusão dos contratos.

Art. 711. Salvo ajuste, o proponente não pode constituir, ao mesmo tempo, mais de um agente, na mesma zona, com idêntica incumbência; nem pode o agente assumir o encargo de nela tratar de negócios do mesmo gênero, à conta de outros proponentes.

Art. 712. O agente, no desempenho que lhe foi cometido, deve agir com toda diligência, atendo-se às instruções recebidas do proponente.

Art. 713. Salvo estipulação diversa, todas as despesas com a agência ou distribuição correm a cargo do agente ou distribuidor.

Art. 714. Salvo ajuste, o agente ou distribuidor terá direito à remuneração correspondente aos negócios concluídos dentro de sua zona, ainda que sem a sua interferência.

Art. 715. O agente ou distribuidor tem direito à indenização se o proponente, sem justa causa, cessar o atendimento das propostas ou reduzi-lo tanto que se torna antieconômica a continuação do contrato.

Art. 716. A remuneração será devida ao agente também quando o negócio deixar de ser realizado por fato imputável ao proponente.

Art. 717. Ainda que dispensado por justa causa, terá o agente direito a ser remunerado pelos serviços úteis prestados ao proponente, sem embargo de haver este perdas e danos pelos prejuízos sofridos.

Art. 718. Se a dispensa se der sem culpa do agente, terá ele direito à remuneração até então devida, inclusive sobre os negócios pendentes, além das indenizações previstas em lei especial.

Art. 719. Se o agente não puder continuar o trabalho por motivo de força maior, terá direito à remuneração correspondente aos serviços realizados, cabendo esse direito aos herdeiros no caso de morte.