James David Jacobs
Frank M. Gasparo
Marcella Ballard
BAKER & McKENZIE LLP
1114 Avenue of the Americas
New York, NY 10036-7703
Tel: 212-626-4100
FAX: 212-310-1600

Attorneys for Software AG, Inc.
and Software AG

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SOFTWARE AG, INC. and SOFTWARE AG,<br><br>                              Plaintiffs,<br><br>             -against-<br><br>CONSIST SOFTWARE SOLUTIONS, INC. f/k/a CONSIST INTERNATIONAL, INC. and NATALIO FRIDMAN,<br>                              Defendants. | Case No. 08-CV-00389 (CM) (FM)<br><br>**DECLARATION OF<br>MARCELLA BALLARD** |

Marcella Ballard declares and states as follows:

1.      I am an attorney at Baker & McKenzie LLP, and counsel for Plaintiffs Software AG, Inc. and Software AG.

2.      Attached as Exhibit A is a true copy of the Distribution Agreement between Software AG, Software AG of North America, Inc. and Pan American Computer Systems, Inc. for the period of January 1, 1984 through December 31, 1986.

1

3.    Attached as Exhibit B is a true copy of the Distribution Agreement between Software AG, Software AG of North America, Inc. and Pan American Computer Systems, Inc. for the period of January 1, 1995 through December 31, 1997.

4.    Attached as Exhibit C is a true copy of pages 62, 122 and 123 from the transcript of Natalio Fridman's deposition on November 5, 2007.

5.    Attached as Exhibit D is a true copy of page 91 from the transcript of the Preliminary Injunction Hearing on January 24, 2008.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

New York, New York
February 13, 2008

Marcella Ballard

2



DISTRIBUTORSHIP AGREEMENT

THIS AGREEMENT made as of                         day of

between                    SOFTWARE AG
                           Dehmelstraße 3
                           6100 Darmstadt
                           W. Germany

                           and

                           SOFTWARE AG OF NORTH AMERICA, INC.
                           11800 Sunrise Valley Drive
                           Reston, Virginia 22091
                           USA

                           (hereinafter called "SAG")

and                        PAN AMERICAN COMPUTER SYSTEMS, INC.
                           150 Broad Hollow Road
                           Melville, New York 11747
                           USA                          Telefonvechte

                           (hereinafter called "PACS")   Cansist.


WITNESSETH, That

WHEREAS, SAG is the sole proprietor of certain software packages accord-
ing to attachment 1 (being upgraded from time to time), hereinafter refer-
red to as the "SYSTEMS";
and
WHEREAS, PACS wants to market the SYSTEMS and to provide assistance
to users of the SYSTEMS in Argentina, Brazil, Chile, Columbia and Uru-
guay, hereinafter called the "TERRITORY".

Ecuador?
NF wants it.

- 2 -

**Paragraph 1**

SAG appoints PACS exclusive distributor of SAG in the TERRITORY for
the period of January 1, 1984 thru December 31, 1986.

**Paragraph 2**

SAG hereby authorizes PACS to enter into customer agreements in the
TERRITORY for licensing, installing, technical assistance, training and
maintenance of the SYSTEMS.

However PACS is only authorized to give single use-licenses for SYSTEMS
to customers and not to give any form of sublicense or distribution rights
to a contract partner.

**Paragraph 3**

Upon the execution by PACS of a license purchase or license lease for
SYSTEMS in the TERRITORY PACS agrees to pay SAG a percentage
of the published SAG U.S. Price Schedule ("SCHEDULE") (attachment
2) as follows:

- 20 % (Twenty percent) of the license purchase or then available
  longest term license lease, as PACS shall select for type 1 SYSTEMS
  according to attachment 1

- 3 -

-     40 % (Fourty percent) of the license purchase or then available longest term license lease, as PACS shall select for type 2 SYSTEMS according to attachment 1

-     For Maintenance and Technical services performed by PACS in the TERRITORY subsequent to the first 12 (twelve) months of each license whether purchase or lease: 25 % (Twenty Five percent) of the Maintenance fees published by SAG according to attachment 2.

Payments by PACS to SAG Darmstadt shall be made in US-Dollars on the following basis:

    Commencing March 1, 1984 and on each March 1, June 1, September 1, and December 1 thereafter during the term of this agreement PACS will pay as and advance payment for royalties due to SAG

      250.000 US-$ each quarter during 1984
      325.000 US-$ each quarter during 1985
      400.000 US-$ each quarter during 1986

During the first calendar quarter of the years 1985, 86 etc. the balance will be computed by SAG for the previous calendar year using the figures due to SAG from the signed license agreements in the territory.

