DUANE MORRIS LLP
Hyman L. Schaffer
Fran M. Jacobs
Gregory P. Gulia
Brian Damiano
1540 Broadway
New York, New York 10036
(212) 692-1000
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
SOFTWARE AG, INC. and SOFTWARE AG,

        Plaintiffs,

  -against-

CONSIST SOFTWARE SOLUTIONS, INC.,
f/k/a CONSIST INTERNATIONAL, INC.
and NATALIO FRIDMAN,

        Defendants.
------------------------------------------------------------------x

08 CV 00389 (CM) (FM)

**DECLARATION OF
BRIAN DAMIANO
IN SUPPORT OF
MOTION TO STRIKE**

BRIAN DAMIANO declares:

1. I am an attorney associated with the law firm of Duane Morris LLP, counsel for defendants Consist Software Solutions, Inc. f/k/a Consist International, Inc. ("Consist") and Natalio Fridman ("Fridman") (collectively, "Defendants") in the above-captioned action. I submit this Declaration in support of Defendants' motion to strike pursuant to Federal Rule of Civil Procedure 12(f).

2. The purpose of this Declaration is to put before the Court the documents which establish that Defendants' motion should be granted in its entirety.

3. A true and correct copy of relevant excerpts from the transcript of the January 24, 2008 Preliminary Injunction Hearing is annexed hereto as Exhibit A.

4.    A true and correct copy of the Court's February 1, 2008 Order is annexed hereto as Exhibit B.

Pursuant to 28 U.S.C. § 1746, I declare under the penalties of perjury that the foregoing is true and correct.

Dated: New York, New York
        February 19, 2008

                                            /s/ Brian Damiano
                                            Brian Damiano

**EXHIBIT A**

```
                                                                    1
    81nesof1
    UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
    ------------------------------x

    SOFTWARE AG, INC.,

                 Plaintiffs,

           v.                              08 CV 389(CM)

    CONSIST SOFTWARE SOLUTIONS,
    INC., et al.,

                 Defendants.

    ------------------------------x
                                           January 24, 2008
                                           10:05 a.m.

    Before:

                    HON. COLLEEN MCMAHON,

                                           District Judge

                         APPEARANCES

    BAKER & MCKENZIE, LLP
         Attorneys for Plaintiffs
    BY:  JAMES DAVID JACOBS
         MARCELLA BALLARD
         FRANK MICHAEL GASPARO
         JOHN BASINGER

    DUANE MORRIS, LLP
         Attorneys for Defendants
    BY:  HYMAN SCHAFFER
         GREGORY P. GULIA
         BRIAN McQUILLEN
         FRAN M. JACOBS




                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300
```

```
                                                                    2
         (In open court)
         (Case called)
         MR. JACOBS:  Your Honor, it's James Jacobs on behalf
    of the plaintiff, Software AG, Inc.
         THE COURT:  It is indeed, Mr. Jacobs.
         MS. BALLARD:  Marcella Ballard, also on behalf of
    plaintiffs.  Good morning, your honor.
         MR. GASPARO:  Frank Gasparo, also for plaintiffs.
         MR. BASINGER:  John Basinger of Baker McKenzie, also
    for plaintiffs.  Good morning.
         MR. BRONCO:  Davis Bronco, also on behalf of
```

```
12   plaintiffs for Baker McKenzie.
13           THE COURT:  Good morning, Mr. Bronco.
14           MR. JACOBS:  Mr. Bronco is a paralegal.
15           THE COURT:  Good morning, Mr. Bronco.
16           MR. SCHAFFER:  Hyman Schaffer, Duane Morris, on behalf
17   of defendants.
18           MR. McQIULLEN:
19           MR. GULIA:  Good morning, your honor.  Gregory Gulia
20   on behalf of defendants.
21           MR. McQIULLEN:  Brian McQuillen on behalf of
22   defendants.
23           MS. JACOBS:  Fran Jacobs on behalf of defendants.
24           MR. JACOBS:  Your Honor, before -- if I can interrupt
25   you, John Basinger here is not a member of this Court.
                  SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
```

