DUANE MORRIS LLP
Hyman L. Schaffer
Fran M. Jacobs
Gregory P. Gulia
Brian Damiano
1540 Broadway
New York, New York 10036
(212) 692-1000
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
SOFTWARE AG, INC. and SOFTWARE AG,          :
                                             :   08 CV 00389 (CM) (FM)
                    Plaintiffs,              :
                                             :
        -against-                             :
                                             :
CONSIST SOFTWARE SOLUTIONS, INC.,            :
f/k/a CONSIST INTERNATIONAL, INC.             :
and NATALIO FRIDMAN,                          :
                                             :
                    Defendants.               :
-----------------------------------------------------------------x

DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO STRIKE

## PRELIMINARY STATEMENT

Defendants Consist Software Solutions, Inc. f/k/a Consist International, Inc. ("Consist") and Natalio Fridman ("Fridman") (collectively, "Defendants") submit this memorandum of law in support of their motion pursuant to Fed. R. Civ. P. 12(f) to strike three declarations of foreign law and an improper submission of U.S. law filed by plaintiffs Software AG, Inc. and Software AG (together referred to as "Plaintiffs" or "Software AG").

## STATEMENT OF FACTS

This matter arises from Plaintiffs' impermissible filing of declarations of Argentine, Brazilian, and Uruguayan law and a submission concerning U.S. law after resting with respect to their pending motion for a preliminary injunction. After taking substantial expedited discovery, submitting two memoranda of law in support of their motion, and presenting in-court testimony of two witnesses, counsel for Plaintiffs informed the Court that they "will rest" at the conclusion of the January 24, 2008 Preliminary Injunction Hearing. See Exhibit A to the accompanying Declaration of Brian Damiano dated February 19, 2008 (the "Damiano Decl.") at 110:12. Despite resting, Plaintiffs proceeded to raise issues of Brazilian law during the oral argument portion of that Hearing, and were explicitly denied in their request to submit further briefing:

> MS. BALLARD: That is the section we're relying on. And you are entitled in Brazilian law to an injunction or damages. And it is available to a competitor. You do not have to -- there is a private right of action for false affirmations made in commerce. And we will provide a complete copy, of course, of the law to your Honor. And we're happy to get a one- or two-page quick summary of the law from our lawyers in Brazil tomorrow.
>
> THE COURT: But you've rested.
>
> MS. BALLARD: Pardon me?
>
> THE COURT: But you've rested.
>
> MS. BALLARD: Well, we are providing, I thought, tomorrow findings of fact and conclusions of law. And we'd be happy to include that.

1

> THE COURT: You are, but that would be evidence, you see. That would be evidence. And then Mr. Schaffer would have an opportunity to come up with counterevidence. "Rest" means that's it.

See Damiano Decl., Ex. A at 141:3-20 (emphases added).

In spite of this specific directive, Software AG included in its Proposed Findings of Fact and Conclusions of Law lengthy references to both Brazilian and German law. See ¶¶ 130-137 of the January 28, 2008 Plaintiffs' Proposed Findings of Fact and Conclusions of Law. By Order dated February 1, 2008 (the "February 1 Order"), the Court noted Software AG's improper filing, stating:

> I was surprised to see, in plaintiff's submission, considerable reference to foreign (notably German) law. While Rule 44.1 no longer requires a party to "prove" foreign law by affidavit, it does require that a party who intends to raise an issue concerning the law of a foreign country give notice by pleading or by some other writing. Defendants gave notice of intent to rely on foreign law (the law of Brazil) some time ago. Plaintiffs gave no such notice prior to the hearing.
>
> However, I am not inclined to stand on ceremony, since that will only lead to further motion practice somewhere down the line. Therefore, by close of business next Thursday, I want further submissions from both sides on German law.

See Damiano Decl. at Ex. B (emphases added).

