DUANE MORRIS LLP
Hyman L. Schaffer
Fran M. Jacobs
Gregory P. Gulia
Brian Damiano
1540 Broadway
New York, New York 10036
(212) 692-1000
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
SOFTWARE AG, INC. and SOFTWARE AG,   :
                                      :   08 CV 00389 (CM) (FM)
                    Plaintiffs,       :
                                      :
        -against-                     :
                                      :
CONSIST SOFTWARE SOLUTIONS, INC.,     :
f/k/a CONSIST INTERNATIONAL, INC.     :
and NATALIO FRIDMAN,                  :
                                      :
                    Defendants.       :
------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' LANHAM ACT CLAIMS**

## TABLE OF CONTENTS

page

TABLE OF AUTHORITIES ..................................................................................................ii, iii

PRELIMINARY STATEMENT .................................................................................................1

LEGAL STANDARD....................................................................................................................5

ARGUMENT..................................................................................................................................6

    I.    Software AG's Lanham Act Claims Must Be Dismissed Because On Its Face The Complaint Does Not Allege Facts Which Merit The Rare Extraterritorial Application Of The Lanham Act ..........................................................................6

    II.   CONCLUSION .........................................................................................................11

## TABLE OF AUTHORITIES

### CASES

page

American White Cross Laboratories, Inc. v. H.M. Cote, Inc.,
556 F. Supp. 753 (S.D.N.Y. 1983) ..................................................................................6

Atlantic. Richfield Co. v. ARCO Globus Int'l. Co.,
150 F.3d 189 (2d Cir. 1998)......................................................................................7, 8

Banco De Seguros Del Estado v. Int'l Fin. Corp.,
06 Civ. 2427  2007 U.S. Dist. LEXIS 69741 (S.D.N.Y. Sept. 19, 2007) .......................5

Columbia Nastri & Carta Carbone S/p/A,
1965 U.S. Dist. LEXIS 6862 (S.D.N.Y. Oct. 18, 1965) ...................................................3

Int'l Cafe v. Hard Rock Cafe, Int'l,
252 F.3d 1274 (11th Cir. 2001) .......................................................................................9

Jarvis v. Cardillo,
1999 U.S. Dist. LEXIS 4310 (S.D.N.Y. Apr. 5, 1999)......................................................5

Latino Quimica-Amtex S.A. v. Akzo Nobel Chems B.V.,
03 Civ. 10312  2005 U.S. Dist. LEXIS 19788 (S.D.N.Y. Sept. 7, 2005) .......................5

Mackenzie v. Donovan,
04 Civ. 5291  375 F. Supp. 2d 312 (S.D.N.Y. 2005).......................................................5

McBee v. Delica Co.,
417 F.3d 107 (1st Cir. 2005)............................................................................................8

Piccoli A/S v. Calvin Klein Jeanswear Co.,
19 F. Supp. 2d 157 (S.D.N.Y. 1998)..............................................................................10

Roquette Am., Inc. v. Amylum N.V.,
2004 U.S. Dist. LEXIS 12297 (S.D.N.Y. June 9, 2004)..................................................6

Scelsa v. City Univ. of New York,
76 F.3d 37 (2d Cir. 1996).................................................................................................5

Space Imaging Eur., Ltd. v. Space Imaging L.P.,
1999 U.S. Dist. LEXIS 10898 (S.D.N.Y. July 15, 1999) ..............................................10

Star Kist Foods, Inc. v. P.J. Rhodes & Co.,
769 F.2d 1393 (9th Cir. 1985) .........................................................................................9

Steele v. Bulova Watch Co.,
344 U.S. 280 (1952)..........................................................................................................9

The Alcar Group, Inc. v. Corporate Performance Sys.,
109 F. Supp. 2d 948 (N.D. Ill. 2000) ........................................................................1, 2, 3

Thomas & Betts Corp. v. Panduit Corp.,
71 F. Supp. 2d 838 (N.D. Ill. 1999) ................................................................................10

