DUANE MORRIS LLP
Hyman L. Schaffer
Fran M. Jacobs
Gregory P. Gulia
Brian Damiano
1540 Broadway
New York, New York 10036
(212) 692-1000
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
SOFTWARE AG, INC. and SOFTWARE AG,   :
                                     :   08 CV 00389 (CM) (FM)
               Plaintiffs,           :
                                     :
     -against-                       :
                                     :
CONSIST SOFTWARE SOLUTIONS, INC.,    :
f/k/a CONSIST INTERNATIONAL, INC.    :
and NATALIO FRIDMAN,                 :
                                     :
               Defendants.           :
------------------------------------------------------------------x

**MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR SANCTIONS**

# TABLE OF CONTENTS

page

TABLE OF AUTHORITIES ..................................................................................................

INTRODUCTION ........................................................................................................... 1

SUMMARY OF ARGUMENT ....................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 2

ARGUMENT ................................................................................................................... 5

    I.    The Legal Standard ........................................................................................... 5

    II.   Sanctions are Unwarranted Because Consist Complied with the Court's Order ............... 8

    III.  There Is No Basis For Sanctions Because Defendants Produced The Relevant Documents That They Could Locate In The Short Time Frame Allotted ........................ 8

    IV.  The Requested Documents Remain Equally Available to Software AG ................. 11

    V.   There is No Basis for the Court to Draw the Requested Adverse Inference .............. 12

CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

## CASES

page

ACLI Int'l Commodity Services, Inc. v. Banque Populaire Suisse,
110 F.R.D. 278 (S.D.N.Y. 1986) ..................................................................................11

Bambu Sales, Inc. v. Ozak Trading, Inc.,
58 F.3d 849 (2d Cir. 1995)..........................................................................................6, 9

Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.,
602 F.2d 1062 (2d Cir. 1979).........................................................................................8

Cornell Research Found., Inc. v. Hewlett-Packard Co.,
2006 U.S. Dist. LEXIS 97054 (N.D.N.Y. Nov. 13, 2006) .............................................6

Daval Steel Products, Div. of Francosteel Corp. v. M/V Fakredine,
951 F.2d 1357 (2d Cir. 1991).............................................................................5, 7, 14

Gordon Partners, et. al. v. Blumenthal (In re NTL, Inc. Sec. Litig.),
244 F.R.D. 179 (S.D.N.Y. 2007) ..................................................................................13

Grdinich v. Bradlees,
187 F.R.D. 77 (S.D.N.Y. 1999) .....................................................................................6

In re Greene,
103 B.R. 83 (S.D.N.Y. 1989).......................................................................................11

Henrietta D. v. Giuliani,
2001 WL 1602114 (E.D.N.Y. Dec. 11, 2001) .............................................................10

Hinton v. Patnaude,
162 F.R.D. 435 (N.D.N.Y. 1995) .............................................................................6, 10

Hudson v. IRS,
100 A.F.T.R.2d (RIA) 6097 (N.D.N.Y. 2007) ..............................................................6

Jockey Int'l, Inc. v. M/V "Leverkusen Express",
217 F. Supp. 2d 447 (S.D.N.Y. 2002).........................................................................10

LaGrande v. Adecco,
233 F.R.D. 253 (N.D.N.Y. 2005) ..................................................................................5

LaSalle Bank Nat'l Assoc. v. Capco American Securitization Corp.,
2006 U.S. Dist. LEXIS 2600 (S.D.N.Y. Jan. 19, 2006)...............................................11

Lamar Advertising of Penn, LLC v. Town of Orchard Park,
2006 U.S. Dist. LEXIS 82901 (W.D.N.Y. Nov. 14, 2006) ..........................................12

Lavi v. City of New York,
2007 U.S. Dist. LEXIS 39289 (S.D.N.Y. May 24, 2007)..............................10, 11, 15

Monaghan v. SZS 33 Assocs. L.P.,
148 F.R.D. 500 (S.D.N.Y. 1993) ...........................................................................................9