In case of an overpayment by PACS
    (fees due to SAG are    less than 1.000.000.US-$ in 1984,
                    less than 1.300.000 US-$ in 1985,
                    less than 1.600.000 US-$ in 1986)
the amount overpaid will be carried forward and credited towards the March 1 -payment following the balance date.

- 4 -

In case of an underpayment by PACS

   (fees due to SAG more than 1.000.000 US-$ in 1984,

                more than 1.300.000 US-$ in 1985,

                more than 1.600.000 US-$ in 1986) ,

the additional amount will be paid by PACS within the first quarter
following the balance date (Dec.31).

Payment not received on the due rate shall bear interest at a rate of
3 % above the prime commercial rate of Citibank existing from time
to time.

Any lease license for a period of 59 (Fifty Nine) months or more shall
be deemed, at PAC's option, to be a license purchase, and royalties due
SAG thereon shall be payable by PACS and calculated at the same pub-
lished financing rates charged by SAG. Maintenance fees related to such
contracts shall not be subject to such a financing procedure.

Should PACS desire to consider a lease license as a license purchase,
PACS shall give SAG written notice to this effect within the first 12
(twelve) month period of the lease license contract.

SCHEDULE (attachment 2) will be updated from time to time according
to the published US price schedule. The price changes should become
effective for the computation of the amounts to be paid to SAG for license
agreements in the TERRITORY three months after the publication of
a new US price schedule.

Paragraph 4

SAG agrees to provide the following services to PACS:

1.      Training in public classes held by SAG for PACS staff
         (up to 5 persons) how to use the SYSTEMS in public
         classes held by SAG

2.      latest version of the SYSTEMS stored on magnetic tape;

- 5 -

3.    complete set of SYSTEMS documentation in English, including Reference Manual and Utilities Manual (one copy for each user);

4.    prompt correction of any errors in the SYSTEMS detected at a user's site and forwarded to SAG

**Paragraph 5**

(1)    PACS agrees to take all necessary and reasonable measures to ensure that the proprietary nature and integrity of the SYSTEMS are safeguarded against unauthorized use, duplication or modification.

PACS has the right to reproduce and, as necessary, translate SYSTEMS documentation, Manuals, etc., for use in the TERRITORY. Written material used by PACS for marketing or support to users of the SYSTEMS will refer to authorship of SAG and will show copyright and trademark of SAG.

PACS acknowledges the SYSTEMS and all documentation or information as a trade secret of SAG and undertakes to oblige also its own personnel to protect the SYSTEMS as well as their copyrights and trade-marks and to prevent it from unauthorized use.

(2)    PACS agrees to refrain from implementing, or permitting the implementation of any modification to the SYSTEMS without the approval of SAG.

- 6 -

(3) PACS agrees to refrain from installing the SYSTEMS at a user's site without having obtained a written agreement from the user calling for safeguarding of the proprietary nature of the SYSTEMS. Such written agreement must be either a right of use agreement, or a non-disclosure agreement for demonstration.

(4) PACS agrees to make all reasonable efforts to successfully market the SYSTEMS in the TERRITORY. PACS has to send written quarterly reports concerning all contracts, containing kind of computer, operating system, customer name and address, terms and conditions esp. term of payment no later than 8 weeks after the end of a calendar quarter.

(5) PACS agrees to be responsible for all technical assistance and support activities in the TERRITORY including maintenance services for both present and future users. This obligation of PACS will continue until termination of this agreement including any extension thereof.

(6) PACS will be responsible for supplying SAG with all pertinent information concerning any software errors and will forward promptly all documentation along to SAG with an explanation of the circumstances causing the problem and SAG will correct any errors in the SYSTEMS.

(7) In no case shall SAG be held liable by PACS or any of PACS customers in this territory for any damages direct or consequential derived from the use of the SYSTEMS. PACS shall include a corresponding clause in its license agreements which makes sure that SAG cannot be held liable in this above sense by a customer.

(8) SAG shall not be held liable for any taxes arising out of the activities of PACS, like sales tax, income tax, import tax or alike.

- 7 -

**Paragraph 6**

None of the parties hereto shall be entitled to assign this contract without prior written consent of the other party.