3

```
1            THE COURT:  He is for today.
2            MR. JACOBS:  Thank you, your Honor.
3            MR. BASINGER:  Thank you, your Honor.  My motion
4   papers are on their way.
5            THE COURT:  Okay.  Make sure the $25 is with them.
6   The clerk really cares about the $25.
7            Okay.  Now, let me get this -- let me try to wrap my
8   mind around this.
9            We have a contract that we all agree has been
10  terminated.  We don't necessarily all agree that it's been
11  correctly terminated, but we all agree it's been terminated.
12  It is my understanding that Software AG is asserting two claims
13  arising out of the termination of that contract.
14           The first claim, which is the easier one for me to
15  understand, is that Consist breached the implied covenant of
16  good faith and fair dealing by failing to relinquish what at
17  the conclusion of the contract, when it ceased to be a
18  sovereign distributor, whatever rights it had obtained as a
19  result of carrying out its obligation to protect SAGA's
20  trademarks in South America, I guess specifically in Brazil.
21  And it's SAGA's position that Consist had an obligation, once
22  it was no longer a distributor, to -- if it had been forced,
23  for example, to register the trademarks in order to protect
24  them, which Mr. Schaffer's expert insists had to be done, then
25  the covenant of good faith and fair dealing that is implied in
                  SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
```

4

```
1   every New York contract -- while the trademarks were registered
2   at a time when there was a contract governed by German law,
3   this is a successor contract, and it flows.  And the same right
4   or same obligation to protect the trademark flow from the one
5   contract into the other contract and remain unabated.
6            Parties agreed that the last contract was governed by
7   New York law, so at the end of the contract, New York's
8   principle of good faith and fair dealing fairly implied that
9   the trademark rights had to be relinquished so that Software AG
10  could then take up the protection of its own trademarks in
11  Brazil.  And it's the good faith and fair dealing covenant,
12  because unlike so many well drafted commercial contracts, this
13  particular contract doesn't have an explicit relinquishment of
14  trademark rights in it.
15           Did I get that right, Mr. Jacobs?
16           MR. JACOBS:  Yes, your Honor.  That is certainly
```

810esofF.txt

25        THE WITNESS:  Yes.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

109

                        Fridman - cross
1         THE COURT:  Thanks.  It's easier for me to think of it
2    that way.
3    Q.   Do you know who prepared the translation of this document
4    into Portuguese?
5    A.   I don't know.
6    Q.   Who supplied the original versions of the document?
7    A.   Software AG.
8    Q.   And what language was it in?
9    A.   In English, or they take it from their website.
10   Q.   And it's your understanding that this was simply translated
11   exactly as Software AG has it?
12   A.   They're supposed to at least.
13        MR. JACOBS:  Objection, your Honor.  That was not the
14   testimony.
15        THE COURT:  I'll figure out whether it was or wasn't.
16   A.   I assume they do because they're supposed to do.
17        MR. SCHAFFER:  I have no further questions.
18        THE COURT:  Anything else?
19        Thank you, Mr. Fridman.  You may step down.
20        (Witness excused)
21        THE COURT:  What else, Mr. Jacobs?
22        MR. JACOBS:  Your Honor, we have both of our experts
23   here, Mr. -- we have one of our experts, Mr. MacSwain, and our
24   witness, Mr. Daly, here available --
25        THE COURT:  Mr. Daly?
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

110

                        Fridman - cross
1         MR. JACOBS:  -- for testimony.  I see no reason
2    given --
3         THE COURT:  Mr. Daly?
4         MR. JACOBS:  Yes.
5         THE COURT:  He's back?
6         MR. DALY:  Your Honor.
7         THE COURT:  Hello, Mr. Daly.  Good to see you again,
8    sir.
9         Mr. Jacobs, you are the master of your claims, the
10   captain of your ship.  I'm not going to tell you who to call or
11   who not to call.
12        MR. JACOBS:  Thank you.  We will rest.
13        THE COURT:  Okay.  Mr. Schaffer?
14        MR. SCHAFFER:  Your Honor, we rest.  We'd like
15   argument.
16        THE COURT:  Yeah, I'd like argument, too.  Okay,
17   great.  So, I guess as Hillary Clinton says, this is the fun
18   part.
19        Obviously, because I wanted some things clarified, we
20   had some argument this morning, but let's proceed.  And since
21   you're the master of your claim, Mr. Jacobs, whatever you want
22   to argue.
23        MR. JACOBS:  Thank you, your Honor.
24        THE COURT:  Can I start you off with a question?
25        MR. JACOBS:  Please do.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