On February 13, 2008, Plaintiffs filed Software AG's Memorandum of Law in Response to the Court's February 1, 2008 Notice to Counsel (the "February 13 Brief"). Despite the Court's instruction that the parties file submissions (presumably supplemental findings of law) relating to German law, the February 13 Brief for the first time raised issues of Argentine, Brazilian, and Uruguayan law, and misleadingly cited and described U.S. case law that was neither before the Court nor requested in the February 1 Order.[1] Moreover, Plaintiffs impermissibly filed three declarations of foreign law in direct contravention of the Court's oral

---

[1] In the February 13 Brief, Software AG allocated three pages to a discussion of Columbia Nastri & Carta Carbone, S/p/A v. Columbia Ribbon & Carbon Manufacturing Co., Inc., 367 F.2d 308 (2d Cir. 1966), aff'd, 1965 U.S. Dist. LEXIS 6862 (S.D.N.Y. Oct. 18, 1965) in support of the position that a New York court can order the transfer of a foreign trademark registration. See February 13 Brief at 5-10.

2

and written directives at the Preliminary Injunction Hearing and in the February 1 Order. Specifically, they filed a Declaration of Bernard William Malone as to Argentine law, a Declaration of Esther M. Flesch concerning Brazilian law, and a Declaration of Lucia Salaverry regarding Uruguayan law (collectively, the "Foreign Law Declarations"). By this motion, Defendants seek an Order striking the Foreign Law Declarations and those portions of the February 13 Brief that exceed the scope of this Court's requests.

## ARGUMENT

### THIS COURT SHOULD STRIKE PLAINTIFFS' FOREIGN LAW DECLARATIONS AND OTHER IMPROPER SUBMISSIONS

The Federal Rules of Civil Procedure provide that "the court may strike from a pleading[2] an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." F.R.C.P. 12(f); see, e.g., Shahzad v. H.J. Meyers & Co., 1997 U.S. Dist. LEXIS 1128, at **39-40 (S.D.N.Y. Feb. 4, 1997); accord Nextel of N.Y., Inc. v. City of Mt. Vernon, 361 F. Supp. 2d 336, 339-340 (S.D.N.Y. 2005) (granting defendant's motion to strike "references to expert reports, statutory provisions, case law, legislative histories . . . exhibits and an attorney's affidavit" that were "entirely unnecessary to any 'short and plain statement of the claim.'"); accord G-I Holdings, Inc. v. Baron & Budd, 238 F. Supp. 2d 521, 555-556 (S.D.N.Y. 2002) (striking portions of the complaint that were "prejudicial," "amorphous, unspecific and cannot be defended against.") This can be done through a motion made by a party within twenty days of service of a pleading, or upon the Court's own initiative at any time. Shahzad, 1997 U.S. Dist. LEXIS 1128, at **39-40.

Moreover, courts in this district have expressed a willingness to strike materials filed by a

---

[2] While Rule 12(f) is directed only to "pleadings," most federal courts – including those in the Second Circuit – apply the Rule to all types of Court filings. See, e.g., Stephens v. Georgia Dep't of Transp., 2005 WL 1274481, at *2 (11th Cir. 2005) (affirming trial court's decision to strike portions of summary judgment motion); Hildebrandt v. Veneman, 233 F.R.D. 183, 183-84 (D.D.C. 2005) (striking statement from Court notice); Monroe v. Board of Education, 65 F.R.D. 641, 645-47 (D.

(Continued...)

3

party that exceed the scope of the court's rulings or directives. For example, in Duff v. Comm'r of the Suffolk County Police Dep't, 2006 U.S. Dist. LEXIS 66937, at **2-4 (E.D.N.Y. Sept. 19, 2006), the plaintiff requested leave to add "John Doe" as a defendant, which the court denied. Notwithstanding this clear instruction, "[p]laintiff failed to abide by the Court's Order, and name[d] John Doe in the amended complaint." Id. In light of this act of disobedience, the Duff Court granted defendant's motion to strike "John Doe" from the action. Id. at **3-4; see also Samuel v. Rose's Stores, 907 F. Supp. 159, 162 (E.D. Va. 1995) (noting that a motion to strike was proper when plaintiff "exceed[ed] the scope of the leave to amend.").