Totalplan Corp. of Am. v. Colborne,
14 F.3d 824 (2d Cir. 1994)..........................................................................................7, 10

Vanity Fair Mills v. T. Eaton Co.,
234 F.2d 633 (2d Cir. 1956)..........................................................................6, 9, 10, 11

Versace, Inc. v. Gianni Versace, S.p.A.,
126 F. Supp. 2d 328 (S.D.N.Y. 2001)..............................................................................9

## STATUTES

Lanham Act, 15 U.S.C. § 1125(a) ........................................................................................1

Federal Rules of Civil Procedure Rule 12(b)1 ....................................................................1

## OTHER AUTHORITIES

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 29:58 (4th
Ed. 2007)............................................................................................................................7

## **PRELIMINARY STATEMENT**

Software AG has brought Lanham Act claims regarding statements that were made in Portuguese in Brazil on a Brazilian website and Brazilian trademark registrations that have been registered by a Brazilian company in Brazil for over 20 years. Clearly the Lanham Act does not apply to these claims.

Consist hereby moves to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure Software AG's Lanham Act claims. There is no subject matter jurisdiction for Software AG's Lanham Act claims because (1) Consist Brasil's purported conduct as alleged in the Complaint does not have a substantial effect on United States commerce; and (2) there is a clear conflict between Consist Brasil's rights under foreign law and Software AG's rights under the laws of the United States. Accordingly, these claims must be dismissed under Federal Rules of Civil Procedure Rule 12(b)(1).

Since Consist Brasil's conduct in Brazil has had no effect, let alone a substantial one, on United States commerce, Software AG attempts to rely on vague and unsupported allegations of supposed reputational harm in the United States based on the foreign statements in Portuguese in support of its claim that the Lanham Act could somehow be applied extraterritorially. The very same argument was presented to and rejected by the court in The Alcar Group, Inc. v. Corporate Performance Sys. 109 F. Supp. 2d 948 (N.D. Ill. 2000), a case with strikingly similar facts in which the court dismissed the Lanham Act claims for lack of subject matter jurisdiction on a motion to dismiss. The court in Alcar posed and definitively answered in the negative the following question: "Can a United States corporation maintain a Lanham Act action . . . for

alleged trademark violations that occurred entirely abroad on no more showing than that these hurt the plaintiff's ability to conduct its business and license its products worldwide?" Id. at 949.

The facts in Alcar are extremely similar to the facts of the case at hand. In Alcar, the plaintiff, a United States corporation, licensed the defendants, a British company and individual the right to be the exclusive distributors of the plaintiff's software in Britain and South Africa. After the exclusive distributor agreement between the parties expired, the defendants sold to an existing client of the plaintiff a software package while representing that the sale was with the plaintiff. In support of its Lanham Act claims, the plaintiff alleged that the defendants' conduct affected U.S. commerce because by harming the plaintiff's business reputation and ability to do business around the world, the defendants' conduct adversely affected the plaintiff's ability to do business in the United States. Id. at 951.

After noting that a motion to dismiss a complaint is to be read liberally and that well-pleaded allegations of the complaint and reasonable inferences therefrom must be accepted as true—and despite the fraudulent nature of the defendants' conduct in Alcar (an issue which is obviously not before the Court in the case at bar)—the court flatly rejected the plaintiff's reputational harm argument and dismissed the Lanham Act claim for lack of subject matter jurisdiction. Id. at 951-52. The court held that it is a "longstanding principle of American law that 'legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'" Id. at 950 (citations omitted). Since "[f]ederal statutes 'presumptively lack extraterritorial reach,'" the court held that a plaintiff requesting the "exercise of extraterritorial jurisdiction over foreign citizens for actions committed abroad must overcome that presumption." Id. (citations omitted). "[I]n view of the existence of three valid British trademark registrations," the "remote and tenuous" effect of defendants' activities on

United States commerce, and the potential for conflict with foreign law, the court dismissed the plaintiff's Lanham Act claims for lack of subject matter jurisdiction. Id. at 951.