National Hockey League v. Metropolitan Hockey Club,
427 U.S. 639 (1976) ..............................................................................................................5

Phoenix Four, Inc. v. Strategic Res. Corp.,
2006 U.S. Dist. LEXIS 32211 (S.D.N.Y. 2006) ..................................................................12

Reilly v. Natwest Mkts. Group, Inc.,
181 F.3d 253 (2d Cir. 1999) ..................................................................................................6

Residential Funding Corp. v. DeGeorge Fin. Corp.,
306 F.3d 99 (2d Cir. 2002) ...............................................................................13, 14, 15, 16

SEC v. Euro Sec. Fund,
1999 U.S. Dist. LEXIS 4046 (S.D.N.Y. April 1, 1999) .......................................................7

Salahuddin v. Harris,
782 F.2d 1127 (2d Cir. 1986) ................................................................................................7

Searock v. Stripling,
736 F.2d 650 (11th Cir. 1984) ...............................................................................................9

Time Inc. v. Simpson,
02 Civ. 4917, 2002 U.S. Dist. LEXIS 24335 (S.D.N.Y. December 18, 2002) ...................10

United Cigar-Whelan Stores Corp. v. Philip Morris, Inc.,
21 F.R.D. 107 (S.D.N.Y. 1957) ..........................................................................................12

Worldcom Network Servs. v. Metro Access, Inc.,
205 F.R.D. 136 (S.D.N.Y. 2002) .....................................................................................6, 11

Zubulake v. UBS Warburg LLC,
220 F.R.D. 212 (S.D.N.Y. 2003) .............................................................................13, 14, 15

## STATUTES

Federal Rule of Civil Procedure 37 ..............................................................................2, 8, 10

## OTHER AUTHORITIES

C. Wright & A. Miller, Federal Practice and Procedure, § 2174 .................................................12

C. Wright & A. Miller, Federal Practice and Procedure, § 2289.1 ................................................7

# INTRODUCTION

Defendants Consist Software Solutions, Inc. f/k/a Consist International, Inc. ("Consist") and Natalio Fridman ("Fridman") (collectively, "Defendants" or "Consist") respectfully submit this memorandum of law in opposition to Plaintiffs Software AG, Inc. and Software AG's (collectively, "Plaintiffs" or "Software AG") motion for sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure.

# SUMMARY OF ARGUMENT

Software AG's motion for sanctions was obviously filed for purposes unrelated to the need for documents. Had Plaintiffs really wanted or needed documents regarding trademark registrations outside of Brazil, their counsel would have specified the documents they were seeking. In the discussions and correspondence between the parties regarding discovery, Plaintiffs' counsel never once mentioned that they were interested in trademark registration certificates in Argentina or Uruguay – countries for which Plaintiffs make no claim in the instant lawsuit. Instead they repeatedly stated that they wanted the maintenance contracts made after December 17, 2006.

If Software AG had any interest in finding out the status of whether ADABAS and NATURAL were registered in various countries, they would have simply checked the publicly available free websites or otherwise had their law firm's local offices check the public records in the respective countries. As Plaintiffs acknowledge in their papers, they were well aware of the fact that Defendants may have registered ADABAS and NATURAL in South American countries because Mr. Fridman so testified in response to Mr. Jacobs' questioning in a deposition in November 2007. It is also impossible to believe that Software AG was not aware of all registrations for these marks. As the Court previously found, Plaintiffs knew about the registrations for these marks in Brazil by Defendants' affiliates. Under the same reasoning, they

1

must have known about the registrations in other South American countries long before Mr. Fridman's deposition.