**Paragraph 7**

SAG reserves the right to terminate this Agreement should PACS fail to perform any of the stated conditions of this Agreement.

Before any such termination shall become effective, SAG shall give written notice to PACS describing in detail what conditions PACS has failed to perform, and PACS shall have 60 (sixty) days in which to perform such conditions.

**Paragraph 8**

All notices hereunder shall be in writing and shall be deemed properly delivered and effective when duly sent by Certified Mail, Postage Pre-paid, telex or cable, or delivered by hand:

to PACS at:    PAN AMERICAN COMPUTER SYSTEMS, INC.
               150 Broad Hollow Road
               Melville, New York 11747
               U.S.A.
               attention: Mr. Natalio S. Fridman

to CONSIST at:  CONSIST
               CONSULTORIA, SISTEMAS E REPRES. LTDA.
               Peixoto Gomide 1174
               Sao Paulo - SP
               Brazil
               attention: Mr. Natalio S. Fridman

- 8 -

Paragraph 8 (cont.)

and to SAG at:   SOFTWARE AG
                 Dehmelstraße 3
                 6100 Darmstadt
                 W. Germany
                 attention: Mr. P. Schnell

or to such other address as the receiving party may by written notice
designate to the other.

Paragraph 9

In the event PACS pays SAG a *the* quota of 1.000.000 (One Million) US-Dollars
for the year ending December 31,1984 and during the 3-year-period ending
December 31,1986 payments totaling US-$ 3.900.000 (Three Million Nine
Hundred Thousand) this contract shall be automatically extended until
December 31,1989 with a new mutually agreed quota.

*( or until end of outstanding use licences) What about Post 1989? NF with a auto extension (new quota)*

Paragraph 10

PACS and Mr. Natalio S. Fridman and CONSIST - CONSULTORIO, SIS-
TEMAS E REPRESENTACOES LTDA., warrant fulfillment of PACS obli-
gations.

Paragraph 11

This agreement may not be amended except by another instrument in
writing signed by the parties, made subsequent to the date of this agree-
ment, and which is expressly stated to be an amendment to this agree-
ment.

- 9 -

Paragraph 12

This contract shall be subject to and. interpreted in accordance with German Law.

SAG agrees to defend or at its option to settle any claim, suit or proceeding brought against PACS from third parties and to indemnify PACS against any costs derived from claims of infringement of any patent or. copyright of the SYSTEMS provided.

PACS notifies SAG within a week in writing of any such claim, suit or proceeding and gives SAG full information. and assistance to settle and/or defend. SAG shall not be liable for any defense costs or expenses, exclusive of any judicial and administrative awards, incurred without SAG's written authorization.

PACS agrees to indemnify SAG from any liability that may have been generated because PACS either overstated the performance of any part of SYSTEM or failed to handle properly.

Agreement Accepted:
SOFTWARE AG ~~SOFTWARE AG~~
~~DEHMELSTRASSE 3~~
~~6100 DARMSTADT~~

By _____
    Authorized Signature
Name Typed  Peter Schnell
Title       President and CEO
Date _____

SOFTWARE AG OF NORTH
AMERICA, INC.

By _____
    Authorized Signature
Name Typed  Stu Miller
Title       President and CEO

Agreement Accepted:
PAN AMERICAN COMPUTER
SYSTEMS, INC.

By _____
    Authorized Signature
Name Typed  Natalio Fridman
Title       _____
Date _____

MR. NATALAIO FRIDMAN AND
CONSIST-CONSULTORIA, SISTEMAS
E REPRESENTACOES LTDA.

By _____
    Authorized Signature
Name Typed  Natalio Fridman
Title       _____

MEMORANDUM OF AGREEMENT

SOFTWARE AG, Darmstadt, Germany

and

SOFTWARE AG OF NORTH AMERICA, Reston, Virginia, USA

(together hereinafter called SAG)

and

Mr. NATALIO S. FRIDMAN

CONSIST - CONSULTORIA, SISTEMAS E REPRESENTACOES LTD,
Sao Paulo, Brazil

and

PAN AMERICAN COMPUTER SYSTEMS, INC., Melville, New York, USA

(together hereinafter called PACS)

agree in order to settle and resolve outstanding claims arising from the
marketing, leasing, sale and distribution of ADABAS, NATURAL and COM-
PLETE (the 'SYSTEMS') in South America (the "TERRITORY") by PACS
with a view to establishing a sound relationship and understanding and
to assure the continuation and performance of the prior relationship,
the parties hereto acknowledge and undertake to perform and carry out
the following terms and conditions:

1.  Upon the execution and delivery of the annexed Distributorship
    Agreement, PACS agrees to pay SAG the sum of

US-$ 318.000

(Three Hundred and Eighteen Thousand )

in full payment and settlement of all amounts due to SAG up to
December 31, 1983 resulting out of the reported contracts based
on the Distributor Agreement dated July 1st, 1980.