111

Page 51

```
 8    you'd have a tough row to hoe on malice, let me put it that
 9    way. And that's unfortunately for you the linchpin of a
10    prospective business advantage, prospective commercial
11    relations claim. You don't have existing contracts with these
12    people, so you don't have an inducing breach of contract claim.
13              MS. BALLARD:  No, but we have prospective relations
14    because we -- they are --
15              THE COURT:  I understand that, you do. If there were
16    no malice aspect to that, you would have a slam dunk.
17              MS. BALLARD:  Okay. Let's talk about why they keep
18    focusing on the fact -- I'm not -- I think it's a red herring,
19    but they keep focusing on the fact that on January 10th and on
20    January 14th Mr. Fridman wrote self-serving letters to
21    Mr. Streibich after the fact, saying, I think you have to
22    deliver these services to me for free for my perpetual
23    maintenance agreements, in sum and substance.
24              We were in daily contact almost with Mr. Fridman from
25    December 12th to the end of the year. Not once did Mr. Fridman
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```
                                                                    140

```
 1    say, for example, in particular with the Prodesp agreement,
 2    which was entered into two days before the end of the year,
 3    "I'm about to do this and I'm about to obligate myself for 24
 4    months. Are you going to follow up on what I believe your
 5    objection is to me in the event that I do that"? Or "gosh,
 6    Software AG, there's this 18-month period in which the parties
 7    are supposed to be winding down out of -- with a notice of
 8    nonrenewal. Shall I simply cover the maintenance until the end
 9    of the term and have you pick up where I left off, like any
10    reasonable distributor would do"?
11              No, we didn't respond to the January 10th and
12    January 14th letters. We brought a lawsuit because we know,
13    based on experience with Mr. Fridman over the last six months,
14    that absolutely nothing we'll say -- it's going to fall on deaf
15    ears. We do not believe he has an absurd and illogical reading
16    of what the contract says, and we do not believe that his
17    ex post facto treatise to the CEO of the company saying, do X
18    and do Y because this is my reading of the agreement, would be
19    effectively achieved in any other manner than coming in.
20              Now, one point on my blithe reference to Brazilian
21    law. The reply brief does actually cite properly, just so your
22    Honor is square, the section of the Brazilian law which refers
23    to false affirmations.
24              THE COURT:  I have to confess that I didn't get all
25    the way through the reply brief because I wanted -- walked in
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```
                                                                    141

```
 1    the office this morning and it was on my chair. I got to page
 2    six.
 3              MS. BALLARD:  That is the section we're relying on.
 4    And you are entitled in Brazilian law to an injunction or
 5    damages. And it is available to a competitor. You do not have
 6    to -- there is a private right of action for false affirmations
 7    made in commerce. And we will provide a complete copy, of
 8    course, of the law to your Honor. And we're happy to get a
 9    one- or two-page quick summary of the law from our lawyers in
10    Brazil tomorrow.
11              THE COURT:  But you've rested.
12              MS. BALLARD:  Pardon me?
```

```
13            THE COURT: But you've rested.
14            MS. BALLARD: Well, we are providing, I thought,
15   tomorrow findings of fact and conclusions of law. And we'd be
16   happy to include that.
17            THE COURT: You are, but that would be evidence, you
18   see. That would be evidence. And then Mr. Schaffer would have
19   an opportunity to come up with counterevidence. "Rest" means
20   that's it.
21            MS. BALLARD: On the Gordon & Breach case I wanted to
22   raise one point.
23            The Gordon & Breach case we believe is on point
24   because of the New York resident in the Gordon & Breach case.
25   The reason they were applying the Lanham Act extraterritorially
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

                                                                    142