In this case, Software AG twice filed materials exceeding the scope of the Court's instructions. First, after Plaintiffs' counsel's request to file "a one- or two-page quick summary of the law from [their] lawyers in Brazil" was flatly rejected at the Preliminary Injunction Hearing, Software AG nonetheless cited extended references to Brazilian law in its Proposed Findings of Fact and Conclusions of Law, as well as sections on German law despite its failure to do so at the hearing itself.[3]

Then, in response to the February 1 Order which sought "submissions from both sides on German law," Plaintiffs filed the Foreign Law Declarations (concerning Argentine, Brazilian, and Uruguayan law), and included a 22-page February 13 Brief, with approximately 7 pages devoted to discussion of one case, Columbia Nastri, alone. Those declarations and brief had

---

(Continued...)

Conn. 1975) (striking portions of two affidavits).

[3] Plaintiffs will surely seek refuge for their improper filings in the late-filed Motions to Amend Motion for a Preliminary Injunction and for Sanctions. The heart of those motions is that Consist somehow should be held responsible for Plaintiffs' total default in taking even the most basic steps in the Territory to protect the trademarks to which they now law claim – including going to the public records – despite testimony from Mr. Fridman in November 2007 about the possible registration of trademarks in Uruguay. In fact, Consist produced all of the non-privileged documents it had, which Consist itself retrieved from public sources. Consist will respond to Plaintiffs' motions in due course, but the Court should bear in mind that the overarching canopy of Plaintiffs' strategy is to seek to cast blame elsewhere for their own sloth and inattentiveness despite clear and unambiguous notice.

never been put before the Court or defendants, nor had they been requested or authorized in the February 1 Order. Due to Plaintiffs' brazen filings of materials that far exceed the scope of the Court's rulings and orders, such submissions should be stricken outright pursuant to Fed. R. Civ. P. 12(f).

In addition, despite Plaintiffs' attempt to mislead the Court, Columbia Nastri is clearly inapposite to the facts herein. The Columbia Nastri case involved facts that are completely reversed from the facts of this case in that, inter alia, the U.S. company in Columbia Nastri: (1) owned all the goodwill in the trademarks at issue; (2) previously owned the foreign registrations therefor and subsequently temporarily transferred them to its Italian subsidiary; (3) exercised quality control over the Italian company's use of the trademarks; and (4) granted only limited rights to the trademarks and specified that the marks were to be retained by the U.S. company.

In Columbia Nastri, a U.S. company granted its Italian subsidiary limited rights to the U.S. company's trademarks in Italy only in connection with the sale of carbon paper and inked ribbons. The respective companies entered into agreements, each of which contained quality control provisions necessary for license agreements and reservation of rights provisions that explicitly provided that ownership of the trademarks at issue was retained by the U.S. company. See Columbia Nastri & Carta Carbone S/p/A v. Columbia Ribbon & Carbon Manufacturing Co., Inc., 1965 U.S. Dist. LEXIS 6862, at *14-15 (S.D.N.Y. Oct. 18, 1965). The court in Columbia Nastri also explicitly held that the Italian company had "expressly recognized the defendant's ownership of the trademarks here in dispute . . ." Id. at *20.

In stark contrast, the 1984 Agreement between Software AG and Consist did not provide that Software AG owned the marks. Nor did the 1984 Agreement provide that use of the marks inured to the benefit of Software AG. The 1984 Agreement did not contain any quality control provisions as are required in trademark license agreements. Nor did it have any provision for

5

reversion of the marks to Software AG at the end of the agreement. The lack of these provisions required by trademark owners in license agreements defeats Software AG's ownership claim.