In dismissing the plaintiff's Lanham Act claims, the court emphasized the "power of Congress to regulate the conduct of American citizens." Id. at 952. The court held, "[o]n [plaintiff's] argument, Congress can write trademark legislation for the world if activities by any foreign citizen in any foreign country have any effect, however remote and tenuous, on United States commerce." According to the court, if the plaintiff had "a trademark case, it is under British, German, or other EC law", not under the Lanham Act. Id.

Like the plaintiff in Alcar, Software AG is asking a U.S. court to regulate acts abroad. Software AG's unsupported allegations of reputational harm and unspecific effects on U.S. commerce simply do not provide this Court the ability to apply our national law, the Lanham Act, to Consist Brasil's actions in Brazil.

While the facts of the Alcar case closely resemble the facts of the case at hand, Software AG has attempted to mislead this Court in separate papers by claiming that the case of Columbia Nastri & Carta Carbone S/p/A v. Columbia Ribbon & Carbon Manufacturing Co., Inc., 1965 U.S. Dist. LEXIS 6862 (S.D.N.Y. Oct. 18, 1965) is somehow instructive in this action. Despite Software AG's statements to the contrary, the Columbia Nastri case involved facts that are completely reversed from the facts of this case in that, inter alia, the U.S. company in Columbia Nastri: (1) owned all the goodwill in the trademarks at issue; (2) previously owned the foreign registrations therefor and subsequently temporarily transferred them to its Italian subsidiary; (3) exercised quality control over the Italian company's use of the trademarks; and (4) granted only limited rights to the trademarks and specified that the marks were to be retained by the U.S. company.

In Columbia Nastri, a U.S. company granted its Italian subsidiary limited rights to the U.S. company's trademarks in Italy in connection with the sale of carbon paper and inked ribbons. The respective companies entered into agreements, each of which contained quality control provisions necessary for trademark license agreements and reservation of rights provisions that explicitly provided that ownership of the trademarks at issue was retained by the U.S. company. See Columbia Nastri & Carta Carbone S/p/A, U.S. Dist. LEXIS 6862, at *14-15. The court in Columbia Nastri also explicitly held that the Italian company had "expressly recognized the defendant's ownership of the trademarks here in dispute . . ." Id. at *19.

In stark contrast, the 1984 Agreement between Software AG and Consist did not provide that Software AG owned the marks. Nor did the 1984 Agreement provide that use of the marks inured to the benefit of Software AG. The 1984 Agreement did not contain any quality control provisions as are required in trademark license agreements. Nor did it have any provisions for reversion of the marks to Software AG at the end of the agreement. The lack of these provisions required by trademark owners in license agreements defeats Software AG's ownership claim.

Additionally, the U.S. company was the original owner of the Italian trademark registrations at issue before it temporarily transferred them to its Italian subsidiary. See id. at *3. Since the U.S. company originally owned the Italian trademark registrations, sold product in Italy under the marks in question, could terminate the grant of rights at any time upon written notice to the subsidiary and exercised quality control over its Italian subsidiary, the goodwill associated with the marks and the related products resided with the U.S. company. In contrast, as acknowledged by Software AG's expert, David MacSwain, the goodwill associated with the ADABAS and NATURAL marks in the Territory resides solely with Consist. See Expert Report of David MacSwain from Consist Software Solutions, Inc. f/k/a Consist International, Inc. v.

Software AG, Inc. and Software AG, 07 Civ. 7047 (CM)(FM), at p. 8. Consist built up the equity in the marks in the Brazilian market and safeguarded the goodwill connected with the trademarks. In addition, Brazilian consumers associated and continue to associate the ADABAS and NATURAL marks with Consist. Accordingly, Software AG, in contrast to the U.S. company in the Columbia Nastri case, cannot claim ownership rights in the marks.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a claim on the ground that the court lacks jurisdiction over the subject matter. Such a motion may be based on a facial or factual attack on the complaint. Regardless of whether the challenge is facial or factual, the plaintiff bears the burden of establishing a court's subject matter jurisdiction. See Scelsa v. City Univ. of New York, 76 F.3d 37, 40 (2d Cir. 1996) (as the party "seeking to invoke the subject matter jurisdiction of the district court," the plaintiff bears the burden of demonstrating that there is subject matter jurisdiction in the case); Latino Quimica-Amtex S.A. v. Akzo Nobel Chems B.V., 03 Civ. 10312 (HB), 2005 U.S. Dist. LEXIS 19788, at * 11 (S.D.N.Y. Sept. 7, 2005) (citations and quotations omitted).

In considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), federal courts "need not accept as true contested jurisdictional allegations." See Jarvis v. Cardillo, 98 Civ. 5793 (RWS), 1999 U.S. Dist. LEXIS 4310, at *7 (S.D.N.Y. Apr. 5, 1999). Indeed, "[j]urisdictional allegations must be shown affirmatively and may not be inferred favorably to the party asserting them." Banco De Seguros Del Estado v. Int'l Fin. Corp., 06 Civ. 2427 (LAP), 2007 U.S. Dist. LEXIS 69741, at *10 (S.D.N.Y. Sept. 19, 2007); Mackenzie v. Donovan, 04 Civ. 5291 (WCC), 375 F. Supp. 2d 312, 318 (S.D.N.Y. 2005) (citations and

quotations omitted) ("[h]owever, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it").

It is well established that trademark rights are territorial by nature. Accordingly, the Lanham Act generally governs activities relating to the ownership and use of trademarks in the United States. However, in extremely limited and exceptional cases, it is permissible for the court to exercise extraterritorial jurisdiction under the Lanham Act over activities that have occurred outside of the United States. In the Second Circuit, the exercise of extraterritorial jurisdiction over Lanham Act violations occurring abroad is determined by an examination of the following criteria: (1) whether the defendant is a United States citizen; (2) whether there exists a conflict between the defendant's trademark rights under foreign law and the plaintiff's trademark rights under domestic law; and (3) whether the defendant's conduct had a substantial effect on United States commerce. See Vanity Fair Mills v. T. Eaton Co., 234 F.2d 633, 642 (2d Cir. 1956) (emphasis added).

Indeed, where the exercise of extraterritorial jurisdiction is inappropriate, the Second Circuit has ordered the dismissal of Lanham Act claims based upon lack of subject matter jurisdiction. See Roquette Am., Inc. v. Amylum N.V., 2004 U.S. Dist. LEXIS 12297, at *19 (S.D.N.Y. June 9, 2004) (court dismissed plaintiffs' Lanham Act claim because the Lanham Act did not apply extraterritorially); American White Cross Laboratories, Inc. v. H.M. Cote, Inc., 556 F. Supp. 753, *36 (S.D.N.Y. 1983) (same).

## ARGUMENT

I. **Software AG's Lanham Act Claims Must Be Dismissed Because On Its Face The Complaint Does Not Allege Facts Which Merit The Rare And Exceptional Extraterritorial Application Of The Lanham Act**

The Court must dismiss Software AG's Lanham Act claims because the allegations in Software AG's Complaint are insufficient to demonstrate that extraterritorial application of the Lanham Act is warranted. In the Complaint, Software AG alleges that as "a result of Defendants' misrepresentations Software AG stands to lose its business reputation, along with the goodwill associated with its software products." Software AG's Complaint at ¶ 77. Further, Software AG alleges that "Defendants false and misleading representations were made in commerce [and] have [had] a substantial effect on U.S. commerce." Id. at ¶ 86. In addition, Software AG alleges that Consist Brasil's registration of the ADABAS and NATURAL marks in Brazil "have caused and . . . will continue to cause irreparable damage loss and injury to Software AG for which Software AG has no adequate remedy at law." Id. at ¶ 118.