Despite Software AG's feigned attempt to portray Consist's discovery efforts as insufficient, the record reveals that Consist made a tremendous effort to identify, review, and produce documents responsive to extremely broad requests in its possession in the few days allotted by the Court. During that time, Consist produced over 2,000 pages of documents – significantly more than what was produced by Plaintiffs. Defendants objected on multiple grounds to the document request at issue on this motion (Request No. 15) which sought without limitation all documents regarding any form of intellectual property in countries where rights are not at issue in the case. Nonetheless, Defendants produced all the documents relevant to this Request that they were able to locate in the limited time available. Defendants simply did not withhold any documents – they produced what they were able to locate in the short time available after prioritizing the documents specifically sought by Plaintiffs.

It is telling to note that Software AG never called or wrote about the trademark registrations in Uruguay or Argentina, did not attempt to meet and confer, did not make any motion to compel the production of these documents or otherwise abide by the spirit of cooperation in discovery. Instead they moved for sanctions based on a general order holding that documents should be produced, without trying to clarify the scope of the order, the document requests, or the objections thereto. Accordingly, there is no basis whatsoever for sanctions and Software AG's motion must be denied in its entirety.

## STATEMENT OF FACTS

The detailed relevant facts are included in the declarations of Hyman L. Schaffer, Michael A. Turschmann and Christopher J. Rooney all dated February 27, 2008 and are not repeated in detail here. The procedural posture of this motion is summarized below.

On January 16, 2008, Plaintiffs served their first Request for Production of Documents. The Court had ordered earlier that day that instead of the 30-day period to respond and object to document requests provided by the Federal Rules, parties would respond and object to requests for production in 3 days.

On January 18, 2008, the same day that Consist produced its initial set of responsive documents, it sent a letter to the Court explaining that Consist Brasil had posted corrective notices on its website regarding the allegedly false statements at issue in this action. Consist informed the Court that as a result of Consist Brasil's corrective measures Consist held a good faith belief that several issues covered by Software AG's emergency application for injunctive relief and document requests were moot and thus discovery would not be necessary on those issues. In response to Consist's letter, on January 18, 2008, the Court ordered that "Defendants will produce documents" but did not make any ruling on the relevance or propriety of any specific requests or objections thereto.

Consist timely served responses and objections to Plaintiffs' First Request for Production of Documents in which it asserted both general and specific objections, including specific objections on relevance, overbreadth and undue burden and a general objection to requests which would have required the production of "information which is publicly available from other sources." (General Objection No. 11.)

Specifically, Document Request No 15 requested:

> All documents concerning Consist's ownership of, right to, pursuit of or maintenance of *any intellectual property rights* in the Territory, including but not limited to the trademarks ADABAS and NATURAL.

First Request Document Request No. 15 (emphasis added).

3

This document request sought production of all documents regarding any intellectual property rights in countries not at issue in this lawsuit such as any documents regarding patents, trade secrets, copyrights, trade dress and trademarks rights owned, licensed by, maintained or even pursued by Consist. There was absolutely no limitation as to the scope of this document request with respect to relevance, subject matter, geographical scope or time period. It was facially overbroad particularly given the relief sought by the preliminary injunction.

The Court was never asked to rule on Consist's valid and timely objections to Software AG's First Request. Consist spent the entire short time frame available diligently working to identify, locate, review, and produce the relevant documents which were located in South America. Given the narrow timeframe to produce the responsive documents and the volume of the document requests, Consist focused its time and efforts on attempting to locate documents related to Brazilian trademark registrations and maintenance agreements – the documents expressly requested by Plaintiffs in communications between counsel. These efforts kept Defendants and their counsel working around the clock throughout the extremely short time for production. Since Software AG's complaint and motion for a preliminary injunction sought injunctive relief regarding its alleged intellectual property rights in Brazil – and since no other South American country was even mentioned in Software AG's complaint – Consist's document production was in compliance with the Federal Rules and the Court's very general order. Indeed, Consist's counsel produced all responsive documents it physically had in its possession or was able to locate.