MEMORANDUM OF AGREEMENT

*as a prior D. 5, ...5*

2.    SAG and SAGNA agree to waive all claims against PACS ~~for fees due through December 31,1983~~ arising out of contracts, for sale, lease or maintenance, entered into in Venezuela for the Systems. PACS agrees to waive all claims against SAG and SAGNA and against any third party (esp. APS (Analysis Programmacion y Software)) resulting out of contracts, for sale, lease or maintenance, entered into in Venezuela on or prior to December 31,1983.

3.    The amounts set forth herein in Paragraph 1 are not considered to be a payment against the quota established in Paragraph 3 and 9 of the Distributorship Agreement, annexed hereto as Exhibit A. However, other license and maintenance fees paid by PACS for the period January 1,1984 and thereafter upon contracts, for sale, lease or maintenance, executed before or after January 1,1984 shall be a credit against said quota.

4.    Except as specifically set forth in this Memorandum of Agreement, the Distributor Agreement ~~as of~~ *dated* July 1,1980 is terminated and each of the parties hereto discharges/the other parties for claims, obligations and liabilities arising out of said Distributor Agreement.

Agreement Accepted:                         Agreement Accepted:

SOFTWARE AG                                 PAN AMERICAN COMPUTER
                                            SYSTEMS, INC.

By _____                By _____
    Authorized Signature                        Authorized Signature
Name Typed  Peter Schnell                   Name Typed  Natalio Fridman
Title       President and CEO               Title _____
Date _____                Date _____

SOFTWARE AG OF NORTH                        MR. NATALIO FRIDMAN AND
AMERICA, INC.                               CONSIST-CONSULTORIA, SISTEMAS
                                            E REPRESENTACOES LTDA.

By _____                By _____
    Authorized Signature                        Authorized Signature
Name Typed  Stu Miller                      Name Typed  Natalio Fridman
Title       President and CEO               Title _____

Attachment 1

Type 1 SYSTEMS

ADABAS          for DOS, OS, MVS
ADAMINT
NATURAL
COM-PLETE       Tp-System

Type 2 SYSTEMS

ADABAS          for VMS
NATURAL         for VMS
ADABAS VSAM TRANSPARENCY
ADABAS REFLECTIVE DATABASE
NATURAL VSAM COMMUNICATION
NATURAL SECURITY
NATURAL GRAPHICS
NATURAL ADVANCED FACILITIES
SUPERNATURAL
NATURAL CONNECTION
CONNECTION COMPASS PC
PREDICT 1
PREDICT 2
COM-POSE
COM-POSE T/F
CTCS SOFTWARE
VM COMMUNICATION
VTAM COMMUNICATION
ACCESS

Rev. 2/27/95

## DISTRIBUTORSHIP AGREEMENT

THIS AGREEMENT made as of the 1st day of January 1995.

between     SOFTWARE AG
            Uhlandstrasse 12
            64297 Darmstadt

            SOFTWARE AG OF NORTH AMERICA, INC.
            11190 Sunrise Valley Drive
            Reston, Virginia   22091 USA

            (hereinafter called "SAG").

and         PAN AMERICAN COMPUTER SYSTEMS, INC.
            150 Broad Hollow Road
            Mellville, New York   11747 USA

            (hereinafter called "PACS", which term shall include all
            PACS subsidiaries and affiliates)

### WITNESSETH, That

WHEREAS, SAG is the proprietor of certain software packages, as set forth in Annex A (herein "SAG Products") (being upgraded from time to time), and offers certain products, as set forth in Annex B, for which SAG pays royalties (herein "SPECIAL PRODUCTS") (being upgraded from time to time) both of which are collectively referred to herein as "SYSTEMS").

and

WHEREAS, PACS wants to market the SYSTEMS and to provide assistance to users of the SYSTEMS in Argentina, Brazil, Chile, Bolivia, Paraguay and Uruguay, hereinafter called the "TERRITORY".