```
 1   was because the false representations were being made in
 2   England and organized and distributed. And they were directed
 3   and controlled by the New York defendant resident. Therefore,
 4   the Court issued an injunction stopping those representations
 5   in England.
 6            Here -- and I know you were wondering what the purpose
 7   of the cross examination of Mr. Fridman and the power of
 8   attorney was in the reference to the language of who controls
 9   which affiliate in Brazil. But if you look at the notices and
10   you look at the letters that were sent on Mr. -- Consist
11   Brazil's behalf, they were signed by Mr. Fridman. The web
12   notices were personalized letters to customers signed by
13   Mr. Fridman, who resides obviously here in New York.
14            Our position is that your Honor has the jurisdiction
15   under the three-part Vanity Fair test to control Mr. Fridman's
16   activities to the extent that he is directing and controlling
17   the Consist Brazil subsidiaries and affiliates under this
18   contract to do things that he believes they're within their
19   rights to do when they are not. That is our position under
20   Gordon & Breach.
21            THE COURT: Okay. All right -- oh, more.
22            MR. JACOBS: I was going to go on to the next point,
23   your Honor. I thought we were finished with the false
24   advertising.
25            THE COURT: You're going on to what?
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

                                                                    143

```
 1            MR. JACOBS: Go on to the trademark issues, the
 2   assignment of the trademark, argument on the assignment of the
 3   trademarks?
 4            THE COURT: Oh, sure. Go ahead.
 5            MR. JACOBS: I don't intend to repeat everything that
 6   we did earlier today. In fact, I hope to repeat nothing.
 7            Your Honor, the contract I think makes quite clear, I
 8   think it's quite clear throughout the entire reaction of the
 9   parties here who believed all these trademarks -- I said I
10   think it's quite clear the conduct of the parties who owns the
11   trademarks --
12            THE COURT: I think it's quite clear who owns the
13   trademarks, too. Consist Brazil owns the trademarks. I don't
14   think there's the slightest doubt that Consist Brazil owns the
15   trademarks. They registered them. You don't deny that. In
16   fact, you admit that.
17            MR. JACOBS: That is correct, your Honor.
```

```
 9   precedent of Dawn Donut, 267 F.2d 358, 367, I think it was
10   1959, Second Circuit, it gave the seminal concept of a naked
11   license. Under U.S. law if we looked at that contract, it is a
12   naked license. There is no quality control. They don't have
13   the mark.
14             More importantly, under Brazilian law, as we pointed
15   out, and I want to point to paragraph 9 of the declaration of
16   Ricardo Do Nascimento, our Brazilian trademark expert on the
17   law, said that the Brazilian IP Code, in effect at that time
18   from 1971 to 1997, provided that a license agreement had to
19   specify the licensor's obligation to exercise quality control
20   over the products.
21             THE COURT: But we have their concession that there
22   was no license agreement here.
23             MR. GULIA: That is the whole point, your Honor. It
24   was not a license agreement. It was not a trademark license.
25   Again, as Mr. Schaffer --
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```
                                                                    153

```
 1             THE COURT: But they conceded that. They stood up on
 2   the record, Ms. Ballard got up and said it is not a trademark
 3   license.
 4             MR. GULIA: If it is not a trademark license, the use
 5   does not inure to their benefit. We own it and that's it.
 6             THE COURT: OK.
 7             Findings and conclusions ASAP.
 8             MR. SCHAFFER: Thank you, your Honor.
 9             THE COURT: Thank you so much.
10             MR. JACOBS: Your Honor, only one point. I am not
11   sure if I understand what the point of the naked license or the
12   validity of the mark is. They undertook an obligation to
13   protect the marks.
14             THE COURT: And they did. The position at the back
15   table is Mr. Fridman undertook an obligation to protect the
16   marks associated with the systems and he did that. He
17   discharged that obligation by registering those trademarks in
18   his own name.
19             MR. JACOBS: That is a funny way to protect our mark.
20   I mean, it is a funny way if you don't return it particularly.
21             THE COURT: I don't disagree with that, but I have to
22   tell you that I would not draw the conclusion that you have
23   proved even by the tiniest preponderance of the evidence that
24   your client didn't know about this. I think your client knew
25   absolutely and full well. And if your client didn't know how
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```
                                                                    154

```
 1   ne was discharging that obligation and just elected not to ask
 2   for 20 years, big mistake. Big mistake.
 3             MR. JACOBS: Well, your Honor, I have argued that
 4   before that he undertook an obligation. As I understand New
 5   York contract law, you are supposed to fulfill your
 6   obligations.
 7             THE COURT: He did. The question is whether he
 8   undertook an obligation that encompassed within it an
 9   obligation to relinquish.
10             MR. JACOBS: I think that goes hand-in-hand.
11             THE COURT: I bet Mr. Daly didn't draft that 1984
12   contract.
13             (Hearing concluded)
```