Additionally, the U.S. company was the original owner of the Italian trademark registrations at issue before it temporarily transferred them to its Italian subsidiary. See id. at *3. Since the U.S. company originally owned the Italian trademark registrations, sold product in Italy under the marks in question, could terminate the grant of rights at any time upon written notice to the subsidiary and exercised quality control over its Italian subsidiary, the goodwill associated with the marks and the related products resided with the U.S. company. In contrast, as acknowledged by Software AG's expert, David MacSwain, the goodwill associated with the ADABAS and NATURAL marks in the Territory resides solely with Consist. See Expert Report of David MacSwain from the First Litigation, at p. 8. Consist built up the equity in the marks in the Brazilian market and safeguarded the goodwill connected with the trademarks. In addition, Brazilian consumers associated and continue to associate the ADABAS and NATURAL marks with Consist. Accordingly, Software AG, in contrast to the U.S. company in the Columbia Nastri case, cannot claim ownership rights in the marks.

Contrary to Plaintiffs' contention that a single case with completely different facts, Columbia Nastri, is decisive[4], the typical course of action of a federal court is to avoid issuing any order that affects foreign trademark rights, let alone directs the assignment or cancellation of a foreign trademark registration. The courts are particularly hesitant to issue an order addressing foreign trademark rights where a pending proceeding in a foreign country will address the trademark rights at issue. See, e.g., Vanity Fair Mills v. T. Eaton Co., 234 F.2d 633, 647 (2d Cir.

---

[4] Plaintiffs also fail to point out that in affirming Columbia Nastri, the Second Circuit clearly held that, "[t]he Italian corporation has made no showing, and it seems unlikely, that the order conflicts with any articulated policy of Italy." Columbia Nastri & Carta Carbone, S/p/A v. Columbia Ribbon & Carbon Manufacturing Co., Inc., 367 F.2d 308, 313 (2d Cir. 1966).

1956) ("We do not think it the province of United States district courts to determine the validity of trade-marks which officials of foreign countries have seen fit to grant."); Star-Kist Foods, Inc. v. P.J. Rhodes & Co., 769 F.2d 1393, 1396 (9th Cir. 1985) (court denies request for injunction enjoining use of trademark registered in the Philippines where extraterritorial application of the Lanham Act "could create a conflict with Philippine patent and trademark law and with pending proceedings in that country [regarding cancellation of the mark]."); Int'l Cafe v. Hard Rock Cafe Int'l, 252 F.3d 1274, 1279 (11th Cir. 2001) (court denies plaintiff's request for injunctive relief enjoining defendant's use of marks in Lebanon in light of pending proceedings in Lebanon concerning the trademark rights at issue); Steele v. Bulova Watch Co., 344 U.S. 280, 286-87 (plaintiff succeeded in cancelling defendant's Mexican trademark registration in a Mexican court prior to the Supreme Court's decision, thereby avoiding any "interference with the sovereignty of another nation."); Thomas & Betts Corp. v. Panduit Corp., 71 F. Supp. 2d 838, 843 (N.D. Ill. 1999) (court states that "litigation in foreign courts [regarding the foreign trademark rights at issue]" supports the court's refusal to rule on the foreign trademark rights in question); Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc., 511 F. Supp. 486 (S.D.N.Y. 1981) (court declines to issue injunction enjoining defendants' use of mark in foreign countries where plaintiff could "proceed against the [defendants] in those [foreign countries]"); The Alcar Group, Inc. v. Corporate Performance Systems, Ltd., 109 F. Supp. 2d 948, (N.D. Ill. 2000) (dismissed Lanham Act claims for lack of subject matter jurisdiction where exclusive distributor registered trademarks in the U.K. "in view of the existence of three valid British trademark registrations", the "remote and tenuous" effect of defendants' activities on United States commerce, and the potential for conflict with foreign law).

## CONCLUSION

For all the foregoing reasons, this Court should grant Defendants' motion to strike in its entirety.

Dated: New York, New York
      February 19, 2008

DUANE MORRIS LLP

By: /s Gregory P. Gulia
    Hyman L. Schaffer
    Fran M. Jacobs
    Gregory P. Gulia
    Brian Damiano
1540 Broadway
New York, New York 10036
Telephone: (212) 692-1000
Facsimile: (212) 692-1020
*Attorneys for Defendants*