In the instant case, extraterritorial application of the Lanham Act would be completely inappropriate because Consist Brasil's conduct has not had a substantial effect on United States commerce. The Second Circuit has made clear that the Lanham Act may reach conduct that occurs outside of the United States only when necessary to prevent harm to commerce in the United States. See Atlantic. Richfield Co. v. ARCO Globus Int'l. Co., 150 F.3d 189, 192 n.4 (2d Cir. 1998) ("[W]e have never applied the Lanham Act to extraterritorial conduct absent a substantial effect on United States commerce.") (emphasis added); Totalplan Corp. of Am. v. Colborne, 14 F.3d 824, 830-31 (2d Cir. 1994) (stating that lack of evidence that infringing goods re-entered United States commerce supported finding that plaintiff failed to demonstrate that defendant's conduct had substantial effect on United States commerce); see also J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 29:58 (4th Ed. 2007) ("local impact alone [i.e., in Brazil] cannot be sufficient for jurisdiction in a U.S. court.").

Given that there is no evidence that any of Consist's products bearing the ADABAS or NATURAL marks have entered the U.S. market or confused U.S. consumers, Software AG's Lanham Act claims are solely premised on unsubstantiated allegations of reputational harm and consumer confusion purportedly arising from: (1) Consist Brasil's ownership of two valid Brazilian trademark registrations in Brazil and (2) certain purported expressions of good faith opinion by Consist Brasil's in Portuguese which were (i) made in Brazil to Consist Brasil's Brazilian consumers in connection with certain maintenance contracts; and (ii) published on a Brazilian website in Portuguese. Software AG's Complaint at ¶77.

However, Consist Brasil cannot demonstrate that the aforementioned acts would have any effect—let alone a substantial one—on United States commerce. Software AG has failed to demonstrate that United States consumers have been misled by Consist Brasil's statements in Portuguese on the Brazilian website or by any oral statements made by Consist Brasil to its Brazilian customers in Brazil. See Atlantic Richfield Co., supra, 150 F.3d at 193-94 (denying extraterritorial application of the Lanham Act where plaintiff presented no evidence that U.S. consumers were misled or came to view plaintiff's U.S. trademarks less favorably as a result of defendants' infringing foreign conduct). Similarly, Software AG's fails to sufficiently allege how certain statements made by Consist Brasil in Portuguese on Consist Brasil's website would have a substantial effect on United States commerce. See McBee v. Delica Co., 417 F.3d 107, 124 (1st Cir. 2005) (affirmed dismissal of action on the grounds of lack subject matter jurisdiction under the Lanham Act because no substantial effect on United States commerce was found where trademark was used in connection with a Japanese website and "it very unlikely that

any real confusion of American consumers . . . would result from the website's existence").[1]

Furthermore, Software AG has not plead any facts to support its baseless claim that its reputation has been harmed in the United States as a result of Consist Brasil's registration of "Adabas" and "Natural" in Brazil, its expressions of opinion in Portuguese on the Consist Brasil website or its statements of opinion concerning its ability to perform certain service contracts with Brazilian customers. Accordingly, the third Vanity Fair factor – a substantial effect on U.S. commerce – clearly favors Consist.

As for the second Vanity Fair factor, since Consist Brasil's valid Brazilian trademark registrations are governed by Brazilian law and were issued pursuant to Brazil's trademark statutes, any type of relief compelling an assignment of the two marks at issue or issuance of new marks in the name of Software AG conflicts with Brazilian law. See Vanity Fair Mills, 234 F.2d at 647 ("We do not think it the province of United States district courts to determine the validity of trade-marks which officials of foreign countries have seen fit to grant."); Star Kist Foods, Inc. v. P.J. Rhodes & Co., 769 F.2d 1393, 1396 (9th Cir. 1985) (denial of request for extraterritorial application of the Lanham Act to dispute regarding a Philippine trademark registration where "[a]pplication of the Lanham Act to wholly foreign Philippine commerce could create a conflict with Philippine patent and trademark law and with pending proceedings in that country."); Int'l Cafe v. Hard Rock Cafe, Int'l, 252 F.3d 1274, 1279 (11th Cir. 2001) (court dismisses plaintiff's request for relief regarding defendant's use of marks in Lebanon since use of the marks in