Despite Software AG's allegations to the contrary, Consist never withheld from Software AG the fact that it had registered the ADABAS and NATURAL trademarks in Uruguay and Argentina. As Plaintiffs themselves acknowledge, Natalio Fridman testified on November 28, 2007 in the First Litigation that Consist may have registered the marks in Uruguay. Thus,

4

Software AG has been on notice since at least late November that Consist may have registered other marks in South America, and it simply cannot claim that it was "surprised" that the marks were actually registered in Uruguay. If Software AG failed to investigate the matter in the nearly two months between November 28, 2007, when Fridman testified about trademarks in Uruguay, and January 15, 2008, when Software AG commenced this action, it could not have been in reliance on anything Consist did or failed to do.

Moreover, the trademark registrations in Uruguay and Argentina for the ADABAS and NATURAL trademarks are publicly available documents to which both parties to this action had and continue to have equal access. A simple and free online search of the electronic databases of the trademark offices of Uruguay and Argentina provides the name of the owner of the registrations for the ADABAS or NATURAL trademarks.

On February 13, 2008, Plaintiffs' counsel filed their motion for sanctions without ever advising Defendants' counsel that they specifically sought documents regarding trademark registrations in Argentina or Uruguay, without making any attempt whatsoever to meet and confer, without seeking any clarification or ruling from the Court on the document requests or objections thereto either by motion to compel or otherwise.

## ARGUMENT

I.   **The Legal Standard**

Sanctions are "a *drastic* remedy and should be considered when it has been established that a party's noncompliance or failure was due to willfulness, bad faith or a callous disregard of the responsibilities mandated by the Federal Rules of Civil Procedure or a court order." LaGrande v. Adecco, 233 F.R.D. 253, 257 (N.D.N.Y. 2005) (emphasis added), citing National Hockey League v. Metropolitan Hockey Club, 427 U.S. 639, 639-40 (1976); Daval Steel Products, Div. of Francosteel Corp. v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991).

5

"The Second Circuit has advocated resort to a cautious, fact-intensive, and case-by-case analysis when determining whether discovery sanctions are warranted." Cornell Research Found., Inc. v. Hewlett-Packard Co., 2006 U.S. Dist. LEXIS 97054, at *12 (N.D.N.Y. Nov. 13, 2006), quoting Reilly v. Natwest Mkts. Group, Inc., 181 F.3d 253, 267 (2d Cir. 1999). In making the determination to impose sanctions, a court should consider: (1) the history of the party's alleged failure to comply with court orders; (2) whether the party violating the order was given ample time to respond; (3) the effectiveness of alternative sanctions; (4) whether the non-complying party was warned and given an opportunity to argue the impending sanctions; (5) the prejudice to the adversary caused by the failure to comply; (6) whether the document at issue would normally be readily obtainable; and (7) the extent of the party's personal responsibility. Worldcom Network Servs. v. Metro Access, Inc., 205 F.R.D. 136, 141 (S.D.N.Y. 2002), citing Bambu Sales v. Ozak Trading, 58 F.3d 849, 852-54 (2d Cir. 1995).

In order for a party's actions to constitute willfulness or bad faith, the court order at issue must be clear without any confusion between the parties as to the intent of the order, and, further, there must not be any factor beyond the party's control which contributed to the non-compliance. Hudson v. IRS, 100 A.F.T.R.2d (RIA) 6097, at *24 (N.D.N.Y. 2007), citing Bambu Sales, 58 F.3d at 852-54. In the instant case, the Court's order did not address and specific requests or objections but merely recited that documents were to be produced.

Sanctions should not be imposed if the effect of the failure to produce was "harmless." See Grdinich v. Bradlees, 187 F.R.D. 77, 79 (S.D.N.Y. 1999), citing Fed R. Civ. P. 37(c)(1) and 8A Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2289.1, p. 705. Rule 37 "permits the saving grace of substantial justification or harmlessness to blunt the impact of sanctions." Id. citing Hinton v. Patnaude, 162 F.R.D. 435, 439 (N.D.N.Y. 1995).