Now therefore, the parties hereto agree as follows:

Paragraph 1

SAG appoints PACS the exclusive distributor of the SYSTEMS in the TERRITORY for the period of January 1, 1995 through December 31, 1997.

During the third year (1997) of this term the parties agree to negotiate, in good faith, a new agreement.

If at the end of any year of this Agreement, PACS product license revenue (with leases, limited in time licenses and month-to-month licenses being treated as perpetual licenses) based on the current U.S. standard price list, in Chile is less than the following yearly quotas:

            1995   US$1,000,000
            1996   US$3,000,000
            1997   US$5,000,000

SAG may terminate this Agreement, as to Chile only, in accordance with Paragraph 7.

1

**Paragraph 2**

SAG hereby authorizes PACS to enter into customer agreements in the TERRITORY for licensing, installing, technical assistance, training and maintenance of the SYSTEMS.

However, PACS is only authorized to give non-transferable use-licenses for SYSTEMS to customers.  Giving any form of sublicense or distribution rights, such as direct or indirect OEM arrangements, to a "contract partner" will require the prior written consent of SAG.

Contracts for installations of the SYSTEMS outside the TERRITORY shall require the prior written consent of SAG.

**Paragraph 3**

For the right to grant perpetual or time-limited licenses, and/or maintenance agreements, PACS agrees to pay SAG as provided in Exhibit A hereto.

Payments will be made within ten (10) days of the end of each quarter.

Any quarterly payment not received within the due date period above mentioned, shall bear interest at a rate of 3% p.a. above the prime commercial rate of Citibank in effect at that time.

SAG will provide invoices to PACS for all payments made by PACS.

**Paragraph 4**

SAG agrees at no additional costs to provide the following services to PACS:

1.    Training in public classes held by SAG for PACS staff (up to 5 persons)per class;

2.    Ten (10) copies of the latest version of the SYSTEMS stored on magnetic tape;

3.    Ten (10) copies of complete sets of SYSTEMS documentation in English, including Reference Manual and Utilities Manual.

4.    Prompt correction or any errors in the SYSTEMS detected at the user's site and forwarded to SAG.

**Paragraph 5**

(1)    PACS agrees to take all necessary and reasonable measures to ensure that the proprietary nature and integrity of the SYSTEMS are safeguarded against unauthorized use, duplication or modification.

PACS has the right to reproduce and, as necessary, translate SYSTEMS, documentation, Manuals, etc. for use in the TERRITORY. Written material used by PACS for marketing or support to users of the SYSTEMS will refer to authorship of SAG and will show copyright and trademark of SAG.

PACS acknowledges the SYSTEMS and all documentation or information as trade secrets of SAG and undertakes to oblige its personnel to protect the SYSTEMS as well as their copyrights and trademarks and to prevent them from unauthorized use.

2

PACS agrees to refrain from implementing, or permitting the implementation of any modification to the SYSTEMS without the written notice to SAG.

(2)  PACS agrees to refrain from installing the SYSTEMS at a user's site without having obtained a written agreement from the user calling for safeguarding of the proprietary nature of the SYSTEMS. Such written agreement must be either a right of use agreement, or a non-disclosure agreement for demonstration.

(3)  PACS agrees to make all reasonable efforts to successfully market the SYSTEMS in the TERRITORY.

PACS shall, at its expense, provide SAG with a written quarterly report of all installations and de-installations of the SYSTEMS in the TERRITORY, made in the quarter, including product name, operating system, hardware class or machine type, customer name, customer address, and installation/de-installation date.  All installations will be considered perpetual licenses unless later reported as de-installed.

Within sixty (60) days of the execution of this Amendment, the parties will meet and specify the format of the required quarterly reports.

SAG will take no action against PACS for any reports which were due prior to January 1, 1995.

(4)  PACS agrees to be responsible for all technical assistance and support activities in the TERRITORY including maintenance services for both present and future users.  This obligation of PACS will continue until termination of this agreement including any extension thereof.

(5)  PACS shall be responsible for supplying SAG with all pertinent information concerning any software errors and will forward promptly all documentation along to SAG with an explanation of the circumstances causing the problem and SAG will correct any errors in the SYSTEMS.

(6)  In no case shall SAG be held liable by PACS or any of PACS customers in this TERRITORY for any damages, indirect or consequential, derived from the use of the SYSTEMS.