Case 1:08-cv-00389-CM   Document 46-2   Filed 02/19/2008   Page 8 of 8

```
14
15
16
17
18
19
20
21
22
23
24
25
             SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300
```

                                                                            155
```
 1                     INDEX OF EXAMINATION
 2   Examination of:                                    Page
 3   MARK EDWARDS
 4   Direct By Ms. Ballard  . . . . . . . . . . . .      51
 5   Cross By Ms. Jacobs    . . . . . . . . . . . .      77
 6   NATALIO FRIDMAN
 7   Direct By Mr. Jacobs . . . . . . . . . . . . .      87
 8   Cross By Mr. Schaffer  . . . . . . . . . . . .     108
 9                     PLAINTIFF EXHIBITS
10   Exhibit No.                                      Received
11     1   . . . . . . . . . . . . . . . . . . . .      59
12     2   . . . . . . . . . . . . . . . . . . . .      60
13     7   . . . . . . . . . . . . . . . . . . . .      96
14     8 and 9  . . . . . . . . . . . . . . . . .       98
15    10   . . . . . . . . . . . . . . . . . . . .     103
16    11   . . . . . . . . . . . . . . . . . . . .     108
17                     DEFENDANT EXHIBITS
18   Exhibit No.                                      Received
19     1   . . . . . . . . . . . . . . . . . . . .      85
20
21
22
23
24
25
             SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300
```

**EXHIBIT B**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

SOFTWARE A.G., INC. and SOFTWARE AG,

        Plaintiffs,

-against-                                   08 Civ. 389 (CM)(FM)

CONSIST SOFTWARE SOLUTIONS, INC.,
f/k/a/ CONSIST INTERNATIONAL, INC., and
NATALIO FRIDMAN,

        Defendants.

---------------------------------------------------------------x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/1/08

## NOTICE TO COUNSEL

McMahon, J.:

    I have reviewed your submissions.

    I was surprised to see, in plaintiffs' submission, considerable reference to foreign (notably German) law. While Rule 44.1 no longer requires a party to "prove" foreign law by affidavit, it does require that a party who intends to raise an issue concerning the law of a foreign county give notice by pleading or by some other writing. Defendants gave notice of intent to rely on foreign law (the law of Brazil) some time ago. Plaintiffs gave no such notice prior to the hearing.

    However, I am not inclined to stand on ceremony, since that will only lead to further motion practice somewhere down the line. Therefore, by close of business next Thursday, I want further submissions from both sides on German law.

    In discussing German law, you should know that I have already concluded that Software AG was well aware that Consist was registering the trademarks in Brazil and that Mr. Schnell gave Mr. Fridman permission to do so. That being so, the cases cited by Software AG about registrations done without the knowledge or consent of the trademark owner appear to be irrelevant.

    As to German law, Consist needs to respond to the law cited by Software AG to the effect that, even if a third party registers a mark with consent, that consent can be revoked. Obviously, the response needs to address the territoriality issue, because the trademarks were registered in Brazil, not in Germany. Also, does the fact that the parties' relationship was governed by New York law at the time of "revocation" make German law on this point irrelevant?

      Both sides need to address another question. The 1984 contract obligated Consist to protect the SYSTEMS and the marks associated with them. That *contractual* obligation was governed, at the time the marks were registered, by German law. As a matter of German law, did the contractual obligation then in existence require Consist to register the marks for the benefit of Software AG, or does the contractual obligation have the effect of creating something like a constructive trust in favor of Software AG, regardless of how the mark was registered? Or is there some German law governing distributorship agreements that speaks to this issue? And does the amount of time that has passed since the registration have anything to do with the enforceability of any such obligation? Under U.S. law, the time for bringing suit for breach of a contractual obligation to register the marks for benefit of Software AG has long since passed, and Software AG's negligence in taking any steps to figure out how Consist was protecting the marks would not incline me to find that the statute of limitations had been tolled.

      I will continue working on other aspects of the opinion.

Dated: February 1, 2008

                                                                   _____
                                                                                  U.S.D.J.

BY ECF AND FAX TO ALL COUNSEL