---

[1] Software AG's position is not supported by either A.V. by Versace, Inc. v. Gianni Versace, S.p.A, 126 F. Supp. 2d 328 (S.D.N.Y. 2001) (finding that the "alleged importation, as well as sales [of infringing products] within the U.S. and likely consumer confusion" contributed to finding of substantial effect on U.S. commerce), or Steele v. Bulova Watch Co., 344 U.S. 280, 286-87 (1952) (holding that substantial effect on U.S. commerce stemmed from the fact that fake watches with BULOVA trademark filtered back into the U.S. and caused numerous customer complaints). Here, Software AG has not alleged that Consist has sent or will send any products bearing "Adabas" or "Natural" into the U.S. market, let alone that these products have caused confusion among U.S. consumers. Thus, these cases are inapposite to the facts of the instant case.

Lebanon was governed by Lebanese law); Thomas & Betts Corp. v. Panduit Corp., 71 F. Supp. 2d 838, 843 (N.D. Ill. 1999) (stating that the "crucial issue" in declining to exercise jurisdiction under the Lanham Act is the existence of defendant's foreign trademark registration).

Furthermore, the claims asserted and relief requested in the instant case are in direct conflict with Brazillian law. For example, Article 175 of the Brasilian IP Law provides that any judicial cancellation action, as well as judicial proceeding involving Brasilian intellectual property rights, must be filed before the Brasilian Federal Court of Justice and in those cases in which the Brasilian Trademark Office is not a plaintiff, the Brasilian Trademark Office shall participate in the proceedings. Article 175 states: "Nullity proceedings shall be filed before the Federal Courts and in those cases in which INPI is not the plaintiff INPI shall participate in the proceedings."

In addition, Brazil has its own unique set of laws regarding what constitutes false advertising. These laws would govern the statements on Consist Brasil's website and any oral statements made to Consist Brasil's customers in Brazil. Accordingly, the second Vanity Fair factor – conflict with foreign law – clearly favors Consist.

Given that both the second and third factors are absent, the exercise of extraterritorrial jurisdiction under the Lanham Act over Consist's actions in Brazil would constitute an abuse of discretion. See Space Imaging Eur., Ltd. v. Space Imaging L.P., 1999 U.S. Dist. LEXIS 10898, *8-9 (S.D.N.Y. July 15, 1999) ("The absence of one of the [Vanity Fair] factors might well be determinative, and the absence of two factors is certainly fatal."); Totalplan Corp. of Am., 14 F.3d at 831; see also Piccoli A/S v. Calvin Klein Jeanswear Co., 19 F. Supp. 2d 157, 170 (S.D.N.Y. 1998) ("[A]bsence of a substantial effect on domestic commerce [is] fatal to a plaintiff's attempt to apply the Lanham Act to extraterritorial conduct"). Moreover, since the

10

trademarks belong to a Brazilian entity which is not a United States citizen, not proven to be subject to personal jurisdiction here, and not even a named party, Software AG cannot even satisfy the first Vanity Fair factor. Indeed, Consist Brasil is clearly a necessary and, likely, an indispensable party. Accordingly, the extraterritorial application of the Lanham Act to Consist's conduct in Brazil would be wholly inappropriate and thus Software AG's Lanham Act claims must be dismissed.

## CONCLUSION

Based upon the foregoing reasons, Defendants respectfully request that Plaintiffs' Lanham Act claims be dismissed in their entirety.

Dated: New York, New York
February 26, 2008

DUANE MORRIS LLP

By:  /s Gregory P. Gulia
  Hyman L. Schaffer
  Fran M. Jacobs
  Gregory P. Gulia
  Brian Damiano
1540 Broadway
New York, New York 10036
Telephone: (212) 692-1000
Facsimile: (212) 692-1020
*Attorneys for Defendants*

TO: BAKER & McKENZIE LLP
   1114 Avenue of the Americas
   New York, New York 10036
   Telephone: (212) 626-4100
   Facsimile: (212) 310-1600
   *Attorneys for Plaintiffs*