Moreover, a district court's discretion in imposing sanctions pursuant to Rule 37(b)(2) is subject to two specific limitations: (1) the sanctions must be "just"; and (2) the sanctions must relate to the particular claim to which the discovery order was addressed. Daval Steel Products, Div. of Francosteel Corp. v. M/V Fakredine, 951 F.2d 1357, 1366 (2d Cir. 1991), citing Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 707 (1982); see also SEC v. Euro Sec. Fund, 1999 U.S. Dist. LEXIS 4046, at *5-*6 (S.D.N.Y. April 1, 1999).

Imposition of Rule 37(b) sanctions for noncompliance is further predicated upon whether there is a clearly articulated order of the court requiring specified discovery. See Daval Steel Products, Div. of Francosteel Corp. v. M/V Fakredine, 951 F.2d 1357, 1363 (2d Cir. 1991), citing Jones v. Uris Sales Corp., 373 F.2d 644, 647-48 (2d Cir. 1967). Any contempt order must be predicated on three findings: (1) the order allegedly violated must be clear and unambiguous; (2) proof of noncompliance must be clear and convincing; and (3) it must be shown that the contemnor was not reasonably diligent in attempting to comply. Denial of sanctions is warranted where the court's order lacks specificity regarding the scope of the ordered discovery. See Time Inc. v. Simpson, 02 Civ. 4917, 2002 U.S. Dist. LEXIS 24335 (S.D.N.Y. December 18, 2002) (motion for contempt sanctions denied on the grounds that order directing that jurisdictional discovery proceed did not constitute "clear and unambiguous" order that a party respond to specific document demands by producing the requested information)(citations omitted); Salahuddin v. Harris, 782 F.2d 1127, 1131-1132 (2d Cir. 1986)(motion for sanctions denied on the grounds that there was no violation of court order where order merely directed that deposition of defendant be taken, but did not specify matters that could or could not be inquired into at the deposition).

Applying the above standards, the imposition of sanctions against Consist is unwarranted in light of the facts in this case.

## II.     Sanctions are Unwarranted Because Consist Complied with the Court's Order

The Court's January 18 Order stated that "Defendants will produce documents." Consist subsequently served timely objections to the First Requests and produced the responsive documents in its possession to Software AG. Given the few days that Consist had to produce the documents, most of which were located in South America and were written in Portuguese; (b) Software AG's filing of a complaint which mentioned only one South American country – Brazil – even though Fridman had testified that trademarks may have been registered elsewhere; and (c) the fact that Consist indicated that it would continue to produce documents, Consist's production was wholly appropriate. In fact, in the five days between January 18 and January 23, 2008, Consist ultimately produced over 2,000 pages of documents, most of them contracts to which Consist Brasil was a party – the documents which Software AG's counsel specifically requested.

## III.    There Is No Basis For Sanctions Because Defendants Produced The Relevant Documents That They Could Locate In The Short Time Frame Allotted

Given the volume of the document requests; the logistical complications of coordinating the identification, search for, and delivery of documents located overseas; the time constraints imposed by the severely truncated schedule, Consist clearly complied with its discovery obligations. Consist simply could not have located every document sought by Software AG's unduly broad document requests. Nor was it obligated to in light of its warranted objections.

A party's efforts to produce documents in response to discovery requests must be considered when considering the possibility of imposing sanctions under Federal Rule of Civil Procedure 37. See, e.g., Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.,

602 F.2d 1062, 1066 (2d Cir. 1979); Searock v. Stripling, 736 F.2d 650, 654 (11th Cir. 1984). Indeed, in determining whether sanctions could be imposed, the court should consider whether the allegedly non-complying party had ample time to respond to the discovery request. See, e.g., Bambu Sales, Inc. v. Ozak Trading, Inc., 58 F.3d 849, 852-54 (2d Cir. 1995); Monaghan v. SZS 33 Assocs. L.P., 148 F.R.D. 500, 508-09 (S.D.N.Y. 1993).