(7)  SAG shall not be held liable for any taxes arising out of the activities of PACS, such as sales tax, income tax, import tax, value added tax or alike. All withholding taxes for payments made by PACS for SAG shall be credited as payments, provided that PACS furnishes SAG with adequate receipts or vouchers as the case may be.

The maximum withholding will be twenty percent (20%) of the taxable amount per quarter.

(8)  PACS shall abide by all U. S. Export Administration Regulations which may apply to the SYSTEMS and their exportation and/or re-exportation.

(9)  PACS agrees that SAG has the right to make multinational agreements with end-user customers which may result in installations in the TERRITORY at discounts negotiated by SAG. PACS will accept all such agreements and discounts as valid in the TERRITORY with compensation to PACS according to SAG's published worldwide multinational policy.

3

(10)  PACS agrees to cooperate with SAG in establishing international
      Value Added Remarketers (VARs).  The terms of specific VAR
      agreements will be agreed to between PACS and SAG on a case-by-
      case basis.

(11)  PACS (including CONSIST and Natalio Fridman or any subsidiary or
      affiliated business entity) agrees not to act as agent, partner,
      distributor, reseller or marketing representative for any systems
      software products which compete with the SAG SYSTEMS without the a
      approval of SAG.  The approval of specific competitive products
      will be agreed to between PACS and SAG on a case-by-case basis.

(12)  When requested by PACS, SAG will execute the documents required by
      government authorities in the TERRITORY for remittance of
      royalties for SAG products by the PACS affiliates.  All payment
      by PACS affiliates will be credit as payment under this Agreement.

      Total PACS obligations to SAG are solely those specified in this
      Agreement.

      In the case of any conflict between this Agreement and any
      document executed by SAG with PACS affiliate, this Agreement
      shall prevail.

Paragraph 6

None of the parties hereto shall be entitled to assign this contract
without prior written consent of the other party.

Paragraph 7

SAG reserves the right to terminate this Agreement should PACS fail to
perform any material conditions of this Agreement.

Before such termination shall become effective, SAG shall give written
notice to PACS describing in detail what material conditions PACS has
failed to perform, and PACS shall have sixty (60) days in which to
perform such conditions.

Paragraph 8

All legal notices hereunder shall be in writing and shall be deemed
properly delivered and effective when duly sent by Certified Mail,
Postage Prepaid, telex or cable, or delivered by hand:

to PACS at:        PAN AMERICAN COMPUTER SYSTEMS, INC.
                   150 Broad Hollow Road
                   Mellville, New York   11747
                   U.S.A.
                   (Attention:  Mr. Natalio S. Fridman)

to CONSIST at:     CONSIST CONSULTORIA, SISTEMAS E REPRES. LTDA.
                   Avenida de las Naciones Unidas - 20727
                   Sao Paulo, Brazil
                   (Attention:  Mr. Natalio S. Fridman)

4

```
and to SAG at:      SOFTWARE AG
                    Uhlandstrasse 12
                    64297 Darmstadt
                    W. Germany
                    (Attention:  Mr. Peter Schnell)
```

or to such other address as the receiving party may by written notice designate to the other.

All operational correspondence (technical assistance, sales and marketing support) will be directed to:

```
                    SOFTWARE AG OF NORTH AMERICA, INC.
                    11190 Sunrise Valley Drive
                    Reston, Virginia   22091
                    U.S.A.
                    (Attention:  Mr. Philippe Kuperman)
```

All quarterly reports will be directed to the above address and to:

```
                    SOFTWARE AG
                    Uhlandstrasse 12
                    64297 Darmstadt
                    W. Germany
                    (Attention:  Mr. P. Schnell)
```

Paragraph 9

PACS and Mr. Natalio S. Fridman, including his heirs and assigns, and CONSIST-CONSULTORIA, SISTEMAS E REPRESENTACOES LTDA., warrant fulfillment of PACS obligations.

Paragraph 10

This Agreement, including Annexes and Exhibits, constitutes the entire Agreement between the parties; and supersedes and merges all previous communications, representations or agreements, either written or orally, with respect to the subject matter hereof, so that this Agreement may only be changed or modified by another Agreement signed by the parties hereto.

Paragraph 11

This contract shall be subject to, and interpreted in accordance with, the laws of the State of New York, USA.  SAG agrees to defend or at its option settle any claim, suit or proceeding brought against PACS from the third parties for patent or copyright infringement and indemnify PACS against any claims for infringement of any patent or copyright by the SYSTEMS offered.