As stated above, on January 15, 2008, Software AG moved for a temporary restraining order and preliminary injunction and sought expedited discovery in connection with its motion. At the January 16 hearing on the temporary restraining order, the Court granted Software AG's motion for expedited discovery. On January 18, in the late afternoon, the Court generally ordered Consist to "produce documents" in response to Software AG's document requests. Yet, Plaintiffs' document requests were extremely broad and without limitation.

Despite the limited time to produce responsive documents, and broad scope of the First Requests (most all of which sought documents located in South America), Consist did its best to produced as many relevant documents responsive to Software AG's requests. Indeed, on January 18, two days after receiving the First Request, Consist produced its first set of responsive documents. After continuing to identify and review additional responsive documents, Consist made supplemental productions on January 22 and 23 of over 2,000 pages of documents. Moreover, prior to making this sanctions motion, Software AG never asked Consist about other trademark registrations – even though Fridman had testified that trademarks may have been registered in Uruguay, and even though it objected to Consist's redaction of certain documents it produced and insisted that Consist produce those documents again without redaction.

In light of the substantial logistical and time constraints, the broad scope of the document requests, and Consist's demonstrated efforts to comply with the Court's Order, Consist's conduct could not possibly rise to the level of "willfulness," "bad faith," and/or a "callous disregard" that

9

is necessary to warrant the imposition of discovery sanctions. See Hinton, 162 F.R.D. at 439-40 (holding that plaintiff's untimely submission of reports and affidavits of expert witnesses which were overdue by six months failed to constitute "flagrant bad faith" or "callous disregard"); see also Lavi v. City of New York, 2007 U.S. Dist. LEXIS 39289 (S.D.N.Y. May 24, 2007) (no evidence of "willfulness" or "bad faith" where no "pattern" of discovery abuses, counsel made substantial efforts to comply with many discovery obligations and counsel articulated reasoned positions with respect to discovery disputes).

Denial of Software AG's motion for sanctions is further mandated in light of Consist's timely and meritorious objections to the scope of the First Request and the unresolved status of Consist's objections to the discovery requests. The assertion of "non-frivolous objections to the scope of discovery, even if these objections are ultimately overruled," is sufficient to satisfy a court's broad discovery directive and therefore avoid sanctions. Time, Inc. v. Simpson, 2002 U.S. Dist. LEXIS 24335, at *6-*7 (S.D.N.Y. Dec. 18, 2002); Lavi, 2007 U.S. Dist. LEXIS 39289.

In this case, Consist filed timely objections to the First Request, generally objecting to all requests on the ground of relevance and based on the availability of the materials sought from public sources, and specifically objecting to Request No. 15 on multiple grounds including privilege, overbreadth and relevance. Since the Court was not asked to – and did not – issue a ruling on Consist's objections that would have resolved the dispute between the parties as to the scope of the First Request, Consist's initial document production was reasonable and cannot be the basis for the imposition of sanctions. Jockey Int'l, Inc. v. M/V "Leverkusen Express", 217 F. Supp. 2d 447, 452 (S.D.N.Y. 2002), quoting Henrietta D. v. Giuliani, 2001 WL 1602114, at *5 (E.D.N.Y. Dec. 11, 2001) (further citations omitted).