PACS will promptly notify SAG in writing of any such claims, suit or proceeding and give SAG full information and assistance to settle and/or defend.  SAG shall not be liable for any defense costs or expenses exclusive of any judicial and administrative awards, incurred without SAG's written authorization.

PACS agrees to indemnify SAG from any liability that may be generated because PACS either overstated the performance of any SYSTEM or part thereof, or failed to exercise the due care to resolve problem,

Agreement Accepted:
SOFTWARE AG

By: _____
        Authorized Signature

Name Typed: Peter Schnell
Title: _____
Date: _____


Agreement Accepted:
PAN AMERICAN COMPUTER
SYSTEMS, INC.

By: _____
        Authorized Signature

Name Typed: Natalio S. Fridman
Title: President
Date: 2/28/95


SOFTWARE AG OF NORTH
AMERICA, INC.

By: _____
        Authorized Signature

Name Typed: Michael King
Title: _____
Date: _____


MR. NATALIO FRIDMAN AND
CONSIST-CONSULTORIA, SISTEMAS
RESPRESENTACOES, LTDA

By: _____
        Authorized Signature

Name Typed: Natalio S. Fridman
Title: _____
Date: 2/28/95


MR. NATALIO S. FRIDMAN
INDIVIDUALLY

Name Typed: Natalio S. Fridman
Title: _____
Date: 2/28/95

6

ANNEX A

1.    All the system software packages offered for distribution by SAG now and in the future including, but not limited to, those shown on the attached list.

Application packages, except for PRODIS, are excluded.

7

ANNEX B

SPECIAL PRODUCTS

Special Products are those products listed below, and any additions to
this list, as made by SAG, from time to time. Additions may include new
products or new releases of existing Special Products. For new Special
Products which require that royalties be paid to third-parties, PACS
will reimburse SAG for all out-of-pocket costs associated with all such
Special Products.

1.    ESPERANT

2.    ADABAS-D

3.    CONSTRUCT

4.

8

EXHIBIT A

PACS agrees to pay SAG a quarterly fixed lump sum payment according to the following schedule:

Commencing January 1, 1995 and no later than ten (10) days following the end of each subsequent quarter thereafter during the term of this Agreement, PACS will pay the following:

a)    Each quarter of 1995, the sum of US$1,500,000
b)    Each quarter of 1996, the sum of US$1,750,000
c)    Each quarter of 1997, the sum of US$2,250,000

9

C

# ORIGINAL

1

1

2    UNITED STATES DISTRICT COURT

3    SOUTHERN DISTRICT OF NEW YORK

4

5    ----------------------------------------x

6    CONSIST SOFTWARE SOLUTIONS, INC.,

7                              Plaintiff,

8              vs.

9    SOFTWARE AG, INC. and SOFTWARE AG

10                             Defendant.

11   ----------------------------------------x

12                      November 5, 2007

13                      10:14 a.m.

14

15        H I G H L Y   C O N F I D E N T I A L

16             ATTORNEYS' EYES ONLY

17

18        Deposition of NATALIO S. FRIDMAN, held

19   at the offices of Baker & McKenzie, 1114

20   Avenue of the Americas, New York, New York

21   10036, before David Henry, a Certified

22   Shorthand Reporter and Notary Public of the

23   State of New York.

24

25

## HIGHLY CONFIDENTIAL



ELISA DREIER
REPORTING CORP.

780 Third Avenue        Telephone: 212-557-5558
New York, New York 10017    Fax: 212-557-0050
Email:production@courtreportingedrc.com

1   Fridman - CONFIDENTIAL - ATTORNEYS' EYES ONLY

2   sales people, management, sales manager.  I

3   say to one person to distribute, and to the

4   sales manager.

5          Q.    Who is the sales manager in

6   Brazil?

7          A.    We have three sales managers,

8   okay?  And one in Argentina, three in

9   Brazil.

10         Q.    Who is the sales manager in

11  Brazil?

12         A.    Dennis for government, and -- is

13  relevant that?  Or maybe you want to get to

14  my clients to know what contract they have

15  signed with anybody.

16         Q.    Who was your sales manager in

17  Brazil please?

18         A.    I am the principal of Brazil

19  Argentina pushing the sales, and I have

20  manager for area.