10

IV.  **The Requested Documents Remain Equally Available to Software AG**

Sanctions are also unwarranted because the information regarding the trademark registrations in Argentina and Uruguay is contained in public documents that are readily available on the internet and through other sources. Accordingly, Software AG suffered neither any prejudice nor harm. In considering whether sanctions could be available, one factor a court must consider is whether the documents at issue are readily available to both parties. Worldcom Network Servs., 205 F.R.D. at 141, citing Bambu Sales, Inc., 58 F.3d at 852-54; see also LaSalle Bank Nat'l Assoc. v. Capco American Securitization Corp., 2006 U.S. Dist. LEXIS 2600, at *4 (S.D.N.Y. Jan. 19, 2006) (holding that party had no duty to produce certain documents to requesting party since the documents were public documents that were equally available to both parties); ACLI Int'l Commodity Services, Inc. v. Banque Populaire Suisse, 110 F.R.D. 278, 288 (S.D.N.Y. 1986) (stating that a court "may deny a party's discovery request when it seeks information from his adversary that is readily available to the party making the request."); United Cigar-Whelan Stores Corp. v. Philip Morris, Inc., 21 F.R.D. 107, 108-09 (S.D.N.Y. 1957); Lamar Advertising of Penn, LLC v. Town of Orchard Park, 2006 U.S. Dist. LEXIS 82901, at *16 (W.D.N.Y. Nov. 14, 2006). "If evidence is equally available to both parties, the party seeking the information should do its own research." 8A C. Wright & A. Miller, Federal Practice and Procedure, § 2174, at 552 & n. 93 (1988), as quoted in In re Greene, 103 B.R. 83, 90 (S.D.N.Y. 1989), aff'd, 904 F.2d 34 (2d Cir. 1990).

Here, the trademark registrations in Uruguay and Argentina for the ADABAS and NATURAL marks were readily available to Software AG. Software AG or its counsel could have accessed all information pertaining to the registrations at issue through simple computer searches of the electronic databases of the trademark offices of Uruguay and Argentina. In addition, Software AG could have contacted an attorney at one of Baker & McKenzie's offices

11

located in South America and requested information regarding the marks. Despite being put on notice of the trademark registrations during the deposition of Natalio Fridman in November, Software AG, by its own admission, failed to conduct reasonable diligence, supposedly "rel[ied] on [Consist's initial document production] and Defendants' silence regarding other registrations," see Software AG's Memorandum of Law in Support of its Motion for Sanctions ("Plaintiffs' Memo") at 3, and waited for almost two months before making any inquiry or request for this purportedly urgent information.

Given the public availability of the trademark registrations at issue, Software AG could not have suffered any prejudice or harm from Consist's inability to produce the documents during the three-day time frame for production. Moreover, Software AG's claim that its effort to obtain the trademark records at issue was "tedious, costly" is wholly disingenuous considering that information regarding the trademark registrations were and continue to be publicly available on the internet and that Software AG and/or its counsel could have easily obtained this information

### V.    There is No Basis for the Court to Draw Any Adverse Inference

Finally, the Court should deny Software AG's request that the Court draw any adverse inference finding that Consist applied for and obtained the Argentina and Uruguay trademark registrations without Software AG's permission.

An adverse inference instruction is a severe sanction that often has the effect of ending litigation because "it is too difficult a hurdle for the spoliator to overcome." Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 219 (S.D.N.Y. 2003) ("Zubulake"). Accordingly, this sanction "should not be given lightly." Id. at 220; Phoenix Four, Inc. v. Strategic Res. Corp., 2006 U.S. Dist. LEXIS 32211 (S.D.N.Y. May 22, 2006). A party seeking an adverse inference instruction

for destruction or late production of evidence must show, <u>inter alia</u>, that: (i) the party that destroyed or failed to timely produce evidence had a "culpable state of mind"; and (ii) the missing or tardily produced evidence is "relevant" to the party's claim or defense" such that a reasonable trier of fact could find that it would support that claim or defense." <u>Residential Funding Corp.</u> v. <u>DeGeorge Fin. Corp.</u>, 306 F.3d 99, 107 (2d Cir. 2002); <u>Zubulake</u>, 220 F.R.D. at 220. "'[R]elevant' in this context means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence. The party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that 'the destroyed [or unavailable] evidence would have been of the nature alleged by the party affected by its destruction.'" <u>Residential Funding Corp.</u>, 306 F.3d 99, 108-09 (2d Cir. 2002); <u>Gordon Partners, et. al.</u> v. <u>Blumenthal (In re NTL, Inc. Sec. Litig.)</u>, 244 F.R.D. 179 (S.D.N.Y. 2007). Accordingly, "[i]n order for the sanction of adverse inference to be imposed, plaintiffs must present some evidence corroborating plaintiffs' assumption that the missing evidence would have been favorable to their case." <u>Zubulake</u>, 220 F.R.D. at 212, <u>Residential Funding</u>, 306 F.3d at 109. Here on its face such a claim would be preposterous because the information is publicly available and therefore not missing.