21         Q.    Could you please identify the

22  name of your sales manager, please.

23         A.    Sales manager, one is John

24  Fernando -- do I have to give the name of

25  people?

122

1   Fridman - CONFIDENTIAL - ATTORNEYS' EYES ONLY
2       structure.
3           A.    As long as somebody furnishes a
4       pen to write.  This is Consist Software
5       Solutions.
6           Q.    Consist Software Solutions at the
7       top of the chain.
8           A.    Yes, top of the chain, but is a
9       small company, a holding company.  You have
10      subsidiaries in Mexico, in Israel, in
11      Germany, and in Spain.  Also affiliate
12      companies in the countries we mentioned,
13      Software AG, all the countries, we have in
14      Brazil, Argentina, Chile, Uruguay,
15      Paraguay, and Peru, we have a site over
16      there, and Bolivia.  We have a client in
17      Bolivia.  Unbelievable.
18          Q.    And when you say these
19      subsidiaries --
20          A.    Hundred percent subsidiaries.
21          Q.    Hundred percent subsidiaries.
22      And the affiliate companies, in what sense
23      are they affiliates?
24          A.    They have the name Consist, they
25      have the exclusive license for that

123

```
1    Fridman - CONFIDENTIAL - ATTORNEYS' EYES ONLY
2         territory, and that's it, okay?
3              Q.    What is the ownership arrangement
4         between the affiliates and the ownership
5         arrangement of Consist?
6              A.    Depending on the country.  Each
7         country is different.  There are no country
8         that have the same ownership.  We have
9         interdependency.
10             Q.    Are you the chief executive of
11        all the affiliate companies?
12             A.    No, but I am the chief executive
13        of Consist application products.  Actually
14        I am the, not formally, but I have a lot of
15        voice.
16             Q.    Are you the chief executive of
17        Consist Software Solutions?
18             A.    Yes.
19             Q.    And are you the chief executive
20        of the subsidiary in Mexico?
21             A.    No.
22             Q.    Who is the chief executive there?
23             A.    I don't know who is it.  You have
24        country managers in these places.  We don't
25        have a CEO.  Country manager of Mexico,
```

# D

1

81nesof1
1    UNITED STATES DISTRICT COURT
1    SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
2
3    SOFTWARE AG, INC.,
3
4              Plaintiffs,
4
5         v.                           08 CV 389(CM)
5
6    CONSIST SOFTWARE SOLUTIONS,
6    INC., et al.,
7
7              Defendants.
8
8    ------------------------------x
9
10                              January 24, 2008
11                              10:05 a.m.
11
12
12   Before:
13
13                 HON. COLLEEN MCMAHON,
14
14                                  District Judge
15
15                       APPEARANCES
16
16   BAKER & MCKENZIE, LLP
17        Attorneys for Plaintiffs
17   BY:  JAMES DAVID JACOBS
18        MARCELLA BALLARD
18        FRANK MICHAEL GASPARO
19        JOHN BASINGER
19
20   DUANE MORRIS, LLP
20        Attorneys for Defendants
21   BY:  HYMAN SCHAFFER
21        GREGORY P. GULIA
22        BRIAN McQUILLEN
22        FRAN M. JACOBS
23
23
24
25
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

```
          81OHCON4              Fridman - direct
 1   the answer being given, page 40, line 2 --
 2             MR. SCHAFFER:  Objection.
 3   Q.  -- "Question:  You name the officers?
 4   "A. Yes.
 5   "Q. And you are also naming officers of Consist Consultry,
 6   correct?
 7   "A. Yes."
 8             Do you recall those questions and those answers?
 9   A.  The top officer.  Definitely the vice president, executive
10   vice president, vice president of technology, they are named by
11   me years ago, many years ago.
12   Q.  The top officers?
13   A.  The top.  Other officers, maybe I don't know them when they
14   were hired.
15   Q.  Today you have the power, is it not correct, to name
16   officers?
17   A.  I have a broad power of attorney.
18   Q.  And that broad power of attorney, Mr. Fridman, gives you
19   the right to name officers, correct?
20   A.  I don't know.  I don't think -- I think so.
21             MR. JACOBS:  Do we have the power of attorney handy?
22             THE WITNESS:  May I read it?
23             THE COURT:  I think he was asking a question of his
24   colleagues if they had a document ready, Mr. Fridman.
25             MR. SCHAFFER:  Your Honor.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
```