Applying these standards, Software AG's motion for the sanction of an adverse inference finding that Consist applied for and obtained the Argentina and Uruguay trademark registrations without Software AG's permission is unwarranted in all respects. Software AG has not sustained and cannot sustain its burden of proof to demonstrate that it is entitled to an adverse inference—much less the proposed adverse inference which far exceeds the evidentiary scope and significance of the requested materials. Tellingly, Plaintiffs' Memo fails to even mention, much less address, these legal standards.

As mentioned above, a movant must demonstrate that the party that destroyed or failed to timely produce evidence had a "culpable state of mind." In the instant case, Software AG cannot demonstrate that Consist had a "culpable state of mind." Given that the motion for expedited discovery was granted in connection with Software AG's motion for a preliminary injunction and/or a temporary restraining order relating solely to Brazil, Consist had a good faith belief that the scope of the expedited discovery requests exceeded the scope of the injunctive relief which was at issue in the proceedings. Accordingly, Consist's counsel lodged good faith objections to the First Request. Since the Court did not issue a ruling on Consist's objections that would have resolved the dispute between the parties as to the scope of the First Request, Consist's conduct was reasonable and clearly did not rise to the level of culpability sufficient to justify the extreme sanction of an adverse inference. See Lavi v. City of New York, 05 Civ. 8007. 2007 U.S. Dist. LEXIS 39289 (S.D.N.Y. May 24, 2007) (no evidence of "willfulness" or "bad faith" where counsel articulated reasoned positions with respect to discovery disputes).

Furthermore, the draconian sanction of an adverse inference is further unwarranted because the adverse inference proposed by Software AG far exceeds the evidentiary scope and significance of the requested materials. In order to demonstrate that an adverse inference is warranted, the plaintiff must demonstrate that the sanctions "relate to the particular claim to which the discovery order was addressed." See Daval Steel Products, 951 F.2d at 1366. "In order for the sanction of adverse inference to be imposed, plaintiffs must present some evidence corroborating plaintiffs' assumption that the missing evidence would have been favorable to their case." Zubulake, 220 F.R.D. at 212; Residential Funding, 306 F.3d at 109.

Not only has Software AG failed to produce evidence that the requested information would have established that the Argentina and Uruguay trademark registrations were applied for and obtained without Software AG's permission, but Software AG has not even made such a

14

claim. The reason for this telling omission is obvious. From the face of the trademark registrations from Argentina and Uruguay, it is not possible to tell whether or not Software AG consented to Consist's registration of the trademarks in Argentina and Uruguay. Not only were these documents irrelevant to the legal scope of the injunctive relief requested by Software AG, but these trademark registrations could merely have served as evidence of the existence of the registrations—and nothing more. Accordingly, the proposed adverse inference far exceeds the evidentiary scope and significance of the requested materials because these materials would not and could not be relevant to or dispositive of the proposed inference or conclusion. See Residential Funding Corp., 306 F.3d at 107; Zubulake, 220 F.R.D. at 220. Finally, there cannot be any prejudice or harm to Plaintiffs where, as here, the information they were seeking is publicly available. Accordingly, Software AG's request for an adverse inference must be denied in all respects.

## CONCLUSION

For all the foregoing reasons, this Court must deny Software AG's motion for sanctions in its entirety.

Dated: New York, New York
      February 27, 2008

DUANE MORRIS LLP

By: _____
    Hyman L. Schaffer
    Fran M. Jacobs
    Gregory P. Gulia
    Brian Damiano
1540 Broadway
New York, New York 10036
Telephone: (212) 692-1000
Facsimile: (212) 692-1020
*Attorneys for Defendants*

DM1\1294419.7